# 23-1315

## United States Court of Appeals
### *for the*
### Second Circuit
———

Rashaun Ferguson,

*Plaintiff-Appellant,*

v.

City of New York, Michael Gildea, Detective Jaeger,

*Defendants-Appellees,*

Unidentified Members of the NYPD, all sued herein in their individual capacities,

*Defendant.*
———

On Appeal from a Judgment of the United States District Court, Eastern District of New York

**JOINT APPENDIX**
**Vol. I of II (pages 1-300)**

| | | |
|---|---|---|
| Corporation Counsel of the City of New York 100 Church Street, Third Floor New York, N.Y. 10007 (212) 356-2409 | Bergstein & Ullrich 5 Paradies Lane New Paltz, New York 12561 (845) 469-1277 Counsel for Plaintiff-Appellant | Fred B. Lichtmacher 159 West 25th St, Room 510 New York, New York 10001 (212) 922-9066 Counsel for Plaintiff-Appellant |

# Table of Contents

Docket entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Defendants notice of motion for summary judgment . . . . . . . . . . . . . . . . . . . . . 20

Declaration of Geoffrey M. Stannard in support of motion
for summary judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Exhibit A: portions of the trial testimony of Reginald Evans . . . . . . . . . . . . . . . 27

Exhibit B: portions of the DD5 File . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Exhibit C: portions of Detective Jaeger's deposition transcript . . . . . . . . . . . . . 62

Exhibit D: portions of Police Officer Alfonso Vargas's deposition
transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

Exhibit E: copy of Sprint Report # F14151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Exhibit F:  portions of Detective Gildea's testimony at a pre-trial
Wade hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

Exhibit G: portions of Detective Gildea's deposition transcript . . . . . . . . . . . . . 108

Exhibit H: portions of plaintiff Rashaun Ferguson's deposition
transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

Exhibit I: documents related to the photo array presented to Wheeling
on May 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

Exhibit J: portions of the trial testimony of Angela Logan Smith . . . . . . . . . . . 133

Exhibit K: documents related to the lineup presented to Wheeling on
May 7, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 144

Exhibit L: documents related to the photo array presented to Reginald
Evans on May 9, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 152

Exhibit M: documents related to the lineup presented to Evans on January 27, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

Exhibit N: Arrest Report # Q14605601-K. . . . . . . . . . . . . . . . . . . . . . . . . . . . 171

Exhibit O: Criminal Court Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 175

Exhibit P: cover page of the grand jury minutes . . . . . . . . . . . . . . . . . . . . . . 178

Exhibit Q:  portions of Assistant District Attorney Timothy Regan's deposition transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 180

Exhibit R: Queens County Supreme Court Indictment # 2723/2014 . . . . . . . . 183

Exhibit S is a copy of the Certificate of Disposition . . . . . . . . . . . . . . . . . . . . 190

Defendant's Rule 56.1 Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 191

Lichtmacher Affirmation in opposition to motion for summary judgment. . . . . 200

Exhibit l: Felony Complaint sworn to by Detective Jaeger  . . . . . . . . . . . . . . . 205

Exhibit 2: the Indictment in Plaintiffs criminal case . . . . . . . . . . . . . . . . . . . . . 207

Exhibit 3: Notice of Claim Plaintiff filed on November 22, 2017 . . . . . . . . . . . 212

Exhibit 4: Federal complaint filed in the instant matter . . . . . . . . . . . . . . . . . . 215

Exhibit 5: Sprint Report generated during the police investigation . . . . . . . . . 230

Exhibit 6: excerpts from Police Officer Alfonso Vargas' deposition . . . . . . . . 248

Exhibit 7: excerpts from Defendant Police Officer Alfonso Vargas' memo book . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 255

Exhibit 8: Detective Jaeger's notes applicable to his interview of Reginald Evans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 259

Exhibit 9: Defendant Detective Quinn Jaeger's deposition . . . . . . . . . . . . . . . . . 268

Exhibit l0: Defendant Police Officer Gildea's deposition . . . . . . . . . . . . . . . . . 284

Exhibit 11: Plaintiff Rashaun Ferguson's deposition. . . . . . . . . . . . . . . . . . . . . 298

Exhibit 12: excerpts from the trial transcript in the criminal proceedings . . . . . 303

Exhibit 13: Preliminary Investigation Report . . . . . . . . . . . . . . . . . . . . . . . . . 320

Exhibit 14: Ortiz' Mugshot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330

Exhibit 15: Plaintiff Rashaun Ferguson's mugshot . . . . . . . . . . . . . . . . . . . . . . 335

Exhibit 16: Certificate of Disposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 336

Exhibit 17: Certified copy of the Omniform Complaint Report . . . . . . . . . . . . 337

Exhibit 18: Excerpts from non-party witness Henry McCummings'
deposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 342

Exhibit 19: non-party witness, Principal Logan Smith's deposition . . . . . . . . . 371

Exhibit 20: Exhibit 3 from Defendant Police Officer Gildea's deposition . . . . . 376

Exhibit 21: Investigator DeLeon' s Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . 377

Exhibit 22: DD5's contained in the DAs file pursuant to the prosecution
of Rashaun Ferguson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 379

Exhibit 23: excerpts from ADA Regan's deposition . . . . . . . . . . . . . . . . . . . . . 439

Exhibit 24: Photo Array Viewing Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 442

Exhibit 25: Search Warrant Affidavit for Wheeling signed by Christopher
Velsor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 443

iv

Exhibit 26: exerpts from non-party witness, Orris Wheeling's deposition . . . . . 444

Exhibit 27: Lineup Information Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 446

Declaration of Madeline Arnoldy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 452

Declaration of Elpidio DeLeon  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 454

Plaintiff's response to defendants' Rule 56.1 statement . . . . . . . . . . . . . . . . . 456

Second declaration of Geoffrey M. Stannard. . . . . . . . . . . . . . . . . . . . . . . . . . 473

Exhibit T: Excerpts from Jaeger deposition. . . . . . . . . . . . . . . . . . . . . . . . . . . 475

Exhibit U: Excerpts from deposition of Winter Carter . . . . . . . . . . . . . . . . . . . 478

Defendants' reply to plaintiff's statement pursuant to Rule 56.1 . . . . . . . . . . . 483

Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 494

Notice of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 495

APPEAL,ACO

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:17-cv-06871-ENV-SJB

Ferguson v. The City of New York et al
Assigned to: Judge Eric N. Vitaliano
Referred to: Magistrate Judge Sanket J. Bulsara
Demand: $5,000,000
Cause: 42:1983 Civil Rights Act

Date Filed: 11/22/2017
Date Terminated: 08/31/2023
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Rashaun Ferguson**                                                            represented by **Anuradha Lazarre**
226 PROSPECT PARK W # 197
Brooklyn, NY 11215
917-310-5659
Email: ecf.lazarre@gmail.com
*TERMINATED: 10/05/2021*
*ATTORNEY TO BE NOTICED*

**Fred Brian Lichtmacher**
The Law Office of Fred Lichtmacher P.C.
116 West 23rd Street
Floor 5
New York, NY 10011
(212)922-9066
Fax: (212)922-9077
Email: empirestatt@aol.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The City of New York**                                                       represented by **Kiran Hans Rosenkilde**
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
212-837-6044
Email:
kiran.rosenkilde@hugheshubbard.com
*TERMINATED: 09/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark David Zuckerman**
NYC Law Department
100 Church Street
New York, NY 10007
212-356-3519
Fax: 212-788-9776

Email: mzuckerm@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey M. Stannard**
New York City Law Department
100 Church Street
New York, NY 10007
(212)356-2409
Fax: (212)356-1148
Email: geoffrey.stannard@usdoj.gov
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Detective Michael Gildea**  represented by  **Kiran Hans Rosenkilde**
*Shield #465*  (See above for address)
*TERMINATED: 09/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark David Zuckerman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey M. Stannard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Detective Jaeger**  represented by  **Kiran Hans Rosenkilde**
(See above for address)
*TERMINATED: 09/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark David Zuckerman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey M. Stannard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Unidentified Members of the NYPD**
*all sued herein in their individual capacities*

**<u>Interested Party</u>**

**ADA Anastasia Spanakos-Orfan**

V.

JA-002

**Material Witness**

**Orris Wheeling**          represented by **Douglas G. Morris**
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718-330-1200
Fax: 718-855-0760
Email: douglas_morris@fd.org
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/22/2017 | 1 | COMPLAINT against Michael Gildea, Detective Jaeger, The City of New York, Unidentified Members of the NYPD filing fee $ 400, receipt number 0207-10002581 Was the Disclosure Statement on Civil Cover Sheet completed -Yes,, filed by Rashaun Ferguson. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons, # 3 Proposed Summons, # 4 Proposed Summons) (Lichtmacher, Fred) (Entered: 11/22/2017) |
| 11/22/2017 | | Case assigned to Judge Eric N. Vitaliano and Magistrate Judge Sanket J. Bulsara. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Bowens, Priscilla) (Entered: 11/27/2017) |
| 11/22/2017 | 2 | Summons Issued as to Michael Gildea, Detective Jaeger, The City of New York. (Bowens, Priscilla) (Entered: 11/27/2017) |
| 11/27/2017 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. <span style="color:red">**Do NOT return or file the consent <u>unless</u> all parties have signed the consent.**</span> (Bowens, Priscilla) (Entered: 11/27/2017) |
| 11/27/2017 | 4 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Bowens, Priscilla) (Entered: 11/27/2017) |
| 12/05/2017 | 5 | SUMMONS Returned Executed by Rashaun Ferguson. The City of New York served on 11/27/2017, answer due 12/18/2017. (Lichtmacher, Fred) (Entered: 12/05/2017) |
| 12/11/2017 | 6 | SCHEDULING ORDER: An in-person initial conference will be held at **10:30 AM on 3/15/2018** before Magistrate Judge Bulsara in Courtroom 324N. All counsel must attend. Plaintiff is directed to notify Defendant of this scheduling order at the time that Defendant makes an appearance in this matter. Counsel are also directed to complete the attached Discovery Plan Worksheet and electronically file same with the Court no later than two (2) days before 3/15/2018. So Ordered by Magistrate Judge Sanket J. Bulsara on 12/11/2017. (Manson, Eddie) (Entered: 12/11/2017) |
| 12/12/2017 | 7 | SUMMONS Returned Executed by Rashaun Ferguson. Michael Gildea served on 12/11/2017, answer due 1/1/2018. (Lichtmacher, Fred) (Entered: 12/12/2017) |
| 12/13/2017 | 8 | NOTICE of Appearance by Kiran Hans Rosenkilde on behalf of The City of New York (aty to be noticed) (Rosenkilde, Kiran) (Entered: 12/13/2017) |

| 12/18/2017 | 9 | First MOTION for Extension of Time to File Answer re 1 Complaint, *On Consent* by The City of New York. (Rosenkilde, Kiran) (Entered: 12/18/2017) |
|---|---|---|
| 01/10/2018 | | ORDER: Motion for Extension of Time to Answer 9 is granted. Defendant City of New York is directed to submit its answer by **2/16/2018**. Detective Michael Gildea is directed to submit his answer by **3/2/2018**. So Ordered by Magistrate Judge Sanket J. Bulsara on 1/10/2018. (Cardenas, Alex) (Entered: 01/10/2018) |
| 01/22/2018 | 10 | Letter by Rashaun Ferguson (Lichtmacher, Fred) (Entered: 01/22/2018) |
| 01/23/2018 | | ORDER: Plaintiff has requested additional time to serve one of the defendant officers, but Plaintiff has failed to identify the officer for which he seeks additional time; nor does the motion indicate whether the City Defendant, which typically represents officer defendants, has any position on Plaintiff's request. In any event, Plaintiff has currently until February 20, 2018 to serve any remaining defendant who has not yet been served, see Rule 4(m), and Plaintiff has not explained why additional time beyond that is necessary. The relief requested in the letter 10 is denied. So Ordered by Magistrate Judge Sanket J. Bulsara on 1/23/2018. (Cardenas, Alex) (Entered: 01/23/2018) |
| 01/23/2018 | 11 | SUMMONS Returned Executed by Rashaun Ferguson. Detective Jaeger served on 1/23/2018, answer due 2/13/2018. (Lichtmacher, Fred) (Entered: 01/23/2018) |
| 02/01/2018 | 12 | SUMMONS Returned Executed by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 02/01/2018) |
| 02/13/2018 | 13 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, *(By Defendant Detective Jaeger)* by The City of New York. (Rosenkilde, Kiran) (Entered: 02/13/2018) |
| 02/14/2018 | | ORDER: The Motion for Extension of Time to Answer 13 is granted. Defendants shall file their answer to the complaint on or before **March 02, 2018**. So Ordered by Magistrate Judge Sanket J. Bulsara on 2/14/2018. (Manson, Eddie) (Entered: 02/14/2018) |
| 02/16/2018 | 14 | *First* ANSWER to 1 Complaint, by The City of New York. (Rosenkilde, Kiran) (Entered: 02/16/2018) |
| 03/02/2018 | 15 | *First* ANSWER to 1 Complaint, by Michael Gildea, Detective Jaeger, The City of New York. (Rosenkilde, Kiran) (Entered: 03/02/2018) |
| 03/13/2018 | 16 | Proposed Scheduling Order *(Discovery Plan proposed by the Parties)* by Michael Gildea, Detective Jaeger, The City of New York (Rosenkilde, Kiran) (Entered: 03/13/2018) |
| 03/15/2018 | | Minute Entry for proceedings held before Magistrate Judge Sanket J. Bulsara: An in person initial conference was held on 3/15/2018. Counsel for both parties were present. (See separate docket entry for order issuing from this proceeding.) (FTR Log #10:35-11:05.) (Manson, Eddie) (Entered: 03/15/2018) |
| 03/15/2018 | 17 | SCHEDULING ORDER: The parties shall submit joint certification that discovery has been completed by **1/14/2019**. Other deadlines set based on parties' submitted joint discovery worksheet and are reflected in the attached order. An in-person settlement conference will be held on **8/14/2018 at 2:00 P.M.** before Magistrate Judge Bulsara in Courtroom 324N. Parties are to submit their respective settlement positions via ex parte to Chamber's email no later than three days before **8/14.2018**. Counsel are to refer to the Settlement Section of this Court's Individual Rules in preparation for the conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 3/15/2018. (Manson, Eddie) (Entered: 03/15/2018) |
| 03/27/2018 | 18 | Letter *explaining lower court decision on motion to unseal Grand Jury minutes* by Anastasia Spanakos-Orfan (Spanakos-Orfan, Anastasia) (Entered: 03/27/2018) |

| 03/28/2018 | | ORDER: The letter dated March 27, 2018 fails to provide the state court order that is referenced within. So Ordered by Magistrate Judge Sanket J. Bulsara on 3/28/2018. (Cardenas, Alex) (Entered: 03/28/2018) |
|---|---|---|
| 03/28/2018 | 19 | EXHIBIT *referred to in Docket #18* by Anastasia Spanakos-Orfan. (Spanakos-Orfan, Anastasia) (Entered: 03/28/2018) |
| 07/05/2018 | | ORDER: In response to the letter dated 3/27/2018 from the Queens DA, that office is directed to serve the Grand Jury Minutes under seal to the Court's Chambers at: Magistrate Judge Sanket J. Bulsara, U.S. District Court Eastern District of New York, 225 Cadman Plaza East, Chambers 304 North, Brooklyn, New York 11201 and file a confirmation of delivery on ECF. So Ordered by Magistrate Judge Sanket J. Bulsara on 7/5/2018. (Cardenas, Alex) (Entered: 07/05/2018) |
| 07/09/2018 | 20 | First MOTION for Discovery by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 07/09/2018) |
| 07/10/2018 | 21 | Letter *pursuant to Court's 7-5-18 order re: filing under seal Grand Jury minutes* by Anastasia Spanakos-Orfan (Spanakos-Orfan, Anastasia) (Entered: 07/10/2018) |
| 07/16/2018 | 22 | RESPONSE in Opposition re 20 First MOTION for Discovery filed by Michael Gildea, Detective Jaeger, The City of New York. (Rosenkilde, Kiran) (Entered: 07/16/2018) |
| 07/25/2018 | | ORDER: The motion to compel discovery 20 is denied without prejudice to renewal following production of the DA's file that is the subject of the motion. Plaintiff may challenge any redactions, following a meet and confer, after receipt of the subject file. Defendants should be prepared to explain the basis for any redactions and also state to Plaintiff if any portion of pages in their entirety are not being produced. So Ordered by Magistrate Judge Sanket J. Bulsara on 7/25/2018. (Cardenas, Alex) (Entered: 07/25/2018) |
| 08/06/2018 | 23 | Joint MOTION for Protective Order *Modification of Standardized Confidentiality Order* by Michael Gildea, Detective Jaeger, The City of New York. (Attachments: # 1 Exhibit Draft Proposed Protective Order with Track Changes, # 2 Exhibit Final Proposed Protective Order With Track Changes Removed) (Rosenkilde, Kiran) (Entered: 08/06/2018) |
| 08/07/2018 | | ORDER: The parties are directed to provide a signed copy of the proposed protective order for Court approval. So Ordered by Magistrate Judge Sanket J. Bulsara on 8/7/2018. (Cardenas, Alex) (Entered: 08/07/2018) |
| 08/07/2018 | 24 | Consent MOTION to Adjourn Conference *(Settlement Conference Scheduled 8/14/2018)* by Michael Gildea, Detective Jaeger, The City of New York. (Rosenkilde, Kiran) (Entered: 08/07/2018) |
| 08/08/2018 | 25 | Proposed Pretrial Order *(Signed Confidentiality Order)* by Michael Gildea, Detective Jaeger, The City of New York (Rosenkilde, Kiran) (Entered: 08/08/2018) |
| 08/08/2018 | | ORDER: Motion to Adjourn Conference 24 is granted. An in-person settlement conference will be held on **11/6/2018 at 10:30 AM** before Magistrate Judge Bulsara in Courtroom 324N. Parties are to submit their respective settlement positions via ex parte to Chamber's email no later than three days before **11/6/2018**. Counsel are to refer to the Settlement Section of this Court's Individual Rules in preparation for the conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 8/8/2018. (Cardenas, Alex) (Entered: 08/08/2018) |
| 08/09/2018 | 26 | ORDER: The proposed confidentiality order filed by the parties, 23 , is so ordered. To the extent that any portion of the stipulation is inconsistent with this Court's procedures for sealing documents or the standards governing the ability of this Court to permit the |

| | | |
|---|---|---|
| | | sealing of documents, the Court's practices and standards shall be followed by the parties and will govern any dispute. So Ordered by Magistrate Judge Sanket J. Bulsara on 8/9/2018. (Cardenas, Alex) (Entered: 08/09/2018) |
| 10/25/2018 | 27 | Consent MOTION to Adjourn Conference *Due to the Office of the Corporation Counsel being Closed for Election Day* by Michael Gildea, Detective Jaeger, The City of New York. (Rosenkilde, Kiran) (Entered: 10/25/2018) |
| 10/26/2018 | | ORDER: The motion to adjourn conference 27 is granted. An in-person settlement conference will be held **11/14/2018 at 10:30 AM** in Courtroom 324N before Magistrate Judge Sanket J. Bulsara. All parties must attend. Parties are to submit their respective settlement positions ex parte via Chambers email no later than **11/11/2018**. Counsel are to refer to the Settlement Section of this Court's Individual Rules in preparation for the conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 10/26/2018. (Murphy, Colleen) (Entered: 10/26/2018) |
| 11/10/2018 | 28 | First MOTION to Adjourn Conference *EMERGENCY APPLICATION-I HAVE JURY DUTY* by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 11/10/2018) |
| 11/11/2018 | | ORDER: The motion to adjourn 28 is granted. The settlement conference scheduled for 11/14/2018 at 10:30 AM is adjourned and will be rescheduled in short order. So Ordered by Magistrate Judge Sanket J. Bulsara on 11/11/2018. (Murphy, Colleen) (Entered: 11/11/2018) |
| 11/13/2018 | | RESCHEDULING ORDER: The in-person settlement conference scheduled for 11/14/2018 at 10:30 AM is hereby rescheduled for **12/3/2018 at 10:30 AM** in Courtroom 324N before Magistrate Judge Sanket J. Bulsara. All parties must attend. Parties are to submit their respective settlement positions ex parte via Chambers email no later than 11/30/2018. Counsel are to refer to the Settlement Section of this Court's Individual Rules in preparation for the conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 11/13/2018. (Murphy, Colleen) (Entered: 11/13/2018) |
| 11/14/2018 | 29 | First MOTION for Extension of Time to Complete Discovery *(Fact Discovery Only)* by Michael Gildea, Detective Jaeger, The City of New York. (Rosenkilde, Kiran) (Entered: 11/14/2018) |
| 11/15/2018 | | ORDER: The motion for extension of time 29 is granted. Parties must complete fact discovery by **1/14/2019**. So Ordered by Magistrate Judge Sanket J. Bulsara on 11/15/2018. (Murphy, Colleen) (Entered: 11/15/2018) |
| 12/03/2018 | | Minute Entry for proceedings held before Magistrate Judge Sanket J. Bulsara: An in-person settlement conference was held on 12/3/2018. Counsel for all parties were present. Plaintiff was present. A settlement was not reached. Parties are encouraged to continue discussing possible settlement. Parties are to submit a joint request as to the disposition of the grand jury minutes by **12/14/2018**. So ordered by Magistrate Judge Sanket J. Bulsara on 12/3/2018. (FTR Log #10:49-10:50; 12:22-12:29.) (Murphy, Colleen) (Entered: 12/03/2018) |
| 12/10/2018 | 30 | First MOTION for Extension of Time to Complete Discovery by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 12/10/2018) |
| 01/07/2019 | | ORDER: The motion for extension of time 30 is granted. Discovery deadlines are hereby extended as follows: (1) fact discovery must be completed by **4/15/2019**; (2) Plaintiff's expert reports are due by **2/14/2019** and Defendant's expert reports are due by **3/14/2019**; and (4) all expert depositions must be completed by **4/15/2019**. So Ordered by Magistrate Judge Sanket J. Bulsara on 1/7/2019. (Murphy, Colleen) (Entered: 01/07/2019) |

| 01/09/2019 | | ORDER: The parties may pick up a hard copy of the unsealed Grand Jury minutes from the Court by contacting Chambers at 718-613-2550 during regular business hours. Attorney or representative from each side will be provided with one hard copy of the Grand Jury minutes, which is to be subject to the existing protective order in this case. So Ordered by Magistrate Judge Sanket J. Bulsara on 1/9/2019. (Murphy, Colleen) (Entered: 01/09/2019) |
|---|---|---|
| 01/16/2019 | 31 | First MOTION for Discovery by Rashaun Ferguson. (Attachments: # 1 Exhibit Deposition of Orris Wheeling, # 2 Exhibit Excerpt Deposition of ADA Regan) (Lichtmacher, Fred) (Entered: 01/16/2019) |
| 01/23/2019 | 32 | NOTICE of Appearance by Douglas G. Morris on behalf of Orris Wheeling. (Attachments: # 1 Supplement) (Morris, Douglas) Modified on 1/23/2019 (Manson, Eddie). (Entered: 01/23/2019) |
| 01/28/2019 | | ORDER: The request for extension of time 32 is granted. Third party Orris Wheeling may respond to Plaintiff's motion for discovery 31 by **2/8/2019**. So Ordered by Magistrate Judge Sanket J. Bulsara on 1/28/2019. (Murphy, Colleen) (Entered: 01/28/2019) |
| 02/07/2019 | 33 | MOTION for Discovery by Orris Wheeling. (Morris, Douglas) (Entered: 02/07/2019) |
| 02/07/2019 | 34 | MOTION for Leave to Electronically File Document under Seal by Orris Wheeling. (Morris, Douglas) (Entered: 02/07/2019) |
| 02/08/2019 | 35 | Letter by Rashaun Ferguson (Attachments: # 1 Exhibit Photographs of the Scene) (Lichtmacher, Fred) (Entered: 02/08/2019) |
| 02/11/2019 | | SCHEDULING ORDER: An in-person motion hearing on Docket Nos. 31 and 33 will be held on **3/7/2019 at 4:00 PM** in Courtroom 324N before Magistrate Judge Sanket J. Bulsara. So Ordered by Magistrate Judge Sanket J. Bulsara on 2/11/2019. (Murphy, Colleen) (Entered: 02/11/2019) |
| 02/22/2019 | 36 | REPLY in Opposition filed by Orris Wheeling. (Morris, Douglas) (Entered: 02/22/2019) |
| 02/25/2019 | | Minute Entry for proceedings held before Magistrate Judge Sanket J. Bulsara: Parties called Chambers with disputes involving Plaintiff's deposition testimony. A court reporter was present. The issues were resolved as stated on the record. (Murphy, Colleen) (Entered: 02/25/2019) |
| 02/26/2019 | | ORDER: Third-party witness Orris Wheeling is not required to attend the hearing scheduled for 3/7/2019 at 4:00 PM. So Ordered by Magistrate Judge Sanket J. Bulsara on 2/26/2019. (Murphy, Colleen) (Entered: 02/26/2019) |
| 03/07/2019 | | Minute Entry for proceedings held before Magistrate Judge Sanket J. Bulsara: An in-person motion hearing was held on 3/7/2019. Counsel for Plaintiff, Defendants, and third-party witness Orris Wheeling were present. Mr. Morris from the Federal Defenders of New York is hereby appointed to represent Orris Wheeling in connection with his deposition and any related activities in this civil matter. So Ordered by Magistrate Judge Sanket J. Bulsara on 3/7/2019. (FTR Log #4:12-5:48.) (Murphy, Colleen) (Entered: 03/07/2019) |
| 03/07/2019 | | SCHEDULING ORDER: An in-person status conference will be held on **4/10/2019 at 4:00 PM** in Courtroom 324N before Magistrate Judge Sanket J. Bulsara. So Ordered by Magistrate Judge Sanket J. Bulsara on 3/7/2019. (Murphy, Colleen) (Entered: 03/07/2019) |
| 03/22/2019 | 37 | TRANSCRIPT of Proceedings held on March 7, 2019, before Judge Bulsara. Court Reporter/Transcriber TypeWrite Word Processing Service, Telephone number 518-581-8973. Email address: transcripts@typewp.com. Transcript may be viewed at the court |

| | | |
|---|---|---|
| | | public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 4/12/2019. Redacted Transcript Deadline set for 4/22/2019. Release of Transcript Restriction set for 6/20/2019. (Hong, Loan) (Entered: 03/22/2019) |
| 04/01/2019 | 38 | First MOTION to Adjourn Conference by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 04/01/2019) |
| 04/02/2019 | | ORDER: The motion to adjourn 38 is granted. The in-person status conference scheduled for 4/10/2019 is hereby adjourned to **4/22/2019 at 4:00 PM** before Magistrate Judge Sanket J. Bulsara. So Ordered by Magistrate Judge Sanket J. Bulsara on 4/2/2019. (Murphy, Colleen) (Entered: 04/02/2019) |
| 04/18/2019 | | RESCHEDULING ORDER: Due to a conflict in the Court's calendar, the status conference scheduled for 4/22/2019 is hereby adjourned to **4/25/2019 at 4:00 PM** in Courtroom 324N before Magistrate Judge Sanket J. Bulsara. So Ordered by Magistrate Judge Sanket J. Bulsara on 4/18/2019. (Murphy, Colleen) (Entered: 04/18/2019) |
| 04/25/2019 | | Minute Entry for proceedings held before Magistrate Judge Sanket J. Bulsara: An in-person status conference was held on 4/25/2019. Counsel for Plaintiff, Defendants, and third-party witness Orris Wheeling were present. The parties should meet and confer and submit a proposed discovery schedule to the Court by **5/10/2019**. Plaintiff should provide Wheeling with a list of questions he intends to ask during deposition by **5/24/2019** and Wheeling should respond by **6/7/2019**. Plaintiff may submit a supplemental motion pertaining to Wheeling's deposition, if necessary, by **7/5/2019** and any response is due **8/9/2019**. So Ordered by Magistrate Judge Sanket J. Bulsara. (FTR Log #4:14-5:23.) (Murphy, Colleen) (Entered: 04/25/2019) |
| 05/10/2019 | 39 | Letter *from the parties regarding the proposed discovery schedule* by Michael Gildea, Detective Jaeger, The City of New York, Proposed Scheduling Order by Michael Gildea, Detective Jaeger, The City of New York (Rosenkilde, Kiran) (Entered: 05/10/2019) |
| 05/12/2019 | | ORDER: The close of fact discovery is extended until 30 days following resolution of the pending motion to compel. So Ordered by Magistrate Judge Sanket J. Bulsara on 5/12/2019. (Murphy, Colleen) (Entered: 05/12/2019) |
| 05/20/2019 | 40 | Letter by Rashaun Ferguson (Lichtmacher, Fred) (Entered: 05/20/2019) |
| 06/04/2019 | 41 | First MOTION to Amend/Correct/Supplement *The 5th Amendment Briefing Schedule* by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 06/04/2019) |
| 06/04/2019 | 42 | MOTION to Continue by Orris Wheeling. (Morris, Douglas) (Entered: 06/04/2019) |
| 06/05/2019 | | ORDER: The motions for extension of time 41 and 42 are granted. The deadlines for briefing the 5th Amendment issue are hereby adjourned as follows: Wheeling should respond to Plaintiff's list of questions by **7/12/2019**, Plaintiff may file a supplemental motion pertaining to Wheeling's deposition by **7/19/2019**, and Wheeling may respond by **8/9/2019**. So Ordered by Magistrate Judge Sanket J. Bulsara on 6/5/2019. (Murphy, Colleen) (Entered: 06/05/2019) |
| 06/11/2019 | | ORDER: In light of the conference held on April 25, 2019 and the agreement that Plaintiff would proffer deposition questions so that third party witness Wheeling may reformulate or potentially resolve any Fifth Amendment objections, the prior motions 31 and 33 are denied as moot. The motion to file under seal 34 is granted. The briefing schedule issued on June 5, 2019 controls any renewed motion to compel or motion for |

| | | protective order. So Ordered by Magistrate Judge Sanket J. Bulsara on 6/11/2019. (Murphy, Colleen) (Entered: 06/11/2019) |
|---|---|---|
| 07/19/2019 | 43 | MOTION to Compel by Rashaun Ferguson. (Attachments: # 1 Exhibit June 3 Letter, # 2 Exhibit July 11 Letter, # 3 Exhibit February 7 letter, # 4 Exhibit Declaration, # 5 Exhibit Deposition Excerpt, # 6 Exhibit February 22 Letter) (Lichtmacher, Fred) (Entered: 07/19/2019) |
| 07/25/2019 | 44 | Consent MOTION for Leave to Electronically File Document under Seal *Unredacted letter motion to compel and unredacted exhibits* by Michael Gildea, Detective Jaeger, The City of New York. (Attachments: # 1 Motion to Compel (Redacted), # 2 Ex. 1 (Global CPL 160.50 release), # 3 Ex. 2 (Limited 160.50 releases--redacted), # 4 Ex. 3 (Plaintiff's Discovery Responses -- Redacted), # 5 Ex. 4 (Defendants' Deficiency Letter to Plaintiff--Redacted)) (Rosenkilde, Kiran) (Entered: 07/25/2019) |
| 07/25/2019 | 45 | First MOTION to Compel *Plaintiff's Global CPL 160.50 Release (An accompanying motion for leave to file unredacted documents for this application has been filed as ECF No. 44 [Jul. 25, 2019])* by Michael Gildea, Detective Jaeger, The City of New York. (Attachments: # 1 Exhibit global 160.50 release, # 2 Exhibit Limited 160.50 releases (redacted for filing), # 3 Exhibit Plaintiff's discovery responses (redacted), # 4 Exhibit Defendants' deficiency letter (redacted)) (Rosenkilde, Kiran) (Entered: 07/25/2019) |
| 08/01/2019 | 46 | Letter by Rashaun Ferguson (Lichtmacher, Fred) (Entered: 08/01/2019) |
| 08/09/2019 | 47 | MEMORANDUM in Opposition filed by Orris Wheeling. (Attachments: # 1 Exhibit) (Morris, Douglas) (Entered: 08/09/2019) |
| 08/12/2019 | | ORDER: The City of New York has filed a motion to seal documents connected with its motion to compel. The documents uploaded to ECF are redacted versions, not the documents that are sought to be sealed. The motion to seal 44 is therefore denied. The City must file a new motion to seal with unredacted copies on the docket by **8/16/2019**. So Ordered by Magistrate Judge Sanket J. Bulsara on 8/12/2019. (Murphy, Colleen) (Entered: 08/12/2019) |
| 08/13/2019 | | ORDER: In connection with Defendants' motion to compel 45 , the parties are to answer the following questions: (1) Is the arrest history being sought for incidents that took place prior to Plaintiff turning 18 years old? (2) If the arrest history being sought is for incidents prior to Plaintiff turning 18, are the incidents "youthful offender adjudications" under C.P.L. § 720.35? (3) To the extent these are not youthful offender adjudications, are these incidents classified as some other kind of juvenile offense and, if so, what protections attach to records of such offenses? The parties may file responses to these questions under seal and/or redacted as necessary. Submissions to these questions are due by **8/20/2019**. The parties are separately directed to provide the Court with a copy of the transcript excerpts from the deposition that took place on 2/25/2019, where these issues were the subject of a prior ruling of the Court. (*See* Minute Entry dated Feb. 25, 2019). So Ordered by Magistrate Judge Sanket J. Bulsara on 8/13/2019. (Murphy, Colleen) (Entered: 08/13/2019) |
| 08/15/2019 | 48 | Consent MOTION for Leave to Electronically File Document under Seal *Unredacted letter motion to compel and unredacted exhibits (in accordance with the Court's August 12, 2019 Order, unredacted copies of all exhibits are attached to this application)*, MOTION to Compel by Michael Gildea, Detective Jaeger, The City of New York. (Attachments: # 1 Memorandum in Support Defendants' Letter Motion to Compel (redactions removed), # 2 Exhibit Ex 1 - Global CPL 160.50 release, # 3 Exhibit Ex 2 - Plaintiff's submitted limited CPL 160.50 releases (redactions removed), # 4 Exhibit Ex 3 - Plaintiff's discovery responses (redactions removed), # 5 Exhibit Ex 4 - Defendants' |

| | | |
|---|---|---|
| | | Deficiency letter to plaintiff (redactions removed)) (Rosenkilde, Kiran) (Entered: 08/15/2019) |
| 08/16/2019 | | ORDER: The motion to file under seal 48 is granted. So Ordered by Magistrate Judge Sanket J. Bulsara on 8/16/2019. (Murphy, Colleen) (Entered: 08/16/2019) |
| 08/16/2019 | 49 | MOTION to Compel *Plaintiff's Global 160.50 release and responses to interrogatories pertaining to plaintiff's prior criminal history* by Michael Gildea, Detective Jaeger, The City of New York. (Attachments: # 1 Exhibit Global 160.50 release, # 2 Exhibit Plaintiff's limited 160.50 releases, # 3 Exhibit Plaintiff's first response to defendants' discovery demands, # 4 Exhibit Defendants' deficiency letter to plaintiff) (Rosenkilde, Kiran) (Entered: 08/16/2019) |
| 08/20/2019 | 50 | Letter by Rashaun Ferguson (Lichtmacher, Fred) (Entered: 08/20/2019) |
| 08/20/2019 | 51 | Letter *responding to the Court's August 13, 2019 Order* by Michael Gildea, Detective Jaeger, The City of New York (Attachments: # 1 Exhibit Transcript of relevant portions of plaintiff's deposition, # 2 Exhibit "Crimes Committed by Children 7-19" - guide by NYCourts.gov) (Rosenkilde, Kiran) (Entered: 08/20/2019) |
| 08/21/2019 | | ORDER: The deadline for the submission of additional materials pertaining to the motion to compel 45 is hereby extended to **9/4/2019**. So Ordered by Magistrate Judge Sanket J. Bulsara on 8/21/2019. (Murphy, Colleen) (Entered: 08/21/2019) |
| 08/23/2019 | 52 | Joint MOTION for Extension of Time to File *additional documents pertaining to defendants' motion to compel plaintiff's global CPL 160.50 release* by Michael Gildea, Detective Jaeger, The City of New York. (Rosenkilde, Kiran) (Entered: 08/23/2019) |
| 08/25/2019 | | ORDER: The motion for extension of time 52 is granted. The deadline for the submission of additional materials pertaining to the motion to compel 45 is hereby extended to **9/20/2019**. So Ordered by Magistrate Judge Sanket J. Bulsara on 8/25/2019. (Murphy, Colleen) (Entered: 08/25/2019) |
| 09/20/2019 | 53 | Letter *responding to the Court's August 13, 2019 and August 24, 2019 Orders* by Michael Gildea, Detective Jaeger, The City of New York (Rosenkilde, Kiran) (Entered: 09/20/2019) |
| 09/21/2019 | 54 | Letter by Rashaun Ferguson (Lichtmacher, Fred) (Entered: 09/21/2019) |
| 09/23/2019 | | ORDER: The parties are directed to meet and confer to determine how best to request a copy of the plaintiff's underlying criminal records for in camera review of such records and for the Court to receive an unredacted copy of such records, which the Court would file under seal. The Court is unable, given the parties' most recent letter filings, to resolve the pending motion to compel, and will therefore so-order a subpoena directed to relevant Court division or office of New York State to obtain such records for its review, should the parties believe that is the appropriate agreed-upon course. Any such request for a subpoena and a proposed subpoena shall be filed by **9/30/2019**. The Court denies without prejudice to renewal Plaintiff's request to have Detective Gildea provide information about these arrests and Defendant's criminal history, in light of the need to have the criminal dispositions as determined by a court, to decide the pending motion to compel. So Ordered by Magistrate Judge Sanket J. Bulsara on 9/23/2019. (Guo, Alicia) (Entered: 09/23/2019) |
| 09/30/2019 | 55 | Letter *submitted jointly by the parties in response to the Court's September 23, 2019 Order* by Michael Gildea, Detective Jaeger, The City of New York, Proposed Pretrial Order *(Subpoena for Plaintiff's Criminal History Record Information Report)* by Michael Gildea, Detective Jaeger, The City of New York (Attachments: # 1 Proposed Order |

| | | |
|---|---|---|
| | | Proposed subpoena for Plaintiff's Criminal History Record Information Report (personal identifying information redacted)) (Rosenkilde, Kiran) (Entered: 09/30/2019) |
| 09/30/2019 | 56 | Proposed Pretrial Order *(Under Seal) - Subpoena for Plaintiff's Criminal History Record Information Report - No Redactions to identifying information* by Michael Gildea, Detective Jaeger, The City of New York (Rosenkilde, Kiran) (Entered: 09/30/2019) |
| 10/03/2019 | 57 | ORDER: The parties have provided a Rule 45 subpoena that contemplates the Court issuing a subpoena for Mr. Ferguson's records and then having the document delivered to the Court. The parties should proceed in a somewhat different manner. One or both of the parties should issue the subpoena, ask the Court to "So Order it," and have delivery of the documents to the Court. This process is necessary so that in the event that a response is not provided, the parties can move for compliance. In addition, the parties should use the attached Rule 45 form, not the form that they have used. So Ordered by Magistrate Judge Sanket J. Bulsara on 10/3/2019. (Guo, Alicia) (Entered: 10/03/2019) |
| 10/18/2019 | 58 | Letter *Joint letter enclosing proposed subpoena to be "So-Ordered" in accordance with the Court's Oct. 3, 2019 Order* by Michael Gildea, Detective Jaeger, The City of New York, Proposed Pretrial Order *(subpoena for plaintiff's full, unsuppressed Criminal History Record Information Report)* by Michael Gildea, Detective Jaeger, The City of New York (Attachments: # 1 Proposed Order Exhibit - Proposed subpoena to be so-ordered (redacted for filing--an unredacted copy will be filed under seal)) (Rosenkilde, Kiran) (Entered: 10/18/2019) |
| 10/21/2019 | 60 | ORDER: The Court has signed the attached subpoena. An unredacted version should be picked up by a representative of defendants from the Court's chambers and then served on the appropriate state agency. The representative may contact chambers at (718)-613-2550 to arrange a time to pick up the subpoena. So Ordered by Magistrate Judge Sanket J. Bulsara on 10/21/2019. (Guo, Alicia). (Entered: 10/21/2019) |
| 12/20/2019 | | ORDER: The parties are directed to provide the Court with the status of the Court-ordered subpoena for Plaintiff's criminal history record by **1/08/2020**. So Ordered by Magistrate Judge Sanket J. Bulsara on 12/20/2019. (Guo, Alicia) (Entered: 12/20/2019) |
| 01/07/2020 | 61 | Letter *In response to the December 20, 2019 Order of the Court concerning the status of the Court-ordered subpoena for Plaintiff's criminal history record* by Michael Gildea, Detective Jaeger, The City of New York (Rosenkilde, Kiran) (Entered: 01/07/2020) |
| 01/08/2020 | | ORDER: The Court has not received any response to the subpoena and the parties are directed to follow up with the New York State Division of Criminal Justice. So Ordered by Magistrate Judge Sanket J. Bulsara on 1/8/2020. (Guo, Alicia) (Entered: 01/08/2020) |
| 01/15/2020 | 62 | Letter *concerning follow-up with the New York State Division of Criminal Justice in accordance with the Court's January 8, 2020 Order* by Michael Gildea, Detective Jaeger, The City of New York (Rosenkilde, Kiran) (Entered: 01/15/2020) |
| 01/17/2020 | | ORDER: The Court has located the Court-ordered subpoena and no further follow-up is needed from the parties. So Ordered by Magistrate Judge Sanket J. Bulsara on 1/17/2020. (Guo, Alicia) (Entered: 01/17/2020) |
| 02/18/2020 | | SCHEDULING ORDER: An in person Status Conference will be held on **3/9/2020 at 2:00 PM** in Courtroom 324N before Magistrate Judge Sanket J. Bulsara. So Ordered by Magistrate Judge Sanket J. Bulsara on 2/18/2020. (Guo, Alicia) (Entered: 02/18/2020) |
| 02/20/2020 | 63 | Proposed Scheduling Order by Orris Wheeling (Morris, Douglas) (Modified on 2/24/2020 to reflect correct filing) (Guo, Alicia). (Entered: 02/20/2020) |
| 02/21/2020 | 64 | TRANSCRIPT of Proceedings held on April 25, 2019, before Judge Bulsara. Court Reporter/Transcriber Fiore Reporting and Transcription Service, Inc., Telephone number |

| | | |
|---|---|---|
| | | 203-929-9992. Email address: cmfiore@sbcglobal.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 3/13/2020. Redacted Transcript Deadline set for 3/23/2020. Release of Transcript Restriction set for 5/21/2020. (Hong, Loan) (Entered: 02/21/2020) |
| 02/24/2020 | 65 | ORDER: For the reasons stated in the attached order, the motion to compel is denied. Wheeling is directed to answer only those questions that he agreed to answer as reflected in the parties' correspondence submitted prior to July 2019. This motion does not address the admissibility of any statements by Wheeling to an investigator or any inferences that may be drawn on the basis of the invocation of the privilege. This resolves Docket Nos. 43 and 47 . So Ordered by Magistrate Judge Sanket J. Bulsara on 2/24/2020. (Guo, Alicia) (Entered: 02/24/2020) |
| 02/24/2020 | 66 | ORDER: For the reasons stated in the attached order, the Motions to Compel 45 and 49 are denied. The parties may call the Court at 718-613-2550 to schedule a time to receive copies of the responses the Court received to the subpoena. Should those documents be used in connection with any motion or other practice, they should be filed under seal in the first instance. This resolves Docket Nos. 45 and 49 . So Ordered by Magistrate Judge Sanket J. Bulsara on 2/24/2020. (Guo, Alicia) (Entered: 02/24/2020) |
| 02/24/2020 | | ORDER: The Motion to Adjourn Conference 63 is denied. In light of the order 65 , counsel for Orris Wheeling does not need to attend the Status Conference scheduled for 3/9/2020. The Conference shall proceed as scheduled. So Ordered by Magistrate Judge Sanket J. Bulsara on 2/24/2020. (Guo, Alicia) (Entered: 02/24/2020) |
| 03/09/2020 | 67 | First MOTION to Adjourn Conference by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 03/09/2020) |
| 03/09/2020 | | ORDER: The Motion to Adjourn Conference 67 is granted. The Status Conference scheduled for 3/9/2020 is hereby adjourned to **4/7/2020 at 10:00 AM** in Courtroom 324N before Magistrate Judge Sanket J. Bulsara. So Ordered by Magistrate Judge Sanket J. Bulsara on 3/9/2020. (Guo, Alicia) (Entered: 03/09/2020) |
| 04/02/2020 | | ORDER: The Status Conference scheduled for **4/7/2020 at 10:00 AM** will now proceed by telephone. The parties are directed to dial the toll-free number: **877-336-1274.** The access code is **6534420.** The parties shall dial in five (5) minutes before the 10:00 AM Conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 4/2/2020. (Guo, Alicia) (Entered: 04/02/2020) |
| 04/07/2020 | | Minute Entry and Order for proceedings held before Magistrate Judge Sanket J. Bulsara: A Status Conference was held on 4/7/2020. Counsel for both sides appeared by telephone. The deadline for close of all discovery is extended to **9/30/2020.** Any motion for a Court-ordered subpoena must be filed by **4/28/2020.** Any response must be filed by **5/19/2020.** The Court will hold an in-person Status Conference on **8/10/2020 at 10:00 AM** in Courtroom 324N before Magistrate Judge Sanket J. Bulsara. So Ordered by Magistrate Judge Sanket J. Bulsara on 4/7/2020. (FTR Log #9:59-10:30.) (Guo, Alicia) (Entered: 04/07/2020) |
| 04/28/2020 | 68 | MOTION for Discovery *seeking Court-ordered subpoenas, in accordance with the Court's April 7, 2020 Order* by Michael Gildea, Detective Jaeger, The City of New York. (Attachments: # 1 Exhibit Complaint, # 2 Exhibit Relevant documents from the DA file pertaining to the 2013 double shooting, # 3 Exhibit Excerpts from plaintiff's deposition) (Rosenkilde, Kiran) (Entered: 04/28/2020) |

| | | |
|---|---|---|
| 04/28/2020 | 69 | MOTION for Discovery *re: issuance of Court-ordered subpoena (this filing contains the letter motion filed at ECF No. 68 with redactions)* by Michael Gildea, Detective Jaeger, The City of New York. (Rosenkilde, Kiran) (Entered: 04/28/2020) |
| 06/15/2020 | | ORDER: Plaintiff is given until **6/22/2020** to respond to Defendants' motion filed on 4/28/2020. Failure to file a response will result in the Court considering the motion unopposed. So Ordered by Magistrate Judge Sanket J. Bulsara on 6/15/2020. (Guo, Alicia) (Entered: 06/15/2020) |
| 07/10/2020 | | SCHEDULING ORDER: A Status Conference will be held on **7/16/2020 at 10:00 AM** before Magistrate Judge Sanket J. Bulsara. The parties are directed to dial the toll-free number: 877-336-1274. The access code is: 6534420. The parties shall dial in five (5) minutes before the 10:00 AM Conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 7/10/2020. (Guo, Alicia) (Entered: 07/10/2020) |
| 07/16/2020 | | Minute Entry and Order for proceedings held before Magistrate Judge Sanket J. Bulsara: A Status Conference was held on 7/16/2020. Counsel for both sides were present via telephone. The Status Conference scheduled for 8/10/2020 is hereby adjourned to **9/23/2020 at 10:00 AM** before Magistrate Judge Sanket J. Bulsara. For the reasons stated on the record, the motion for discovery 68 69 is denied. The close of discovery remains 9/30/2020. So Ordered by Magistrate Judge Sanket J. Bulsara on 7/16/2020. (FTR Log #10:03-11:03.) (Guo, Alicia) (Entered: 07/16/2020) |
| 08/24/2020 | 70 | TRANSCRIPT of Proceedings held on July 16, 2020, before Judge Bulsara. Court Reporter/Transcriber Transcriptions Plus II, Inc.. Email address: laferrara44@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/14/2020. Redacted Transcript Deadline set for 9/24/2020. Release of Transcript Restriction set for 11/23/2020. (Hong, Loan) (Entered: 08/24/2020) |
| 09/17/2020 | | ORDER: The status conference, scheduled for 9/23/2020 at 10 AM, shall proceed by telephone. The parties shall dial the toll-free number: 877-336-1274. The access code is: 6534420. The parties shall dial in five (5) minutes before the conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 9/17/2020. (Altreuter, Sylvia) (Entered: 09/17/2020) |
| 09/23/2020 | 71 | MOTION to Substitute Attorney by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 09/23/2020) |
| 09/23/2020 | 72 | NOTICE of Appearance by Geoffrey M. Stannard on behalf of Michael Gildea, Detective Jaeger, The City of New York (notification declined or already on case) (Stannard, Geoffrey) (Entered: 09/23/2020) |
| 09/23/2020 | | Minute Entry and Order: A status conference was held by phone on 9/23/2020 before Magistrate Judge Sanket J. Bulsara. Counsel for all parties were present. As stated on the record, the close of fact discovery is extended to **10/15/2020**. Plaintiff shall serve initial expert disclosures by **10/15/2020** and expert reports by **10/30/2020**. Defendants shall serve rebuttal expert disclosures by **11/16/2020** and any rebuttal expert reports by **12/4/2020**. A status conference will be held by telephone on **12/16/2020** at **10 AM** before Magistrate Judge Sanket J. Bulsara. The parties shall dial the toll-free number: 877-336-1274. The access code is: 6534420. The parties shall dial in five (5) minutes before the conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 9/23/2020. (AT&T Log #10:00 - 10:09 AM.) (Altreuter, Sylvia) (Entered: 09/23/2020) |

| | | |
|---|---|---|
| 09/24/2020 | | ORDER: The Motion to substitute attorney 71 is granted. Attorney Kiran Hans Rosenkilde is hereby removed from the docket. So Ordered by Magistrate Judge Sanket J. Bulsara on 9/24/2020. (Altreuter, Sylvia) (Entered: 09/24/2020) |
| 10/11/2020 | 73 | MOTION for Extension of Time to Complete Discovery *Only for the limited purpose of finishing the deposition of Mr. Wheeling with no effect on the remaining schedule* by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 10/11/2020) |
| 10/13/2020 | | ORDER: The Motion for extension of time to complete discovery 73 is granted. The close of fact discovery is extended to **11/5/2020**. So Ordered by Magistrate Judge Sanket J. Bulsara on 10/13/2020. (Altreuter, Sylvia) (Entered: 10/13/2020) |
| 12/16/2020 | | Minute Entry and Order: A telephonic status conference was held before Magistrate Judge Sanket J. Bulsara on 12/16/2020. Counsel for all parties were present. As stated on the record, the parties shall take the first step in dispositive motion practice by **2/5/2021**. So Ordered by Magistrate Judge Sanket J. Bulsara on 12/16/2020. (AT&T Log #10:00 - 10:07 AM.) (Altreuter, Sylvia) (Entered: 12/16/2020) |
| 02/14/2021 | 74 | Consent MOTION for Extension of Time to File *first step in dispositive motion practice* by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 02/14/2021) |
| 02/14/2021 | 75 | Letter MOTION for pre motion conference *regarding defendants' anticipated motion for summary judgment* by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 02/14/2021) |
| 02/16/2021 | | ORDER: The motion for extension of time to file 74 is granted. The deadline for the parties to take the first step in dispositive motion practice is extended *nunc pro tunc* to 2/14/2021. So Ordered by Magistrate Judge Sanket J. Bulsara on 2/16/2021. (Altreuter, Sylvia) (Entered: 02/16/2021) |
| 02/20/2021 | 76 | Letter *Opposition to Request for a Pre-motion conference* by Rashaun Ferguson (Lichtmacher, Fred) (Entered: 02/20/2021) |
| 02/26/2021 | | ORDER: A status conference will be held on **3/3/2021** at **2:00 PM** before Magistrate Judge Sanket J. Bulsara to discuss the discovery raised in Plaintiff's letter 76 . The parties are directed to dial the toll-free number: 877-336-1274. The access code is 6534420. The parties shall dial in five (5) minutes before the conference. So Ordered by Magistrate Judge Sanket J. Bulsara on 2/26/2021. (Altreuter, Sylvia) (Entered: 02/26/2021) |
| 02/26/2021 | 77 | NOTICE of Appearance by Anuradha Lazarre on behalf of All Plaintiffs (aty to be noticed) (Lazarre, Anuradha) (Entered: 02/26/2021) |
| 03/03/2021 | | ORDER denying 75 Motion for Pre Motion Conference. Upon review of the parties' submissions at 75 and 76 , the Court concludes that a pre-motion conference is unnecessary. Defendants may proceed with their motion for summary judgment. The parties are directed to file a joint proposed briefing schedule no later than March 17, 2021. Ordered by Judge Eric N. Vitaliano on 3/3/2021. (Dudding, Sasha) (Entered: 03/03/2021) |
| 03/03/2021 | | Minute Entry and Order: A telephonic status conference was held on for 3/3/2021 before Magistrate Judge Sanket J. Bulsara. Counsel for Plaintiff and Defendants were present. As stated on the record, Plaintiff's request to subpoena the notes in Principal Logan-Smith's desk is granted, but the request to subpoena any log books is denied. The request to subpoena an unredacted copy of the Preliminary Investigation Report will be addressed after dispositive motion practice. All deadlines will remain in place. So Ordered by Magistrate Judge Sanket J. Bulsara on 3/3/2021. (AT&T #1:59-2:22) (Farrell, Gillian) (Entered: 03/03/2021) |

| | | |
|---|---|---|
| 03/17/2021 | [78](#) | Letter *proposing a briefing schedule for defendants' anticipated motion for summary judgment* by Michael Gildea, Detective Jaeger, The City of New York (Stannard, Geoffrey) (Entered: 03/17/2021) |
| 03/18/2021 | | ORDER. The parties' proposed briefing schedule at [78](#) is adopted. Defendants shall serve their motion for summary judgment by April 16, 2021. Plaintiff's opposition shall be served by May 17, 2021. Defendants' reply shall be served by June 8, 2021. The fully-briefed motion shall be filed on ECF in accordance with Individual Rule III.D (the "Bundling Rule") by June 8, 2021. Ordered by Judge Eric N. Vitaliano on 3/18/2021. (Dudding, Sasha) (Entered: 03/18/2021) |
| 03/24/2021 | [79](#) | TRANSCRIPT of Proceedings held on March 3, 2021, before Judge Bulsara. Court Reporter/Transcriber ARIA SERVICES, INC., Telephone number 845-260-1377. Email address: aria@leinen.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 4/14/2021. Redacted Transcript Deadline set for 4/26/2021. Release of Transcript Restriction set for 6/22/2021. (Hong, Loan) (Entered: 03/24/2021) |
| 06/08/2021 | [80](#) | Consent MOTION for Extension of Time to File *and Serve Defendants' Reply in Support of their Motion for Summary Judgment* by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/08/2021) |
| 06/09/2021 | | ORDER granting [80](#) Motion for Extension of Time to File. Defendants' reply shall be served by June 22, 2021. The fully-briefed motion shall be filed on ECF in accordance with Individual Rule III.D (the "Bundling Rule") by June 22, 2021. Ordered by Judge Eric N. Vitaliano on 6/9/2021. (Dudding, Sasha) (Entered: 06/09/2021) |
| 06/22/2021 | [81](#) | Notice of MOTION for Summary Judgment by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | [82](#) | DECLARATION re [81](#) Notice of MOTION for Summary Judgment by Michael Gildea, Detective Jaeger, The City of New York (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D, # [5](#) Exhibit E, # [6](#) Exhibit F, # [7](#) Exhibit G, # [8](#) Exhibit H, # [9](#) Exhibit I, # [10](#) Exhibit J, # [11](#) Exhibit K, # [12](#) Exhibit L, # [13](#) Exhibit M, # [14](#) Exhibit N, # [15](#) Exhibit O, # [16](#) Exhibit P, # [17](#) Exhibit Q, # [18](#) Exhibit R, # [19](#) Exhibit S) (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | [83](#) | RULE 56.1 STATEMENT re [81](#) Notice of MOTION for Summary Judgment filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | [84](#) | MEMORANDUM in Support re [81](#) Notice of MOTION for Summary Judgment filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | [85](#) | MEMORANDUM in Opposition re [81](#) Notice of MOTION for Summary Judgment filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | [86](#) | AFFIDAVIT/DECLARATION in Opposition re [81](#) Notice of MOTION for Summary Judgment *(Declaration of Fred Lichtmacher)* filed by Michael Gildea, Detective Jaeger, The City of New York. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2, # [3](#) Exhibit 3, # [4](#) Exhibit 4, # [5](#) Exhibit 5, # [6](#) Exhibit 6, # [7](#) Exhibit 7, # [8](#) Exhibit 8, # [9](#) Exhibit 9, # [10](#) Exhibit 10, # [11](#) Exhibit 11, # [12](#) Exhibit 12, # [13](#) Exhibit 13, # [14](#) Exhibit 14, # [15](#) Exhibit 15, # [16](#) Exhibit 16, # [17](#) Exhibit 17, # [18](#) Exhibit 18, # [19](#) Exhibit 19, # [20](#) |

| | | |
|---|---|---|
| | | Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27) (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | 87 | AFFIDAVIT/DECLARATION in Opposition re 81 Notice of MOTION for Summary Judgment *(Declaration of Madeline Arnoldy)* filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | 88 | AFFIDAVIT/DECLARATION in Opposition re 81 Notice of MOTION for Summary Judgment *(Declaration of Elpidio DeLeon)* filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | 89 | RULE 56.1 STATEMENT re 85 Memorandum in Opposition *(Plaintiff's Rule 56.1 Response and Counterstatement)* filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | 90 | REPLY in Support re 81 Notice of MOTION for Summary Judgment *(Defendants' Reply Memorandum of Law)* filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | 91 | DECLARATION re 90 Reply in Support by Michael Gildea, Detective Jaeger, The City of New York (Attachments: # 1 Exhibit T, # 2 Exhibit U) (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/22/2021 | 92 | RULE 56.1 STATEMENT re 90 Reply in Support filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/22/2021) |
| 06/23/2021 | 93 | First MOTION for Discovery *Post filing of Summary Judgment* by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 06/23/2021) |
| 06/28/2021 | 94 | RESPONSE in Opposition re 93 First MOTION for Discovery *Post filing of Summary Judgment* filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 06/28/2021) |
| 06/30/2021 | 95 | Letter by Rashaun Ferguson (Lichtmacher, Fred) (Entered: 06/30/2021) |
| 07/01/2021 | | ORDER: Defendants may file a surreply in Plaintiff's motion to compel 93 by **7/9/2021**. Defendants' surreply is limited to three pages. No further briefing from either side will be permitted. So Ordered by Magistrate Judge Sanket J. Bulsara on 7/1/2021. (Altreuter, Sylvia) (Entered: 07/01/2021) |
| 07/09/2021 | 96 | REPLY in Opposition re 93 First MOTION for Discovery *Post filing of Summary Judgment (surreply)* filed by Michael Gildea, Detective Jaeger, The City of New York. (Stannard, Geoffrey) (Entered: 07/09/2021) |
| 09/10/2021 | 97 | NOTICE of Appearance by Mark David Zuckerman on behalf of Michael Gildea, Detective Jaeger, The City of New York (aty to be noticed) (Zuckerman, Mark) (Entered: 09/10/2021) |
| 09/23/2021 | 98 | ORDER: For the reasons stated in the attached order, the motion for discovery 93 is hereby granted. Defendants are directed to request and produce the logbook records for Detective Mazzei for the period from May 3, 2013 to May 10, 2013. Plaintiff will be permitted to take a one-hour deposition of Detective Mazzei following the disclosure of the records. No additional deposition time will be granted, and no additional discovery about the notes or logbook will be permitted. So Ordered by Magistrate Judge Sanket J. Bulsara on 9/23/2021. (Bruckner, Ian) (Entered: 09/23/2021) |
| 10/04/2021 | 99 | First MOTION to Withdraw as Attorney by Rashaun Ferguson. (Lazarre, Anuradha) (Entered: 10/04/2021) |

| 10/05/2021 | | ORDER: The motion to withdraw 99 is hereby granted. Attorney Anuradha Lazarre is removed from the case. So Ordered by Magistrate Judge Sanket J. Bulsara on 10/5/2021. (Bruckner, Ian) (Entered: 10/05/2021) |
|---|---|---|
| 10/23/2021 | 100 | Second MOTION for Discovery by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 10/23/2021) |
| 10/25/2021 | 101 | RESPONSE to Motion re 100 Second MOTION for Discovery filed by Michael Gildea, Detective Jaeger, The City of New York. (Zuckerman, Mark) (Entered: 10/25/2021) |
| 11/15/2021 | | ORDER: Plaintiff has filed a letter 100 following the Court's order directing the City of New York to produce log-book records of Detective Joseph Mazzei. Plaintiff's letter is unclear; the City's response even less so. A statement such as the following--"Further, upon information and belief, Mr. Lichtmacher already conducted a search for Gary Mazzei's address, and should the Court now order Gary Mazzei's deposition and for him to produce the requested documents, if he has any, it does not appear that it is necessary at this time for this Office to subpoena NYC Pensions to obtain it"--is as pellucid as mud. In any event, as far as the Court can discern, the City claims that there is one Detective Mazzei who has been working in Connecticut for the better part of a decade. And another Detective Mazzei is retired. But the City does not say whether this Detective--a Gary Mazzei--was working during the events in question or was retired. The City is directed to provide that information to Plaintiff's counsel promptly. Furthermore, the Court expects the City and Plaintiff's counsel to meet and confer about whether in searching for the original Detective Mazzei, various variations of spelling were used in an attempt to locate the correct officer. So Ordered by Magistrate Judge Sanket J. Bulsara on 11/15/2021. (Bruckner, Ian) (Entered: 11/15/2021) |
| 01/10/2022 | 102 | MOTION for Discovery by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 01/10/2022) |
| 01/12/2022 | 103 | RESPONSE in Opposition re 102 MOTION for Discovery filed by Michael Gildea, Detective Jaeger, The City of New York. (Zuckerman, Mark) (Entered: 01/12/2022) |
| 01/18/2022 | | ORDER: Plaintiff has filed a motion for discovery 102 following the deposition of Detective Mazzei, seeking "fly pages" of a memo book. Defendants indicate that they have produced the requested fly pages, and further that Detective Mazzei has conducted an additional search for any notes, and found none. Any further inquiries from Detective Mazzei are, therefore, unwarranted by the deposition transcript provided by Plaintiff. There remains nothing to compel, and discovery is closed. The motion is therefore denied as moot. So Ordered by Magistrate Judge Sanket J. Bulsara on 1/18/2022. (Bruckner, Ian) (Entered: 01/18/2022) |
| 01/30/2022 | 104 | MOTION for Discovery *rule 72 Objection* by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 01/30/2022) |
| 01/31/2022 | 105 | Letter *to Judge Vitaliano regarding response to plaintiff's Rule 72(a) objections* by Michael Gildea, Detective Jaeger, The City of New York (Zuckerman, Mark) (Entered: 01/31/2022) |
| 02/09/2022 | | ORDER. Defendant is invited to respond to the objection filed at 104 and is directed to file any response no later than February 23, 2022. Ordered by Judge Eric N. Vitaliano on 2/9/2022. (Fumelli, Alexander) (Entered: 02/09/2022) |
| 02/18/2022 | 106 | RESPONSE in Opposition re 104 MOTION for Discovery *rule 72 Objection* filed by Michael Gildea, Detective Jaeger, The City of New York. (Zuckerman, Mark) (Entered: 02/18/2022) |

| 03/22/2023 | [107](#) | MEMORANDUM and ORDER denying: [104](#) MOTION for Discovery rule 72 Objection. Plaintiff's objection is overruled and the Order is affirmed. SO Ordered by Judge Eric N. Vitaliano on 3/4/2023. (JT) (Entered: 03/22/2023) |
|---|---|---|
| 08/30/2023 | [108](#) | MEMORANDUM and ORDER granting [81](#) Motion for Summary Judgment. The Clerk of Court is directed to enter judgment accordingly and to close this case. SO Ordered by Judge Eric N. Vitaliano on 8/29/2023. (JT) (Entered: 08/30/2023) |
| 08/31/2023 | [109](#) | CLERK'S JUDGMENT: ORDERED and ADJUDGED that defendants' motion for summary judgment is granted in full.Ordered by Jalitza Poveda, Deputy Clerk on behalf of Brenna B. Mahoney, Clerk of Court on 8/31/2023. (JT) (Entered: 08/31/2023) |
| 09/21/2023 | [110](#) | NOTICE OF APPEAL as to [108](#) Order on Motion for Summary Judgment by Rashaun Ferguson. Filing fee $ 505, receipt number ANYEDC-17106068. Appeal Record due by 1/23/2023. (Lichtmacher, Fred) (Entered: 09/21/2023) |
| 09/21/2023 | | Electronic Index to Record on Appeal sent to US Court of Appeals. [110](#) Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 09/21/2023) |
| 09/22/2023 | [111](#) | First MOTION for Refund of Fees Paid Electronically by Rashaun Ferguson. (Lichtmacher, Fred) (Entered: 09/22/2023) |
| 12/15/2023 | [112](#) | Letter *Request to Supplement Summary Judgement Record* by Rashaun Ferguson (Attachments: # [1](#) Exhibit Exh. 6 Vargus Dep SUPPLEMENTED and COMPLETE, # [2](#) Exhibit Exh.10 Gildea Dep SUPPLEMENTED and COMPLETE, # [3](#) Exhibit Exh. 12 Trial Transcript Excerpts SUPPLEMENTAL and COMPLETE, # [4](#) Exhibit Exh. 18 McCummings Dep SUPPLEMENTAL and COMPLETE) (Lichtmacher, Fred) (Entered: 12/15/2023) |
| 12/18/2023 | | ORDER. In light of Plaintiff's letter motion [112](#) to Supplement the Summary Judgment Record, Defendants are directed to respond by filing a letter on the docket, not to exceed three pages, by 1/8/2024. Ordered by Judge Eric N. Vitaliano on 12/18/2023. (AI) (Entered: 12/18/2023) |
| 12/28/2023 | [113](#) | Letter *in response and opposition to plaintiff's request at Docket 112 to supplement record on appeal* by Michael Gildea, Detective Jaeger, The City of New York (Zuckerman, Mark) (Entered: 12/28/2023) |
| 01/02/2024 | [114](#) | APPROVAL re [111](#) Motion for Refund of Fees Paid Electronically. Signed Brenna B. Mahoney, Clerk of Court by Tiffeny Lee-Harris, Deputy Clerk on 1/2/2024. (fwd'd for processing) (TLH) (Entered: 01/02/2024) |
| 01/02/2024 | [115](#) | Letter by Rashaun Ferguson (Lichtmacher, Fred) (Entered: 01/02/2024) |
| 09/20/2024 | | ORDER On August 30, 2023, the Court filed a Memorandum & Order granting defendants' motion for summary judgment. *See* Dkt. 108. Plaintiff filed his notice of appeal on September 21, 2023. *See* Dkt. 110. On December 15, 2023, plaintiff moved to supplement the record on appeal by adding pages not presented to or considered by the Court in its ruling that were omitted from documents that are part of the record. *See* Dkt. 112. Plaintiff fails to make any showing, as required by Federal Rule of Appellate Procedure 10(e)(2)(B), that the omitted pages that comprise his record supplementation are material or that there are extraordinary circumstances that would permit inclusion in the record of documents that were not considered by the District Court in making its ruling. *See Natofsky v. City of New York* , 14-cv-5498, 2018 WL 741678, at *1 (S.D.N.Y. Jan. 23, 2018) ("the Second Circuit does not consider evidence that was not part of the record below absent extraordinary circumstances."); *Armfield v. Jacobson*, No. 95-cv- |

4820, 1998 WL 199852, at *2 (E.D.N.Y. Mar. 27, 1998). Accordingly, plaintiff's motion to supplement the record on appeal is denied. Ordered by Judge Eric N. Vitaliano on 9/20/2024. (DW) (Entered: 09/20/2024)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/30/2024 13:54:15 | | | |
| **PACER Login:** | TBUSteve15 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-06871-ENV-SJB |
| **Billable Pages:** | 17 | **Cost:** | 1.70 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

RASHAUN FERGUSON,

                                        Plaintiff,        **NOTICE OF MOTION**

            -against-
                                                 17-CV-6871 (ENV)(SJB)

THE CITY OF NEW YORK, DETECTIVE JAEGER,
DETECTIVE MICHAEL GILDEA SHIELD # 464 and
UNIDENTIFIED MEMBERS OF THE NYPD all sued
herein in their individual capacities,

                                   Defendants.

------------------------------------------------------------------------x

           **PLEASE TAKE NOTICE** that upon the Declaration of Geoffrey M. Stannard, dated April 16, 2021, and the exhibits annexed thereto, Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, dated April 16, 2021, the accompanying Memorandum of Law, dated April 16, 2021, and all pleadings and proceedings previously had herein, defendants City of New York, Detective Michael Gildea, and Detective Quinn Jaeger will move this Court before the Honorable Eric N. Vitaliano, United States District Judge, at the United States District Court for the Eastern District of New York, located at 225 Cadman Plaza East, Brooklyn, New York, at a date and time to be determined by the Court, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for such other and further relief as the Court deems just, proper, and equitable.

**PLEASE FURTHER TAKE NOTICE** that pursuant to the Court Order dated March 18, 2021, plaintiff's opposition shall be served by May 17, 2021, and defendants' reply shall be served by June 8, 2021.

Dated:      New York, New York
            April 16, 2021

JAMES E. JOHNSON
Corporation Counsel of the
   City of New York
*Attorney for Defendants City of New York,*
   *Gildea, and Jaeger*
100 Church Street, Third Floor
New York, New York 10007
(212) 356-2409

By:   *GStannard*
         Geoffrey M. Stannard
         *Assistant Corporation Counsel*
         Special Federal Litigation Division

To:   **BY EMAIL**
     Fred Lichtmacher, Esq., *Attorney for Plaintiff*

2

JA-021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

RASHAUN FERGUSON,

                         Plaintiff,

                -against-

THE CITY OF NEW YORK, DETECTIVE JAEGER,
DETECTIVE MICHAEL GILDEA SHIELD # 464 and
UNIDENTIFIED MEMBERS OF THE NYPD all sued
herein in their individual capacities,

                         Defendants.

----------------------------------------------------------------------- x

**DECLARATION OF
GEOFFREY M. STANNARD**

17-CV-6871 (ENV)(SJB)

      **Geoffrey M. Stannard**, an attorney duly admitted to practice in the Eastern District of New York, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.  I am an Assistant Corporation Counsel in the office of James E. Johnson, Corporation Counsel of the City of New York, and the attorney for defendants City of New York, Detective Michael Gildea, and Detective Quinn Jaeger ("defendants"). As such, I am familiar with the facts and circumstances stated herein based on personal knowledge, the books and records of the City of New York, and conversations with its agents and employees. I make this declaration in support of defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

      2.  **Annexed hereto as Exhibit "A"** are relevant portions of the trial testimony of Reginald Evans, in which Evans identified plaintiff as the perpetrator of the shooting. Evans also testified that he identified plaintiff as the perpetrator in a lineup on January 27, 2014, and that he was not persuaded to identify plaintiff.

3. **Annexed hereto as Exhibit "B"** are relevant portions of the DD5 File memorializing actions taken during the investigation.

4. **Annexed hereto as Exhibit "C"** are relevant portions of Detective Jaeger's deposition transcript. Detective Jaeger testified about responding to the scene of the shooting and testified that that he did not view footage from Goldie Maple Academy's surveillance cameras.

5. **Annexed hereto as Exhibit "D"** are relevant portions of Police Officer Alfonso Vargas's deposition transcript. Officer Vargas testified that he took a statement from Orris Wheeling, who stated that the perpetrator fled the scene in a dark gray Ford Escape.

6. **Annexed hereto as Exhibit "E"** is a copy of Sprint Report # F14151, which shows that an officer made a report of a dark gray Ford Escape heading westbound at 8:18 p.m. on May 3, 2013.

7. **Annexed hereto as Exhibit "F"** are relevant portions of Detective Gildea's testimony at a pre-trial *Wade* hearing, at which Detective Gildea testified about the investigation into the shooting, including Evans's photo array identification of plaintiff.

8. **Annexed hereto as Exhibit "G"** are relevant portions of Detective Gildea's deposition transcript. Detective Gildea testified about the photo array and lineup identification procedures conducted with Orris Wheeling and Reginald Evans.

9. **Annexed hereto as Exhibit "H"** are relevant portions of plaintiff Rashaun Ferguson's deposition transcript. Plaintiff testified that in May 2013, his mother owned a gray Ford Escape, the type of vehicle seen at the scene of the shooting.

10. **Annexed hereto as Exhibit "I"** is a copy of the documents related to the photo array presented to Wheeling on May 4, 2013. The documents show that Wheeling identified plaintiff as the perpetrator.

11. **Annexed hereto as Exhibit "J"** are relevant portions of the trial testimony of Angela-Logan Smith, who testified that she viewed surveillance footage at Goldie Maple Academy with two unidentified police officers.

12. **Annexed hereto as Exhibit "K"** is a copy of the documents related to the lineup presented to Wheeling on May 7, 2013. The documents show that Wheeling made references to plaintiff in the lineup but did not make an outright positive identification.

13. **Annexed hereto as Exhibit "L"** is a copy of the documents related to the photo array presented to Reginald Evans on May 9, 2013. The documents show that Evans identified plaintiff as the perpetrator of the shooting.

14. **Annexed hereto as Exhibit "M"** is a copy of the documents related to the lineup presented to Evans on January 27, 2014. The documents show that Evans positively identified plaintiff as the perpetrator.

15. **Annexed hereto as Exhibit "N"** is a copy of the Arrest Report # Q14605601-K, which shows that plaintiff was arrested on January 27, 2014.

16. **Annexed hereto as Exhibit "O"** is a copy of the Criminal Court Complaint, which shows that plaintiff was charged with Murder in the Second Degree and other charges.

17. **Annexed hereto as Exhibit "P"** is a copy of the cover page of the grand jury minutes, which shows that plaintiff's case was presented to the grand jury on November 3, 2014.

18. **Annexed hereto as Exhibit "Q"** are relevant portions of Assistant District Attorney Timothy Regan's deposition transcript. ADA Regan testified that Reginald Evans, the only eyewitness to testify before the grand jury, identified plaintiff as the perpetrator.

19. **Annexed hereto as Exhibit "R"** is a copy of Queens County Supreme Court Indictment # 2723/2014, which shows that plaintiff was indicted on November 20, 2014.

20. **Annexed hereto as Exhibit "S"** is a copy of the Certificate of Disposition, which shows that plaintiff was acquitted on October 16, 2017..

Dated:       New York, New York
                April 16, 2021

                                         JAMES E. JOHNSON
                                         Corporation Counsel of the
                                           City of New York
                                        *Attorney for Defendants City of New York,*
                                           *Gildea, and Jaeger*
                                         100 Church Street, Third Floor
                                         New York, New York 10007
                                         (212) 356-2409

                          By:    *GStannard*
                                         Geoffrey M. Stannard
                                         *Assistant Corporation Counsel*
                                         Special Federal Litigation Division

To:     **BY EMAIL**
        Fred Lichtmacher, Esq., *Attorney for Plaintiff*

- 4 -

JA-025

# EXHIBIT A

1074

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF QUEENS : CRIMINAL TERM : PART K-21
 2   ------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,
 3
                    -against-                      INDICTMENT NO:
 4                                                 2723-2014
     RASHAUN FERGUSON,
 5                                                 JURY TRIAL
                              DEFENDANT(S).
 6   ------------------------------------------X

 7                         Queens Supreme Courthouse
                           125-01 Queens Boulevard
 8                         Kew Gardens, New York 11415
                           October 3, 2017
 9
     B E F O R E:
10
               THE HONORABLE CHARLES S. LOPRESTO,
11                 J U S T I C E, and a jury

12   A P P E A R A N C E S:

13             ***** SAME AS PREVIOUSLY NOTED *****

14                              Joan Schaefer
                                Senior Court Reporter
15
                         *        *        *
16

17             THE CLERK:  Number Two on the calendar, Indictment

18   Number 2723 of 2014, Rashaun Ferguson.

19             Is your name Rashaun Ferguson?

20             THE DEFENDANT:  Yes.  Good morning.

21             THE CLERK:  Good morning.

22             Appearances.

23             MR. REGAN:  For the People, Assistant District

24   Attorney Timothy Regan.  Good morning.

25             MR. DIDIO:  And Robert Didio for the defendant.
```

jms

R. EVANS - PEOPLE - DIRECT                               1076

1          THE COURT:  The People may now proceed with their

2     next witness.

3          MR. REGAN:  People call Reginald Evans.

4          THE COURT OFFICER:  Witness entering.

5          (Whereupon, the witness enters the courtroom at

6     this time.)

7          THE COURT OFFICER:  Step on in.  Remain standing.

8     Raise your right hand.  Face the clerk of the courtroom right

9     that way.

10          THE CLERK:  Do you swear or affirm to tell the

11     truth, the whole truth and nothing but the truth so help you

12     God?

13          THE WITNESS:  Yes.

14          THE CLERK:  Okay.  Be seated.

15  R E G I N A L D   E V A N S, called by and on behalf of the

16     People, having been first duly sworn, was examined and

17     testified as follows:

18          THE COURT OFFICER:  You can have a seat.

19          People call their next witness, Reginald Evans.

20     First name, R-E-G-I-N-A-L-D.  Last name, E-V-A-N-S.

21          THE COURT:  Mr. Evans, please keep your voice up

22     nice and loud; okay?

23          THE WITNESS:  All right.

24          THE COURT:  People may inquire.

25          MR. REGAN:  Thank you, Your Honor.

                                                          jms

R. EVANS - PEOPLE - DIRECT                    1077

1   DIRECT EXAMINATION BY

2   MR. REGAN:

3        Q.    Good morning, Mr. Evans.

4        A.    Hey, good morning.

5        Q.    Mr. Evans, how old are you?

6        A.    I'm 40.

7        Q.    Are you married?

8        A.    Yes.

9        Q.    Do you have any children?

10       A.    Yes.

11       Q.    How many?

12       A.    I have six.

13       Q.    How old are they?

14       A.    Twenty-one, 17, 14, 11 -- no, not 11.  She's -- she's

15  12.  And the other one is ten.  And a two year old.

16       Q.    Do you work?

17       A.    Yes.

18       Q.    What kind of work do you do?

19       A.    Transportation.

20       Q.    How long have you been married?

21       A.    About to be 22 years now.

22       Q.    I want to direct your attention to 2013.

23       A.    Uh, huh.

24       Q.    Where were you living in 2013?

25       A.    Jamaica.

jms

JA-029

R. EVANS - PEOPLE - DIRECT                    1078

1    Q.    In Queens?

2    A.    Yes.

3    Q.    And who were you living with at that time?

4    A.    My wife and my kids.

5    Q.    Were you working at that time?

6    A.    Yeah, I own my own -- own school bus company.

7    Q.    How long did you have that company?

8    A.    About seven years.

9    Q.    I want to direct your attention further to May 3rd of

10   2013.  You remember that day?

11   A.    Yeah.

12   Q.    Yes?

13   A.    Yes.

14   Q.    You are going to have to answer with words.

15   A.    I got you.

16   Q.    What were you doing that day?  What was your plan for

17   the day?

18   A.    I had just came in -- into my mother-in-law's house and

19   my kids was there, so I was upstairs with them.  They wanted to

20   go outside.  And plus it was crowded up in there so I said I take

21   them outside for a little while.

22   Q.    Where is your mother-in-law's house?

23   A.    Edgemere, 54-30

24   Q.    54-30?

25   A.    Beach Channel Drive.

jms

JA-030

R. EVANS - PEOPLE - DIRECT                                      1079

1      Q.    In Far Rockaway?

2      A.    Yes.

3      Q.    In Queens?

4      A.    Yes.

5      Q.    How long did she live there?

6      A.    She was living there even before I moved there.  That

7  was back in '80 -- '86 -- '89, I mean.

8      Q.    Did you previously live in Edgemere?

9      A.    Yes.

10     Q.    You remember what day of the week it was?

11     A.    I believe it was a Friday.  Yeah, it was a Friday.

12     Q.    And who was at your mother-in-law's apartment?

13     A.    It was my mother-in-law, my wife, her grandparents and

14  my kids.

15     Q.    How many of your kids?

16     A.    At the time it was five of them.

17     Q.    Okay.  What happened?

18     A.    Four.  Because my son -- my son had went out with his

19  friends.

20     Q.    I'm sorry?

21     A.    My son went out with his friends.

22     Q.    So you had four children in the house?

23     A.    In the house at the time, yeah.

24     Q.    What -- what were the names of the children who were

25  there?

jms

1    A.    My daughter -- my daughter Brianna.  My other daughter

2    Arianna.  My other daughter Lavianna.  And my other daughter

3    Rihanna.

4    Q.    Now, some time before 8:00 p.m. that evening --

5    A.    Uh, huh.

6    Q.    -- were you in the apartment?

7    A.    Huh?

8    Q.    Were you inside the apartment --

9    A.    Yeah.

10   Q.    -- some time before 8:00?

11   A.    Yes.

12   Q.    What happened at around that time?

13   A.    The -- the girls, they was -- they just was running

14   around the house.  Like I said, it was crowded in there.  So I

15   said, let me take y'all outside for a while.

16   Q.    And did you do that?

17   A.    Yes.

18   Q.    Which girls went with you?

19   A.    Arianna, Rihanna and Lavianna.

20   Q.    How old were those three girls at the time?

21   A.    At the time Arianna was, what?  I think she was about

22   ten years old.  Nine or ten.  Lavianna had to be like seven or

23   eight.  And Rihanna was four years old at the time.

24   Q.    So, safe to say they were all under 13?

25   A.    Yes.

jms

JA-032

R. EVANS - PEOPLE - DIRECT                1081

1    Q.    Where were you going to go when you went outside?

2    A.    I was going -- my plan was to take them to the park,

3    across the street, Arverne Park, but when I got off the elevator

4    I seen that the front of my building was -- nobody was outside

5    and it's a little playground right there for them to play, so I

6    figure I let them play for a little while before the sun go down.

7    Q.    And did that happen?

8    A.    For a little while, yeah.

9    Q.    Could you describe the weather outside when you went

10   downstairs?

11   A.    It was nice.

12   Q.    How about the lighting conditions?

13   A.    It was still sunny outside.

14   Q.    How long were they outside playing?

15   A.    They was out there for like 15, 20 minutes.

16   Q.    Okay.  And did something happen after they were playing

17   for 15 or 20 minutes?

18   A.    Yes.

19   Q.    What happened?

20   A.    A guy walked up -- no, they was playing and me and my

21   brother -- I seen my brother.  I haven't seen him since he came

22   home.

23   Q.    What's your brother's name?

24   A.    Keith.  Keith Gulley.

25   Q.    How long were they playing before you saw Keith?

jms

JA-033

R. EVANS - PEOPLE - DIRECT                    1082

1    A.    They was playing about 15 -- like 15 minutes.  Fifteen,

2    20 minutes before I seen him.

3    Q.    And where did Keith --

4          MR. REGAN:  Withdrawn.

5    Q.    Did you see where Keith arrived from?

6    A.    He was walking, coming away from 54th Street, Beach

7    Channel Drive.

8    Q.    So, describe the area you were standing in.

9    A.    I was standing in front of 54-30, down the walkway,

10   leaning up against the fence.

11   Q.    And at the end of that walkway is there a street there?

12   A.    Beach Channel Drive.

13   Q.    And is that the direction you saw Keith walking from?

14   A.    Yes.

15   Q.    Now, you said you hadn't seen Keith since he came home.

16   What do you mean by that?

17   A.    He had did a three -- three year bid, so I hadn't seen

18   him since he came up.

19   Q.    When you say bid, you mean he was in jail?

20   A.    Yeah, locked up for three years.

21   Q.    Was this the first time you had seen him since he was

22   released?

23   A.    Yes.

24   Q.    Do you know when he was released?

25   A.    Based -- my -- my family was telling me that Monday, but

jms

1    by me working I haven't seen him and by me living in Jamaica I

2    was going straight home.

3         Q.    How old was Keith at that time?

4         A.    At that time he was what, 22.

5         Q.    And you said he was your brother.  Was he your brother

6    by birth?

7         A.    Nah, he was actually my cousin.  He's my mother sister's

8    son, but my aunt was caught up in the streets so my mother

9    adopted him since he was -- since he was two weeks old.

10        Q.    So he was your adopted brother?

11        A.    Yeah.

12        Q.    Do you know where he was living at the time?

13        A.    He was with my sister.

14        Q.    Where?

15        A.    At Edgemere.

16        Q.    What happened after he walked up the walkway?

17        A.    We was talking.  We hugged each other.  I told him I

18   missed him.  He told me he missed me.  And we was just talking.

19        Q.    Where were the girls?

20        A.    They was playing around us.  They was happy to see him.

21   When they seen me talking to him they came running up to him

22   saying Uncle Bunky, Uncle Bunky.

23        Q.    What's Bunky?

24        A.    That's his nickname.

25        Q.    How long were you talking to your brother?

jms

1    A.    For like 15 minutes.  Fifteen, 20 minutes we was

2  talking.

3    Q.    What happened after you were talking?

4    A.    We were talking and I seen a guy walking up the lane,

5  the walkway.  So when I turned around I look, I see he got one

6  black glove on.  Then all of a sudden I see a gun come out his

7  pocket.  So I got my little four year old right there next to me

8  and I'm like, I don't -- I just pushed her, told her to run.

9  Then a shot go off.  I fall to the floor.  Then I see -- see him

10  going up the lane.  I'm looking for my daughter.  She ran to her

11  Uncle Bunky and he pushed her out the way.  And my other

12  daughter, I could see her hiding under the table.  And I seen my

13  other daughter run in the building.

14    Q.    Okay.  I'm going to stop you for a moment.

15    A.    Uh, huh.

16    Q.    Back up a little bit.

17    A.    Uh, huh.

18    Q.    When you were standing there talking to your brother

19  what first made you notice this person who approached?

20    A.    The black glove on his hand.

21    Q.    Okay.  How far away was he from you when you first saw

22  him?

23    A.    I could have touched him.

24    Q.    So it was a matter of feet?

25    A.    Yes.

                                                              jms

1    A.   Nah.

2    Q.   -- while you were in the hospital?

3         From May 3rd in the -- to the next day, May 4th, did you

4  ever ask anybody about your brother?

5    A.   Yeah.

6    Q.   Who did you ask?

7    A.   I ask my wife.  I ask friends, family.

8    Q.   Okay.  Did anyone tell you about his condition?

9    A.   Nah, nobody said nothing.

10   Q.   What did they say?

11   A.   She -- they was like he all right.  He all right.

12   Q.   The next day, May 4th, in the morning --

13   A.   Uh, huh.

14   Q.   -- did some police officers come and talk to you?

15   A.   Yes.

16   Q.   Tell us how that conversation went.

17   A.   It was no conversation.

18   Q.   What were they asking you about?

19   A.   About who it was, what happened.

20   Q.   And what did you tell them?

21   A.   I ain't tell them nothing.

22   Q.   Why?

23   A.   Because the way -- the way the situation was, like where

24  I grew up at, like, I don't -- you don't do that.

25   Q.   You don't talk to police?

1    A.   Yeah.

2    Q.   Did they try to question you further?

3    A.   Yeah.

4    Q.   And how, eventually, did this questioning stop?

5    A.   I just told them leave me alone.  Like, that's it.

6    Q.   Did you tell them you didn't see what happened?

7    A.   Yeah.

8    Q.   Was that true?

9    A.   No, it wasn't true.

10   Q.   Why did you lie to them?

11   A.   Because I ain't want to do all this I'm doing now.

12   Q.   And at that time did you know your brother was dead?

13   A.   Nah.

14   Q.   And that was on May 4th?

15   A.   Yeah.  Yes.

16   Q.   When did you ultimately learn about what happened to

17   your brother?

18   A.   About Sunday morning.

19   Q.   And how did that happen?

20   A.   My brother and my wife was basically talking loud,

21   like --

22   Q.   When you say your brother, you are talking about a

23   different brother?

24   A.   Yeah.

25   Q.   What's his name?

                                                      jms

 1     A.   Do I have to say his name?

 2     Q.   Just his first name.

 3     A.   Eugene.

 4     Q.   Okay.  And he was talking to your wife.  Tell us what

 5   happened.

 6     A.   I just heard them talking and I'm asking them what's

 7   going on, what's going on, come to find out they was discussing

 8   whether or not they should tell me that my brother was dead.

 9     Q.   And what happened after that?

10     A.   After that I started crying.

11     Q.   And a few days later did you have another conversation

12   with the police?

13     A.   At the -- at -- after my daughters, they -- they was

14   waking up screaming, crying.  I couldn't take it no more.  Every

15   time -- every time they hear a balloon or something pop, they --

16   they would cry.  So I just couldn't deal with that no more.

17     Q.   And then when the police talked to you a few days after

18   that --

19     A.   Uh, huh.

20     Q.   -- around May 9th --

21     A.   Uh, huh.

22     Q.   -- you remember talking to them?

23     A.   Yeah.

24     Q.   Did they come to you and speak to you?

25     A.   Yes.

1    Q.    And at that time when you spoke to them, without telling

2    us what you said, were you truthful with them at that time?

3    A.    Yes.

4    Q.    And what changed between May 4th when you were not

5    truthful with them and May 9th when you were?

6    A.    The fact that my daughters had to watch they uncle die

7    right in front of they face.

8    Q.    Now, did you continue to live in Queens after the

9    shooting?

10   A.    Yeah.

11   Q.    For how long?

12   A.    For like a year and a half.

13   Q.    And did you ultimately leave the area?

14   A.    Yeah.

15   Q.    I want to direct your attention now --

16   A.    Uh, huh.

17   Q.    -- to January 27th of 2014.

18   A.    Uh, huh.

19   Q.    Do you remember that day?

20   A.    Uh, huh.

21   Q.    Is that a yes or a no?

22   A.    Yes.

23   Q.    Did you get a call from a detective that day?

24   A.    Yes.

25   Q.    And tell us what he told you in that phone call.

1              MR. DIDIO:  Objection.

2              THE COURT:  All right.  That's hearsay.  Stricken.

3    Do not answer that.

4    Q.    As a result of that phone call did you go anywhere?

5    A.    Yes.

6    Q.    Where did you go?

7    A.    To the precinct.

8    Q.    Where was the precinct you went to?

9    A.    The 101.

10   Q.    Is that in Far Rockaway?

11   A.    Yes.

12   Q.    What happened when you got to the precinct?

13   A.    They wanted me to look at a lineup.

14   Q.    Before you looked at the lineup did the detective

15   describe the lineup to you, the procedure?

16   A.    Yes.

17   Q.    What did he tell you about what you were going to see?

18   A.    That --

19             MR. DIDIO:  Objection.

20             THE COURT:  All right.  This is not being offered

21   for the truth of the matter, so I will let it be admitted

22   into evidence only to show what actions the police took in

23   this case.

24   Q.    What did he tell you?

25   A.    That they -- that I was -- it was going to be a group of

                                                          jms

1  guys in the room and that him or anybody couldn't persuade me to

2  say anything.

3      Q.    Meaning the police officer?

4      A.    Yes.

5      Q.    What happened when you went to look at the lineup?  Tell

6  us how that happened.

7      A.    They put me in a room behind the glass and six guys

8  walked into the room.

9      Q.    Now, when you were in the viewing room --

10     A.    Yes.

11     Q.    -- were there other people there with you?

12     A.    It was -- it was couple of people in there.  Officers, I

13  guess, lawyers.

14     Q.    Okay.  And you said you looked through a window; right?

15     A.    Yes.

16     Q.    How may people did you see in there?

17     A.    That came through on the other side of the glass?

18     Q.    Correct.

19     A.    Six.

20     Q.    And how were they dressed?

21     A.    They had -- all of them had painter's hats on with white

22  T-shirts.

23     Q.    And did they each have a number assigned to them?

24     A.    Yes.

25     Q.    Numbers one through six?

                                                           jms

JA-042

1    A.   Yes.

2    Q.   Did you look through the glass?

3    A.   Yes.

4    Q.   And when you looked through the glass did you recognize

5  anyone?

6    A.   Yes.

7    Q.   What was the number of the person you recognized?

8    A.   Number Five.

9    Q.   And where did you recognize Number Five from?

10   A.   The -- the night of the shooting.  The day of the

11  shooting rather.

12   Q.   Who was Number Five?  What did he do?

13   A.   Huh?

14   Q.   When you say you recognize him from the date of the

15  shooting, what did he do?

16   A.   Yeah, he shot me and my brother in front of my girls.

17   Q.   How long after you looked through that window did you

18  recognize Number Five?

19   A.   Like, basically soon as I look I remembered his face,

20  like.

21   Q.   Did you have a reaction?

22   A.   Yeah, was -- I was mad.

23   Q.   And did you tell the police that you recognize Number

24  Five?

25   A.   Yeah.

                                                        jms

JA-043

R. EVANS - PEOPLE - DIRECT                           1102

1    Q.   If you saw that person today --

2    A.   Uh, huh.

3    Q.   -- would you recognize that person?

4    A.   Yes.

5    Q.   Do you see that person in the courtroom today?

6    A.   Yes.

7    Q.   Could you point that person out and indicate an article

8  of clothing that they are wearing?

9    A.   Right there with a white shirt on, and a tie.

10        THE COURT:  All right.  He's indicated the

11 defendant, Rashaun Ferguson, as that person.

12        MR. REGAN:  I'd like to have these photographs

13 marked as People's --

14        THE COURT OFFICER:  Thirty-five is the next one.

15        MR. REGAN:  Thirty-five, 36 and 37 for

16 identification.

17        THE COURT:  Have you seen them, Mr. Didio?

18        MR. DIDIO:  No, Judge.

19        THE COURT:  Okay.  Show him.

20        MR. DIDIO:  Thank you.

21        THE COURT:  Let me see them first.

22        THE COURT OFFICER:  (Handing.)

23        (Whereupon, the items referred to are received and

24 marked People's Exhibit Numbers 35, 36 and 37 for

25 identification.)

jms

# EXHIBIT B

**D00386**

Complaint# 2013-101-01689                                              Page 11 of 80

| GENERAL INVESTIGATION | | Crime/Condition<br>ASSAULT | Command<br>101-101ST PRECINCT<br>Date of This Report<br>05/04/2013 |
|---|---|---|---|

| Date of UF61<br>05/03/2013 | Complaint No.<br>2013-101-01690 | Date Case Assigned<br>05/03/2013 | Case No.<br>2013 - 642 | Unit Reporting<br>SQUAD | Follow-Up No.<br>2 |
|---|---|---|---|---|---|

| Complainant's Name<br>EVANS, REGGIE | Address | Apt No. |
|---|---|---|

| Nickname/Alias/Middle Name |
|---|

| Sex<br>MALE | Race<br>BLACK | Date of Birth | Age<br>36 |
|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

| Activity Address Location<br>NYC | Street<br>54-30 BEACH CHANNEL DRIVE | City<br>QUEENS | State<br>NY | Zip | Apt # |
|---|---|---|---|---|---|

| Cross Street<br>BEACH 58 STREET and BEACH 54 STREET | Intersection of | Premise Type<br>RESIDENCE - PUBLIC HOUSING |
|---|---|---|

| Activity Date<br>05/03/2013 | Activity Time<br>20:08 |
|---|---|

**Topic/Subject:**
ASSAULT

**M.O.(Key Actions / Method of Perps / Entry Method):**
STADNING IN FRONT OF LOCATION

**Summary of Investigation:**
1. On May 3, 2013, at approximately 2010 hours I was informed via radio transmission from central that a male was shot in the confines of the 101 pct and was not likely to die. Details are as follows:

2. At t/p/o c/v was standing in front of the location when an unknown suspect did fire 3 shots from the walkway which consequently struck him in the back. Suspect fled on foot to a Gray Ford Escape which was parked on Beach 56 Street, and did flee the scene with another unknown suspect. Victim is identified as follows;

Evans, Reggie M/B/36 DOB ███████

Queens NY 11691
IDS NEGATIVE
NYSID █████████

Arrest History:

███████████████████████████████████

3. Upon conferral with the 101 PDU Sgt Lopez, this is a gang motivated shooting since the c/v is the brother of the DOA victim Keith Gulley. At this time the c/v does not seem to be the target. This is a gang location and Keith Gulley was an active Bloods gang memember. Gang will continue to confer with the 101 PDU.

4. For your information.

| Reporting Officer: | Rank<br>DT3 | Name<br>NICHOLAS ROMANO | Tax Reg. No.<br>935641 | Command<br>596-GANG SQUAD QUEENS<br>NORTH |
|---|---|---|---|---|
| Reviewing<br>Supervisor: | Manner of<br>Closing | Date<br>Reviewed<br>06/17/2013 | Date of Next<br>Review | Name<br>GEMMA<br>MASTERSON | Supv. Tax No.<br>900321 |

D00387

Complaint# 2013-101-01689                                    Page 12 of 80

| 101 PCT | | | | | | |
|---|---|---|---|---|---|---|
| **UNUSUAL OCCURRENCE REPORT-ORIGINAL** | | | | Crime/Condition<br>MURDER & NON-NEGL. MANSLAUGHTE | | Command<br>101-<br>Date of This Report<br>05/04/2013 |
| Date of UF61<br>05/03/2013 | Complaint No.<br>2013-101-01689 | Date Case Assigned<br>05/04/2013 | Case No.<br>2013 - 642 | Unit Reporting<br>SQUAD | | Follow-Up No.<br>3 |

| Topic/Subject<br>(UNUSUAL OCCURRENCE REPORT-ORIGINAL) UNUSUAL REPORT - HOMICIDE & MALE SHOT | Activity Date<br>05/03/2013 | Activity Time<br>20:08 |
|---|---|---|

**Offense Information**

| Date of Offense<br>05/03/2013 | | Time of Offense<br>20:08 | | |
|---|---|---|---|---|
| Building #<br>54-30 | Address<br>BEACH CHANNEL DRIVE | | Apt#<br> | Borough/City<br>QUEENS |
| Precinct<br>101 | Housing Dev. Name | | PSA Number | Premise Type<br>OPEN AREAS (OPEN LOTS) |
| School Number | School Name | | Type of School | |

**Details**

**Summary of Investigation:**

1. On May 30, 2013, at approximately 2008 hours members of the 101 squad were notified via Department radio of two (2) males shot in front of 54-30 Beach Channel Drive. Upon arrival the undersigned did observe the victims suffering from apparent gunshot wounds to the body. Victim #1 was identified as Keith Gulley; a M/B 22 Y/O who was unresponsive, and victim #2 was identified as Reginald Evans; a M/B 36 Y/O who was shot in the lower back and responsive but was unable to provide any information. .380 caliber shell casings were observed at the scene. The victims were removed to separate hospitals, with Gulley being transported to St. John's Hospital were he was pronounced at 2105 hours.

2. Interviews and canvasses were conducted and the investigation is on-going as the investigative process continues. Autopsy will be viewed by a member of the 101 squad.

***The information being transmitted to you is preliminary information and is subject to change as additional facts are discovered during the on-going investigation.***

| If Business, Business Name | Person's Last Name, First M.I.<br>GULLEY, KEITH | Person/Business Role<br>COMPLAINANT/VICTIM | Housing Res. | Probation<br>No | Parole<br>No |
|---|---|---|---|---|---|
| Nickname/Alias/Middle Name<br>BUNKY | | | | | |
| Address | | | Apt No. | Res. Pct. | NYSID No. |
| Arrest # | Date | Top Charge | | | |

JA-047

**D00388**

| Position/Relationship | Sex MALE | Race BLACK | Date of Birth | Age 22 | Height 5FT10IN | Weight 160 |
|---|---|---|---|---|---|---|
| Age From | Age To | Injured/Deceased DECEASED | Type of Injury GUNSHOT | | Removed to Hospital Yes | Hospital Name ST JOHNS |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address | U.S. Citizen Yes | State/Country of Birth USA |

**Description**
Eye Color:BLACK Hair Color:BLACK Hair Length:SHORT Hairstyle:CLOSE CUT Complexion:CLEAR Skin Tone:MEDIUM

| Accent No | Weapon | Describe Weapon (If firearm, give color, make, caliber, type, model, etc.) | | | Discharged |
|---|---|---|---|---|---|
| Gang Affiliation Yes | | Gang Name BLOODS | | Gang Identifier | |
| Mask NO | Mask Description | | Gloves NO | Gloves Description | |

| Clothing Description |
|---|
| Scars, Marks |

| Impersonation of | If other |
|---|---|

**Statements/Criminal History**
Extensive criminal history from 2005 through present is attached.

| If Business, Business Name | Person's Last Name, First M.I. EVANS, REGINALD | Person/Business Role VICTIM (ADDL) | Housing Res. | Probation No | Parole No |
|---|---|---|---|---|---|
| Nickname/Alias/Middle Name | | | | | |
| Address | | | Apt No. | Res. Pct. | NYSID No. |

| Arrest # | Date | Top Charge |
|---|---|---|

| Position/Relationship FRIEND/ACQUAINTANCE | Sex MALE | Race BLACK | Date of Birth | Age 36 | Height 6FT0IN | Weight 180 |
|---|---|---|---|---|---|---|
| Age From | Age To | Injured/Deceased INJURED | Type of Injury GUNSHOT | | Removed to Hospital Yes | Hospital Name JAMAICA |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address | U.S. Citizen Yes | State/Country of Birth USA |

**Description**
Eye Color:BLACK Hair Color:BLACK Hair Length:SHORT Hairstyle:CLOSE CUT Complexion:CLEAR Skin Tone:MEDIUM

| Accent | Weapon | Describe Weapon (If firearm, give color, make, caliber, type, model, etc.) | | | Discharged |
|---|---|---|---|---|---|
| Gang Affiliation No | | Gang Name | | Gang Identifier | |
| Mask NO | Mask Description | | Gloves NO | Gloves Description | |

| Clothing Description |
|---|

**D00388**

JA-048

**D00389**

Complaint# 2013-101-01689                                      Page 14 of 80

| Scars, Marks | | | |
|---|---|---|---|
| Impersonation of | | If other | |
| Statements/Criminal History | | | |
| LIMITED CRIMINAL HISTORY FROM 1996 THROUGH 2008 IS ATTACHED | | | |

| VEHICLE |
|---|

| Recovered Weapons | | | | | |
|---|---|---|---|---|---|
| Weapon Type | Weapon | Weapon Description | | | NYSID |
| Gun | Discharged | Make | Color | Caliber | Type |
| Type of Location Seized On | | If Other Location, Specify | | Precinct Voucher # | |

| Notifications | | | | |
|---|---|---|---|---|
| Unit/Agency | Tax ID | Name | Rank | Cmd |
| N.Y. POLICE DEPT | 891260 | JOHN ZANFARDINO | CPT | 311-DISTRICT ATTORNEY SQD QUEENS |
| N.Y. POLICE DEPT | 905620 | PETER PAWELSKI | DT2 | 201-DETECTIVE BUREAU |
| N.Y. POLICE DEPT | 900321 | GEMMA MASTERSON | LCD | 331-DET SQD. QNS-101 |
| N.Y. POLICE DEPT | 920518 | JUAN LOPEZ | SGT | 331-DET SQD. QNS-101 |
| N.Y. POLICE DEPT | 874483 | STEVEN MATTHEWS | DT3 | 310-DET BORO QUEENS |

| ATTACHMENTS |
|---|

| Reporting Officer: | Rank | Name | | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| | DT3 | MICHAEL GILDEA | | 928374 | 331- |
| Reviewing Supervisor: | Manner of Closing | Date Reviewed | Date of Next Review | Name | Supv. Tax No. |
| | | 06/16/2013 | | CORTNEY CUMMINGS | 928136 |

D00390

Complaint# 2013-101-01689                                                                 Page 15 of 86

| | Other Attachments | | | Crime/Condition<br>MURDER & NON-NEGL.<br>MANSLAUGHTE | Command<br>101-101ST<br>PRECINCT<br>Date of This<br>Report<br>06/15/2013 |
|---|---|---|---|---|---|
| Date of<br>UF61<br>05/03/2013 | Complaint No.<br>2013-101-<br>01689 | Date Case<br>Assigned<br>05/04/2013 | Case No.<br>2013 -<br>642 | Unit Reporting<br>SQUAD | Follow-Up No.<br>4 |

| Complainant's Name<br>GULLEY, KEITH | Address | Apt No. |
|---|---|---|
| **Nickname/Alias/Middle Name**<br>BUNKY | | |

| Sex<br>MALE | Race<br>BLACK | Date of Birth | Age<br>22 |
|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

| Activity Address Location<br>OFFICE | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|
| Cross Street | | Intersection of<br>and | | Premise Type | |

| Activity Date<br>05/03/2013 | Activity Time<br>21:15 |
|---|---|

**Topic/Subject:**
(Other Attachments) INTERVIEW WITNESS / POSITIVE ID OF DRIVER

**Summary of Investigation:**
1. On May 3, 2013, at approximately 2115 hours the undersigned; along with Detective Jaeger; did interview a witness known to the Department at the 101 sqd. The witness informed that they were working on their auto which was parked on Beach 56 Street when they did observe a gray colored Ford SUV; later identified as an Escape; pull onto the block from Beach Channel Drive. The witness informed that the passenger of the auto exited the vehicle and then was called back by the driver. The witness then saw the passenger re-exit the vehicle and observed the witness, now with no sneakers, walk towards the Edgemere housing complex. The witness informed that moments later gunshots were heard and as the witness raised their head, the passenger was again observed running from the Edgemere, only this time with a gun in his hand. The witness further informed that the passenger re-entered the Ford which was being driven by a person that is known to the witness from the area. The Ford sped off down Beach 56 Street towards Seagirt. The witness informed that the driver is a person known as "Man" and resides in Ocean Village. The witness did not know the identity of the male passenger observed with the gun, but did provide a description of him.

2. By utilizing the witness' information and knowledge of "Man", the undersigned did retrieve a photo of a person matching the description of the driver who also lived in the same building and floor as described by the witness. Upon showing the witness the photo, the witness did identify Henry McCummings (Nysld _____ as the driver of the Ford.

3. The witness and undersigned did also draw a sketch of the crime location detailing where the witness was, the perps were, and their locations in relation to the crime scene.

CASE ACTIVE
(photo and map attached)

| Reporting Officer: | Rank<br>DT3 | Name<br>MICHAEL GILDEA | | Tax Reg. No.<br>926374 | Command<br>331-101 DET<br>SQUAD |
|---|---|---|---|---|---|
| Reviewing<br>Supervisor: | Manner of<br>Closing | Date<br>Reviewed<br>06/17/2013 | Date of Next<br>Review | Name<br>GEMMA<br>MASTERSON | Supv. Tax No.<br>B00321 |

D00390

JA-050

**D00391**



| DETECTIVE BUREAU ATTACHMENT A | DD5 ATTACHED FILES |
|---|---|

**ATTACHMENT A : ADDITIONAL ATTACHMENTS**

CONFIRMATORY PHOTO / MAP-05/03/2013 21:15

D00403

| | INTERVIEW IN-PERSON | | | Crime/Condition MURDER & NON-NEGL. MANSLAUGHTE | | | Command 101-101ST PRECINCT Date of This Report 05/04/2013 |
|---|---|---|---|---|---|---|---|
| Date of UF61 05/03/2013 | Complaint No. 2013-101-01689 | Date Case Assigned 05/04/2013 | Case No. 2013 - 642 | Unit Reporting BRAM | | | Follow-Up No. 13 |

| Topic/Subject (INTERVIEW IN-PERSON) INTERVIEW | | Activity Date 05/03/2013 | Activity Time 23:30 |
|---|---|---|---|

| Complainant's Name GULLEY, KEITH | | Address | | Apt No. 5D |
|---|---|---|---|---|
| Nickname/Alias/Middle Name | | | | |
| Sex MALE | Race BLACK | Date of Birth | Age 22 | |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

| Person Interviewed Last Name, First M.I. | | Address | | Apt No. |
|---|---|---|---|---|
| Nickname/Alias/Middle Name | | | | |
| Position/Relationship | Sex FEMALE | Race BLACK | Date of Birth | Age 35 |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

**Details**

Summary of Investigation:

1. On May 3, 2013, at approximately 2330 hours U/S was present inside Jamaica Hospital and did conduct the following interview with ▇▇▇▇, Mrs. ▇▇▇ states she is the Wife of Victim Reginald Evans. Mrs. ▇▇▇ states that on 05/03/2013 at approx. 1915 hours she was inside her apartment when her husband Reginald Evans decided to take their 3 daughters out of the apartment to go to the park.

- Mrs. ▇▇▇ states that approx. 20 mins later she heard numerous gunshots coming from outside her apartment and people screaming. Mrs. ▇▇▇ states she ran down stairs and outside her building where she saw Victim Keith Gulley lying on the ground bleeding with several gunshot wounds.

- Mrs. ▇▇▇ states she then went to her husband Reginald Evans, who was lying several feet away and was also bleeding and had gunshot wounds. Mrs ▇▇▇ states she waited with her husband until police and EMS arrived. Mrs ▇▇▇ states she never saw anyone fleeing the scene only heard the gunshots. Mrs ▇▇▇ stated "by the time I got outside my building it was like a Ghostown, I just stayed with my husband until the ambulance arrived"

- Mrs ▇▇▇ further stated that her 3 daughters were unharmed and were brought upstairs to her apartment by a neighbor. Mrs Evans stated she did not know the name of the neighbor or which apartment they lived in.

2. case active

| Activity Address Location OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|
| Cross Street | | | Intersection of and | | Premise Type | |

| Reporting Officer: | Rank DT3 | Name DAVID CORTES | | Tax Reg. No. 934687 | | Command 340-110 DET SQUAD |
|---|---|---|---|---|---|---|
| | Reviewing | Manner of | Date | Date of Next | Name | Supv. Tax No. |

D00404

| Supervisor: | Closing | Reviewed 06/17/2013 | Review | GEMMA MASTERSON | 900321 |
|---|---|---|---|---|---|

D00404

D00408

| POLICE DEPARTMENT **PHOTO ARRAY** | | | | **Crime/Condition**<br>MURDER & NON-NEGL.<br>MANSLAUGHTE | **Command**<br>101-101ST<br>PRECINCT<br>**Date of This Report**<br>06/15/2013 |
|---|---|---|---|---|---|
| **Date of UF61**<br>05/03/2013 | **Complaint No.**<br>2013-101-01689 | **Date Case Assigned**<br>05/04/2013 | **Case No.**<br>2013 - 642 | **Unit Reporting**<br>SQUAD | **Follow-Up No.**<br>16 |

| **Topic/Subject**<br>(PHOTO ARRAY) PHOTO ARRAY (FERGUSON +) | **Activity Date**<br>05/04/2013 | **Activity Time**<br>02:30 |
|---|---|---|

| **Complainant's Name**<br>GULLEY, KEITH | | **Address** ▓▓▓▓▓▓▓ | | **Apt No.** ▓ |
|---|---|---|---|---|
| **Nickname/Alias/Middle Name**<br>BUNKY | | | | |
| **Sex**<br>MALE | **Race**<br>BLACK | **Date of Birth** ▓▓▓▓ | **Age**<br>22 | |
| **Home Telephone** | **Business Telephone** | **Cell Phone** | **Beeper #** | **E-Mail Address** |

| **Person Interviewed Last Name, First M.I.** | | **Address** | | **Apt No.** |
|---|---|---|---|---|
| **Nickname/Alias/Middle Name** | | | | |
| **Position/Relationship** | **Sex** | **Race** | **Date of Birth** | **Age** |
| **Home Telephone** | **Business Telephone** | **Cell Phone** | **Beeper #** | **E-Mail Address** |

**Details**

**Summary of Investigation:**
1. On May 4, 2013, at approximately 0230 hours the undersigned; along with Detective Jaeger; did meet with a person to the Department who did witness the homicide. The photo array, compiled by the undersigned did contain an image of Rashaun Ferguson in image position #1. Upon showing the witness the array, the witness did identify position #1 as the person observed exiting a gray colored SUV, walking towards the victims, and then fleeing the scene after the gunshots were fired with a gun in his hand. The witness did sign their name to image position #1 and did also provide a brief written statement on the photo array. All appropriate photo array paperwork is attached.

**CASE ACTIVE**

| **Activity Address Location**<br>OTHER | **Street** | **City** | **State** | **Zip** | **Apt #** |
|---|---|---|---|---|---|
| **Cross Street** | | **Intersection of**<br>and | | **Premise Type** | |

| **ATTACHMENT** | | | |
|---|---|---|---|
| **No** | **Attachment** | | **Description** |
| 1 | 📎 PHOTO ARRAY PAPERWORK | | PHOTO ARRAY PAPERWORK |

| **Reporting Officer:** | **Rank**<br>DT3 | **Name**<br>MICHAEL GILDEA | | **Tax Reg. No.**<br>928374 | **Command**<br>331-101 DET SQUAD |
|---|---|---|---|---|---|
| **Reviewing Supervisor:** | **Manner of Closing**<br>. | **Date Reviewed**<br>06/17/2013 | **Date of Next Review** | **Name**<br>GEMMA MASTERSON | **Supv. Tax No.**<br>900321 |

D00408

JA-054

| GENERAL INVESTIGATION | | | | Crime/Condition MURDER & NON-NEGL. MANSLAUGHTE | | Command 101-101ST PRECINCT Date of This Report 05/04/2013 |
|---|---|---|---|---|---|---|
| Date of UF61 05/03/2013 | Complaint No. 2013-101-01689 | Date Case Assigned 05/04/2013 | Case No. 2013 - 642 | Unit Reporting SQUAD | | Follow-Up No. 19 |

| Complainant's Name GULLEY, KEITH | | Address | | Apt No. |
|---|---|---|---|---|
| Nickname/Alias/Middle Name BUNKY | | | | |
| Sex MALE | Race BLACK | Date of Birth | Age 22 | |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

| Activity Address Location NYC | | Street | City | State NY | Zip | Apt # |
|---|---|---|---|---|---|---|
| Cross Street | | | Intersection of and | | Premise Type | |

| Activity Date 05/04/2013 | Activity Time 09:30 |
|---|---|

**Topic/Subject:**
ATTEMPT TO RETRIEVE VIDEO FROM PS/MS 333

**Summary of Investigation:**
1. On May 4, 2013, at approximately 0930 THE U/S AND DET. CAPPOLLA DID RESPOND TO PS / MS 333 LOCATED AT THE C/O BEACH 57 ST. AND BEACH CHANNEL DR. IN A ATTEMPT TO RECOVER VIDEO FROM THE SCHOOLS CAMERAS. THE U/S SPOKE WITH SCHOOL SAFETY OFFICER BATES WHO INFORMED THE U/S THAT THE VIDEO WOULD NOT BE ACCESSIBLE UNTIL MONDAY 05/06/13 WHEN THE PRINCIPAL RETURNED TO WORK.

2. CASE ACTIVE.

| Reporting Officer: | Rank DT3 | Name CHRISTOPHE VELSOR | | Tax Reg. No. 907514 | Command 331-101 DET SQUAD |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 06/17/2013 | Date of Next Review | Name GEMMA MASTERSON | Supv. Tax No. 900321 |

D00418

| LINE UP | Crime/Condition MURDER & NON-NEGL. MANSLAUGHTE | Command 101-101ST PRECINCT Date of This Report 06/08/2013 |
|---|---|---|

| Date of UF61 05/03/2013 | Complaint No. 2013-101-01689 | Date Case Assigned 05/04/2013 | Case No. 2013-642 | Unit Reporting SQUAD | Follow-Up No. 24 |
|---|---|---|---|---|---|

| Topic/Subject (LINE UP) LINE-UP CONDUCTED; FERGUSON | Activity Date 05/07/2013 | Activity Time 00:01 |
|---|---|---|

| Complainant's Name GULLEY, KEITH | Address | Apt No. |
|---|---|---|

**Nickname/Alias/Middle Name**
BUNKY

| Sex MALE | Race BLACK | Date of Birth | Age 22 |
|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

| Person Interviewed Last Name, First M.I. | Address | Apt No. |
|---|---|---|

**Nickname/Alias/Middle Name**

| Position/Relationship | Sex | Race | Date of Birth | Age |
|---|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

**Details**

**Summary of Investigation:**

1. On May 7, 2013, at approximately 0001 hours the undersigned; along with Queens Assistant District Attorney Kristin Fraser; did conduct a line-up with apprehended perpetrator; Rashaun Ferguson (Nysid #02815035H). Ferguson, whose lawyer declined to be present did request to be seated in line-up position #4 for the proceedings. The line-up consisted of Ferguson and five (5) fillers with similar features.

2. A witness known to the Department did view the line-up and did not make an outright positive identification, but did make several references to the person in line-up position #4. The witness made statements that position #4 looks like the guy but the skin color is off. The witness also requested that position #5 stand-up but immediately stated #5 was in now way the perp. Upon exiting the room the witness did make a comment as to line-up positions #4's weight, the comment in sum and substance was that either #4 had gained or lost weight since the incident. Additionally, the witness, once away from the viewing area stated to the undersigned "I can't be the only one doing this, I just can't do it, sorry".

3. The line-up proceedings concluded and all appropriate paperwork was file. The line-up report and photo of said line-up are attached.

**CASE ACTIVE**

| Activity Address Location OFFICE | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|

| Cross Street | Intersection of and | Premise Type |
|---|---|---|

**ATTACHMENT**

| No | Attachment | Description |
|---|---|---|
| 1 | FERGUSON LINE-UP PAPERWORK | FERGUSON LINE-UP PAPERWORK |

| Reporting Officer: | Rank | Name | Tax Reg. No. | Command |
|---|---|---|---|---|

D00418

JA-056

**D00419**

Complaint# 2013-101-01689

| | DT3 | MICHAEL GILDEA | | 928374 | 331-101 DET SQUAD |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 06/17/2013 | Date of Next Review | Name GEMMA MASTERSON | Supv. Tax No. 900321 |

D00430

| PHOTO ARRAY | Crime/Condition<br>MURDER & NON-NEGL.<br>MANSLAUGHTE | Command<br>101-101ST<br>PRECINCT<br>Date of This Report<br>06/15/2013 |
|---|---|---|

| Date of UF61<br>05/03/2013 | Complaint No.<br>2013-101-01589 | Date Case Assigned<br>05/04/2013 | Case No.<br>2013 - 642 | Unit Reporting<br>SQUAD | Follow-Up No.<br>30 |
|---|---|---|---|---|---|

| Topic/Subject<br>(PHOTO ARRAY) PHOTO ARRAY W/ VICTIM (FERGUSON +) | Activity Date<br>05/09/2013 | Activity Time<br>17:40 |
|---|---|---|

| Complainant's Name<br>GULLEY, KEITH | Address | Apt No. |
|---|---|---|

| Nickname/Alias/Middle Name<br>BUNKY | | | |
|---|---|---|---|

| Sex<br>MALE | Race<br>BLACK | Date of Birth | Age<br>22 |
|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

| Person Interviewed Last Name, First M.I. | Address | Apt No. |
|---|---|---|

| Nickname/Alias/Middle Name | | | |
|---|---|---|---|

| Position/Relationship | Sex | Race | Date of Birth | Age |
|---|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

**Details**

**Summary of Investigation:**

1. On May 9, 2013, at approximately 1740 hours the undersigned; along with Detective Jaeger; did meet with victim; Reginald Evans for the purposes of showing the victim a photo array. The photo array, compiled by the undersigned did contain an image of Reshaun Ferguson in image position #1. Upon showing Evans the array, he did identify position #1 as the person that approached both him and his brother with a gun in his hand and shot in their direction. Evans did sign his name to image position #1 and did also provide a brief written statement on the photo array.

2. Evans did inform that undersigned that he knowingly did not identify Ferguson during the first photo array and interview because at that point he believed his brother to still be alive and didn't want to get involved. He stated that "street code" is not to snitch when its just a shooting or something, but now that his brother is dead "all bets are off". All appropriate photo array paperwork is attached.

**CASE ACTIVE**

| Activity Address Location<br>OTHER | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|
| Cross Street | | Intersection of<br>and | | Premise Type | |

| ATTACHMENT | |
|---|---|
| No | Attachment | Description |
| 1 | PDF<br>photo array (victim/ferguson) | photo array (victim/ferguson) |

| Reporting Officer: | Rank<br>DT3 | Name<br>MICHAEL GILDEA | Tax Reg. No.<br>928374 | Command<br>331-101 DET SQUAD |
|---|---|---|---|---|
| | Reviewing | Manner of | Date | Date of Next | Name | Supv. Tax No. |

D00430

JA-058

D00431

Complaint# 2013-101-01689

| Supervisor: | Closing | Reviewed 06/20/2013 | Review | GEMMA MASTERSON | 900321 |
|---|---|---|---|---|---|
| | - | | | | |

D00442

| LINE UP | | | | Crime/Condition MURDER & NON-NEGL. MANSLAUGHTE | | Command 101-101ST PRECINCT Date of This Report 01/28/2014 |
|---|---|---|---|---|---|---|
| Date of UF61 05/03/2013 | Complaint No. 2013-101-01689 | Date Case Assigned 05/04/2013 | Case No. 2013 - 642 | Unit Reporting SQUAD | | Follow-Up No. 37 |

| Topic/Subject (LINE UP) LINE UP<>FERGUSON | | | Activity Date 01/27/2014 | Activity Time 21:48 |
|---|---|---|---|---|

| Complainant's Name GULLEY, KEITH | | Address | | Apt No. |
|---|---|---|---|---|
| Nickname/Alias/Middle Name | | | | |
| Sex MALE | Race BLACK | Date of Birth | Age 23 | |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

| Person Interviewed Last Name, First M.I. | | Address | | Apt No. |
|---|---|---|---|---|
| Nickname/Alias/Middle Name | | | | |
| Position/Relationship | Sex | Race | Date of Birth | Age |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

**Details**

Summary of Investigation:

1. On January 27, 2014, at approximately 2148 hours the undersigned along with Queens District Attorney Briana Heymann did conduct a line up with the subject Rashaun Ferguson. His lawyer Scott Brettschneider was present as well. Rashaun chose position #5 for the proceeding.

2. A witness known to the department did view the line up and did make a positive identification of Rashaun Ferguson in position 5 as the person shooting on May 3, 2013. He stated He knows him from the shooting, that he shot me. He says the subject walked up shot him first then ran up the lane and shot his brother.

3. Line up reports and photos attached.

| Activity Address Location OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|
| Cross Street | | | Intersection of and | | | Premise Type |

| ATTACHMENT | | | |
|---|---|---|---|
| No | Attachment | | Description |
| 1 | PDF Line Up | | Line Up |

| Reporting Officer: | Rank DT3 | Name QUINN JAEGER | | Tax Reg. No. 917786 | Command 331-101 DET SQUAD |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing - | Date Reviewed 03/13/2014 | Date of Next Review | Name GEMMA MASTERSON | Supv. Tax No. 900321 |

D00442

JA-060

# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

                CASE# 1:17-cv-06871

----------------------------------------------x

RASHAUN FERGUSON,

                Plaintiff,

           -against-

THE CITY OF NEW YORK, DETECTIVE JAEGER, DETECTIVE

MICHAEL GILDEA SHIELD #465 and UNIDENTIFIED

MEMBERS OF THE NYPD all sued herein in their

individual capacities,

                Defendants.

----------------------------------------------x

             116 West 23rd Street

             New York, New York



             March 29, 2019

             2:22 p.m.

            Deposition of the Defendant

QUINN JAEGER, pursuant to Order, before

Robert S. Barletta, a Notary Public of the State

of New York.

1        Jaeger

2      in the canvass.  The first one that is listed

3      says "365 B-56th Street PS-333 has video

4      surveillance system does face B-56th Street.

5      The undersigned did speak to Dennis Robinson

6      who works for PS-333.  Mr. Robinson stated we

7      can't view the video until Monday when the

8      principal, Angela Logan is working."

9          Q.   Do you have any memory of this.  Do you

10     have any memory of finding out there was a video

11     from the school located on 365 Beach 56th Street?

12          MR. ROSENKILDE:  Objection.  You can

13          answer.

14          A.   No.

15          Q.   Was there ever a time that you went to

16     the school located at 365 Beach 56th Street and

17     watched the video with the principal from that

18     school?

19          A.   No, I did not.

20          Q.   Do you know who if anyone did?

21          A.   No.

22          Q.   Did you ever discuss this with Detective

23     Gildea?

24          A.   No.

25          Q.   Would you agree it would be important to

```
 1                         Jaeger
 2    testimony at the criminal trial of Rashaun
 3    Ferguson?
 4         A.   No.
 5         Q.   She indicated in sum and substance that
 6    one or two detectives -- I think she said two
 7    viewed a surveillance video on Beach 56th with her
 8    in her office.  Were you aware of that?  That she
 9    testified to that?
10         A.   No.
11         Q.   Did you ever become aware that any
12    detectives viewed such a video?
13         A.   No.
14              MR. LICHTMACHER:  She testified in sum
15         and substance there was no obstruction to
16         seeing Beach 56th.
17         Q.   Did you become aware of the fact she
18    alleged there was no obstruction?
19         A.   No.
20         Q.   Were there any videos that recorded any
21    part of this incident that you know of?
22         A.   No.
23         Q.   Have you ever met Angela Logan Smith,
24    the principal from the Goldie Maple School?  Have
25    you ever met her?
```

```
 1                         Jaeger
 2       A.    No.
 3             MR. LICHTMACHER:  To make sure, she is a
 4       tall youngish African-American woman on the
 5       thin side, not to be inappropriate.
 6       Q.    You never met her?  You are certain?
 7       A.    Yes.
 8       Q.    Did any of your detectives or any of the
 9       detectives that worked on the case that you were
10       aware of indicate that they had met Angela Logan
11       Smith?
12             MR. ROSENKILDE:  Objection.  You can
13       answer.
14       A.    Not that I know of.
15       Q.    Do you need a break?
16       A.    No.  I am good.
17       Q.    Are you good with maps?
18       A.    Sorry?
19       Q.    Are you good with maps?
20       A.    Maps?
21       Q.    Yes.
22       A.    Okay.
23       Q.    Were you in the military?
24       A.    No.
25       Q.    What did you do before you became a
```

1                           Jaeger

2        Page 379 where there are less redactions.

3        Q.    These numbers on this page, do they

4    relate to phone calls made or received regarding

5    the investigation?

6        A.    Yes, that is how I do it.

7              MR. LICHTMACHER:  Moving ahead to Page

8        441.  This I don't understand.  The top of

9        441 I think says "four times one."

10       Q.    Is that correct?

11       A.    Yes.

12       Q.    What does that mean?

13       A.    This would be like a note for me.  That

14   day I worked a four to one tour.  The

15   notification.  We heard it on the radio on that

16   date and time.

17       Q.    Is that 2008?

18       A.    Yes.

19       Q.    8:08 you heard it in civilian time?

20       A.    Yes.

21       Q.    I take it under that you were on the

22   scene at 8:20; is that correct?

23       A.    Yes.

24       Q.    Then it says, "ID McCummings May 3rd

25   2210."

# EXHIBIT D

UNITED STATES DISTRICT COURT EASTERN
DISTRICT OF NEW YORK
-------------------------------------X
RASHAUN FERGUSON,

                    Plaintiff,


  -against-

                  Index No.
                  CV-06871-ENV-SJB
THE CITY OF NEW YORK, DETECTIVE JAEGER,
DETECTIVE MICHAEL GILDEA SHIELD #465 and
UNIDENTIFIED MEMBERS OF THE NYPD ALL
SUED HEREIN IN THEIR INDIVIDUAL
CAPACITIES,

                  Defendants.
-------------------------------------X
                September 15, 2020
                11:08 a.m.


                Zoom Video Conferencing
                New York, New York
     EXAMINATION BEFORE TRIAL of OFFICER
ALFONSO VARGAS, the Non Party Witness
herein, taken by the Plaintiff, pursuant
to Article 31 of the Civil Practice Law
and Rules of Testimony, and NOTICE, held
via Zoom Video Conferencing at the
above-mentioned time, before Maryellyn
Feiler, a Notary Public of the State of
New York.

```
 1                      A. VARGAS
 2    Goldie Maple School to see if they had
 3    cameras?
 4    A.   No.  I didn't.
 5    Q.   Were you walking or running,
 6    withdrawn.
 7         Is it fair to say that you followed
 8    basically those blue paths, those blue
 9    dots up to 54-30 Beach Channel Drive?
10    A.   Yes.  It is.
11    Q.   Now, at any time on the way to 54-30
12    Beach Channel Drive did you encounter
13    anybody who you spoke with?
14    A.   Yes.  I did.
15    Q.   Who did you encounter?
16    A.   I encountered Oriss Wheeler and his
17    family.
18    Q.   When you say "his family" was he with
19    children, wife, girlfriend, anybody?
20    A.   He was with a woman and I believe some
21    children.
22    Q.   Now, how did you come to encounter Mr.
23    Wheeler?
24    A.   As I was walking up to the scene on
25    56th Street they were walking rather
```

1                A. VARGAS

2  Q.   Was he moving rather quickly?

3  A.   Yes.  He was.

4  Q.   And they were moving, he and his

5  family were moving south and they were

6  approximately at the third dot north of

7  3-65 Beach 56th Street, correct?

8  A.   Correct.

9  Q.   By the way, are the directions correct

10  on this little map?  By that I mean what

11  we're calling east and west and north and

12  south are they accurate; if you know?

13  A.   Yes.

14  Q.   So you encountered him and what, if

15  anything, did he say to you?

16  A.   When I initially asked them for any

17  information that they had seen, he gave me

18  a, like a concerned look and the woman he

19  was with just walked right past me.  She

20  didn't want any involvement.

21      But his look made me ask him again.  I

22  said, you know, please anything you can

23  give me now is gonna help us catch these

24  guys.  And that's when he told me what he

25  saw.

```
1                    A. VARGAS
2   Q.   And what exactly did he tell you that
3   he saw?
4   A.   He said he saw a dark gray Ford
5   Escape, people rushed to it and it was
6   heading westbound towards the 100th
7   Precinct.
8   Q.   Did you put over the radio there was a
9   dark gray Ford Escape heading westbound?
10  A.   I don't remember exactly if I put it
11  over the radio or my sergeant did.  But I
12  know I passed the information along.
13  Q.   Were you with your sergeant when you
14  received that information?
15  A.   No.  I was not.
16  Q.   And what, if anything, did he tell you
17  these people looked like?
18  A.   Um, I don't remember if he gave me a
19  description on the people.
20  Q.   Did you ask him?
21  A.   I'm sure I did, but if it's not in my
22  memo book then he didn't give it to me.
23  Q.   Well, do you remember now what he told
24  you they looked like?
25  A.   No.  I don't.
```

```
 1                    A. VARGAS
 2    what's written?
 3    A.   Let's see, underneath that is his
 4    address and then the substance he gave me.
 5    Q.   Now, it says 20:35 for the interview
 6    of the witness; is that correct?
 7    A.   Yes.
 8    Q.   And it says does that -- well did you
 9    have a watch or cell phone on you to give
10    you the time when you wrote this?
11    A.   No.  The times I put in as a rough
12    estimate later on.
13    Q.   Well you made the entries right there,
14    but the times later?
15    A.   Yeah.  I was still rushing to a shots
16    fired job.  So I had to write down the
17    most important information.  Which is his
18    contact information and the information he
19    gave me and I left the exact times for
20    when the moment settled down and I'm safe
21    to write it down.
22    Q.   When you left the satellite to go to
23    the scene did you make note of the time or
24    the approximate time?
25    A.   I did not.
```

```
 1                      A. VARGAS
 2   A.   No.  I wasn't part of any entry teams
 3   or anything like that.  I'd only be inside
 4   someone's address in response to a radio
 5   run.
 6   Q.   Now looking at this page so the gang
 7   member information you would've gotten
 8   from talking to -- I'm sorry I forget what
 9   you said.  Other people at the precinct;
10   is that what you said?
11   A.   No.  Our precinct informational
12   sheets.
13   Q.   So how do you pull those up?  Do you
14   have to talk to somebody, do you just go
15   to a computer and see if that information
16   is stored or something else?
17   A.   No.  That's information provided by
18   the precinct.
19   Q.   Did you consider Orris Wheeling a
20   witness as part of this incident?
21   A.   I'm sorry.
22   Q.   Did you consider Orris Wheeling
23   O-R-R-I-S Wheeling a witness to part of
24   this incident?
25   A.   Yes.
```

# EXHIBIT E

**D000061**

```
**************************FRI. 05/03/13**************************
INCIDENT RECORD I QNS 18  101G    T76F   2008 D27 2008 F14151 AS
10-34S2                              P1    CCD HOSP|RMVD
ROUTING.D B   A N T V W S F   I CCD  215028 UF61         CC
54-22 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST

DUPLICATE JOB NUMBER  F14155
02   T76F   2008 @DBANLTNVEHS  CEXTEMS MU*HAPD
05   E100   2008 @*18 EMS LOGGED
0B   D42C   2008 @*
05   T76F   2008 @DAF*
05   T84F   2008 @DB*----ANOTHER CALL--5-6 SHOT HEARD
05   D41C   2008 @*XMITTED OVER SOD--AA MESSAGE---CW1118
0A   D41C   2008 @DEF*
91   D27C   2008 101G 10-98   2133 @*
11   D27C   2008 101ST1 10-93C  0124 @*
05   E100   2009 @*14 EMS VIEWED
0B   D45C   2009 @*
0B   D116C  2009 @*
05   T76F   2009 @B*MC STS MLE SHOT IFO LOC--MC STS A CHILD POSS S
     HOT ALSO--MC STS NO DESCRIP---MC HU---OPR1183

05   T84F   2009 @BA*A0718----NO DESCP OF PERP--MC SOTO--CB UNK--
     RO 0718 NTFD---STS 2 PEOPLE DOWN--
25   E100   2009 @*A8698131233383 8698
05   T76F   2009 @B*ANI-ALI-█████████ SPRINTPCS ███████
     NW-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.595587 LON.-073.7859
     61 OPER STUKES,TAMIKA-C-MTCCP076
05   T76F   2009 @DB*
05   T84F   2010 @B*----EMS N POLICE ON SCENE---ANI-ALI-█████████
      AT T MOBILITY ████████████████████ QUEENS COS.WPH1 LAT.040
     .593334 LON.-073.777506 OPER DAVIS, SHONDEL-C-MTCCP084 OPER1
     287
0B   D44C   2010 @*
05   T87F   2010 @B*----ANOTHER CALL----MC STS LOC----STS NEEDS AN
      AMBULANCE TO LOC----MC HU NFI----ANI-ALI-█████████ SPRINTP
     CS ███████████████ NW-SECTOR FARROCKAWAY COS.WPH2 LAT.040.5
     95330 LON.-073.785789 OPER SURGEON, LATANYA-C-MTCCP087 OPR 1
     80 3
05   T87F   2010 @T*
05   T72F   2010 @T*

05   T13F   2011 @B*ANOTHER CALL MC STS HEARD 3 GUNSHOTS SEES 2 ML
     S ON GROUND UNK MLE WRNG WHT HAT GRY SHRT BLU JNS MC REQ ANO
     N STS PD ON SCENE ANI-ALI-█████████ WIRELESS-METRO PCS TCS
     ███████████████ECTOR FAR ROCKAWAY COS.WPH2 LAT.040.59
     4857 LON.-073.785531 OPER ANDERSON, LYNDSEY I-C-MTCCP013 OPR
      1213
05   T73F   2011 @DBSF*---ANOTHER CALL---MC STS SOMEONE SHOT AT LO
     C---GAVE LOC AS--54-30 54 ST--NOT GOING IN AS VALID---MC HU
     NFI---OPR 1947
05   T13F   2011 @D*
05   T73F   2011 @DBSF*------ANI-ALI-█████████ SPRINTPCS 50 BE CH
     ANNEL DR NW-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.595019 LON.
     -073.785403 OPER KEARNEY, SHAHEED-C-MTCCP073 OPR 1947
91   D41C   2011 0ESA9 10-91   2128 @*
0B   D41C   2012 @B*
05   T34F   2012 @B*ANOTHER CALL FC ███████████CB ██████████ ST
     S SHE HEARD ABT 5 SHOTS 10 MINS AGO STS THINKS SOMEONE GOT S
     HOT
05   T34F   2012 @D*

05   T34F   2012 @B*ANI-ALI-████████████████████ COS.VOIP LAT.040.595008 LON.-073.
     785446 OPER
```

**D000061**

D000062

```
05  T34F  2012 @DBF*OPR 1734
05  T13F  2013 @DB*CORRECTION--PERP IS MLE WRNG WHT HAT GRY SHRT
     BLU JNS OPR 1213 CP13
05  T73F  2013 @DBF*---RO 0171 NTFD-----OPR 1947
05  D27C  2014 @S*---AUTH 100 ST1---(((LVL 1 MOB   ------AUT 100
     NEED AVIATION TO----D 1044
11  D41C  2014 27HEL18 10-98   2058 @*
0A  B36   2015 @DEF*
05  B36   2015 @VEH*
05  D27C  2015 @DBANVEHSFBSQTRN P  MU*---AUTH 101 ST ST-----(((L
     VL 1 FOR CROWD CONTROL  ----------------(((MOB PT BE 54 N
     BE CHANNEL DR   --D 1044
0A  B36   2015 @DEF*
05  B36   2015 @VEH*
15  D27C  2015 101ST1 @*
15  D27C  2015 101ST1 @*
05  D42C  2016 @DBNVEHSTRN   MU*
05  D41C  2016 @*XMITTED OVER SOD-1X--CW1118
12  D27C  2016 101ST1 10-84   2016 @*

05  D27C  2016 @*---SPCT MANGRU NTFD---D 1044
05  D29C  2016 @*(((( XMXMXM LVL 1 ... ZONE 29 ... 1X      D 1
     514
05  D27C  2016 @S*----(((AVIATION PLEASE0 ---D1044
05  D42C  2016 @*---XMMMITED OVER CW HWY----LVL 1----1 TIME-----
     {X}--CW-D1502
05  D116C 2016 @*------XMXMXM LVL 1 OVR CW 3----1X----D1306
05  D45C  2017 @*XMTD-----SPEC COMM B-X 1-LEVEL 1-MOB-CW 1273
05  D44C  2017 @*XMMMTD CW2...1X... LVL 1 MOB..... CWD2199
05  D41C  2017 @*XMITTED OVER SOD--2X--CW1118
0C  D42C  2017 @*
05  D59C  2017 @*XMTTD LVL 1 MOBL OVER QNS TA 1X ... TD2409
0B  D41C  2017 @B*
05  D43C  2017 @*XMT LEVEL 1 MOBIL......(1X ........(SPECIAL A .
     ....CW1261

05  D41C  2018 @S*

05  D27C  2018 @*----AUTH 100 CO----1 AIDED LIKELY--SHOT IN CHES
     T--2 ND AIDED SHOT IN BACK NOT LIKELY----.........LOOKING F
     OR A DK GREY FORD ESCAPE DRIVEN BY 1 MB.........FLED WB TWD
     100.......D 1044
05  D59C  2018 @*XMTTD LVL 1 MOBL OVER QNS TA 2X .... TD2409
05  D116C 2018 @*----XMXMXM LVL 1 OVR CW3---2X--D1306
0A  B36   2018 @DEF*
05  D43C  2018 @*XMT LEVEL 1 MOBIL......(2Z ...(SPECIAL A ....CW
     1261
05  D27C  2018 @*----......MOB PT BE 54 ST BE CHANNEL DR........
     D 1044
05  B36   2018 @VEH*
05  D44C  2018 @*XMMMTD CW2...2XX... LVL 1 MOB... CWD2199
05  B12C  2018 @NVEHWS  MU *
12  D27C  2019 101G 10-84   2019 @*
05  D43C  2019 @*XMT LEVEL 1 MOBIL.....(3X .....(SPECIAL A ....C
     w1261
05  D42C  2019 @*---XMMITED OV ER CW HWY---LVL 1----2 TIMES----{
     {XX}}--C-WD1502

05  D29C  2019 @*(((( XMXM LVL 1 ... ZONE 29 ... 2X      D 1514
05  D59C  2019 @BSQ*XMTTD LVL 1 MOBL OVER QNS TA 3X .... TD2409
05  D30C  2019 @*XMIT LEVL 1 ZONE 30 1X D1507
0B  D43C  2019 @*
11  D27C  2019 100LT2 10-98   2141 @*
0B  D27C  2020 @*
0B  D59C  2020 @*
05  B12C  2020 @NVEHWS  MU *---PPCT AWAD NTFD SPCT MANGRU
05  D41C  2020 @*XMITTED OVER SOD--3X--CW1118
```

D000062

D000063

```
0A   D41C    2020 @DEF*
05   D27C    2020 @D*
05   D44C    2020 @*XMMTD CW2....3XXX... LVL 1 MOB... CWD2199
0C   D27C    2020 @*
0C   D27C    2020 @*
0B   D43C    2020 @*
0B   D42C    2020 @*
05   D45C    2020 @*XMTD--SPEC COMM B--X 2-LEVEL-1 MO B-CW 1273
0C   D27C    2020 @*
0C   D27C    2021 @*
0C   D27C    2021 @*
0C   D27C    2021 @*
0C   D27C    2021 @*
0C   D27C    2021 @*
05   D30C    2021 @*XMIT LEVEL 1 ZONE 30 2X---D1507

05   D30C    2021 @*XMIT LEVEL 1 ZONE 30 3X D1507
05   B05C    2022 @*--MOBILIZATION TRANSMITTED OVER CW FREQ--SPCT L
     OPEZ
05   B12C    2022 @TRN*
05   N79E    2022 @DBN*PBQS PO GAGLIARDI NTFYING CAPT MOLLOY-------
     INRU PO RUFRANO--------RTCC DET BRODERICK--------OU----PS
05   D28C    2022 @*---XMITTED---LVL 1----1 TIME OVER ZONE 28------
     D1673
05   D45C    2022 @*XMTD--SPEC COMM B-X 3-LEVEL 1-MOB-CW 1273
0B   D45C    2022 @*
05   D116C   2023 @*----XMXMXM LVL 1 OVR 3X---OVR CW 3----D1306
0B   D116C   2023 @*
0B   B05C    2023 @*
05   D27C    2023 @*---LVL 1 MOB READ 2X---OVER ZONE27--D 1044
05   B36     2023 @*PLATOON PPCT YOUNG NTFD---OOPERATIONS PO SKUZA
     NTFD---PBQS PO GAGLIARDI NTFD---TB OPS PO GULLOTTA NTFD--PPC
     T AWAD
05   Q21G    2023 @*OU SGT HOUVENOUR NTFD----QES SGT HOLDORF NTFD--
     -PPCT YOUNG

0B   D44C    2023 @*
05   D42C    2023 @*---XMMMITED OV ER CW HWY---LVL 1----3 TIMES----
     {{{XXX}}}--C-WD1502
0B   D42C    2023 @*
05   D27C    2023 @S*----((((NEED ESU TO LOC FOR EVIDENCE SEARCH
     --D 1044--
12   D27C    2024 100LT2 10-84   2024 @*
05   D27C    2024 @*----(((LT2 IS 100 CO    ---ON SCENE--D1044
05   D29C    2024 @*MD
12   D41C    2024 27HEL18 10-84   2024 @*
0B   D41C    2024 @B*
11   D27C    2024 101SP88 10-98   2141 @*
05   D29C    2024 @*(((( XMXMXM LVL 1 ... ZONE 29 ... 3X      D 15
     14
12   D27C    2025 101SP88 10-84   2025 @*
05   D28C    2025 @*----XMITTED---LVL 1---2 TIMES-----OVER ZONE 28-
     ------D1673
05   D27C    2025 @*--AVIATION 84----D 1044
0B   D45C    2026 @B*
0A   D59C    2027 @DEF*

05   D27C    2027 @*-----AUTH AVIATION (((ROOF TOPS CLEAR   ----(((
     NO INJURED MOS   --(((ALL MOS ACCOUNTED FOR    ---SPCT MANGR
     U NTFD---D 1044
05   D27C    2028 @S*----CO READ REG ROOF TOPS CLEARED---AGAIN NEED
     ESU IN REG TO EVIDENCE SEARCH---D 1044
05   D28C    2028 @*XMITED LEVEL 1 MOB OVER ZONE 28 ,...3X ...D2288
0B   D41C    2028 @B*
0B   B12C    2028 @*
05   D27C    2029 @*---AUTH 101 CO---((NO SHOTS FIRED AT OR BY MOS
```

JA-077

D000064

```
        ----SCPT MANGRU NTFD--D1044
05   D27C   2030 @*
05   D27C   2030 @*---AUTH HOUSING 5 ML STP AT 84-18 RBB--CRIME RE
     SPONDING--------D 1044
05   D27C   2031 @*-----NEG RESULTS ON THE CANVASS---AVIAITON 98--
     D 1044
91   D27C   2034 100ST1 10-98    2051 @*
05   D27C   2034 @*----100ST CANVASSING--D 1044
05   B12C   2037 @NVEH *PPCT--AWAD NTFD WITH UPDATE SPCT MANGRU

12   D41C   2037 0ESA9 10-84    2037 @*
05   B12C   2037 @*---MOB XMITTED OVER ALL QNS SOUTH FREQ AND TA R
     ADIO SPCT MANGRU
91   D27C   2038 101A 10-98     2227 @*
0B   B12C   2039 @*
0B   B12C   2039 @*
0B   B12C   2039 @*
0B   D27C   2039 @*
0B   B36    2040 @*
11   D27C   2046 101LT3 10-98    2210 @*
12   D27C   2046 101LT3 10-84    2046 @*
05   D27C   2047 @*----(((LT3 IS TASK FORCE LT   ---84--D 1044
14   D27C   2050 101G @*---STILL OUT
14   D27C   2050 101ST1 @*--STILL OUT
13   D27C   2051 100ST1 10-98    2051 @*
14   D41C   2054 27HEL18 @*
13   D41C   2058 27HEL18 10-98   2058 @*
14   D27C   2101 100LT2 @*--SHOTS FIRED--D 1044
14   D27C   2101 101SP88 @*--STILL OUT
05   N79E   2121 @DBNS*-------PLZ HAVE SUPV 10-1 OPERATIONS----OPS
     ---WP

0B   D41C   2122 @B*
0B   D27C   2122 @*
13   D41C   2128 0ESA9 10-91    2128 @*
13   D27C   2133 101G 10-98    2133 @*
05   B12C   2134 @BSQ*
0B   B12C   2135 @*
14   D27C   2140 101A @*
14   D27C   2140 101LT3 @*
13   D27C   2141 100LT2 10-98    2141 @*
13   D27C   2141 101SP88 10-98    2141 @*
0B   B12C   2144 @*
13   D27C   2210 101LT3 10-98    2210 @*
14   D27C   2211 101A @*
14   D27C   2211 101ST1 @*
05   N79E   2218 @DBNS*PLZ HAVE PTL SUPV 10-1 OPS IN REGARDS----OP
     S---WP
0B   D41C   2218 @B*
05   D27C   2219 @*------SGT ADV---TO 10 OPS-----D1673
0B   D27C   2219 @*
05   B12C   2226 @BSQ*
33   D27C   2227 101A 10-98    2227 @*
05   D27C   2248 @DBNVEHSBSQTRN   Z MU*AUTH OF 101ST1 TERMINATING L
     EVL 1 MOB ...D2288
05   D41C   2248 @DBNVEHSTRN    MU*
05   D45C   2249 @*TERM XMITED COMM B-Cw1118
05   D43C   2249 @*----XMXMXM TERMINATION OVR CW1---D1306

0A   D45C   2249 @DEF*
0B   D43C   2249 @*
05   D41C   2249 @*-----XMMMITED TERMINATION OVER CW SOD--C-W-D150
     2
0B   D41C   2249 @B*
05   D59C   2249 @*---------XMITTED LEVEL 1 TERM OVER QNS TA----T
     D 1503
```

D000064

D000065

```
0B  D59C  2249 @*
05  D44C  2249 @*XMT LEVEL 1 MOBIL...TERM......(CW 2 ...CW1261
0B  D44C  2249 @*
05  D116C 2249 @*XMMTD CW3.. LVL 1 MOB TERMINATED... CWD2199
0B  D116C 2249 @*
05  D42C  2250 @*XMTD--TERMINATED--HWY--CW 1273
0B  D42C  2250 @*
05  D27C  2257 @*SPCT SHABAZZ NTFD ...D2288
05  B12C  2258 @*...RC PPCT DILLARD..NTFD..SPCT SHABAZZ
05  D27C  2258 @*XMITED ..LEVL 1 TERMINATION OVER ZONE 27 .....D
    2288
0B  D27C  2259 @*
0B  B36   2259 @*
05  D28C  2259 @*---LVL 1 MOB TERMINATION XMITED---1X OVER ZONE
    28--D 1044

05  D29C  2301 @*-------TERM XMITTED OVER ZONE 29 D1566
05  D30C  2303 @*------TERM OVER ZONE 30 1X--D2253
05  D27C  2304 @*XMTTED TERM OF LEVEL 1 MOB OVER ZONE 27---D2101
    --
05  B12C  2306 @*...TERMIANION..XMT OVR ALL...QNS SOUTH...N..QNS
    TA..FREZ..SPCT SHABAZZ
0B  B05C  2324 @*
05  B05C  2324 @WS  MU*
05  D45C  2325 @*--XMITTED TERMINATION OVR CW SPE COMM B---CW240
    7---
0B  D45C  2325 @*
05  D41C  2325 @*..XMT TERMINATION OVER SOD CW 1272
0B  D41C  2325 @B*
05  D44C  2326 @*XMITTED LEV 1 TERM OVER CW 2 CW1183
0B  D44C  2326 @*
05  D43C  2326 @*XMT TERM LEVEL 1 MOB SPEC COMM A CW 1 CW 1575
0B  D43C  2326 @*
05  D42C  2326 @*------------XMITTED--TERMINATION---HWY----CW13
    21
0B  D42C  2326 @*
0B  B12C  2329 @*
05  B12C  2329 @BSQ*

05  D116C 2329 @*XMTD ..TERMINATION LVL 1 OVER CW 3 CW 1621
0B  D116C 2329 @*
05  B05C  2332 @*---LVL 1 MOB TERM XMTTD OVER ALL CITYWIDE FREQ-
    --SPCT SALEEM
0B  B05C  2332 @*
05  D27C  0037 @*-((((( AUTH OF 101 MIDNIGHT SGT STS 4X12 JOB TH
    EY STILL OUT STS VIA LL THAT SHE WILL HAVE 4X12
05  D27C  0037 @BSQ*-SGT 10-3 CENTRAL IN REGARDS TO FF IF ANY BU
    T THEY STILL OUT D 1602
0B  B12C  0050 @*
05  B12C  0050 @BSQ*
0B  D45C  0052 @*
05  D27C  0121 @D*-
13  D27C  0124 101ST1 10-93C  0124 @*93Q..AUTH OF MIDNIGHT DESK
    SGT STS VIA LL GAVE FF D 1602
0A  D27C  0127 @DEF*
0B  B12C  0205 @*
0B  B12C  0211 @*
```

D000065

# EXHIBIT F

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF QUEENS:  CRIMINAL TERM, PART K-21
 2    ----------------------------------------X
      THE PEOPLE OF THE STATE OF NEW YORK,
 3                               Ind. No.  2723/2014

 4         -against-            HEARING

 5    RASHAUN FERGUSON,

 6                         Defendant.
      ----------------------------------------X
 7
                              March 31, 2017
 8                            Queens Supreme Court
                              125-01 Queens Boulevard
 9                            Kew Gardens, New York 11415

10    B E F O R E :
                              CHARLES S. LOPRESTO,
11                            Justice, Supreme Court

12

13    A P P E A R A N C E S :

14    For the People:

15    THE HONORABLE RICHARD A. BROWN,
      District Attorney, Queens County
16
      BY: ROSEMARY CHAO, ESQ.
17        Assistant District Attorney

18
      For the Defendant:
19
      ROBERT DIDIO, ESQ. - Private
20    80-02 Kew Gardens Road
      Kew Gardens, NY
21

22

23

24                            DONNA CONTI,
                              SENIOR COURT REPORTER
25
```

D000146
10

Det. Gildea - People - Direct

1           THE COURT OFFICER:  The People call Detective

2     Michael Gildea,  last name G-I-L-D-E-A, first name

3     M-I-C-H-A-E-L, shield number 465 of the Violent Crimes Task

4     Force, N.Y.P.D.

5           THE COURT:  People, you may inquire.

6           MS. CHAO:  Thank you, Judge.

7     DIRECT EXAMINATION

8     BY MS. CHAO:

9        Q    Detective Gildea, approximately how long have you been

10    employed by the New York City Police Department?

11       A    About 16 years.

12       Q    And of those 16 years, approximately how long have you

13    been a detective for?

14       A    About ten of those years.

15       Q    What command are you currently assigned to?

16       A    F.B.I./N.Y.P.D. Violent Crimes and Bank Robbery Task

17    Force.

18       Q    And approximately how long have you been at that

19    command?

20       A    Coming up on three years.

21       Q    And prior to that where were you assigned?

22       A    Major Case Squad.

23       Q    And about how long have you been assigned to the Major

24    Case Squad?

25       A    About a year.

     D000146

1     Q     And prior to that?

2     A     The 1-0-1 Detective Squad.

3     Q     And how long were you assigned to the 1-0-1 Detective

4     Squad?

5     A     I believe about like five, six -- probably about seven

6     years.

7     Q     Now, directing your attention to May 3rd, 2013.  Do you

8     recall that day?

9     A     Yes, I do.

10    Q     And on that day were you working?

11    A     I was.

12    Q     And on that day at approximately shortly after 8 p.m.,

13    did there come a time when you received a radio run?

14    A     Yes.

15    Q     And pursuant to the radio run, did you respond to the

16    vicinity of 54-30 Beach Channel Drive?

17    A     I did.

18    Q     Is that in the county of Queens?

19    A     Yes, it is.

20    Q     And when you arrived at that location, can you tell the

21    Court what you observed.

22    A     There was numerous armed marked vehicles on the scene.

23    There was crime scene tape.  I observed a male black lying on

24    the -- like the courtyard or the walkway into the buildings.

25    There was E.M.S. personnel on the scene.  And those were my

D000148

12

Det. Gildea - People - Direct

1    initial observations.

2        Q    And with respect to the male black who was lying on the

3    ground, fair to say that he was deceased?

4        A    I --

5        Q    Well, withdrawn.  Withdrawn.  Withdrawn.

6             Did there come a time when you learned the name of the

7    individual that was lying on the ground?

8        A    Yes.

9        Q    And what was name?

10       A    Keith Gulley.

11       Q    Did there come a time when you learned --

12            THE COURT:  Could you repeat that?  It's Keith --

13            THE WITNESS:  Gulley.  I believe it's spelled --

14            MS. CHAO:  It's K-E-I-T-H, and Gulley is

15   G-U-L-L-E-Y.

16       Q    And is it fair to say that there came a time that you

17   learned that he was deceased?

18       A    Yes.

19       Q    And did you also learn that there was a nonfatal

20   shooting?

21       A    Yes.

22       Q    And for purposes of the record, did there come a time

23   when you learned the name of the victim of the nonfatal

24   shooting?

25       A    Yes.

JA-084<sup>dc</sup>

D000148

D000149

13

Det. Gildea - People - Direct

1    Q    And can you refer to that witness as witness number

2    one?

3    A    Yes.

4    Q    Now, later on that day at approximately 9:15 p.m. did

5    there come a time when you spoke to any civilian witnesses?

6    A    Yes.

7    Q    And for purposes of this record, the civilian witness

8    is an individual known to the New York City Police Department

9    and the District Attorney's Office?

10    A    Yes, it is.

11    Q    And with respect to that civilian witness, can you

12    refer to that witness as witness number two?

13    A    Yes.

14    Q    Now, when you spoke to witness number two, can you tell

15    us in sum and substance what witness number two said?

16    A    Witness number two informed us that they were doing

17    work to their auto on the street opposite the incident location.

18    The witness was doing work to the engine compartment.  And the

19    witness described a gray Ford Escape pulled onto the block when

20    the witness was doing work to their car.  The Ford Escape

21    parked.  The witness noted that a male black exited the vehicle,

22    took a couple steps and then returned back to that same Ford

23    Escape.

24         The witness then describes hearing someone say, "take

25    your shoes off".  The witness then reports seeing that same

D000149

1    initial male black that exited the vehicle re-exit the vehicle

2    with no shoes on and cross over Beach Channel Drive and go

3    towards the direction of the housing projects.

4           The witness then reports hearing, I believe, a couple

5    of gunshots.  And the witness now again sees the same male black

6    that originally exited the auto with no shoes run back to the

7    same Ford Escape, enter the Ford Escape and the Ford Escape

8    flees the vicinity.

9    Q    Now, when you refer to the housing complex, is that the

10   Edgemere Housing Complex?

11   A    Yes, it is.

12   Q    Is that the same housing complex in which Mr. Gulley

13   got shot?

14   A    Yes, it is.

15   Q    As well as the nonfatal witness?

16   A    Yes.

17   Q    Okay.  Now, with respect to the individual that yelled,

18   "take off your shoes," did witness two indicate where that

19   witness was, where that person was seated when he yelled, "take

20   off your shoes"?  Was he the driver or the front passenger?

21          MR. DIDIO:  Objection.  It's assumes facts not in

22       evidence.

23          THE COURT:  It is a little leading.

24          Go ahead.  Ask it in a different way.

25   Q    The witness who indicated -- who yelled, "take off your

1   shoes".

2       A    The witness indicated that -- he noted -- the witness

3   noted the driver of the vehicle.  The witness believed to be the

4   driver who made that statement and gave a description and a

5   nickname of that person.

6       Q    And what was that nickname of the driver that witness

7   number two knew the driver to be?

8       A    The witness referred to that person as "Man".

9       Q    And did --

10              THE COURT:  Man?

11              THE WITNESS:  Man, like M-A-N.

12              THE COURT:  M-A-N.  Okay.

13      Q    And did witness number two also indicate where witness

14  number two believes "Man" resides?

15      A    I believe he did.  I don't recall.  The witness just

16  indicated that the witness sees that person on a routine basis

17  and gave, you know, locations to where that person also

18  frequents as well I believe.

19      Q    Detective Gildea, did you complete DD5 number four with

20  respect to your interview of witness number two?

21      A    I'd like to just confirm the number.

22              THE COURT:  You may look.

23              (Short pause.)

24      A    Yes, DD5 number four was prepared by myself.

25      Q    Okay.  And does DD5 number four refresh your

1    recollection as to whether or not witness number two indicated

2    where he -- where that witness believed "Man" resides?

3         A    Just one second.

4              (Short pause.)

5         Yes.

6         Q    And where did witness number two indicate that "Man"

7    resides?

8         A    In another complex that's named Ocean Village.

9         Q    And just for the record, based upon police

10   investigation, did there come a time when you located an

11   individual known as "Man" who resided in that complex?

12        A    We had identified who "Man" is, yes.

13        Q    Okay.  And who did the Police Department identify "Man"

14   to be?

15        A    Henry McCummings.

16             THE COURT:  Henry McCummings?

17             THE WITNESS:  Yes.

18             THE COURT:  Do you know how to spell it?

19             THE WITNESS:  Yes, your Honor.

20   M-C-C-U-M-M-I-N-G-S.

21             THE COURT:  G-S?

22             THE WITNESS:  Yes.

23             THE COURT:  Thank you.

24        Q    And was a photo of Henry McCummings shown to witness

25   number two?

Det. Gildea - People - Direct

1    Q    And can you identify an article of clothing that

2    Mr. Ferguson is wearing?

3    A    Yes.  The male black in the front row with the light

4    colored shirt.

5            THE COURT:  The witness has indicated

6    Mr. Ferguson.

7            MS. CHAO:  Thank you, Judge.

8    Q    And with respect to that information, what did you or

9    your fellow officers do with respect to that information?

10   A    We tried to gain further information from these quote

11   unquote witnesses but they became very uncooperative to the

12   point where they had to be removed from the precinct.

13           Based upon the information that they provided, along

14   with the nickname, I felt confident that we knew who we were

15   dealing with.  However, we spoke with our intel cops, our

16   anti-crime cops, although they reported having numerous car

17   stops and seeing Rashaun Ferguson in the Ford Escape.

18           We were given a plate number.  We ran some checks and

19   we came up with the vehicle being registered to Rashaun

20   Ferguson's mother Monet Pierre (ph.).  And after conducting

21   checks into Monet Pierre, we verified that she was, in fact,

22   Rashaun Ferguson's mother.

23   Q    Do you recall the license plate to the vehicle?

24   A    It's in my notes somewhere.  I don't recall from

25   memory.

JA-089 <sup>dc</sup>

1      Q    Is it in your DMV check?

2      A    Yes.

3      Q    If you could just -- would that refresh your

4  recollection?

5      A    Yes.

6      Q    If you could just refer to it.

7               THE COURT:  You may look at it.

8               THE WITNESS:  Thank you.

9               (Short pause.)

10     A    Yes.  It's going to be G, George; D, David; X, X-rays;

11  7434.

12     Q    And can you just give us the year, the color and the

13  make of the vehicle?

14     A    I have to go to another page.

15               (Short pause.)

16          It's a 2003 Ford Escape and as per DMV records, it's

17  indicated as gray.

18     Q    And was the registered owner indicated as Monet

19  Pierre?

20     A    Yes.

21     Q    And was there also an address for Ms. Pierre?

22     A    I have to go to another record.

23               (Short pause.)

24          The address is listed as 155-01 71st Avenue, Apartment

25  2-A, in Queens, New York.

21

Det. Gildea - People - Direct

1          THE COURT:  What apartment number?

2          THE WITNESS:  2-A as in Adam.

3     Q    Okay.  And just for the record, the Edgemere housing

4    complex in which the crime refers, is that also in Queens

5    County?

6     A    Yes.

7     Q    And the crime occurred also in Queens County?

8     A    Yes.

9     Q    Now, with respect to locating the car information as to

10   Ra -- or the individual you knew as Rashaun Ferguson -- did you

11   then prepare a photo array?

12    A    Yes.

13    Q    Okay.  Now, directing your attention to DD5 number 16,

14   on May 4th, 2013 at approximately 2:30 -- 0230 hours, did there

15   come a time when you showed that photo array to any civilian

16   witnesses?

17    A    Yes.

18    Q    And would it be fair to say that you showed that photo

19   array to witness number two who is known to the New York City

20   Police Department and the District Attorney's Office?

21    A    That's correct.

22    Q    And who were you with when you showed that photo array

23   to witness two?

24    A    Just can I -- I would like just a -- I would like to

25   check my paperwork.  I believe I was with -- I believe I was

JA-091 <sup>dc</sup>

1    with my partner.

2             THE COURT:  Yes, you may.

3    A    Sixteen, you said?

4    Q    Yes.

5             (Short pause.)

6    A    Yes.  I was with -- I was with my partner Quinn Jaeger.

7             THE COURT:  Repeat that?

8             THE WITNESS:  Quinn Jaeger, J-A-E-G-E-R.

9    Q    And just so the record is clear, that photo array that

10   was shown to witness two, that was shown to witness two at a

11   location known to the New York City Police Department and the

12   Queens District Attorney's Office?

13   A    Yes.

14   Q    And it's in the county of Queens?

15   A    Yes.

16   Q    And do you recall what position Rashaun Ferguson, the

17   defendant, was in?

18   A    Position number one.

19   Q    And how many people were situated in the photo array?

20   A    Six.

21   Q    And when you showed the photo array to witness number

22   two, can you tell us what questions you asked witness number

23   two?

24   A    I presented --

25   Q    Do you recognize anyone?

JA-092 dc

1    A    Well, I presented the photo array sheet.  I asked the

2    witness -- you know, I read the instructions and I informed him

3    further that I'm going to show you pictures.  Do you recognize

4    anyone?

5         The witness indicated position number one.

6         I asked, you know, where do you recognize position

7    number one from?

8         The witness indicated, that's the person that they saw

9    exit the Ford Escape and then run back to the Ford Escape with a

10   gun in his hand after the shots were fired and then flee the

11   area.

12             MS. CHAO:  Your Honor, can I just approach with

13        Mr. Didio?

14             THE COURT:  Yes.

15             (Whereupon, an off-the-record discussion was held

16        by and between counsel and the Court at the sidebar.)

17             MS. CHAO:  Your Honor, I ask that People's 1 be

18        deemed marked for identification.

19             THE COURT:  It may be deemed for identification.

20             (Whereupon, a photo array was deemed marked for

21        identification as People's Exhibit 1 by the Court.)

22             THE COURT OFFICER:  People's Exhibit 1 deemed

23        marked.

24             Do you want me to show this to the witness?

25             MS. CHAO:  Yes, please.

D000161
25

Det. Gildea - People - Direct

1     MR. DIDIO: No, Judge.

2     THE COURT: It's admitted into evidence.

3     (Whereupon, the redacted copy of the original

4  photo array referred to was deemed marked in evidence as

5  People's Exhibit 1 by the Court.)

6     MS. CHAO: I'm sorry, Officer, if the detective

7  could just be shown that photograph?

8     THE COURT OFFICER: (Complies.)

9  Q  If you could just tell us who wrote what on that,

10 Detective Gildea?

11  A  This is all written by the witness.

12  Q  Okay. When you refer to "the witness", it's witness

13 number two?

14  A  Correct.

15  Q  Now, Detective Gildea, on the same date, May 4th, 2013

16 at approximately 10 a.m., were you at a hospital in Queens

17 County?

18     THE COURT: Would you please repeat that date one

19  more time?

20     MS. CHAO: Sure. It's May 4th, 2013.

21     THE COURT: Okay.

22     MS. CHAO: At approximately 10 a.m.

23     THE COURT: Okay.

24  Q  Were you at a hospital in Queens County?

25  A  Yes, I was.

JA-094<sup>dc</sup>

D000161

1    Q    And when you were at the hospital in Queens County, did

2    you have an opportunity to show the same photo array to witness

3    number one?

4    A    Yes.

5    Q    And can you tell us what happened?

6    A    Witness number one was fairly uncooperative, would not

7    provide any details of the incident, wouldn't make any further

8    statements.  Upon viewing the photo array, just kind of said --

9    I forget exactly what he said.  He just dismissed it after

10   viewing it and really was just uncooperative.

11          MR. DIDIO:  Judge, I'm going to object to

12        "uncooperative".  I'm going to ask that the witness describe

13        what he means by "uncooperative".  What were the actions?

14        What were the words?

15          THE COURT:  Well, you have some cross-examination

16        here so I'm going to allow it for now.

17   Q    Now, Detective Gildea, just for the record, witness

18   number one was the victim, that was the victim of a nonfatal

19   shooting?

20   A    That's correct.

21   Q    Now, with the identification of defendant Ferguson made

22   from the photo array by witness number two, did there come a

23   time when that -- when you generated what is called an "I" card

24   for Rashaun Ferguson?

25   A    Yes.

1    Q    Did you also reach out to Detective Richard Thompson of

2    the Violent Felony Squad?

3    A    Yes.

4    Q    What was the purpose of reaching out to Detective

5    Thompson?

6    A    Once we have the person or subject identified in a

7    nonfatal shooting or homicide, we utilize the Violent Felony

8    Squad Apprehension Team, which is part of the Warrant Division,

9    to assist us in locating and apprehending the identified

10   subject.

11   Q    Now, directing your attention to approximately two days

12   later, May 6th, 2013 at approximately 8 in the morning to about

13   11 a.m., did there come a time when you responded to the

14   vicinity of 155-01 71st Avenue, Apartment 2-A, in the county of

15   Queens?

16   A    Yes.

17   Q    And was Detective Thompson from the Violent Felony

18   Squad also present?

19   A    Yes.

20   Q    And can you tell us what you observed?

21   A    We were there for quite a while.  Detective Thompson

22   being part of the Warrant Squad was tasked with apprehending or

23   taking into custody the subject.

24        We knocked -- well, Detective Thompson knocked on the

25   door several times.  We ascertained there were persons inside of

1    that location.

2            After Detective Thompson engaged the individuals inside

3    in numerous conversations, one of the occupants came to the

4    door, opened the door and stepped outside of the apartment to

5    further engage Mr -- to further engage Detective Thompson in

6    conversation.  That individual was identified as Rashaun

7    Ferguson and was immediately placed into custody.

8        Q    And do you recall who placed Rashaun Ferguson under

9    arrest?

10       A    I believe his first interaction was with Detective

11   Thompson.  If I remember correctly, at that time I walked up

12   Detective Thompson and Detective Thompson kind of pushed him off

13   or passed him off to me.  And then I placed him in handcuffs.

14       Q    Now, Detective Gildea, later on that day or at

15   approximately -- on May 7th, 2013 at 12:01 a.m., which is

16   considered the following day, did there come a time when you or

17   your fellow officers placed Mr. Ferguson in what's called a

18   line-up?

19       A    Yes.

20       Q    And where was the line-up conducted?

21       A    The line-up was conducted in the 1-0-1 Detective Squad

22   area.

23       Q    And were you and your partner Detective Jaeger present

24   for that line-up?

25       A    Yes.

1    Q    Can you tell us how many people were seated in the

2    line-up?

3    A    I believe it was six in total.

4    Q    And do you recall who was in -- do you recall who was

5    in seat position number four?

6    A    Yes, I do.

7    Q    Who was in seat position number four?

8    A    Rashaun Ferguson.

9    Q    Now, for that line-up was there an A.D.A. present?

10    A    Yes.

11    Q    And was it A.D.A. Fraser?

12    A    I believe so.

13         THE COURT:  Frazier?

14         MS. CHAO:  Yes.

15         THE COURT:  How do you spell that?

16         MS. CHAO:  F-R-A-S-E-R.

17         THE COURT:  Okay.

18    Q    Now, was Mr. Ferguson's attorney Scott Brettschneider

19    present -- withdrawn.

20         Is it fair to say that Mr. Ferguson's attorney Scott

21    Brettschneider was not present at the line-up?

22    A    Yes.  That's correct.  There was no attorney that was

23    present.

24    Q    Okay.  But did Mr. Brettschneider or the defendant make

25    a request for defendant Ferguson to be seated in position number

1   four?

2      A      One of them made the request.  I can't recall as to

3   who.

4                    THE COURT:  When you say "one of them", what do

5      you mean, the defendant or his lawyer?

6                    THE WITNESS:  Yes.

7                    THE COURT:  Okay.

8      Q      Now, did you have witness number two view the line-up?

9      A      Witness number two is the?

10     Q      Witness number two is the --

11     A      Civilian witness?

12     Q      Civilian witness, yes.

13     A      Yes.  Witness number two viewed the line-up.

14     Q      And can you tell us what occurred?

15     A      Upon viewing the line-up, it was apparent that witness

16  number two was unwilling to make an identification.

17                   MR. DIDIO:  Objection.

18                   THE COURT:  Well, strike "apparent".

19                   He was unwilling to make an I.D.?

20                   THE WITNESS:  Yes, your Honor.

21                   THE COURT:  Okay.

22     Q      And can you tell us the circumstances in which -- based

23  on what he said or did that made him unwilling to make an

24  identification?

25     A      Sure.

D000166

1          The witness made several references during the official

2    viewing to position number four.

3     Q    Again, that's the defendant Rashaun Ferguson?

4     A    Yes.

5          The witness then made a quick reference to position

6    number five.  But upon immediately asking for position number

7    five to stand up, he immediately dismissed position number five.

8    The witness then again made a reference to position number four.

9     Q    And that's the defendant Rashaun Ferguson?

10    A    Yes.

11         We then concluded the line-up.  And upon exiting the

12   official line-up viewing room, the witness then made reference

13   to position number four's weight.  And I believe the witness had

14   told me that position number four either gained or lost weight

15   since the shooting.  And then apologized to me saying, "I just

16   can't be the only person doing this.  I'm sorry.".

17    Q    Did that witness, witness number two, also indicate

18   anything about position number four -- the defendant's skin

19   tone?

20    A    I believe there was a reference to that, that position

21   four looks darker or lighter than on that evening as well.

22         MS. CHAO:  Your Honor, I ask that People's 2 be

23   deemed marked for identification.

24         THE COURT:  Show it to defense counsel.

25         MS. CHAO:  (Handing.)

JA-100 dc                                    D000167

1    BY MS. CHAO:

2        Q    Now, Detective Gildea, it's fair to say that witness

3    number two did not identify Rashaun Ferguson who was seated in

4    position -- seat position number four, that you then -- that you

5    or the Police Department then voided Mr. Ferguson's arrest?

6        A    Yes.

7        Q    Now, directing your attention to the same day, May 7th,

8    2013.  Did there come a time when you spoke to the spouse of

9    witness number one, who is the nonfatal shooting victim?

10                THE COURT:  What date was that again?

11                MS. CHAO:  May 7th, 2013.

12                THE COURT:  Okay.

13       A    Yes.

14       Q    And with respect to the -- with respect to the

15   conversation you had with -- the conversation that you had with

16   witness number one's spouse, can you tell us the sum and

17   substance of the conversation?

18       A    Yes.  I believe I ascertained their whereabouts and

19   asked to meet with the witness, speak with the witness, which

20   was agreed to.  And I set up a date and time to go and visit

21   with witness number one.

22       Q    And is it fair to say that that occurred approximately

23   two days later on May 9th, 2013?

24       A    Yes, it is.

25       Q    And at approximately 5:40 p.m. were you at a location

41

Det. Gildea - People - Direct

1    known to the District Attorney's Office and the New York City

2    Police Department when you spoke to witness number one?

3        A    Yes.

4        Q    And, again, were you with your partner Detective

5    Jaeger?

6        A    Yes, I was.

7        Q    And in sum and substance, can you tell us what witness

8    number one then informed you?

9        A    The witness informed me they, in fact, could I.D. the

10   shooter.

11       Q    And when you say "they", is that one person or two

12   people?

13       A    The witness.  The one person.

14       Q    Okay.

15       A    That they could I.D. the sheeter in regards to this

16   incident.  The witness had informed us that they -- that they

17   did not identify the first time because they believed the other

18   person, the victim Mr. Gulley, would have survived his wounds

19   and had he survived, the street code is to not snitch and not

20   inform the police of who is responsible for various crimes.

21            Due to the fact that Mr. Gulley lost his life as a

22   result of his injuries, the witness now felt guilty and

23   compelled to give his account as to what happened that day.

24       Q    And what did witness number one state to you in sum and

25   substance as to what happened that day?

JA-102<sup>dc</sup>

1      A      The witness, I believe, told me they were walking

2   exiting the building.  A male came up, shot a couple of times

3   and the witness, Mr. Gulley, was struck.  And I believe the

4   witness saw the subject flee.  And that was about it.

5      Q      And witness number one also stated that witness number

6   one was struck?

7      A      Yes.

8      Q      With that information did you show witness number one a

9   photo array?

10     A      I did.

11     Q      The photo array that you showed witness number one, how

12  many people were positioned in the photo array?

13     A      Six.

14     Q      And who was in position number one?

15     A      I'd like to see the photo array before I --

16             MS. CHAO:  Your Honor, I ask that People's 3 be

17  deemed marked for identification.

18             THE COURT:  All right.  People's 3 is deemed

19  marked for I.D.

20             (Whereupon, a photo array referred to was deemed

21  marked for identification as People's Exhibit 3 by the

22  Court.)

23             THE COURT OFFICER:  People's 3 marked for

24  identification being shown to the witness (handing).

25     Q      Detective Gildea, who was in the seat position or

1    picture photo number one?

2        A    Rashaun Ferguson.

3        Q    And People's 3 that's marked for identification, do you

4    recognize it?

5        A    I do.

6        Q    Do you recognize it to be the photo array that was

7    shown to witness number one?

8        A    I do.

9        Q    And is that photo array a photocopy of the original

10   photo array?

11       A    Yes, it is.

12       Q    Does that copy of the photo array fairly and accurately

13   depict the photo array that was shown back on May 9th, 2013?

14       A    Yes, it does.

15       Q    Is that photocopy an exact replica of the original?

16       A    Yes, it is.

17            MS. CHAO:  And, your Honor, just for the record,

18       the People showed the Court and Mr. Didio the original photo

19       array that's redacted with the Post-it and this photo array

20       has been redacted with a china marker.

21            At this time I'm moving into evidence People's 3

22       for identification.

23            THE COURT:  Any objection?

24            MR. DIDIO:  Not for the purposes of the hearing,

25       Judge.

<sup>dc</sup>

1          THE COURT:  Okay.  It's in evidence.

2          (Whereupon, the People's Exhibit 3 for

3     identification, the photo array referred to, was deemed

4     marked in evidence as People's Exhibit 3 by the Court.)

5          THE COURT:  People's 3 deemed in evidence.

6     Q    Detective Gildea, when you showed witness number one

7     the photo array, can you tell us what happened?

8     A    Yes.  The witness pointed to position number one and

9     indicated that that was the person responsible for the shooting,

10    the person that they observed that day.

11    Q    And there's handwritten statements on the photo array.

12         Who wrote those statements?

13    A    Those were written by the witness.

14    Q    And, again, witness number one?

15    A    Correct.

16    Q    And just for the record, Detective Gildea, would that

17    information -- withdrawn.

18         When you spoke to witness number two initially and

19    witness number two made an identification of the defendant

20    Ferguson in the photo array, did you generate at some point an

21    "I" card?

22    A    I did.

23    Q    And did you ever cancel out an "I" card prior to

24    witness number one viewing the photo array?

25    A    I don't recall.  I don't recall with certainty if I

Det. Gildea - People - Direct

1   canceled it or not.

2       Q    Did there come a time after witness number one viewed

3   the photo array and identified defendant Ferguson that you then

4   reached out -- that you or your colleagues reached out to

5   Detective Thompson from the Violent Felony Squad?

6       A    After witness one made a positive, yes.

7       Q    And can you tell us in sum and substance what you

8   informed Detective Thompson?

9       A    Again, the information was there was now a positive

10  identification of a subject that's now wanted for a violent

11  crime which should be assigned to their unit to locate and

12  apprehend.

13      Q    Would it be fair to say that that would be the second

14  time that Detective Thompson would have to attempt to

15  apprehend Rashaun Ferguson?

16      A    Yes.

17      Q    At the time that Detective Thompson was given that

18  information, the "I" card as to Rashaun Ferguson was not

19  canceled, correct?

20      A    At the time I gave Detective Thompson that information,

21  the "I" card was not canceled?

22      Q    Yes.

23      A    It was probably still active.  I don't --

24      Q    Detective Gildea --

25           MR. DIDIO:  I'm sorry, I didn't hear that

1          It was prepared by Detective Jaeger, yes.

2               THE COURT:  Okay.

3     Q     And, Detective Gildea, just in reviewing DD5 number 38,

4     did there come a time you learned when Rashaun Ferguson was

5     apprehended a second time?

6     A     Yes, I believe -- one second.  One second.

7               (Short pause.)

8          January 27th of 2014.

9     Q     Is it fair to say the "I" card was canceled after his

10    apprehension, his second apprehension, which was on January 27th

11    of 2014?

12    A     Yes.

13              MS. CHAO:  Thank you, your Honor.

14              I have no further questions.

15    CROSS-EXAMINATION

16    BY MR. DIDIO:

17    Q     Good morning, Detective.

18    A     Good morning.

19    Q     Now, you indicated that you received a radio

20    transmission in regards to this case on the date of the

21    shooting, correct?

22    A     Yes.

23    Q     What was the content of that transmission, do you

24    recall?

25    A     I think it was "male shot".

# EXHIBIT G

SF Rosenkilde R

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CASE# 1:17-cv-06871-ENV-SJB

-------------------------------------------x

RASHAUN FERGUSON,

Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE JAEGER, DETECTIVE

MICHAEL GILDEA SHIELD #465 and UNIDENTIFIED

MEMBERS OF THE NYPD all sued herein in their

individual capacities,

Defendants.

-------------------------------------------x

116 West 23rd Street

New York, New York

February 26, 2019

11:17 a.m.

Deposition of the Defendant

DETECTIVE MICHAEL GILDEA, pursuant to Order,

before Robert S. Barletta, a Notary Public of the

State of New York.

1                           Gildea

2        A.    Yes.

3        Q.    When you spotted the surveillance

4   cameras, did you assess that they would not have

5   captured anything relevant to the incident?

6        A.    Yes.

7        Q.    How did you make that assessment?

8        A.    The cameras we observed recessed from

9   Beach 56th Street so far beyond the point that

10  they could not capture what would have happened as

11  described by the witness and the crime location.

12  The camera would have to shoot out to the block up

13  north in order to be able to capture the incident.

14  If you can't see the camera from the incident, the

15  camera can't see the incident.  The angle of the

16  camera was also pointed in the direction at that

17  time what appeared to be towards the recessed

18  courtyard of the school.

19       Q.    Again, you never saw the video?

20       A.    No.

21       Q.    Was it solely from looking at camera you

22  determined it couldn't have captured footage

23  relevant to your investigation?

24       A.    Solely knowing where the camera is

25  placed and knowing where the crime incident

1                          Gildea

2    handwriting is the witness' signature?

3        A.    Yes.

4              MR. LICHTMACHER:  Go to the last page.

5        That is the photo array.

6        Q.    Correct?

7        A.    Yes.

8        Q.    Who put together the photo array?

9        A.    Well, "put together" is a vague term in

10   terms of a photo array.

11             MR. LICHTMACHER:  Well, okay.  There is

12       a photo array with six pictures.

13       Q.    Did you participate in obtaining the six

14   photos?

15       A.    Yes, I did.

16       Q.    How did you do it?

17       A.    You generate the subject photos and the

18   computer generates them based upon information and

19   images, similar in age suitable for a photo array.

20       Q.    Similar in age and race?

21       A.    Similar in many different categories.

22       Q.    Age and race are two of the categories?

23       A.    I don't want to speculate how the system

24   works.

25             MR. LICHTMACHER:  Looking at this photo

1                        Gildea

2        Q.   Now, who was present for this viewing?

3        A.   Myself, Lieutenant Masterson, Sergeant

4   Cummings, and I want to say Kristen something or

5   from the Queens DA.

6        Q.   There was a member of the DA's office

7   present?

8        A.   Yes.

9        Q.   How about number six?  Take a look at

10  the photo array.  Who was present for the photo

11  array?  I am handing you Plaintiff's Exhibit 6

12  again.

13       A.   I believe Quinn was there.  I was there.

14       Q.   Was there an attorney there?

15       A.   No.

16       Q.   Was the DA there?

17       A.   No.

18       Q.   Just you and Quinn and the witness, or

19  just you and the witness?

20       A.   Me and Quinn.

21       Q.   You and Quinn and the witness, and no

22  other witnesses; correct?

23       A.   No.

24       Q.   Did the witness Orris Wheeling explain

25  to you why he refused to sign Document 7?

1                      Gildea

2        A.    Yes.

3        Q.    What did he tell you?

4        A.    "I can't be the only one doing this."

5        Q.    Can't be only one, saying this isn't the

6    guy?  Is that what he told you?

7        A.    No, I can't be the only one testifying

8    or identifying the guy.

9             MR. LICHTMACHER:  Mark this Plaintiff's

10        Exhibit 8.

11             (Plaintiff's Exhibit 8, Document Bates

12        stamped D-875 through 877, marked for

13        identification.)

14        Q.    Take a moment to review it and let me

15    know when you are ready.

16        A.    Okay.

17        Q.    Ready?

18        A.    Yes.

19        Q.    Do you recognize this document?

20        A.    Where are the 41 pages?

21        Q.    It is part of a document?

22        A.    That is what it says.

23             MR. LICHTMACHER:  We are looking at

24        three pages of this document.

25        Q.    Have you ever seen this document before?

# EXHIBIT H

1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2   -----------------------------------------------X
     RASHAUN FERGUSON,
3
                             PLAINTIFF,
4
         -against-          Case No:
5                      17-CV-06871(ENV)(SJB)

6   THE CITY OF NEW YORK, DETECTIVE JAEGER, DETECTIVE
     MICHAEL GILDEA SHIELD #465 and UNIDENTIFIED
7   MEMBERS OF THE NYPD all sued herein in their
     individual capacities,
8
                       DEFENDANTS.
9   -----------------------------------------------X

10

11               DATE:  February 25, 2019

12               TIME:  11:01 A.M.

13

14

15         DEPOSITION of the Plaintiff, RASHAUN FERGUSON,

16   taken by the Defendants, pursuant to a Notice and to the

17   Federal Rules of Civil Procedure, held at the offices of

18   the New York City Law Department, 100 Church Street, New

19   York, New York 10007, before Joanne Capparelli, a Notary

20   Public of the State of New York.

21

22

23

24

25

R. FERGUSON

1    Q.    The last name?

2    A.    Curry.

3    Q.    Is it C-U-R-R-Y?

4    A.    Yes.

5    Q.    Where were you born?

6    A.    In Far Rockaway, Queens.  I mean Far Rockaway,

7    New York.

8    Q.    Who raised you?

9    A.    My mother.

10   Q.    What is your mother's full name?

11   A.    Monet Pierre, M-O-N-E-T  P-I-E-R-R-E.

12   Q.    Your mother is still alive; right?

13   A.    Yes.

14   Q.    What is your father's name?

15   A.    My name.  I'm a junior.

16   Q.    You said "my name" so Rashaun?

17   A.    Rashaun Ferguson.

18   Q.    Is your father still alive?

19   A.    Yes.

20   Q.    Are your parents together or separated?

21   A.    Separated.

22   Q.    Do you have any brothers or sisters?

23   A.    Yes.  I have four sisters.

24   Q.    What are their names?

25   A.    Amiya.  Zamiya.

R. FERGUSON

1    your household either own or lease a car?

2        A.    In May?

3        Q.    Yes.

4        A.    Say it again.

5        Q.    In May of 2013 did anyone in your household

6    including you, your mother --

7        A.    My mother.

8        Q.    Your mother owned a car.  What kind of car was

9    that in May of 2013?

10       A.    Ford Escape.

11       Q.    What color was it?

12       A.    Gray.

13       Q.    What kind of vehicle is a Ford Escape?

14       A.    It's a Jeep.

15       Q.    Like, in other words, when you say Jeep does that

16   mean like a sport utility vehicle?

17       A.    Say it again.

18       Q.    Have you heard of, like, an SUV?

19       A.    Yes.

20       Q.    Is a Ford Escape an SUV?

21       A.    Yes.

22       Q.    It has four doors; right?

23       A.    Yes.

24       Q.    Do you know what the license plate of that Ford

25   Escape was?

R. FERGUSON

1    room?

2    A.    A cell.

3    Q.    How long did you stay in that room?

4    A.    All day.

5    Q.    Do you know what came of that initial arrest that

6    happened May 6, 2013?

7    A.    You rephrase your question.

8    Q.    Do you know what the result of that arrest, like

9    the outcome?

10   A.    I wasn't picked in the line-up so I was released.

11   Q.    Around what time did you get released?

12   A.    Like one two in the morning the following day.

13   Q.    That's May 7th; right?  We're keeping track.

14                MR. ROSENKILDE:  This is going to be

15           Defendant's Exhibit K.

16                (Whereupon, the aforementioned document was

17           marked as Defendant's Exhibit K for

18           identification as of this date by the Reporter.)

19   Q.    Just for the record, this is Bates stamped

20   D02529.  It's a black and white photo of the line-up;

21   right?

22   A.    Yes.

23   Q.    For the record, there's a box that says redacted

24   over a number of faces.  Although the photo is not of high

25   quality, do you see yourself in that photo?

R. FERGUSON

1    you; did they?  That's what I'm asking.

2        A.    No.

3        Q.    You were placed in a line-up on that day; right,

4    January 27, 2014?

5        A.    Yes.

6        Q.    That was in a line-up room?

7        A.    Yes.

8        Q.    Was there a two-way mirror in the room?

9              MR. LICHTMACHER:  If you know.

10       A.    Yes.

11       Q.    A mirror like that you can't see who is on the

12   other side; right?

13       A.    No.

14       Q.    What did you look like on January 27, 2014?

15   Basically the same as you do today?

16       A.    Yeah.

17       Q.    Right now you have a, like, a little bit of

18   facial hair; do you know if you had that on January 27th?

19       A.    No.  I just originally got facial hair.

20       Q.    Were you clean shaven at the time?

21       A.    Yes.

22       Q.    No mustache?

23       A.    No nothing.

24       Q.    On January 27, 2014 did you basically weigh the

25   same as you did in May of 2013?

# EXHIBIT I

D00485



# Cover Sheet

## Case Command :331 - 101 DET SQUAD
### Case Number :2013-0642
### Tracking Number :14100466



D00485

D00486

**PHOTO ARRAY PRE-VIEWING INSTRUCTIONS REPORT**
PD 373-112 (Rev. 10-11)

## CASE INFORMATION AND WITNESS INSTRUCTIONS

| Complaint Report No. | Crime Committed | Date of Crime |
|---|---|---|
| 2013-101-1689 | HOMICIDE | 05 / 03 / 2013 |

Location of Crime
F/O 54-30 BEACH CHANNEL DRIVE

| Photo Array Date | Time | Location |
|---|---|---|
| 05/04/2013 | 0230 | 1/0 55-05 BEACH CHANNEL DRIVE |

| Witness' Name | Was Witness Transported |
|---|---|
| Orris Wheeling | ☐ Yes ☑ No |

| Transporting Officer's Rank/Name | Command | Tax No. |
|---|---|---|
| N/A | N/A | N/A |

| Photo Array Administrator's Rank/Name | Command | Tax No. |
|---|---|---|
| Det. Michael O. Gildea | 101 SQD | 928314 |

## READ THE FOLLOWING TO THE WITNESS PRIOR TO SHOWING THE PHOTO ARRAY

- As part of the ongoing investigation into a crime that occurred at 54-30 BEACH CHANNEL DRIVE _(Location)_ on MAY 03, 2013 _(Date)_, you are about to view a photo array.
- It consists of six photographs of individuals. Each photograph has a number underneath the photograph.
- Take whatever time you want to view the photo array.
- The perpetrator may or may not be among the pictures.
- Do not assume that I know who the perpetrator may be.
- Do not ask me or anyone else in the room for guidance during the procedure.
- Individuals presented in the photo array may not appear exactly as they did on the date of the incident because features such as head and facial hair are subject to change.
- Photographs may not always depict the true complexion of a person; it may be lighter or darker than shown in the photo.
- Pay no attention to any markings that may appear on the photos, or any other difference in the type or style of the photographs.
- Do not discuss with other witnesses what you see, say or do during this procedure.
- After you have had an opportunity to view the photo array I will ask you the following three questions:
    1. Do you recognize anyone?
    2. If you do, what is the number of the person you recognize?
    3. From where do you recognize the person?
- I may ask you follow-up questions.

## WITNESS INITIAL:

The above instructions have been read to me: ODW _(initials)_   Date: 5/04/2013

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| Det. Michael O. Gildea | 928314 | 101 SQD. | 5/4/2013 |

D00486

D00487

D00487

D00488

 **PHOTO ARRAY VIEWING REPORT**
PD 373-154 (Rev. 10-11)

## PART A — SHOWING THE PHOTO ARRAY

| Witness Name | Administrator | | | Date |
|---|---|---|---|---|
| ORRIS WHEELING | DET. MICHAEL O. GILDEA | | | 5/04/13 |

| Interpreter Used? | ☐ Yes ☒ No | Name of Interpreter N/A | | Command N/A | Tax No. N/A |
|---|---|---|---|---|---|

If Interpreter is Not a Member of the Service, List Name, Address and Telephone No.
N/A

List any Additional Members of the Service Present:

| Rank/Name | Tax No. | Cmd. | Rank/Name | | Tax No. | Cmd. |
|---|---|---|---|---|---|---|
| DET. JAEGER | 917786 | 101890 | N/A | | N/A | N/A |

**Instructions to the Administrator Showing the Photo Array:**
- Remain neutral. Do not comment on the identification before, during or after the identification procedure
- Place the photo array in a closed letter-size manila folder when handing it to the witness.
- Stand out of the witness' line of sight, where practical, but still observe the witness as the witness views the photo array.
- So as not to distract the witness, do not comment during identification procedure.

## PART B — AFTER THE WITNESS HAS VIEWED THE ARRAY, ASK THESE QUESTIONS

Did you recognize anyone in the photo array? __YES__

If so, what is the number of the person that you recognize? __1__

From where do you recognize that person? __That's The guy w/ THE gun__

Record words and gestures of the witness: __YEAh. That's The guy w/ THE gun.__

If the Witness Gives a Vague Answer (for example: "I think it is..." or "It might be...")
Then say the following: You said __N/A__
_(insert witness' words, e.g., "I think it is...")_

What do you mean by that? (record the witness' answer) __N/A__

Date: __5/04/2013__   Time: __0230__   Witness Signature __Orri D. Wheel.__

**FINAL INSTRUCTION TO WITNESS:**
Do not discuss with any other witness what you observed or said during this identification procedure.

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| DET. MICHAEL O. GILDEA | 928314 | 101890 | 5/04/13 |

D00488

JA-124

D00489

D00489

D00490



PHOTO ARRAY INFORMATION REPORT
PD 373-155 (Rev. 10-11)

# THIS FORM MUST <u>NOT</u> BE SHOWN TO THE WITNESS

## ADMINISTRATOR TO FILL OUT THE AREA BELOW

**The Photo Array:**
- The original photo array MUST be preserved.
- Attach a copy of the photo array to this form and provide the information below, if available.

| Position | Name | NYSID Number | Date of Photo |
|---|---|---|---|
| 1  1. | RASHAUN FERGUSON | 02815035H | 3 15 2013 |
| 2  2 | | | |
| 3  3 | | | |
| 4  4 | | | |
| 5  5 | | | |
| 6  6 | | | |

Suspect's Name

— RASHAUN FERGUSON —

Suspect's Position in the Photo Array

#1

Date of Birth

2 10 1994

Was any photo altered?  ☐ Yes  ☑ No

If Yes, which photo?  N|A

Describe alteration  N|A

Comments:  N A

Det. Michael D. Gill
Signature of Administrator

5 04 2013
Date

Prepared by (Rank, Name Printed)

Det. MICHAEL O. GIUDEA

Tax No.
9428314

Cmd.
101 8D

Date Prepared
5 04 13

D00490

D00491

# NEW YORK CITY POLICE DEPARTMENT

## *Photo Array*



Identification made : ☒ YES ☐ NO          Photo selected : # _1_

Date of Identification : this is the ~~that~~ guy I saw with the gun

D00491

D00492

D00492

D00493

Page 1 of 1

 

# NEW YORK CITY POLICE DEPARTMENT

## *Mugshot Pedigree*



| | |
|---|---|
| NAME: | **FERGUSON RASHAUN** |
| NYSID#: | **02815035H** |
| Arrest #: | **Q13615837** |
| Arrest Date#: | **03-15-2013** |
| Top Charge: | **VTL116300A: ILL SIGNAL:UNSAFE/FAIL TO** |
| Date of Birth: | **02-10-1994** |
| Age at Offense: | **19** |
| Social Security #: | **0** |
| PCT of Arrest: | **101 PRECINCT** |
| Source: | **LIVE** |



## PHYSICAL DESCRIPTION

| | |
|---|---|
| Race: | **BLACK** |
| SEX: | **MALE** |
| Height: | **601** |
| Weight: | **165** |
| Hair Length: | **SHORT** |
| HAIR COLOR: | **BLACK** |
| Hair Type: | **CLOSE CUT** |
| Complexion: | **BLOTCHY** |
| Eye Color: | **BROWN** |

Scars, Marks Tattoos:
Desc:
Location:
Bodyside:

Alias 1:
Alias 2:
Alias 3:
Alias 4:



D00493

D00494

Lineup Report                                    Page 1 of 1

New York Police Department

# Photo Array Report

### Saturday, May 4,2013 5:07 AM

**Photo Array Identifier:** 232171
**Photo Array Title:** 101 GULLEY HOMICIDE 1
**Creation Date:** May 4 2013 1:53AM

## Photos Displayed:

| Pos | Database | Arrest # | NYSID # | Cropped | Date of Photo |
|-----|----------|----------|---------|---------|---------------|
| 1 | NYPD Adult Suspect Database | Q13615837 | 02815035H | N | Mar 16 2013 6:35AM |
| 2 | NYPD Adult Suspect Database | | | | |
| 3 | NYPD Adult Suspect Database | | | | |
| 4 | NYPD Adult Suspect Database | | | | |
| 5 | NYPD Adult Suspect Database | | | | |
| 6 | NYPD Adult Suspect Database | | | | |

**Last Database Searched:** NYPD Adult Suspect Database
**Matches:**            125917
**Universe:**           5256414
**Search Criteria**
Age:                    17
                        21
Hair Color:             BLACK
Race:                   BLACK
Sex:                    MALE

D00494

JA-130

196         Monday, January 27, 2014



1120 — PDU

Q50 Transport to OCH
by PO Riveland
PO Benigno to RMP

_____ Lodges
Over 8 hours
Due to
☐ Awaiting Transport
☐ Delayed Arrest Processing
☐ _____

N/O   Rank   Det. Name: Jaeger    917786

Defendant's Name: Ferguson, Rashaun

Defendant's Address: 155-01 71st Ave

Location of Arrest: 57-49 Almeda Ave   Arrest Time: 1000

Chi 13   125.25

Physical/Mental Condition: A/N

Any Dependents / Children Uncared For? N Other Info? N

Supervisor Verifying Arrest Dtls (Rank/Name): Sgt Cumming   Tax # 928136

Pink copy of PCI given to Deft? Y-or-N

Deft Is Pet for more than 2 hours? (If "yes", notate)



Monday, January 27 2014      203

| 2311 | Rep Transfer | PO Rivera reports no property to transfer |

Tuesday, January 28 2014

| 0005 | EOT | Det. Jagger EOT |

# EXHIBIT J

PROCEEDINGS                                1221

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF QUEENS : CRIMINAL TERM : PART K-21
 2   -----------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,
 3
                      -against-                    INDICTMENT NO:
 4                                                 2723-2014
     RASHAUN FERGUSON,
 5                                                 JURY TRIAL
                            DEFENDANT(S).
 6   -----------------------------------------X

 7                        Queens Supreme Courthouse
                          125-01 Queens Boulevard
 8                        Kew Gardens, New York 11415
                          October 6, 2017
 9
     B E F O R E :
10
                  THE HONORABLE CHARLES S. LOPRESTO,
11                   J U S T I C E, and a jury

12   A P P E A R A N C E S :

13               ***** SAME AS PREVIOUSLY NOTED *****

14                                 Joan Schaefer
                                   Senior Court Reporter
15
                           *         *         *
16

17               THE CLERK:  Number Two on the calendar, Indictment

18       Number 2723 of 2014, Rashaun Ferguson.

19               Sir, are you Rashaun Ferguson?

20               THE DEFENDANT:  Yes, good morning.  Good morning.

21               THE CLERK:  Appearances.

22               MR. REGAN:  For the People, Assistant District

23       Attorney Timothy Regan.  Good morning.

24               THE COURT:  Good morning.

25               MR. DIDIO:  And Robert Didio, 80-02 Kew Gardens
```

                                                        jms

A. LOGAN SMITH - DEFENSE - DIRECT                    1321

1          THE COURT OFFICER:  Step right in.  Remain

2     standing.  Raise your right hand and face the clerk of the

3     courtroom right over there.

4          THE CLERK:  Do you swear or affirm to tell the

5     truth, the whole truth and nothing but the truth so help you

6     God?

7          THE WITNESS:  Yes.

8          THE CLERK:  Have a seat.

9  A N G E L A   L O G A N   S M I T H, called by and on behalf of

10    the Defendant, having been first duly sworn, was examined and

11    testified as follows:

12         THE COURT OFFICER:  The defense calls its first

13    witness, Angela Logan Smith.  First name, A-N-G-E-L-A.

14    Middle name, L-O-G-A-N.  Last name, S-M-I-T-H.

15         THE COURT:  You may inquire.

16         MR. DIDIO:  Yes, Judge.  Thank you.

17  CROSS EXAMINATION BY

18  MR. DIDIO:

19    Q.    Good afternoon.

20    A.    Afternoon.

21    Q.    State your full name.

22    A.    Angela Lynnette Logan Smith.

23    Q.    And Ms. Smith, is it all right if I call you Ms. Smith?

24    A.    Yes.

25    Q.    Ms. Smith, how are you employed?

                                                          jms

JA-135

1    A.    I work for the Department of Education.

2    Q.    And where is it that you specifically work at this time?

3    A.    Goldie Maple Academy.

4    Q.    What's your title there?

5    A.    Principal.

6    Q.    And how long have you been principal of that academy?

7    A.    Fourteen years.

8    Q.    All right.  And where is that located?  What's the

9    address of the academy there?

10   A.    365 Beach 56th Street, Arverne, New York 11692.

11   Q.    And just generally, what are your responsibilities at

12   the school as the principal of the last 13 years?

13   A.    Fourteen.

14   Q.    Fourteen years?

15   A.    Uh, huh.  Supervise the staff, to provide instructions,

16   oversee the budget, to work with the community members, to engage

17   the parents, make them aware of what's occurring in the school,

18   address any of their issues, questions or concerns.

19   Q.    And in terms of your experience at the school over those

20   14 years, are you familiar with the layout of the building and

21   all the various portions of the building, so to speak?

22   A.    Yes.

23   Q.    And would that include surveillance cameras on -- in and

24   around the building?

25   A.    Yes.

jms

1    Q.    You can be seated.  Thank you.

2    A.    Uh, huh.

3    Q.    Now, I just want to make it clear, the answers to the

4    questions that you just gave, they related back to 2013; would

5    that be correct?

6    A.    Yes.

7    Q.    Where the camera was, the entrance, the building?

8    A.    Yes.

9    Q.    Yes.  Okay.  Has any of that changed at this point?

10   A.    No.

11   Q.    Okay.  Did there come a time, and I'll direct your

12   attention to May 6, 2013, that you had a conversation with some

13   law enforcement officers at the school?

14   A.    Yes.

15   Q.    And based upon that conversation that you had with them,

16   did you show them anything?

17   A.    Yes.

18   Q.    What did you show them?

19   A.    The footage for the Camera 16.

20   Q.    Okay.  And were you physically present when the footage

21   was shown to them?

22   A.    Yes.

23   Q.    And can you just describe, was it on a monitor, on a

24   flat screen, what was the mechanism that you showed it to them?

25   A.    In my office there's a big T.V. and the T.V. has all 16

1      A.    Yes.

2      Q.    And is it color?

3      A.    Yes.

4      Q.    And an up to date screen.  All right.

5            How many officers were there in your office when -- when

6    you showed them the footage?

7      A.    Two.

8      Q.    Do you recall their names?

9      A.    No.

10     Q.    Okay.  But they identified themselves as officers; is

11   that correct?

12     A.    Yes.

13     Q.    All right.  And now, did you play that footage for them?

14     A.    Yes.

15     Q.    And when you played the footage for them can you

16   describe to the jury what you could see in that footage?

17     A.    You could see a person run by and a few seconds later a

18   car went by.

19     Q.    And when you say a person, can you describe what the

20   person looked like in terms of their race, initially?

21     A.    It was someone, I would assume, would be black.  They

22   had dark clothes on and it -- it would -- looked like a male.

23     Q.    All right.  So male black, dark clothes?

24     A.    Yes.

25     Q.    Now, was the image close enough where you could

                                                          jms

1    determine facial features and specifics of the individual?  What

2    was the distance?

3         A.   No, it's not close enough where you can determine the

4    features.

5         Q.   Okay.

6         A.   You could make out that there was a person.  You can

7    make out just general, like, superficial details of the person.

8         Q.   As you described now?

9         A.   Yes.

10        Q.   Male black, dark clothing?

11        A.   Yes.

12        Q.   All right.  And then you said that there was a vehicle

13   that came into the -- into the frame; correct?

14        A.   Correct.

15        Q.   And can you describe that vehicle in any particular way?

16        A.   It was just a dark sedan.

17        Q.   Was it an SUV?

18        A.   No.  A sedan.

19        Q.   Just a --

20        A.   Sedan is just a car.

21        Q.   Okay.  Do you know if it was two door, four door?

22        A.   I don't remember that.

23        Q.   Okay.  And color, any -- any --

24        A.   Dark.

25        Q.   Just dark?

A. LOGAN SMITH - DEFENSE - DIRECT                    1329

1    A.    Dark.  It had to be either black or navy blue, but it

2    was one color.

3    Q.    And what direction, initially, was --

4          MR. DIDIO:  Withdrawn.

5    Q.    In terms of the individual that you saw, was that person

6    running, walking?

7    A.    Running.

8    Q.    And did you see anybody running before that person, like

9    did you see others running and then that person or was that the

10   only person you saw running?

11   A.    That was the only person.

12   Q.    And which direction was that person running from, was it

13   from Beach Channel Drive or the other way?

14   A.    Away from Beach Channel Drive

15   Q.    Okay.  So on the diagram, which way was the person

16   running?

17   A.    Down.

18   Q.    Down.  Okay.  And then how about the vehicle, which

19   direction was the vehicle traveling?

20   A.    The same as the person.

21   Q.    Now, so it's clear to the jury, could you see the corner

22   of Beach Channel Drive and Beach 56th Street in the frame and the

23   footage that you showed the officers?

24   A.    No.

25   Q.    How far down, could you just estimate, if you could

jms

A. LOGAN SMITH - DEFENSE - CROSS                    1334

1       A.    They just walked in.

2       Q.    Okay.  They walked in and they asked you to look at the

3   video; correct?

4       A.    Correct.

5       Q.    Okay.  And do you remember --

6                   MR. REGAN:  Withdrawn.

7       Q.    How was the video controlled?  How can you control what

8   you were watching on the monitor?

9       A.    There's a panel in my office that I would have to go and

10  access the code and --

11      Q.    Okay.

12      A.    -- and then I would select which one of the cameras I

13  wanted to view, what date, what time, and then I would pick a

14  timeframe and then I would wind it back and eliminate the 16

15  cameras and focus on that one camera.

16      Q.    And this was -- Camera 16 was the one that we were

17  focusing on; correct?

18      A.    Yes.

19      Q.    Okay.  And that camera, you mentioned, covers a part of

20  Beach 56th Street; correct?

21      A.    Correct.

22      Q.    Doesn't make it to the corner of Beach 56th Street and

23  Beach Channel Drive --

24      A.    Correct.

25      Q.    -- correct?

                                                              jms

A. LOGAN SMITH - DEFENSE - CROSS                    1335

1       And it doesn't make it all the way down Beach 56th to

2   the next intersection; correct?

3       A.   Correct.

4       Q.   Okay.  It covers about how much area of Beach 56th

5   Street would you say it covers that you can actually see?

6       A.   About a hundred feet.

7       Q.   About 100 feet?

8       A.   Uh, huh.

9       Q.   Okay.  What date did they ask to look at, do you

10  remember if it was May 3rd?

11      A.   Right off, I don't.

12      Q.   You can't recall at this time what time they asked you

13  to look at; correct?

14      A.   Correct.

15      Q.   Do you remember what time they asked you to look at?

16      A.   I don't remember.  Just daytime.  It was a daytime.  I

17  would have to go back to figure out.

18      Q.   It was during the daytime.  So when you rewound the

19  video to that specific date and time you were able to view it;

20  correct?

21      A.   Correct.

22      Q.   And they gave you a specific date and time, even if you

23  don't remember it now; right?

24      A.   Correct.

25      Q.   And when you were looking at that footage could you see

                                                              jms

1      A.   No.

2      Q.   Was the video of sufficient quality that you could have

3  seen something if he was holding something?

4      A.   Probably it would have -- no, no, I don't think so.

5      Q.   Okay.  Now, you said that this video --

6               MR. REGAN:  Withdrawn.

7      Q.   This camera is located near the entrance to the school;

8  right?

9      A.   Yes.

10     Q.   On the Beach 56th side of the school?

11     A.   Correct.

12     Q.   Okay.  And there's a sidewalk there; right?

13     A.   Yes.

14     Q.   And then the building starts where the sidewalk ends;

15  right?

16     A.   Yeah.

17     Q.   And then there's actually an alcove or indentation where

18  the entrance to the school is; correct?

19     A.   Yes.

20     Q.   And the camera is inset a little bit towards that

21  entrance; right?

22     A.   No.

23     Q.   No.  Okay.  The camera is on the corner?

24     A.   It's on the corner.

25     Q.   Okay.  At the time in January --

# EXHIBIT K

D00514



# Cover Sheet

## Case Command :331 - 101 DET SQUAD
### Case Number :2013-0642
### Tracking Number :14002143



D00514

JA-145

D00515

**LINEUP INFORMATION REPORT**
PD 373-151 (Rev. 10-11)

| Complaint Report No. | Crime Committed | | Date of Crime | | |
|---|---|---|---|---|---|
| 2013-101-1689 | MURDER | | 5 | 03 | 2013 |

| Location of Crime | | Juvenile Lineup Serial No. |
|---|---|---|
| P/o 54.30 BEACH CHANNEL DRIVE | | N/A |

| Lineup Date | Time | Location of Lineup |
|---|---|---|
| 5/07/13 | 0001 | P/o 101 DETECTIVE Sqd. 16-12 MOTT AVENUE |

| Witness' Name | Was Witness Transported by Police? |
|---|---|
| DEBS Wheeling | ☑ Yes ☐ No |

| Transporting Officer's Rank/Name | Command | Tax No. |
|---|---|---|
| DET. MICHAEL D. GILDEA | 101 SQD | 928314 |

| Case Investigator's Rank/Name | Command | Tax No. |
|---|---|---|
| DET. MICHAEL D. GILDEA | 101 SQD | 928314 |

| Lineup Administrator's Rank/Name | Command | Tax No. |
|---|---|---|
| DET. MICHAEL D. GILDEA | 101 SQD | 928314 |

| Security Officer's Rank/Name | Command | Tax No. |
|---|---|---|
| DET. GARY MAZZEI | 101 SQD | |

| Officer Escorting Witness into Viewing Room, Rank/Name | Command | Tax No. |
|---|---|---|
| DET. MICHAEL D. GILDEA | 101 SQD | 928314 |

| Supervisor Present, Rank/Name | Command | Tax No. |
|---|---|---|
| SGT. CODNEY CUMMINGS | 101 SQD | 928136 |

| Assistant District Attorney Present? ☐ Yes ☑ No | Name of ADA | Telephone No. |
|---|---|---|
| | KRISTIN FRAZIER | 418-286-6000 |

| Interpreter Used? ☐ Yes ☑ No | Name of Interpreter | Command | Tax No. |
|---|---|---|---|
| | N/A | N/A | N/A |

If Interpreter is Not a Member of the Service List Name, Address and Telephone No.
N/A

| Suspect's Name | Date of Birth | | |
|---|---|---|---|
| RASHAUN FERGUSON | 2 | 10 | 1994 |

Who Selected the Suspect's Position?
SELF SELECTED BY FERGUSON

## LINEUP MEMBERS

| | NAME | NUMBER HELD | POSITION | AGE | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|
| 1 | ▮▮▮▮▮▮ | 1 | 1 | 19 | 5'10" | 160 |
| 2 | ▮▮▮▮▮▮ | 2 | 2 | 21 | 5"11" | 165 |
| 3 | ▮▮▮▮▮▮ | 3 | 3 | 21 | 5'11" | 150 |
| 4 | RASHAUN FERGUSON | 4 | 4 | 19 | 6'0" | 165 |
| 5 | ▮▮▮▮▮▮ | 5 | 5 | 21 | 6'0" | 170 |
| 6 | ▮▮▮▮▮▮ | 6 | 6 | 19 | 5'10" | 165 |

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| DET. MICHAEL D. GILDEA | 928314 | 101 SQD | 5/1/13 |

| Supervisor's Signature | Tax No. | Cmd. | Date |
|---|---|---|---|
| | 928136 | 101 SQD | 5/7/13 |

D00515

JA-146

D00516



D00516

D00517



**LINEUP INSTRUCTIONS TO WITNESS REPORT**
PD 373-111 (Rev. 10-11)

Name of Witness _Orris Wheeling_

## LINEUP ADMINISTRATOR MUST READ THE FOLLOWING TO THE WITNESS PRIOR TO VIEWING THE LINEUP

* As part of our on-going investigation into a crime that occurred at _64-30 Beach Channel Drive_ _(location)_ on _5 03 2013_ _(date)_, you are about to view a lineup.

* You will look through a one-way mirror and see six people in the lineup. They will not be able to see you.

* Each person on the other side of the mirror will have a painted number situated above their head or will be holding a card with a number on it.

* Take whatever time you want to view the lineup.

* The perpetrator may or may not be among the six people in the lineup.

* Do not assume I know who the perpetrator is.

* Do not ask me or anyone else in the room for guidance during the procedure.

* Individuals presented in the lineup may not appear exactly as they did on the date of the incident because features, such as head and facial hair, are subject to change.

* After you have had an opportunity to view the lineup I will ask you the following three questions:

  1. Do you recognize anyone?
  2. If you do, what is the number of the person you recognize?
  3. From where do you recognize the person?

* I may ask you follow-up questions.

* After the identification procedure is concluded, do not discuss with other witnesses what was said or observed during this identification procedure.

_( Refused )_

### WITNESS MUST INITIAL:

_Refused_ →  The above instructions have been read to me:_____ _(initials)._ Date:_____

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| Det. Michael O. Gilder | 928314 | 101 Sqd | 5 07 13 |
| Supervisor's Signature | Tax No. 928136 | Cmd. 101 Sqd | Date 5/7/13 |

D00517

D00518



**LINEUP ADMINISTRATION REPORT**
PD 373-152 (Rev. 10-11)

Witness' Name  *Orris Wheeling*

### PART A — CONDUCTING THE LINEUP AND RESULTS

**Instructions for Administrator When Entering the Viewing Room:**
- Remain neutral. Do not comment on the identification before, during or after the identification procedure
- Take a photograph of the lineup composition. Preserve the photograph and have the witness sign the photo, if possible.
- Have the witness escorted into the viewing room.
- So as not to distract the witness, do not comment during the identification procedure.
- Introduce by name all individuals present in the viewing room to the witness.
- Tell the witness when the identification procedure will begin (e.g., "You will now look through the one way mirror").
- If there is a need to have a lineup member speak, move, change clothing, or some other activity, then all the lineup members must do the same activity.
- While the witness is viewing the lineup, you should stand out of the witness' line of sight, while still being in a position to observe the witness.

### PART B — AFTER THE WITNESS HAS VIEWED THE LINEUP, ASK THE WITNESS THESE QUESTIONS:

- Did you recognize anyone in the lineup? ___Not Really___
- What is the number of the person that you recognize? ___—___
- From where do you recognize that person? ___N/A___

Record words and gestures of the witness:
___Witness made references to #4's Skin color White___
___Viewing line-up and commented about #4's weight___
___after viewing line-up___

**If the Witness Gives a Vague Answer** *(for example: "I think it is..." or "It might be...")*
Then say the following: **You said** ___N/A___
*(insert witness' words, e.g., "I think it is...")*

**what do you mean by that?** *(record the witness' answer)* ___N/A___

Date: 5/09/13   Time: 0001   Witness Signature ___(Refused)___

**FINAL INSTRUCTION TO WITNESS:**
Do not discuss with any other witness what you observed or said during this identification procedure.

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| Det. Michael O. Gilden | 928314 | 102 Sqd | 5/09/13 |
| Supervisor's Signature | Tax No. 928136 | Cmd. 107 Sqd | Date 5/7/13 |

D00518

JA-149

**D00519**

**LINEUP DEFENSE COUNSEL REPORT**
PD 373-153 (Rev. 10-11)

Suspect's Attorney Present?  ☐ Yes  ☑ No

Defense Attorney's Name and Address

Scott Brettschneider

Telephone Number

516-984-3616

* The Defense Attorney was instructed *not* to speak while in the viewing room with the witness.
  ☐ Yes  ☐ No

* If Defense Attorney makes requests about the lineup, record the request and whether the request was agreed to or refused:

1. Request: _____ N/A _____

☐ Agreed  ☐ Refused
Reason for Refusal _____ N/A _____

2. Request: _____ N/A _____

☐ Agreed  ☐ Refused
Reason for Refusal _____ N/A _____

3. Request: _____ N/A _____

☐ Agreed  ☐ Refused
Reason for Refusal _____ N/A _____

**USE ADDITIONAL SHEETS IF NECESSARY**

| Prepared by (Rank, Name Printed) | Tax No. 928314 | Cmd. 12 sqd | Date Prepared 5/07/13 |
| Det. Michael O. Gudea | | | |
| Supervisor's Signature | Tax No. 928136 | Cmd. 101 Sqd | Date 5/7/13 |

**D00519**

JA-150

D00520



D00520

# EXHIBIT L

D00475



# Cover Sheet

## Case Command :331 - 101 DET SQUAD
### Case Number :2013-0642
### Tracking Number :14101131



D00475

JA-153

D00476

**PHOTO ARRAY PRE-VIEWING INSTRUCTIONS REPORT**
PD 373-112 (Rev. 10-11)

## CASE INFORMATION AND WITNESS INSTRUCTIONS

| Complaint Report No. | Crime Committed | | Date of Crime |
|---|---|---|---|
| 2013-101-1689 | HOMICIDE | | 5 03 2013 |

**Location of Crime**
P/o 54-30 BEACH CHANNEL DRIVE

| Photo Array Date | Time | Location |
|---|---|---|
| 5 09 13 | 1740 | 1/0 168-42 127 AVENUE |

| Witness' Name | Was Witness Transported |
|---|---|
| REAGIE EVANS | ☐ Yes ☒ No |

| Transporting Officer's Rank/Name | Command | Tax No. |
|---|---|---|
| N/A | N/A | N/A |

| Photo Array Administrator's Rank/Name | Command | Tax No. |
|---|---|---|
| Det. Michael O. Gildea | 101 SQD. | 928314 |

## READ THE FOLLOWING TO THE WITNESS PRIOR TO SHOWING THE PHOTO ARRAY

- As part of the ongoing investigation into a crime that occurred at 54-30 BEACH Channel DRIVE _____ (Location) on May 03, 2013 (Date), you are about to view a photo array.
- It consists of six photographs of individuals. Each photograph has a number underneath the photograph.
- Take whatever time you want to view the photo array.
- The perpetrator may or may not be among the pictures.
- Do not assume that I know who the perpetrator may be.
- Do not ask me or anyone else in the room for guidance during the procedure.
- Individuals presented in the photo array may not appear exactly as they did on the date of the incident because features such as head and facial hair are subject to change.
- Photographs may not always depict the true complexion of a person; it may be lighter or darker than shown in the photo.
- Pay no attention to any markings that may appear on the photos, or any other difference in the type or style of the photographs.
- Do not discuss with other witnesses what you see, say or do during this procedure.
- After you have had an opportunity to view the photo array I will ask you the following three questions:
    1. Do you recognize anyone?
    2. If you do, what is the number of the person you recognize?
    3. From where do you recognize the person?
- I may ask you follow-up questions.

## WITNESS INITIAL:

The above instructions have been read to me: R.E. (initials)   Date: 5 09 2013

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| Det. Michael O. Gildea | 928314 | 101 SQD | 5 09 13 |

D00476

D00477

D00477

D00478

 **PHOTO ARRAY VIEWING REPORT**
PD 373-154 (Rev. 10-11)

| PART A — SHOWING THE PHOTO ARRAY | | | |
|---|---|---|---|
| Witness Name: REGGIE EVANS | Administrator: DET. MICHAEL D. GILDEA | | Date: 5 09 13 |
| Interpreter Used? ☐ Yes ☒ No | Name of Interpreter: N/A | Command: N/A | Tax No.: N/A |
| If Interpreter is Not a Member of the Service, List Name, Address and Telephone No.: N/A | | | |

List any Additional Members of the Service Present:

| Rank/Name | Tax No. | Cmd. | Rank/Name | Tax No. | Cmd. |
|---|---|---|---|---|---|
| DET. JAEGER | 917186 | 106 | N/A | N/A | N/A |

**Instructions to the Administrator Showing the Photo Array:**
- Remain neutral. Do not comment on the identification before, during or after the identification procedure
- Place the photo array in a closed letter-size manila folder when handing it to the witness.
- Stand out of the witness' line of sight, where practical, but still observe the witness as the witness views the photo array.
- So as not to distract the witness, do not comment during identification procedure.

**PART B — AFTER THE WITNESS HAS VIEWED THE ARRAY, ASK THESE QUESTIONS**

Did you recognize anyone in the photo array? YES

If so, what is the number of the person that you recognize? 1

From where do you recognize that person? THE SHOOTING

Record words and gestures of the witness: That's The guy That Shot
My Brother And Stood over Me And Shut.

If the Witness Gives a Vague Answer (for example: "I think it is..." or "It might be...")
Then say the following: You said ___ N/A ___
(insert witness' words, e.g., "I think it is...")

What do you mean by that? (record the witness' answer) N/A

Date: 5/09    Time: 1740    Witness Signature: Regina M. Evan

**FINAL INSTRUCTION TO WITNESS:**
Do not discuss with any other witness what you observed or said during this identification procedure.

| Prepared by (Rank, Name Printed): DET. MICHAEL D. GILDEA | Tax No.: 928344 | Cmd.: 101 sep | Date Prepared: 5/09/13 |
|---|---|---|---|

D00479

D00479

**D00480**



**PHOTO ARRAY INFORMATION REPORT**
PD 373-155 (Rev. 10-11)

## THIS FORM MUST <u>NOT</u> BE SHOWN TO THE WITNESS

ADMINISTRATOR TO FILL OUT THE AREA BELOW

The Photo Array:
- The original photo array MUST be preserved.
- Attach a copy of the photo array to this form and provide the information below, if available.

| Position | | Name | NYSID Number | Date of Photo |
|---|---|---|---|---|
| 1 | 1 | RASHAUN FERGUSON | 02815035H | 3 15 13 |
| 2 | 2 | | | |
| 3 | 3 | | | |
| 4 | 4 | | | |
| 5 | 5 | | | |
| 6 | 6 | | | |

Suspect's Name
– RASHAUN FERGUSON –

Date of Birth
2 10 1994

Suspect's Position in the Photo Array
1

Was any photo altered?  ☐ Yes  ☒ No

If Yes, which photo? __N/A__

Describe alteration __N/A__

Comments: __N/A__

_____
Signature of Administrator

Date 3 09 2013

Prepared by (Rank, Name Printed)
Det. Michael O. Gidea

Tax No. 928314

Cmd. 10 Bg

Date Prepared 5 9 13

**D00480**

D00481



D00481

D00482

Page 1 of 2

 

## NEW YORK CITY POLICE DEPARTMENT

*Photo Array*

  

1 *Reginald Evans*    2 _____    3 _____

  

4 _____    5 _____    6 _____

Identification made : ☑ YES ☐ NO     Photo selected : # ___1___

Date of Identification : 6/9/2013

THATS the Guy thut
WALK uP And SHOT
ME

D00482

JA-160

D00483

Page 1 of 1



# NEW YORK CITY POLICE DEPARTMENT

## *Mugshot Pedigree*





| | |
|---|---|
| NAME: | **FERGUSON RASHAUN** |
| NYSID#: | **02815035H** |
| Arrest #: | **Q13615837** |
| Arrest Date#: | **03-15-2013** |
| Top Charge: | **VTL116300A: ILL SIGNAL:UNSAFE/FAIL TO** |
| Date of Birth: | **02-10-1994** |
| Age at Offense: | **19** |
| Social Security #: | **0** |
| PCT of Arrest: | **101 PRECINCT** |
| Source: | **LIVE** |

### PHYSICAL DESCRIPTION

| | |
|---|---|
| Race: | **BLACK** |
| SEX: | **MALE** |
| Height: | **601** |
| Weight: | **165** |
| Hair Length: | **SHORT** |
| HAIR COLOR: | **BLACK** |
| Hair Type: | **CLOSE CUT** |
| Complexion: | **BLOTCHY** |
| Eye Color: | **BROWN** |

Scars, Marks Tattoos:
Desc:
Location:
Bodyside:

Alias 1:
Alias 2:
Alias 3:
Alias 4:



D00483

D00484

Lineup Report                                                    Page 1 of 1

New York Police Department

# Photo Array Report

**Saturday, May 4, 2013 5:07 AM**

Photo Array Identifier: 232171
Photo Array Title: 101 GULLEY HOMICIDE 1
Creation Date: May 4 2013 1:53AM

## Photos Displayed:

| Pos | Database | Arrest # | NYSID #. | Cropped | Date of Photo |
|-----|----------|----------|----------|---------|---------------|
| 1 | NYPD Adult Suspect Database | Q13615837 | 02815035H | N | Mar 16 2013 6:35AM |
| 2 | NYPD Adult Suspect Database | | | | |
| 3 | NYPD Adult Suspect Database | | | | |
| 4 | NYPD Adult Suspect Database | | | | |
| 5 | NYPD Adult Suspect Database | | | | |
| 6 | NYPD Adult Suspect Database | | | | |

**Last Database Searched:** NYPD Adult Suspect Database

| | |
|---|---|
| **Matches:** | 125917 |
| **Universe:** | 5256414 |
| **Search Criteria** | |
| Age: | 17 |
| | 21 |
| Hair Color: | BLACK |
| Race: | BLACK |
| Sex: | MALE |

D00484

JA-162

# EXHIBIT M

**D00522**



**LINEUP INSTRUCTIONS TO WITNESS REPORT**
PD 373-111 (Rev. 10-11)

Name of Witness _Reginald Evans_

## LINEUP ADMINISTRATOR MUST READ THE FOLLOWING TO THE WITNESS PRIOR TO VIEWING THE LINEUP

- As part of our on-going investigation into a crime that occurred at _54-30 Beach Channel Drive_ (location) on _5/3/13_ (date), you are about to view a lineup.

- You will look through a one-way mirror and see six people in the lineup. They will not be able to see you.

- Each person on the other side of the mirror will have a painted number situated above their head or will be holding a card with a number on it.

- Take whatever time you want to view the lineup.

- The perpetrator may or may not be among the six people in the lineup.

- Do not assume I know who the perpetrator is.

- Do not ask me or anyone else in the room for guidance during the procedure.

- Individuals presented in the lineup may not appear exactly as they did on the date of the incident because features, such as head and facial hair, are subject to change.

- After you have had an opportunity to view the lineup I will ask you the following three questions:

  1. Do you recognize anyone?
  2. If you do, what is the number of the person you recognize?
  3. From where do you recognize the person?

- I may ask you follow-up questions.

- After the identification procedure is concluded, do not discuss with other witnesses what was said or observed during this identification procedure.

## WITNESS MUST INITIAL:

The above instructions have been read to me _X Ev._ (initials). Date: _1/27/14_

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| Det Jaeger | 917786 | 10/SQD | 1/27/14 |
| Supervisor's Signature | Tax No 900321 | Cmd 10/SQS | Date 1/27/14 |

**D00522**

**D00523**



**LINEUP ADMINISTRATION REPORT**
PD 373-152 (Rev. 10-11)

Witness' Name _Reginald Evans_

## PART A — CONDUCTING THE LINEUP AND RESULTS

**Instructions for Administrator When Entering the Viewing Room:**
- Remain neutral. Do not comment on the identification before, during or after the identification procedure
- Take a photograph of the lineup composition. Preserve the photograph and have the witness sign the photo, if possible.
- Have the witness escorted into the viewing room.
- So as not to distract the witness, do not comment during the identification procedure.
- Introduce by name all individuals present in the viewing room to the witness.
- Tell the witness when the identification procedure will begin (e.g., "You will now look through the one way mirror").
- If there is a need to have a lineup member speak, move, change clothing, or some other activity, then all the lineup members must do the same activity.
- While the witness is viewing the lineup, you should stand out of the witness' line of sight, while still being in a position to observe the witness.

## PART B — AFTER THE WITNESS HAS VIEWED THE LINEUP, ASK THE WITNESS THESE QUESTIONS:

- Did you recognize anyone in the lineup? _Yes_
- What is the number of the person that you recognize? _5_
- From where do you recognize that person? _From the shooting, he shot me_

Record words and gestures of the witness:
_he shot me first, then ran up lane and shot my brother_
_N/A_
_N/A_

**If the Witness Gives a Vague Answer** (for example: "I think it is..." or "It might be...")
Then say the following: **You said** _N/A_ _____
<span style="font-size:smaller">(insert witness' words, e.g. "I think it is ")</span>

**what do you mean by that?** (record the witness' answer) _N/A_
_N/A_
_N/A_
_N/A_
_N/A_

Date: _1/27/14_ Time: _2148_ Witness Signature _Reginald Evans_

**FINAL INSTRUCTION TO WITNESS:**
*Do not discuss with any other witness what you observed or said during this identification procedure.*

| Prepared by (Rank, Name Printed) | Tax No | Cmd | Date Prepared |
|---|---|---|---|
| Det Jaeger | 917786 | 101 SQD | 1/27/14 |
| Supervisor's Signature | Tax No. 900321 | Cmd 101 SQD | Date 1/27/14 |

**D00523**

D00524

**LINEUP DEFENSE COUNSEL REPORT**
PD 373-153 (Rev. 10-11)

Suspect's Attorney Present?  ☒ Yes   ☐ No

Defense Attorney's Name and Address
Scott Brettschneider

Telephone Number
(516) 987-3616

- The Defense Attorney was instructed *not* to speak while in the viewing room with the witness.
  ☐ Yes   ☒ No

- If Defense Attorney makes requests about the lineup, record the request and whether the request was agreed to or refused:

1. Request: _____ N/A _____

☐ Agreed   ☐ Refused

Reason for Refusal _____ N/A _____

2. Request: _____ N/A _____

☐ Agreed   ☐ Refused

Reason for Refusal _____ N/A _____

3. Request: _____ N/A _____

☐ Agreed   ☐ Refused

Reason for Refusal _____ N/A _____

**USE ADDITIONAL SHEETS IF NECESSARY**

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| Det Jaeger | 917786 | 01SQS | 1/27/14 |
| Supervisor's Signature | Tax No. 900321 | Cmd. 01SQS | Date 1/27/14 |

D00524

JA-166

D00525

**LINEUP INFORMATION REPORT**
PD 373-151 (Rev. 10-11)

| Complaint Report No. | Crime Committed | | Date of Crime |
|---|---|---|---|
| 2013-1689 | Murder | | 5/3/13 |

| Location of Crime | Juvenile Lineup Serial No |
|---|---|
| P/O 54-30 Beach Channel Drive | N/A |

| Lineup Date | Time | Location of Lineup |
|---|---|---|
| 1/27/14 | | 101 Pct Det Squad |

| Witness Name | Was Witness Transported by Police? |
|---|---|
| Reginald Evans | ☐ Yes  ☒ No |

| Transporting Officer's Rank/Name | Command | Tax No. |
|---|---|---|
| N/A | N/A | N/A |

| Case Investigator's Rank/Name | Command | Tax No. |
|---|---|---|
| Det Jaeger | 101 SQD | 917786 |

| Lineup Administrator's Rank/Name | Command | Tax No. |
|---|---|---|
| Det Jaeger | 101 SQD | 917786 |

| Security Officer's Rank/Name | Command | Tax No. |
|---|---|---|
| P.O. Pulice | 101 SQD | 930988 |

| Officer Escorting Witness into Viewing Room, Rank/Name | Command | Tax No. |
|---|---|---|
| Det Jaeger | 101 SQD | 917786 |

| Supervisor Present, Rank/Name | Command | Tax No. |
|---|---|---|
| Lt Masterson | 101 SQD | 900321 |

| Assistant District Attorney Present? | ☒ Yes  ☐ No | Name of ADA | ADA Heymann | Telephone No. | N/A |
|---|---|---|---|---|---|

| Interpreter Used? | ☐ Yes  ☒ No | Name of Interpreter | N/A | Command | N/A | Tax No. | N/A |
|---|---|---|---|---|---|---|---|

If Interpreter is Not a Member of the Service, List Name, Address and Telephone No
N/A

| Suspect's Name | Date of Birth |
|---|---|
| Rashaun Ferguson | 2/10/94 |

Who Selected the Suspect's Position? Suspect

**LINEUP MEMBERS**

| | NAME | NUMBER HELD | POSITION | AGE | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|
| 1. | ███████ | 1 | 1 | 18 | 5'11" | 220 |
| 2. | ███████ | 2 | 2 | 20 | 5'10" | 175 |
| 3. | ███████ | 3 | 3 | 28 | 5'10" | 180 |
| 4. | ███████ | 4 | 4 | 18 | 5'9" | 165 |
| 5. | Ferguson, Rashaun | 5 | 5 | 19 | 6'1" | 170 |
| 6. | ███████ | 6 | 6 | 20 | 6'0" | 170 |

| Prepared by (Rank, Name Printed) | Tax No. | Cmd. | Date Prepared |
|---|---|---|---|
| Det Jaeger | 917786 | 101 SQD | 1/27/14 |

| Supervisor's Signature | Tax No. | Cmd. | Date |
|---|---|---|---|
| | 900321 | 101 SQD | 1/27/14 |

D00525

JA-167

D00526



D00526

D00527



D00527

D00528



D00528

# EXHIBIT N



# New York City Police Department
## Omniform System – Arrests

RECORD CONTAINS SEALED INFORMATION.
THIS RECORD MAY NOT BE MADE AVAILABLE TO ANY PERSON
OR PUBLIC OR PRIVATE AGENCY OUTSIDE THE POLICE DEPARTMENT.

| **RECORD STATUS: SEALED** | **Arrest ID: Q14605601 - K** |
|---|---|
| **Arrest Location: INSIDE OF 16-12 MOTT AVENUE** | **Pct: 101** |

**Arrest Date: 01-27-2014**   Processing Type: **ON LINE**   Current Location of Perpetrator:

Time: **21:50:00**   DCJS Fax Number: **QO004083**   Borough: **Queens**

Sector: **B**   Special Event Code: **NO -**   Type:

Strip Search Conducted: **NO**   DAT Number: **0**   Location: **101 PRECINCT**

Viper Initiated Arrest: **NO**

Stop And Frisk: **NO**   Return Date: **0000-00-00**

Serial #: **0000-000-00000**

---

**COMPLAINTS:**   Arrest #: **Q14605601**

| COMPLAINT NUMBER | REPORT DATE | RECORD STATUS | OCCUR DATE | OCCUR TIME |
|---|---|---|---|---|
| 2013-101-01689 | 2013-05-03 | Valid, No Arrests | 2013-05-03 | 20:08 |

**SEALED**                                                              **SEALED**

---

**CHARGES:**   Arrest #: **Q14605601**

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 125.25 01 | F | A | 1 | MURDER 2ND: INTENTIONAL |
| #02 | No | PL 265.03 01A | F | C | 1 | CRIM POSS MACHINE GUN-2ND DEG |

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

**SEALED**                                                              **SEALED**

---

**DETAILS:**   Arrest #: **Q14605601**

AT THE ABOVE T/P/O THE DEFT DID SHOT THE C/V WITH A FIREARM CAUSING HIS DEATH

**SEALED**                                                              **SEALED**

---

**DEFENDANT: FERGUSON, RASHAUN**   NYSID #: **02815035H**   Arrest #: **Q14605601**

Nick/AKA/Maiden:

Sex: **MALE**   Height: **6FT 1IN**   Order Of Protection: **NO**

Race: **BLACK**   Weight: **170**   Issuing Court:

Age: **19**   Eye Color: **BROWN**   Docket #:

Date Of Birth: **02/10/1994**   Hair Color: **BLACK**   Expiration Date:

   Hair Length: **SHORT**   Relation to Victim: **STRANGER**

U.S. Citizen: **YES**   Hair Style: **CLOSE CUT**   Living together: **NO**

Place Of Birth: **USA**   Skin Tone: **MEDIUM**   Can be Identified: **YES**

Is this person not Proficient in English?: **NO**   Complexion: **CLEAR**

If Yes, Indicate Language:

Accent: **NO**   Soc.Security #:

   Occupation: **UNKNOWN**   Gang/Crew Affiliation: **NO**
   Name:

Identification ID:

D000013

| Identification #: | | Identifiers: |
|---|---|---|
| Physical Condition: **APPARENTLY NORMAL** | Lic/Permit Type: | |
| Drug Used: **NONE** | Lic/Permit No: | |

| LOCATION | ADDRESS | CITY | STATE/CNTRY | ZIP | APT/ROOM | PCT |
|---|---|---|---|---|---|---|
| HOME-PERMANENT | 155-01 71 AVENUE | QUEENS | NEW YORK | 2A | | 107 |

Phone # and E-Mail Address:

N.Y.C.H.A. Resident: **YES**    N.Y.C. Housing Employee: **NO** On Duty: **NO**
Development: **POMONOK**   N.Y.C. Transit Employee: **NO**

**Physical Force:NONE**

Gun:   **HANDGUN**
Weapon Used/Possessed: **USED/DISPLAYED**   Make:   Recovered: **NO**
Non-Firearm Weapon:   Color:   Serial Number Defaced:
Other Weapon Description:   Caliber: **.380 CAL**   Serial Number:
    Type: **PISTOL, SEMIAUTOMATI**
    Discharged: **YES**

Used Transit System: **NO**
Station Entered:
Time Entered:
Metro Card Type:
Metro Card Used/Poses:
Card #:

| CRIME DATA | DETAILS |
|---|---|
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | FIRED SHOT |
| CLOTHING | ACCESSORIES - SWEAT / JOGGING CLOTHES - GRAY |
| CLOTHING | OUTERWEAR - WAIST LENGTH JACKET - MULTI COLORED OR STR |
| CLOTHING | FOOTWEAR - SNEAKERS - BLUE |
| CLOTHING | HEADGEAR - UNK - UNKNOWN COLOR |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

| SEALED | SEALED |
|---|---|

| JUVENILE DATA: | Arrest #: Q14605601 |
|---|---|

Juvenile Offender:   Relative Notified: Personal Recog:
Number Of Priors: **0**   Name:
School Attending:   Phone Called:
Mother's Maiden Name:   Time Notified:

| SEALED | SEALED |
|---|---|

| ASSOCIATED ARRESTS: | Arrest #: Q14605601 |
|---|---|

ARREST ID  COMPLAINT #

Q13627179  2013-101-01689

| SEALED | SEALED |
|---|---|

**No Vehicles for Arrest #**

| SEALED | SEALED |
|---|---|

D000013

| DEFENDANTS CALLS: | Arrest #: Q14605601 |
|---|---|

CALL # NUMBER DIALED NAME - PROVIDED BY DEFENDANT NAME AS LISTED IN CELL PHONE RELATIONSHIP CALL COMPLETED

| 1 | 347-662-1951 | TRULEOGO,AMANDA | | GIRLFRIEND |
|---|---|---|---|---|
| 2 | - - | , | | |
| 3 | - - | , | | |

| SEALED | SEALED |
|---|---|

| INVOICES: | Arrest #: Q14605601 |
|---|---|

INVOICE# COMMAND PROPERTY TYPE VALUE

| SEALED | SEALED |
|---|---|

| ARRESTING OFFICER: DT3 QUINN JAEGER | Arrest #: Q14605601 |
|---|---|

| Tax Number: **917786** | On Duty: **YES** | Force Used: **NO** |
|---|---|---|
| Other ID (non-NYPD): **917786** | In Uniform: **NO** | Type: |
| Shield: **7321** | Squad: **A** | Reason: |
| Department: **NYPD** | Chart: **08** | Officer Injured: **NO** |
| Command: **331** | Primary Assignment: | Officer Body Worn Camera: |

| SEALED | SEALED |
|---|---|

| Arresting Officer Name:<br>**DT3 JAEGER, QUINN** | Tax #:<br>**917786** | Command:<br>**331** | Agency:<br>**NYPD** | TRI<br>Number: 0000-000-00000 Suffix: 0 |
|---|---|---|---|---|
| Supervisor Approving:<br>**LCD MASTERSON GEMM** | Tax #:<br>**900321** | Command:<br>**331** | Agency:<br>**NYPD** | |
| Report Entered by:<br>**DT3 JAEGER, QUINN** | Tax #:<br>**917786** | Command:<br>**331** | Agency:<br>**NYPD** | |

| END OF ARREST REPORT<br>Q14605601 |
|---|

# EXHIBIT O





Q14605601

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR, COUNTY OF QUEENS

THE PEOPLE OF THE STATE OF NEW YORK

v.

RASHAUN FERGUSON (19Y)

　　　　　　　　　　　　　　DEFENDANT

STATE OF NEW YORK
COUNTY OF QUEENS

**2014QN005128**

DETECTIVE QUINN JAEGER OF QNS DET AREA 101, TAX REG#: 917786, BEING DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT MAY 3, 2013 BETWEEN 8:08PM AND 8:10PM, IN FRONT OF 54-30 BEACH CHANNEL DRIVE, COUNTY OF QUEENS, STATE OF NEW YORK, THE DEFENDANT COMMITTED THE OFFENSES OF:

PL 125.25-1 [AF] MURDER IN SECOND DEGREE - (DNA SAMPLE REQUIRED UPON
    CONVICTION)
PL 110/125.25-1 [BF] ATTEMPTED MURDER IN THE SECOND DEGREE - (DNA
    SAMPLE REQUIRED UPON CONVICTION)
PL 265.03 (3) (12/15/2006) [CF] CRIMINAL POSSESSION OF A WEAPON IN
    THE SECOND DEGREE - AN ARMED FELONY
    OFFENSE; (DNA SAMPLE REQUIRED UPON CONVICTION)

PL 125.25-1 [AF] MURDER IN SECOND DEGREE - (DNA SAMPLE REQUIRED UPON
CONVICTION)
    --- WITH INTENT TO CAUSE THE DEATH OF ANOTHER PERSON, CAUSE THE
    DEATH OF SUCH PERSON OR OF A THIRD PERSON;

PL 110/125.25-1 [BF] ATTEMPTED MURDER IN THE SECOND DEGREE - (DNA
SAMPLE REQUIRED UPON CONVICTION)
    --- WITH INTENT TO COMMIT THE CRIME OF MURDER IN THE SECOND
    DEGREE AND TO CAUSE THE DEATH OF ANOTHER PERSON, ENGAGE IN
    CONDUCT WHICH ATTEMPTED TO CAUSE THE DEATH OF SUCH PERSON OR A
    THIRD PERSON;

PL 265.03 (3) (12/15/2006) [CF] CRIMINAL POSSESSION OF A WEAPON IN THE
SECOND DEGREE - AN ARMED FELONY OFFENSE; (DNA SAMPLE REQUIRED UPON
CONVICTION)
    --- POSSESS ANY LOADED FIREARM. SUCH POSSESSION SHALL NOT,
    EXCEPT AS PROVIDED IN SUBDIVISION ONE OR SEVEN OF SECTION 265.02
    OF THIS ARTICLE CONSTITUTE A VIOLATION OF THIS SUBDIVISION IF
    SUCH POSSESSION TAKES PLACE IN SUCH PERSON'S HOME OR PLACE OF
    BUSINESS.

THE ABOVE OFFENSES WERE COMMITTED AS FOLLOWS:



FERGUSON,RASHAUN Q14605601

DEPONENT STATES THAT BASED UPON INFORMATION SUPPLIED BY PERSONS KNOWN TO THE QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE AND THE NEW YORK CITY POLICE DEPARTMENT, AT THE ABOVE MENTIONED DATE, TIME, AND PLACE OF OCCURRENCE, THE DEFENDANT RASHAUN FERGUSON FIRED FIVE SHOTS FROM A PISTOL AT KEITH GULLEY, HITTING HIM IN HIS LEFT BACK, RIGHT FOREARM, RIGHT BUTTOCK, RIGHT THIGH, AND GENITALS, THEREBY CAUSING HIS DEATH.

DEPONENT FURTHER STATES THAT BASED UPON INFORMATION SUPPLIED BY PERSONS KNOWN TO THE QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE AND THE NEW YORK CITY POLICE DEPARTMENT, AT THE ABOVE MENTIONED DATE, TIME, AND PLACE OF OCCURRENCE, THE DEFENDANT, RASHAUN FERGUSON, FIRED THREE SHOTS FROM A PISTOL AT WITNESS #1, KNOWN TO THE NEW YORK CITY POLICE DEPARTMENT AND QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE, HITTING WITNESS #1 THREE TIMES IN HIS LOWER BACK AREA.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW

1/28/14
DATE        SIGNATURE

SWORN TO BEFORE ME ON THE
DAY OF

DATE        SIGNATURE

# EXHIBIT P

G.L.1

1    SUPREME COURT    :    CRIMINAL TERM

2    -----------------------------------------x

3    THE PEOPLE OF THE STATE OF NEW YORK   :

4                                  :

5          -against-              :  IND. NO.

6                                :  2023/2014

7       RASHAUN FERGUSON

8    -----------------------------------------x

9

10                BEFORE:

11      QUEENS COUNTY GRAND JURY

12      ADD'L 11TH TERM 2014

13

14      HELD ON: NOVEMBER 3, 2014

15      A.M. SESSION

16

17

18   PRESENTED BY:

19    DEBRA POMODORE, ASSISTANT DISTRICT ATTORNEY

20

21                GWENDOLYN LUCAS

22                HEARING REPORTER

23

24

25

CONFIDENTIAL: FOR USE ONLY IN RASHAUN FERGUSON v. CITY OF N.Y., et al., 17-cv-6871 (ENV)(SJB) & PURSUANT TO PROTECTIVE ORDER

DEF 03265

# EXHIBIT Q

*2017-0677 /
SF            b/e*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

        CASE# 1:17-cv-06871-ENV-SJB

---------------------------------------------x

RASHAUN FERGUSON,

              Plaintiff,

        -against-

THE CITY OF NEW YORK, DETECTIVE JAEGER, DETECTIVE

MICHAEL GILDEA SHIELD #465 and UNIDENTIFIED

MEMBERS OF THE NYPD all sued herein in their

individual capacities,

              Defendants.

---------------------------------------------x

            116 West 23rd Street

            New York, New York

            January 3, 2019

            4:33 p.m.

        Deposition of the Non-Party Witness

TIMOTHY REGAN, pursuant to Notice, before

Robert S. Barletta, a Notary Public of the State

of New York.

1                          Regan

2        A.    He was not at work.  I think he retired

3    at that point.

4        Q.    Do you know if he gave testimony to the

5    Grand Jury?

6        A.    I don't recall.

7        Q.    Do you know if Gildea gave testimony to

8    the Grand Jury?

9        A.    I believe he did.

10       Q.    Were there any eyewitnesses to the

11   events giving rise to the criminal prosecution

12   besides Reginald Evans who gave testimony to the

13   Grand Jury?

14       A.    I can't recall anyone else.

15       Q.    Were you aware of Michael Gildea's prior

16   relationship with Ferguson at the time you were

17   prosecuting or trying this case?

18       MR. ROSENKILDE:  Objection.  You can

19       answer.

20       A.    I know he arrested him for a prior

21   homicide.

22       Q.    There was a point in time that Rashaun

23   Ferguson's mother's car was seized?  Are you aware

24   of that?

25       A.    I am aware of that, yes.

# EXHIBIT R

I N D I C T M E N T

S U P R E M E   C O U R T   O F   T H E   S T A T E   O F   N E W   Y O R K
C O U N T Y   O F   Q U E E N S

-------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

AGAINST

RASHAUN FERGUSON - AFO,VFO
    DEFENDANT
       2014QN005128
         NYSID# 02815035H

FILED: NOV 2 0 2014

INDICTMENT NO. 2723/2014

-------------------------------------------

| | |
|---|---|
| PL 125.25-1 | MURDER IN THE SECOND DEGREE (1) |
| PL 110/125.25-1 | ATTEMPTED MURDER IN THE SECOND DEGREE (2) |
| PL 265.03-3 | CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE (3) |
| PL 265.03-1B | CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE (4) |
| PL 120.05-2 | ASSAULT IN THE SECOND DEGREE (5) |
| PL 260.10-1 | ENDANGERING THE WELFARE OF A CHILD (6-8) |

A TRUE BILL

DISTRICT ATTORNEY

FIRST COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,

ACCUSES THE DEFENDANT OF MURDER IN THE SECOND DEGREE COMMITTED AS

FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF

QUEENS, WITH INTENT TO CAUSE THE DEATH OF KEITH GULLEY, CAUSED THE DEATH

OF KEITH GULLEY BY SHOOTING HIM WITH A DEADLY WEAPON, TO WIT, A LOADED

PISTOL.


SECOND COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,

ACCUSES THE DEFENDANT OF ATTEMPTED MURDER IN THE SECOND DEGREE COMMITTED

AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF

QUEENS, WITH INTENT TO CAUSE THE DEATH OF PERSON #1 WHOSE IDENTITY IS

KNOWN TO THE GRAND JURY, ATTEMPTED TO CAUSE THE DEATH OF SAID PERSON

BY SHOOTING AT SAID PERSON WITH A DEADLY WEAPON, TO WIT, A LOADED

PISTOL.



THIRD COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSES THE DEFENDANT OF CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF QUEENS, KNOWINGLY POSSESSED A LOADED FIREARM, TO WIT, A PISTOL, AND SUCH POSSESSION WAS NOT IN HIS HOME OR PLACE OF BUSINESS.

THE SUBJECT MATTER OF THIS COUNT BEING AN ARMED FELONY AS THAT TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.


FOURTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSES THE DEFENDANT OF CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF QUEENS, KNOWINGLY POSSESSED A LOADED FIREARM, TO WIT, A PISTOL, WITH INTENT TO USE UNLAWFULLY AGAINST ANOTHER.

THE SUBJECT MATTER OF THIS COUNT BEING AN ARMED FELONY AS THAT TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.

QUEENS COUNTY CLERK

FIFTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,
ACCUSES THE DEFENDANT OF ASSAULT IN THE SECOND DEGREE COMMITTED AS
FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF
QUEENS, WITH INTENT TO CAUSE PHYSICAL INJURY TO PERSON #1 WHOSE IDENTITY
IS KNOWN TO THE GRAND JURY, CAUSED SUCH INJURY TO SAID PERSON, BY MEANS
OF A DEADLY WEAPON, TO WIT, A LOADED PISTOL.

THE SUBJECT MATTER OF THIS COUNT BEING AN ARMED FELONY AS THAT
TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.


SIXTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,
ACCUSES THE DEFENDANT OF ENDANGERING THE WELFARE OF A CHILD COMMITTED AS
FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF
QUEENS, KNOWINGLY ACTED IN A MANNER LIKELY TO BE INJURIOUS TO THE
PHYSICAL, MENTAL OR MORAL WELFARE OF PERSON #2 WHOSE IDENTITY IS KNOWN
TO THE GRAND JURY, A CHILD LESS THAN SEVENTEEN YEARS OLD.

SEVENTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,
ACCUSES THE DEFENDANT OF ENDANGERING THE WELFARE OF A CHILD COMMITTED AS
FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF
QUEENS, KNOWINGLY ACTED IN A MANNER LIKELY TO BE INJURIOUS TO THE
PHYSICAL, MENTAL OR MORAL WELFARE OF PERSON #3 WHOSE IDENTITY IS KNOWN
TO THE GRAND JURY, A CHILD LESS THAN SEVENTEEN YEARS OLD.


EIGHTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,
ACCUSES THE DEFENDANT OF ENDANGERING THE WELFARE OF A CHILD COMMITTED
AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF QUEENS,
KNOWINGLY ACTED IN A MANNER LIKELY TO BE INJURIOUS TO THE PHYSICAL,
MENTAL OR MORAL WELFARE OF PERSON #4 WHOSE IDENTITY IS KNOWN TO THE
GRAND JURY, A CHILD LESS THAN SEVENTEEN YEARS OLD.



RICHARD A. BROWN
DISTRICT ATTORNEY

# EXHIBIT S

SUPREME COURT OF THE STATE OF NEW YORK     NO FEE
QUEENS COUNTY
125-01 QUEENS BOULEVARD
KEW GARDENS, NY 11415

CERTIFICATE OF DISPOSITION ACQUITTAL

DATE: 01/17/2018

CERTIFICATE OF DISPOSITION NUMBER: 31327

PEOPLE OF THE STATE OF NEW YORK
VS.

| | |
|---|---|
| CASE NUMBER: | 02723-2014 |
| LOWER COURT NUMBER(S): | 2014QN005128 |
| DATE OF ARREST: | 01/27/2014 |
| ARREST #: | Q14605601 |
| NYSID #: | 2815035H |
| DATE OF BIRTH: | 02/10/1994 |
| DATE FILED: | 11/20/2014 |

FERGUSON,RASHAUN

DEFENDANT

I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS
ON FILE IN THIS OFFICE THAT ON 10/16/2017 THE ABOVE NAMED
DEFENDANT WAS TRIED AND FOUND NOT GUILTY OF ALL PENDING CRIMINAL
CHARGES AS TO THIS CRIMINAL ACTION BEFORE THE HONORABLE
LOPRESTO,CHARLES    THEN A JUDGE OF THIS COURT.

THE DEFENDANT WAS DISCHARGED FROM THE JURISDICTION OF THE COURT.

THE ABOVE MENTIONED ACQUITTAL IS A TERMINATION OF THE CRIMINAL
ACTION IN FAVOR OF THE ACCUSED AND PURSUANT TO SECTION 160.60 OF
THE CRIMINAL PROCEDURE LAW "THE ARREST AND PROSECUTION SHALL BE
DEEMED A NULLITY AND THE ACCUSED SHALL BE RESTORED, IN
CONTEMPLATION OF LAW, TO THE STATUS OCCUPIED BEFORE THE ARREST
AND PROSECUTION".

PURSUANT TO SECTION 160.50(1C) OF THE CRIMINAL PROCEDURE LAW, ALL
OFFICIAL RECORDS AND PAPERS RELATING TO THIS CASE ARE SEALED.

IN WITNESS WHEREOF,I HAVE HEREUNTO SET MY HAND AND AFFIXED MY
OFFICIAL SEAL ON THIS DATE 01/17/2018.

QUEENS COUNTY CLERK

COURT CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

RASHAUN FERGUSON,

                              Plaintiff,

            -against-

THE CITY OF NEW YORK, DETECTIVE JAEGER,
DETECTIVE MICHAEL GILDEA SHIELD # 464 and
UNIDENTIFIED MEMBERS OF THE NYPD all sued
herein in their individual capacities,

                              Defendants.

----------------------------------------------------------------------- x

**DEFENDANTS'
STATEMENT OF
UNDISPUTED FACTS
PURSUANT TO LOCAL
CIVIL RULE 56.1**

17-CV-6871 (ENV)(SJB)

       Defendants City of New York, Detective Michael Gildea, and Detective Quinn

Jaeger submit this statement pursuant to Rule 56.1 of the Local Civil Rules of the United States

District Courts for the Southern and Eastern Districts of New York, to set forth the facts as to

which they contend there is no genuine issue to be tried:

       1.      On May 3, 2013 Reginald Evans was watching his children play outside of 54-30

Beach Channel Drive, in the Edgemere housing complex ("Edgemere") in Queens, New York.

**Ex. A[1]** (Trial Testimony of Reginald Evans ["Evans Trial Test."]) at 1078:9 - 1079:4.

       2.      While Evans was outside with his daughters, his brother Keith Gulley arrived and

the two began talking. **Ex. A** (Evans Trial Test.) at 1081:20 - 1082:10; 1083:16-18.

       3.      While Evans and Gulley were talking, a gunman approached and shot both Gulley

and Evans multiple times. **Ex. A** (Evans Trial Test.) at 1084:4-13; **Ex. B** (Relevant Excerpts

from the DD5 File ["DD5 File"]) at D00403.

---

[1] All exhibits referenced herein are annexed to the Declaration of Geoffrey M. Stannard dated April 16, 2021.

4. At approximately 8:08 p.m., Detective Jaeger and Detective Gildea were notified of the shooting by radio. **Ex. C** (Jaeger Dep.) at 49:13-20.

5. Shortly thereafter, nonparty Police Officer Alfonso Vargas responded to the scene of the shooting and encountered Orris Wheeling, who identified himself as a witness to the events surrounding the shooting. **Ex. D** (Vargas Dep.) at 29:11-7; 33:14 - 34:7; 49:5-7; 71:19-25.

6. Wheeling informed Vargas that the perpetrator fled in a dark gray Ford Escape heading westbound. **Ex. D** (Vargas Dep.) at 34:2-7.

7. At 8:18 p.m., either Vargas or his supervisor made a radio report of a dark gray Ford Escape heading westbound. **Ex. D** (Vargas Dep.) 34:8-12; **Ex. E** (Sprint Report) at D000062.

8. At 8:20 p.m., Detective Gildea and Detective Jaeger arrived at the scene. **Ex. C** (Jaeger Dep.) at 49:21-22; **Ex. B** (DD5 File) at D00387.

9. When Detective Gildea and Detective Jaeger arrived at the scene, they encountered Gulley and Evans, who had each sustained gunshot wounds. **Ex. B** (DD5 File) at D00387.

10. Gulley was transported to St. John's Hospital, where he was pronounced dead at 9:05 p.m. **Ex. B** (DD5 File) at D00387.

11. Evans was also transported to a hospital, where it was determined he was likely to survive his injuries. **Ex. B** (DD5 File) at D00386.

12. At approximately 9:15 p.m., Detective Gildea and Detective Jaeger interviewed Wheeling. **Ex. B** (DD5 File) at D00390.

13.     Wheeling told Detective Gildea and Detective Jaeger the following: Prior to the shooting, Wheeling was working on his vehicle, which was parked on Beach 56th Street. While working on his vehicle, Wheeling saw a gray Ford SUV pull onto the block from Beach Channel Drive. Wheeling recognized the SUV's driver as a person who went by the name "Man" and lived in the Ocean Village housing complex. A black male exited the SUV's passenger side, took a couple of steps, then returned to the SUV. Someone from within the SUV said "take your shoes off." The same black male then exited the SUV, without shoes on, and proceeded toward Edgemere. Moments later, Wheeling heard multiple gun shots coming from Edgemere. The same black male ran back to the SUV from Edgemere with a gun in his hand. The black male re-entered the passenger side of the gray SUV, which then sped off down Beach 56 Street. **Ex. B** (DD5 File) at D00390; **Ex. F** (Detective Gildea's *Wade* Hearing Testimony ["Gildea *Wade* Test."]) at 13:4 - 16:8.

14.     Detective Gildea observed a surveillance camera at Goldie Maple Academy, a school located at 365 Beach 56th Street, but because it was not pointed north toward the intersection where the incident occurred, he determined it would not be of any value and neither he nor Detective Jaeger made any attempt to view or retrieve any video from the school. **Ex. G** (Gildea Dep.) at 44:3-18.

15.     Detective Gildea learned that members of the NYPD had on prior occasions stopped plaintiff Rashaun Ferguson while he was driving a gray Ford Escape bearing New York License Plate No. GDX 7434 in the vicinity of Edgemere. **Ex. F** (Gildea *Wade* Test.) at 19:13-17; 19:23 - 20:11.

16.     Detective Gildea conducted a Department of Motor Vehicles check, which revealed that License Plate No. GDX 7434 was registered to a gray 2003 Ford Escape, which

- 3 -

JA-193

was registered to plaintiff's mother, Monet Pierre. **Ex. F** (Gildea *Wade* Test.) at 19:23 - 20:20; **Ex. H** (Plf. Dep.) at 21:10-11.

17.     In May 2013, plaintiff's mother, Monet Pierre, owned a gray Ford Escape SUV. **Ex. H** (Plf. Dep.) at 78:8-21.

18.     Detective Gildea obtained a computer-generated photo array consisting of photographs of plaintiff and five other individuals. **Ex. G** (Gildea Dep.) at 67:8-24.

19.     On May 4, 2013, Detective Gildea and Detective Jaeger presented the photo array to Wheeling. **Ex. F** (Gildea *Wade* Test.) at 21:13 - 23:11; **Ex. I** (Wheeling Photo Array Documents); **Ex. B** (DD5 File) at D00408.

20.     Wheeling identified plaintiff in the photo array as the gunman he saw near the scene of the shooting. **Ex. F** (Gildea *Wade* Test.) at 21:13-23:11; **Ex. I** (Wheeling Photo Array Documents); **Ex. B** (DD5 File) at D00408.

21.     Wheeling wrote his initials on the Photo Array Pre-Viewing Instructions, signed his name on the Photo Array Viewing Report, signed his name under plaintiff's photograph, and wrote "this is the guy I saw with the gun" under the photo array. **Ex. I** (Wheeling Photo Array Documents) at D00486 - D00491.

22.     On May 4, 2013, Detective Gildea generated an I-Card for plaintiff based on Wheeling's positive photo array identification. **Ex. F** (Gildea *Wade* Test.) at 26:21-25.

23.     On May 4, 2013, Detective Gildea and Detective Jaeger visited Evans in the hospital and attempted to show him the previously generated photo array, but Evans refused to provide any information or make any identification. **Ex. F** (Gildea *Wade* Test.) at 25:15 - 26:20; **Ex. A** (Evans Trial Test.) at 1095:12 - 1096:15.

- 4 -

24. When Detective Gildea and Detective Jaeger visited Evans on May 4, 2013, Evans did not know that Gulley had died of his injuries. **Ex. A** (Evans Trial Test.) at 1095:3-11.

25. On May 4, 2013, nonparty detectives Velsor and Cappolla went to Goldie Maple Academy, to attempt to view video from the school's surveillance cameras, but they were unable to view the video because they were told that it would not be accessible until May 6, 2013 when the school's principal returned to work. **Ex. B** (DD5 File) at D00411; **Ex. J** (Trial Testimony of Angela Logan-Smith ["Logan-Smith Trial Test."]) at 1322:2-10.

26. Detectives Gildea and Jaeger are unaware of whether nonparty detectives Velsor or Cappolla ever returned to the school to view the video. **Ex. C** (Jaeger Dep.) at 17:11-13; **Ex. F** (Gildea *Wade* Test.) at 98:13 - 99:5.

27. On May 6, 2013, plaintiff was apprehended and taken into custody. **Ex. F** (Gildea *Wade* Test.) at 27:11-13.

28. On May 7, 2013 at 12:01 a.m., plaintiff was placed in a lineup in the presence of Detective Gildea, Detective Jaeger, and Assistant District Attorney Kristin Fraser, and the lineup was presented to Wheeling. **Ex. F** (Gildea *Wade* Test.) at 28:14 - 30:13; **Ex. K** (Wheeling Lineup Documents); **Ex. B** (DD5 File) at D00418.

29. Wheeling did not make an outright positive identification, but made several references to plaintiff, stating that he "looks like the guy but his skin color is off." **Ex. F** (Gildea *Wade* Test.) at 30:15 - 31:10; **Ex. K** (Wheeling Lineup Documents); **Ex. B** (DD5 File) at D00418.

30. After viewing the lineup, Wheeling stated to Detective Gildea, "I can't be the only one doing this." **Ex. G** (Gildea Dep.) at 73:24 - 74:8.

31.     After Wheeling did not make an outright positive identification, Detective Gildea voided plaintiff's arrest and released him from custody. **Ex. F** (Gildea *Wade* Test.) at 40:2-6; **Ex. H** (Plaintiff Dep.) at 141:5-10.

32.     On May 7, 2013, Detective Gildea spoke with Evans's wife, who informed Gildea that Evans would be willing to meet with Gildea. **Ex. F** (Gildea *Wade* Test.) at 40:7-21.

33.     On May 9, 2013, Detective Gildea and Detective Jaeger met with Evans and showed him the previously generated photo array. **Ex. F** (Gildea *Wade* Test.) at 40:22 - 44:15; **Ex. L** (Evans Photo Array Documents); **Ex. B** (DD5 File) at D00430.

34.     Evans made a positive photo array identification of plaintiff as the person who shot him and Gulley. **Ex. F** (Gildea *Wade* Test.) at 44:6-10; **Ex. L** (Evans Photo Array Documents); **Ex. B** (DD5 File) at D00430.

35.     Evans signed his name under plaintiff's photograph and wrote "that's the guy that walk [*sic*] up and shot me" under the photo array. **Ex. L** (Evans Photo Array Documents) at D00482.

36.     Evans told Detective Gildea and Detective Jaeger that the reason he previously refused to make an identification was that he believed Gulley was still alive and didn't want to get involved because it is "street code" not to "snitch," but chose to cooperate after learning that his brother had died. **Ex. B** (DD5 File) at D00430; **Ex. A** (Evans Trial Test.) at 1097:11 - 1098:7.

37.     After Evans made a positive photo array identification, Detective Gildea reached out to nonparty Detective Thompson and requested that he attempt to locate and apprehend plaintiff. **Ex. F** (Gildea *Wade* Test.) at 45:2-12.

- 6 -

38.     On January 27, 2014, once plaintiff was located, nonparty police officers apprehended plaintiff and took him into police custody. **Ex. F** (Gildea *Wade* Test.) at 47:3-8.

39.     Plaintiff was placed in a lineup in the presence of Detective Jaeger, Lieutenant Gemma Masterson, Assistant District Attorney Briana Heymann, and plaintiff's criminal defense attorney, Scott Brettschneider. **Ex. H** (Plf. Dep.) at 152:3-5; **Ex. M** (Evans Lineup Documents); **Ex. B** (DD5 File) at D00442.

40.     The lineup was presented to Evans. **Ex. A** (Evans Trial Test.) at 1098:15 - 1102:11; **Ex. M** (Evans Lineup Documents); **Ex. B** (DD5 File) at D00442.

41.     Evans again identified plaintiff as the gunman who shot him and Keith Gulley on May 3, 2013. **Ex. A** (Evans Trial Test.) at 1101:17-1102:11.

42.     Plaintiff was arrested. **Ex. N** (Arrest Report # Q14605601-K).

43.     On January 28, 2014, Detective Jaeger signed a criminal court complaint charging plaintiff with Murder in the Second Degree, Attempted Murder in the Second Degree, and Criminal Possession of a Weapon in the Second Degree. **Ex. O** (Criminal Court Complaint).

44.     On November 3, 2014, an Assistant District Attorney presented the charges against plaintiff to a grand jury. **Ex. P** (Grand Jury Hearing Cover Page).

45.     Evans appeared before the grand jury and testified that plaintiff shot him and Gulley on May 3, 2013. **Ex. Q** (Deposition of ADA Timothy Regan ["Regan Dep."]) at 21:10-14.

46.     Evans was the only witness to the incident to testify before the grand jury. **Ex. Q** (Regan Dep.) at 21:10-14.

- 7 -

JA-197

47.     On November 20, 2014, the grand jury indicted plaintiff on charges including Murder in the Second Degree and Attempted Murder in the Second Degree. **Ex. R** (Queens County Supreme Court Indictment # 2723/2014).

48.     The charges against plaintiff proceeded to trial in 2017. **Ex. A** (Evans Trial Test.) at 1074.

49.     At the trial, Evans once again testified that plaintiff shot him and Gulley. **Ex. A** (Evans Trial Test.) at 1098:15-1102:11.

50.     The defense called Angela Logan-Smith, principal of Goldie Maple Academy, as a trial witness. **Ex. K** (Logan-Smith Trial Test.) at 1325:11-19.

51.     Logan-Smith testified that on May 6, 2013, two police officers came to Goldie Maple Academy and viewed surveillance footage from a camera pointed at a portion of Beach 56th Street. **Ex. J** (Logan-Smith Trial Test.) at 1325:11-19; 1334:19-21.

52.     The camera did not depict the intersection of Beach Channel Drive and Beach 56th Street. **Ex. J** (Logan-Smith Trial Test.) at 1334:19 – 1335:3.

53.     Logan-Smith testified that on the video "you could see a person run by and a few seconds later a car went by," and testified that the car was a "dark sedan." **Ex. J** (Logan-Smith Trial Test.) at 1327:15-18; 1328:15 – 1329:2.

54.     Logan-Smith testified that someone watching the video would not be able to determine "facial features and specifics of the individual." She further testified that "[y]ou could make out that there was a person. You can make out just general, like, superficial details of the person." She further testified that the video was not of sufficient quality to see if the person was holding something. **Ex. J** (Logan-Smith Trial Test.) at 1327:25 – 1328:7; 1338:2-4.

- 8 -

JA-198

55. Logan-Smith does not know the identities the officers that viewed the surveillance footage. **Ex. J** (Logan-Smith Trial Test.) at 1327:5-12.

56. Neither Detective Gildea nor Detective Jaeger ever viewed any surveillance footage recorded by any of Goldie Maple Academy's surveillance cameras. **Ex. C** (Jaeger Dep.) at 13:15-21; **Ex. G** (Gildea Dep.) at 44:19-20.

57. Neither Detective Gildea nor Detective Jaeger has ever met Logan-Smith. **Ex G** (Gildea Dep.) at 17:24-18:5; **Ex. C** (Jaeger Dep.) at17:23-18:7.

58. On October 16, 2017, the jury returned a verdict acquitting plaintiff of all charges. **Ex. S** (Certificate of Disposition).

Dated:      New York, New York
            April 16, 2021

                                    JAMES E. JOHNSON
                                    Corporation Counsel of the
                                        City of New York
                                    *Attorney for Defendants City of New York,*
                                        *Gildea, and Jaeger*
                                    100 Church Street, Third Floor
                                    New York, New York 10007
                                    (212) 356-2409

                        By:     *GStannard*
                                _____
                                    Geoffrey M. Stannard
                                    *Assistant Corporation Counsel*
                                    Special Federal Litigation Division

To:     **BY EMAIL**
        Fred Lichtmacher, Esq., *Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

RASHAUN FERGUSON,

                  Plaintiff,

    - against -

THE CITY OF NEW YORK, DETECTIVE
JAEGER, DETECTIVE MICHAEL GILDEA
SHIELD # 465 and UNIDENTIFIED
MEMBERS OF THE NYPD all sued herein in
their individual capacities,

                  Defendants.
-------------------------------------------------------------x

**DECLARATION OF ATTORNEY
FRED LICHTMACHER**

17-cv-06871-ENV-SJB

STATE OF NEW YORK  )
                : SS. :
COUNTY OF NEW YORK  )

      **FRED LICHTMACHER**, declares, pursuant to 28 U.S.C. §1746 and under penalty of

perjury as follows:

      I am an attorney duly admitted to practice law before the courts of the State of New York

as well as in the Eastern, Southern and Northern District Federal Courts. I am counsel for the

plaintiff Rashaun Ferguson in the above-entitled matter. I am familiar with the facts and

circumstances hereinafter contained within, the source of my knowledge being the contents of

my file, conversations with the plaintiff and witnesses, as well as from having litigated this

matter since its inception.

      Annexed hereto for the convenience of the Court are true copies of the following:

      Exhibit "1" is a true copy of the Felony Complaint sworn to by Detective Jaeger;

      Exhibit "2" is a true copy of the Indictment in Plaintiff's criminal case;

-1-

Exhibit "3" is a true copy of the Notice of Claim Plaintiff filed against the City of New York on November 22, 2017;

Exhibit "4" is a true copy of the Federal Complaint in the instant matter 17-cv-06871-ENV-SJB;

Exhibit "5" is a true copy of the Sprint Report generated during the police investigation;

Exhibit "6" is a true copy of excerpts from Police Officer Alfonso Vargas' Deposition;

Exhibit "7" is a true copy of excerpts from Defendant Police Officer Alfonso Vargas' memo book;

Exhibit "8" is a true copy of Detective Jaeger's notes applicable to his interview of Regginald Evans shortly after he was shot;

Exhibit "9" is a true copy of excerpts from Defendant Detective Quinn Jaeger's Deposition;

Exhibit "10" is a true copy of excerpts from Defendant Police Officer Gildea's Deposition;

Exhibit "11" is a true copy of excerpts from Plaintiff Rashaun Ferguson's Deposition;

Exhibit "12" is a true copy of excerpts from the trial transcript in the Criminal proceedings;

Exhibit "13" is a true copy of the Preliminary Investigation Report;

Exhibit "14" is a true copy of Ortiz' Mugshot;

Exhibit "15" is a true copy of Plaintiff Rashaun Ferguson's Mugshot;

Exhibit "16" is a true copy of the Certificate of Disposition from Plaintiff's Criminal proceedings;

-2-

Exhibit "17" is a Certified copy of the Omniform Complaint Report generated by Police Officer Vargas;

Exhibit "18" is a true copy of excerpts from non-party witness Henry McCummings' Deposition;

Exhibit "19" is a true copy of excerpts from non-party witness, Principal Logan-Smith's Deposition;

Exhibit "20" is a true copy of the document marked as exhibit 3 from Defendant Police Officer Gildea's Deposition;

Exhibit "21" is a true copy of Investigator DeLeon's Report;

Exhibit "22" is a true copy of DD5's contained in the DAs file pursuant to the prosecution of Rashaun Ferguson;

Exhibit "23" is a true copy of excerpts from ADA Regan's Depostion;

Exhibit "24" is a true copy of the Photo Array Viewing Report, marked as exhibit 7 at Defendant Jaeger's Deposition;

Exhibit "25" is a true copy of the Search Warrant Affidavit for Wheeling signed by Christopher Velsor;

Exhibit "26" is a true copy of excerpts from non-party witness, Orris Wheeling's Deposition;

Exhibit "27" is a true copy of the Lineup Information Report.

On May 3, 2013 in the courtyard in front of 54-30 Beach Channel Drive, in Far Rockaway, New York, which has a majority African American population, two men were shot and the investigation that followed prompted the indictment of Plaintiff Rashaun Ferguson. The

-3-

investigation failed to preserve video evidence from the time of the shooting captured on the video surveillance camera at Goldie Maple School, which is down the road from the location of the shooting located at 365 Beach 56th Street, Avenue, New York, just south of Beach Channel Drive. The investigation also failed to generate DD5's pursuant to actions the officers and detectives took working on the case and they failed to disclose an eyewitness to Mr. Ferguson's defense counsel. Absent from the DD5's generated was a DD5 memorializing the viewing of the video from Goldie Maple School with Ms. Logan-Smith.

Certain aspects and facts learned during the investigation were contradicted or unsupported at the criminal trial proceedings, and certain statements, including those of eyewitness' were not memorialized or properly disclosed to defense counsel.

Wynter Carter's description of the shooter as being "chubby and built" is inconsistent with Mr. Ferguson's thin build.

During the trial, Mr. Evans, who was one of the victims of the shooting, was never confronted about the statement he gave to Detective Jaeger that the man who shot him was light skinned, even though Mr. Ferguson does not fit that description.

Detective Jaeger, who was the initial detective on the case, did not testify at the criminal trial.

Eyewitness Orris Wheeling identified the car on scene the day of the incident as a "dark gray Ford Escape."This was initially the only piece of evidence the investigation relied on in making Ferguson the suspect. Wheeling did not testify at the criminal trial.

The man identified as the actual perpetrator of the shooting, Marcus Ortiz was never considered to be a suspect even though his name was in the defendants' file and there was

-4-

evidence and a witness who alleged he was the shooter. The investigation failed to consider him and he was eventually murdered less than a year after the incident, on March 10, 2014 in South Lebanon Township.

Dated: New York, New York
    May 17, 2021

Fred Lichtmacher

AFFI566279558043

Q14605601

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR, COUNTY OF QUEENS

THE PEOPLE OF THE STATE OF NEW YORK |
           V.                |
                           |
RASHAUN FERGUSON (19Y)      |
              DEFENDANT|

STATE OF NEW YORK
COUNTY OF QUEENS

DETECTIVE QUINN JAEGER OF QNS DET AREA 101, TAX REG#: 917786, BEING DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT MAY 3, 2013 BETWEEN 8:08PM AND 8:10PM, IN FRONT OF 54-30 BEACH CHANNEL DRIVE, COUNTY OF QUEENS, STATE OF NEW YORK, THE DEFENDANT COMMITTED THE OFFENSES OF:

PL 125.25-1 [AF] MURDER IN SECOND DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
PL 110/125.25-1 [BF] ATTEMPTED MURDER IN THE SECOND DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
PL 265.03 (3) (12/15/2006) [CF] CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE - AN ARMED FELONY OFFENSE; (DNA SAMPLE REQUIRED UPON CONVICTION)

PL 125.25-1 [AF] MURDER IN SECOND DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
--- WITH INTENT TO CAUSE THE DEATH OF ANOTHER PERSON, CAUSE THE DEATH OF SUCH PERSON OR OF A THIRD PERSON;

PL 110/125.25-1 [BF] ATTEMPTED MURDER IN THE SECOND DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
--- WITH INTENT TO COMMIT THE CRIME OF MURDER IN THE SECOND DEGREE AND TO CAUSE THE DEATH OF ANOTHER PERSON, ENGAGE IN CONDUCT WHICH ATTEMPTED TO CAUSE THE DEATH OF SUCH PERSON OR A THIRD PERSON;

PL 265.03 (3) (12/15/2006) [CF] CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE - AN ARMED FELONY OFFENSE; (DNA SAMPLE REQUIRED UPON CONVICTION)
--- POSSESS ANY LOADED FIREARM. SUCH POSSESSION SHALL NOT, EXCEPT AS PROVIDED IN SUBDIVISION ONE OR SEVEN OF SECTION 265.02 OF THIS ARTICLE CONSTITUTE A VIOLATION OF THIS SUBDIVISION IF SUCH POSSESSION TAKES PLACE IN SUCH PERSON'S HOME OR PLACE OF BUSINESS.

THE ABOVE OFFENSES WERE COMMITTED AS FOLLOWS:

JA-205



AFFI566279|558043

FERGUSON,RASHAUN Q14605601

DEPONENT STATES THAT BASED UPON INFORMATION SUPPLIED BY PERSONS KNOWN TO THE QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE AND THE NEW YORK CITY POLICE DEPARTMENT, AT THE ABOVE MENTIONED DATE, TIME, AND PLACE OF OCCURRENCE, THE DEFENDANT RASHAUN FERGUSON FIRED FIVE SHOTS FROM A PISTOL AT KEITH GULLEY, HITTING HIM IN HIS LEFT BACK, RIGHT FOREARM, RIGHT BUTTOCK, RIGHT THIGH, AND GENITALS, THEREBY CAUSING HIS DEATH.

DEPONENT FURTHER STATES THAT BASED UPON INFORMATION SUPPLIED BY PERSONS KNOWN TO THE QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE AND THE NEW YORK CITY POLICE DEPARTMENT, AT THE ABOVE MENTIONED DATE, TIME, AND PLACE OF OCCURRENCE, THE DEFENDANT, RASHAUN FERGUSON, FIRED THREE SHOTS FROM A PISTOL AT WITNESS #1, KNOWN TO THE NEW YORK CITY POLICE DEPARTMENT AND QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE, HITTING WITNESS #1 THREE TIMES IN HIS LOWER BACK AREA.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW

1/28/14

DATE      SIGNATURE

SWORN TO BEFORE ME ON THE
DAY OF

DATE      SIGNATURE

JA-206

I N D I C T M E N T

S U P R E M E   C O U R T   O F   T H E   S T A T E   O F   N E W   Y O R K
C O U N T Y   O F   Q U E E N S

------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

AGAINST

RASHAUN FERGUSON - AFO,VFO            | FILED:
    DEFENDANT                         | INDICTMENT NO. 2723/2014
        2014QN005128
         NYSID# 02815035H

------------------------------------------

PL 125.25-1       MURDER IN THE SECOND DEGREE (1)
PL 110/125.25-1   ATTEMPTED MURDER IN THE SECOND DEGREE (2)
PL 265.03-3       CRIMINAL POSSESSION OF A WEAPON IN THE SECOND
                  DEGREE (3)
PL 265.03-1B      CRIMINAL POSSESSION OF A WEAPON IN THE SECOND
                  DEGREE (4)
PL 120.05-2       ASSAULT IN THE SECOND DEGREE (5)
PL 260.10-1       ENDANGERING THE WELFARE OF A CHILD (6-8)

A TRUE BILL

---------------------------------          DISTRICT ATTORNEY
 FOREMAN

JA-207

FIRST COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,
ACCUSES THE DEFENDANT OF MURDER IN THE SECOND DEGREE COMMITTED AS
FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF
QUEENS, WITH INTENT TO CAUSE THE DEATH OF KEITH GULLEY, CAUSED THE DEATH
OF KEITH GULLEY BY SHOOTING HIM WITH A DEADLY WEAPON, TO WIT, A LOADED
PISTOL.


SECOND COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,
ACCUSES THE DEFENDANT OF ATTEMPTED MURDER IN THE SECOND DEGREE COMMITTED
AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF
QUEENS, WITH INTENT TO CAUSE THE DEATH OF PERSON #1 WHOSE IDENTITY IS
KNOWN TO THE GRAND JURY, ATTEMPTED TO CAUSE THE DEATH OF SAID PERSON
BY SHOOTING AT SAID PERSON WITH A DEADLY WEAPON, TO WIT, A LOADED
PISTOL.

THIRD COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSES THE DEFENDANT OF CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF QUEENS, KNOWINGLY POSSESSED A LOADED FIREARM, TO WIT, A PISTOL, AND SUCH POSSESSION WAS NOT IN HIS HOME OR PLACE OF BUSINESS.

THE SUBJECT MATTER OF THIS COUNT BEING AN ARMED FELONY AS THAT TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.

FOURTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSES THE DEFENDANT OF CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF QUEENS, KNOWINGLY POSSESSED A LOADED FIREARM, TO WIT, A PISTOL, WITH INTENT TO USE UNLAWFULLY AGAINST ANOTHER.

THE SUBJECT MATTER OF THIS COUNT BEING AN ARMED FELONY AS THAT TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.

FIFTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,
ACCUSES THE DEFENDANT OF ASSAULT IN THE SECOND DEGREE COMMITTED AS
FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF
QUEENS, WITH INTENT TO CAUSE PHYSICAL INJURY TO PERSON #1 WHOSE IDENTITY
IS KNOWN TO THE GRAND JURY, CAUSED SUCH INJURY TO SAID PERSON,  BY MEANS
OF A DEADLY WEAPON, TO WIT, A LOADED PISTOL.

THE SUBJECT MATTER OF THIS COUNT BEING AN ARMED FELONY AS THAT
TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.


SIXTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT,
ACCUSES THE DEFENDANT OF ENDANGERING THE WELFARE OF A CHILD COMMITTED AS
FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF
QUEENS, KNOWINGLY ACTED IN A MANNER LIKELY TO BE INJURIOUS TO THE
PHYSICAL, MENTAL OR MORAL WELFARE OF PERSON #2 WHOSE IDENTITY IS KNOWN
TO THE GRAND JURY, A CHILD LESS THAN SEVENTEEN YEARS OLD.


JA-210

SEVENTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSES THE DEFENDANT OF ENDANGERING THE WELFARE OF A CHILD COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF QUEENS, KNOWINGLY ACTED IN A MANNER LIKELY TO BE INJURIOUS TO THE PHYSICAL, MENTAL OR MORAL WELFARE OF PERSON #3 WHOSE IDENTITY IS KNOWN TO THE GRAND JURY, A CHILD LESS THAN SEVENTEEN YEARS OLD.

EIGHTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSES THE DEFENDANT OF ENDANGERING THE WELFARE OF A CHILD COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT MAY 03, 2013 IN THE COUNTY OF QUEENS, KNOWINGLY ACTED IN A MANNER LIKELY TO BE INJURIOUS TO THE PHYSICAL, MENTAL OR MORAL WELFARE OF PERSON #4 WHOSE IDENTITY IS KNOWN TO THE GRAND JURY, A CHILD LESS THAN SEVENTEEN YEARS OLD.

RICHARD A. BROWN
DISTRICT ATTORNEY

## NOTICE OF CLAIM

### In the Matter of the Claim of

Rashaun Ferguson

v.

### THE CITY OF NEW YORK,

Office of the Comptroller
City of New York
1 Centre Street
New York, NY 10007

TO:     COMPTROLLER OF THE CITY OF NEW YORK

     **PLEASE TAKE NOTICE** that the undersigned Claimant hereby makes claims and demands against the City of New York.

     1.    The name and post-office address of the Claimant and of his attorney are:

CLAIMANT     Rashaun Ferguson
c/o Fred Lichtmacher
The Law Office of Fred Lichtmacher P.C.
116 West 23rd Street Suite 500
New York, New York 10011
(212) 922-9066

ATTORNEY -     Fred Lichtmacher
The Law Office of Fred Lichtmacher P.C.
116 West 23rd Street Suite 500
New York, New York 10011
(212) 922-9066

     2    The nature of the claims: Claimant makes this Claim, for False Arrest, Malicious Prosecution, Malicious Abuse of Process and Negligent Hiring, Retaining and Training for actions taken and not taken by members of the New York City Police Department (NYPD) and the City of New York.

     3.    The time when, the place where and the manner in which the claims arose: The Claimant was subjected to a False Arrest on January 27, 2014 at 51-49 Almeda 3C Far Rockaway NY 11691by members of the NYPD who knowingly caused him to be prosecuted on false charges including murder up through his acquittal on all eight (8) criminal charges brought against the Claimant on October 16, 2017 in at . Claimant was imprisoned continually from the date of his arrest until the day of his full acquittal on all the false charges. The City of New York, knew or should have known of the tendencies of its Detectives who caused the aforementioned acts to the detriment of the Claimant.

-1-

4      The items of damage and injuries claimed include: False arrest, Malicious Prosecution, forced court appearances, an almost four year incarceration on false charges, having to attend trial, embarrassment, humiliation, he was prevented from attending to his usual affairs of business, being defamed in his community and he suffered assorted other harms.

That said claim and demand is hereby presented for adjustment and payment in the amount of Five Million ($5,000,000.00) Dollars.

The undersigned therefore presents this claim for adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the Claimant intends to commence an action on these claims.

Dated: New York, New York
         October 17, 2017

CLAIMANT'S ATTORNEY
Office Post Office Address and Telephone Number

Fred Lichtmacher
The Law Office of Fred Lichtmacher P.C.
116 West 23rd Street Suite 500
New York, New York 10011
(212) 922-9066
Fax # (212) 922-9077

JA-213

### **VERIFICATION**

I, Rashaun Ferguson am the Claimant in the within action. I have read the foregoing Notice of Claim and I know the contents thereof are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Dated: October 17, 2017
    New York, New York

_____
Rashaun Ferguson

STATE OF NEW YORK}
NEW YORK COUNTY } ss:

Before me personally came the individual named above who executed the above Notice of Claim before me on this 17th Day of October, 2017.

_____
NOTARY PUBLIC



- 3 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

RASHAUN FERGUSON,

     Plaintiff,           **COMPLAINT**

   -against-

THE CITY OF NEW YORK, DETECTIVE
JAEGER, DETECTIVE MICHAEL GILDEA
SHIELD # 465 and UNIDENTIFIED MEMBERS   **JURY TRIAL DEMANDED**
OF THE NYPD all sued herein in their individual
capacities,

     Defendants.

--------------------------------------------------------X

   Plaintiff, by his attorney, Fred Lichtmacher of The Law Office of Fred

Lichtmacher P.C., complaining of the Defendants herein, respectfully alleges as follows:

### JURISDICTION AND VENUE

   1.   This action arises under 42 U.S.C. §1983 and the Fourth, Fifth, Sixth and

Fourteenth Amendments to the United States Constitution.  Subject matter jurisdiction is

conferred by 28 U.S.C. §1331 and §1343 (a)(3 & 4) and this Court has jurisdiction to hear

Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

   2.   Pursuant to 28 U.S.C. §1391(b)(1), venue is proper in the Eastern District

of New York.

### PARTIES

   3.   Plaintiff Rashaun Ferguson is an African American male, who at all times

relevant, was a resident of Queens County in the City and State of New York.

4. Defendant City of New York is a Municipal Corporation within New York State.

5. Pursuant to §431 of its Charter, the City of New York has established and maintains the New York City Department of Police as a constituent department or agency.

6. At all times relevant, the City of New York employed the defendant detectives more fully identified below.

7. Defendants Detectives Jaeger and Gildea, as well as Unidentified Members of the NYPD, are liable for directly participating and/or failing to intervene to prevent the acts described herein and are sued in their individual capacities and were at all times relevant state actors acting under color of law.

8. The Defendant Detectives as well as Unidentified Members of the NYPD were agents, servants and employees of the City of New York and at all times relevant were acting within the scope of their employment.

9. Defendant City of New York is vicariously liable to the Plaintiff for the individual Defendants' common law torts via the principle of *respondeat superior*.

10. New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

## **CONDITIONS PRECEDENT**

11. On or about October 18, 2017, and within ninety days after the claims arose, Plaintiff filed a Notice of Claim upon Defendant the City of New York by delivering copies thereof to the person designated by law as a person to whom such claims may be served.

JA-216

12. The Notice of Claim was in writing and sworn to by the Plaintiff, and contained the name and post office address where correspondence can be received by the Plaintiff and by Plaintiff's attorney.

13. The Notice of Claim set out the nature of the claims, the time when, the place where and manner by which the claim arose, and damage and injuries claimed to have been sustained.

14. To date, no hearing pursuant to 50-h Hearing has been noticed or conducted.

15. More than thirty days have elapsed since the service of the aforementioned Notice of Claim and adjustment or payment thereof has been neglected or refused.

16. This action is commenced within one year and ninety days after the happening of the events upon which the state claims are based and within three years of when Plaintiffs' federal causes of action arose.

17. Defendant City of New York is vicariously liable to the Plaintiff for the individual Defendants' common law torts via the principle of *respondeat superior*.

18. New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

**FACTS UNDERLYING
PLAINTIFF'S CLAIMS FOR RELIEF**

19. On January 27, 2014 at 51-49 Almeda 3C Far Rockaway NY 11691 the Defendants knowingly caused the Plaintiff to be arrested on eight false charges, including murder.

-3-

JA-217

20.     The Defendants, who participated in the investigation and prosecution of the Plaintiff, knew shortly after the shooting that the Plaintiff was not guilty of the crimes alleged, as they spoke with several witnesses whose description of the murderer clearly did not match the description of the Plaintiff.

21.     One witness described the murderer as 5'9, 175 pounds, and light-skinned. Plaintiff is 6'4, 160 pounds, and dark-skinned.

22.     Defendants in their investigation were able to determine what the murderer looked like, including his height, skin tone, hair style, physical build and the clothes he was wearing.

23.     Plaintiff did not resemble the murderer in any way.

24.     Nevertheless, despite being aware the Plaintiff was innocent, the Defendants, who knew the Plaintiff previously, with the intent to obtain an indictment and conviction of the innocent Plaintiff, withheld witness's names who were favorable to the Plaintiff.

25.     The Defendants, with the intent to obtain the indictment and conviction of the innocent Plaintiff, withheld and in some instances either destroyed or allowed to be destroyed exculpatory documents.

26.     The Defendants, with the intent to obtain the indictment and conviction of the innocent Plaintiff, intentionally failed to generate mandated documents which would have been exculpatory.

27.     The Defendants, with the intent to obtain the indictment and conviction of the innocent Plaintiff, intentionally withheld the results of tests conducted which, upon

-4-

JA-218

information and belief, concluded with exculpatory results, including but not limited to the

"fuming" of a vehicle the Defendants falsely accused the Plaintiff of being brought to the scene

of the murder in.

28.     The Defendants, with the intent to obtain the indictment and conviction of

the innocent Plaintiff, failed to inform the Assistant District Attorney, the Court or Plaintiff's

counsel that witnesses who viewed the murder and the murderer did not identify the Plaintiff as

the murderer, or even as being present at the scene of the crime.

29.     The Defendants, with the intent to obtain the indictment and conviction of

the innocent Plaintiff, intentionally misled, coerced and pressured witnesses to identify the

Plaintiff as the murderer, and upon information and belief, some of the misled, coerced and

pressured witnesses testified to the grand jury, resulting in the indictment of the innocent

Plaintiff.

30.     The Defendants, with the intent to obtain the indictment and conviction of

the innocent Plaintiff, showed some of the witnesses only one photograph of suspects, that being

a photograph of the Plaintiff.

31.     The Defendants, with the intent to obtain the indictment and conviction of

the innocent Plaintiff, showed an eyewitness a photo array and told the witness that everyone was

choosing photo #1, which was a photograph of the Plaintiff.

32.     The Defendants, with the intent to obtain the indictment and conviction of

the innocent Plaintiff, added writing to a photo array which was not there when the witness

signed the photo array.

33.     The Defendants, with the intent to obtain the indictment and conviction of

the innocent Plaintiff, intentionally arranged to conduct a highly suggestive lineup.

        34.     The Defendants, with the intent to obtain the indictment and conviction of the innocent Plaintiff, intentionally failed to take possession of and provide to the District Attorney, the Court, and to Plaintiff's attorney an exculpatory video.

        35.     The Defendants had viewed the video of the shooting with the principal of the local high school and the video demonstrated that the murderer was someone other than the Plaintiff.

        36.     The Defendants, with the intent to obtain the indictment and conviction of the innocent Plaintiff, intentionally failed to make the Office of the District Attorney, the Court, and Plaintiff's attorney aware that the principal of the local high school had seen the exculpatory video and knew its contents to be exculpatory.

        37.     Upon information and belief, the Defendants, with the intent to obtain the indictment and conviction of the innocent Plaintiff, allowed the exculpatory video to be destroyed and took no measures to preserve it as they were required to do.

        38.     The Defendant detectives after seeing the video of the shooting and speaking with the aforementioned principal of the school where the video was taken, failed to generate a complaint informational follow-up (DD5) regarding the information which tended to exonerate the Plaintiff.

        39.     As a result of the aforementioned misconduct by the Defendants, as well as due to the Defendants' fraudulent testimony, the Plaintiff was indicted on false charges.

        40.     Upon information and belief, the Defendant detectives attempted to and in some cases succeeded in coercing false identifications of the Plaintiff as the murderer, when in

fact, said witnesses informed the Defendants they did not recognize the Plaintiff to be the murderer, and upon information and belief, such witnesses testified before the grand jury.

41.     When the information about the exculpatory video and the principal was discovered, by the investigator for the Plaintiff's criminal attorney, the Defendant detectives disingenuously testified that the video contained an obstructed view of the incident due to the presence of a scaffold, a fact that was blatantly contradicted by the principal who viewed the exculpatory video with the Defendants and who testified at trial on Plaintiff's behalf.

42.     The video depicted the alleged shooter wearing dark jeans which contradicts the testimony of the prosecution's star witness who described the shooter wearing khaki pants.

43.     The murder took place while it was still sunny outside making it possible for the witnesses to have a clear view of the murderer.

44.     The Defendant detectives showed a photo array to the star witness for the prosecution the day of the shooting and at that time he failed to identify the Plaintiff.

45.     The Defendants failed to generate a DD5 from that interview and failed to save the photo array shown to the star witness, which upon information and belief, was destroyed or discarded and both the DD5 and photo array would have contained exculpatory evidence.

46.     The Defendants claim the witness was later able to identify the Plaintiff from a photo array and from a lineup; and the fact that at the first interview the star witness was unable to do so was first elicited at trial.

47.     The Defendant detectives generated their initial DD5 regarding the star witness six weeks after he was first interviewed by them.

48.     The star witness initially identified the shooter as wearing khaki colored pants.

49.     However, after the information about the principal was disclosed, years after the indictment and weeks before trial, it was determined that the principal viewing the video described the shooter as wearing dark colored pants.

50.     The star witness apparently informed of the video and the principal's statement, then changed his prior testimony and placed the shooter in dark colored pants.

51.     The ADA's decision to prosecute the Plaintiff and the resulting indictment occurred due to the ADA being deliberately misled by the Defendants as the ADA was not aware of the following problems with the evidence: the existence of exculpatory evidence; that witnesses were coerced and coached to change their stories by the Defendants; the Defendants suppression of exculpatory evidence; the Defendants not disclosing laboratory results; the Defendants not generating exculpatory DD5's; fraud; perjury and other bad-faith police misconduct.

52.     After a lengthy trial and after having spent three years and nine months in jail, the Plaintiff was acquitted of all charges on October 16, 2017 and he was finally released from prison.

**FIRST CLAIM FOR RELIEF ON BEHALF OF PLAINTIFF
PURSUANT TO 42 U.S.C. § 1983
VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
VIA MALICIOUS PROSECUTION**

53.     Plaintiff repeats the allegations contained in the prior paragraphs as if fully stated herein.

-8-

JA-222

54. By reason of the forgoing, the individual Defendants violated Plaintiff's rights under the Fourth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, via a malicious prosecution.

55. Plaintiff was subjected to a malicious prosecution by the Defendants who caused and continued his arrest and indictment, without probable cause, the arrest was effected with malice and the charges terminated in Plaintiff's favor via an acquittal.

56. Plaintiff was charged with eight crimes, including murder, and was acquitted on all counts.

57. The indictment of the Plaintiff was obtained without the ADA being aware of the bad faith misconduct of the Defendant detectives.

58. Plaintiff's indictment was procured due to: false testimony coerced by the Defendants, the hiding of exculpatory evidence by the Defendants, the fraudulent misrepresentation of the contents of evidence by the Defendants, the Defendants destroying or allowing to be destroyed exculpatory evidence, the Defendants failing to generate documents exculpatory in nature, the Defendants coercing witnesses to give false testimony to the grand jury and at trial, the Defendants coercing witnesses to change their testimony, as well as by other fraudulent activities of the Defendants.

59. Defendants' actions resulted in the Plaintiff being arrested, handcuffed, indicted, spending three years and nine months in jail, being forced to appear in court numerous times over a three year nine month period, having to stand trial for crimes all of which he did not commit–including murder–which could have resulted in him being incarcerated for most of his adult life.

-9-

60. Plaintiff suffered from being incarcerated, from the fear of going to jail for what could have been most or all of his life, he suffered anxiety, he was subjected to defamation in his community, he incurred pecuniary harms, his education was interfered with, his opportunity to begin a career was interfered with, he incurred the expenses associated with defending himself against a murder and other charges, he was forced to appear in court repeatedly, he suffered severe emotional harms and he was otherwise harmed.

61. By reason of the aforesaid, the Plaintiff has been damaged and is entitled to compensatory damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS, an award of punitive damages against the Defendant detectives and an award of attorneys' fees is appropriate pursuant to 42 U.S.C. §1988.

**SECOND CLAIM FOR RELIEF ON BEHALF OF PLAINTIFF
PURSUANT TO 42 U.S.C. § 1983
VIOLATION OF PLAINTIFF'S
FOURTH, FIFTH AND SIXTH AMENDMENT RIGHTS
AND DEPRIVATION OF HIS DUE PROCESS RIGHTS
PURSUANT TO THE FOURTEENTH AMENDMENT
VIA DENIAL OF A FAIR TRIAL**

62. Plaintiff repeats the allegations contained in the prior paragraphs as if fully stated herein.

63. Plaintiff's rights were violated pursuant to Fourth, Fifth and Sixth Amendments made applicable to the states pursuant to the Fourteenth Amendment, as well as pursuant to the due process clause of the Fourteenth Amendment to the United States constitution via the denial of a fair trial.

64. The Defendant detectives as investigating officials fabricated evidence that

-10-

JA-224

was likely to influence a jury's decision, forwarded that information to prosecutors, and the Plaintiff suffered a deprivation of liberty as a result.

     65.    The Defendants procured the indictment of the Plaintiff by fraud, perjury, the suppression of evidence and other police conduct undertaken in bad faith and the Defendants failed to inform the ADA of flaws in the evidence they caused to be forwarded to him resulting in Plaintiff's indictment and prosecution at trial.

     66.    Plaintiff's indictment was procured by: false testimony coerced by the Defendants, the hiding of exculpatory evidence by the Defendants, the fraudulent misrepresentation of the contents of evidence by the Defendants, the Defendants destroying or allowing to be destroyed exculpatory evidence, the Defendants failing to generate documents exculpatory in nature, the Defendants coercing witnesses to give false testimony to the grand jury and at trial, the Defendants coercing witnesses to change their testimony, as well as by other fraudulent activities of the Defendants and none of these bad acts were known to the ADA who prosecuted the Plaintiff premised on the information the Defendants provided.

     67.    Plaintiff suffered from being incarcerated, the fear of going to jail for what could have been most or all of his life and anxiety; he was subjected to defamation in his community; he incurred pecuniary harms including the expenses associated with defending himself against false criminal charges; his education was interfered with; his opportunity to begin a career was interfered with; he was forced to appear repeatedly in court; he suffered severe emotional harms and he was otherwise harmed.

     68.    The indictment of the Plaintiff was obtained without the ADA being aware of the bad faith misconduct of the Defendant detectives.

69. The individual Defendants acted intentionally, willfully, maliciously, negligently and with reckless disregard for and deliberate indifference to Plaintiff's rights and his well-being.

70. By reason of the aforesaid, the Plaintiff has been damaged and is entitled to compensatory damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS an award of punitive damages against the Defendant detectives is appropriate and an award of attorneys' fees is appropriate pursuant to 42U.S.C. §1988.

**THIRD CLAIM FOR RELIEF ON BEHALF OF PLAINTIFF
PURSUANT TO 42 U.S.C. § 1983
VIOLATION OF PLAINTIFF'S NEW YORK STATE COMMON LAW  RIGHT
NOT TO BE SUBJECTED TO A
MALICIOUS PROSECUTION**

71. Plaintiff repeats the allegations contained in the prior paragraphs as if fully stated herein.

72. At all times relevant the Defendant detectives were acting in their roles as employees of the Defendant City of New York, and the City of New York is liable to the Plaintiff for the Defendant detective's acts via the legal principle of *respondeat superior*.

73. By reason of the forgoing, the Plaintiff's right guaranteed by the common law of the State of New York not to be subjected to a malicious prosecution have been violated.

74. Plaintiff was subjected to a malicious prosecution by the Defendant City of New York which caused and continued his arrest and indictment, without probable cause, the arrest was effected with malice and the charges terminated in Plaintiff's favor via an acquittal.

75. Plaintiff was charged with eight crimes including murder and he was

-12-

JA-226

acquitted on all counts.

76.     Plaintiff's indictment was procured due to false testimony coerced by the Defendant's agents; due to their hiding exculpatory evidence; due to their fraudulent misrepresentation of the contents of evidence; due to their destroying or allowing to be destroyed exculpatory evidence; due to their failing to generate documents exculpatory in nature; due to their coercing witnesses to give false testimony to the grand jury and at trial; due to their coercing witnesses, upon information and belief, to change testimony to the grand jury as well as at trial as well as due to various other fraudulent activities.

77.     Defendant City of New York's actions resulted in the Plaintiff being arrested, handcuffed, indicted, spending three years and nine months in jail, being forced to appear in court numerous times over a three year nine month period, having to stand trial for crimes all of which he did not commit–including murder–and which could have resulted in him being incarcerated for most of or the rest of his adult life.

78.     Plaintiff suffered was subjected to defamation in his community, he incurred pecuniary harms, his education was interfered with, his opportunity to begin a career was interfered with, he incurred the expenses associated with defending himself against a murder and other charges, he was forced to appear in court repeatedly, he suffered severe emotional harms and he was otherwise harmed.

79.     By reason of the aforesaid, the Plaintiff has been damaged and is entitled to compensatory damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered as follows:

-13-

(A)    Declaratory relief finding that Plaintiff's rights under the United States Constitution were violated;

(B)    Compensatory damages of FIVE MILLION ($5,000,000.00) DOLLARS;

(C)    By reason of the wanton, willful and malicious character of the conduct complained of herein, Plaintiff is entitled to awards of punitive damages on Plaintiff's federal actions for malicious prosecution and denial of a fair trial against the Defendant detectives;

(D)    An award to Plaintiff of the costs and disbursements herein;

(E)    An award of attorneys' fees pursuant to 42 U.S.C. §1988; and

(F)    Such other and further relief as this Court may deem just and proper.

Dated: November 22, 2017
     New York, New York

                                                  / s /
                                Fred Lichtmacher (FL-5341)
                                The Law Office of Fred Lichtmacher P.C.
                                 *Attorneys for Plaintiff*
                                116 West 23rd Street Suite 500
                                New York, New York 10011
                                (212) 922-9066

To:    The City of New York
       Zachary Carter
       Corporation Counsel NYC
       Attorneys for NYC
       100 Church Street
       New York, New York 10007

To:   DETECTIVE JAEGER
      1 Police Plaza
      New York, New York 10007

To:   DETECTIVE MICHAEL GILDEA SHIELD # 465
      1 Police Plaza
      New York, New York 10007

-15-

D000049

```
****************************FRI. 05/03/13*************************
INCIDENT RECORD I QNS 18  101G    T57F  2008 D27 2008 F14149 AS
10-34S1 MLE SHOT                    P2      CCD HOSP|RMVD
ROUTING.D B   A N T V   S F    CCD  215027 UF61      CC
54-30 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST

DUPLICATE JOB NUMBER  NONE
02  T57F  2008 @DBANLTNVEHS  CEXTEMS MU*HAPD
05  E100  2008 @*18 EMS LOGGED
0B  D42C  2008 @*
05  D41C  2008 @*XMITTED OVER SOD--CW1118
0A  D41C  2008 @DEF*
05  D116C 2008 @*----XMXMCW3---D1306
0B  D116C 2008 @*
11  D27C  2008 101G 10-99   2017 @*
0B  D45C  2008 @*
05  D44C  2008 @*XMMTD CW2.... CWD2199
0B  D44C  2008 @*
05  E100  2009 @*14 EMS VIEWED
05  T57F  2009 @BA*A8786---STS UNK WHO SHOT THE MLE----STS--MLE-
    -IS ON THE GROND-------
25  E100  2009 @*A8698131233379 8698
05  T57F  2009 @B*------FC STS DOESNT HAVE ANY DECP------OPR 188
    6

05  E100  2009 @*20 ETA 2014
05  T61F  2009 @DBF*ANOTHER CALL---3RD PARTY CALLER---HEARD SHOT
    S FROM KITCHEN WINDOW---VICTIM MB WRNG BLK SWTR N JNS--LYING
    ON GROUND---N A MB WRNG LIGHT BLU JNS---NO PERP DESC---OPR
    1983
12  D27C  2009 101G 10-84   2009 @*
05  T57F  2009 @DB*ANI-ALI-▮▮▮▮▮▮▮ SPRINTPCS 50 BE CHANNEL DR
    NW-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.594879 LON.-073.784
    180 OPER JACKSON, LISA-C-MTCCP057
05  T61F  2010 @DBF*FC ▮▮▮▮▮▮▮---CB ▮▮▮▮▮▮▮▮---UNITS ON SCE
    NE---ANI-ALI-▮▮▮▮▮▮▮ VERIZON WIRELESS ▮▮▮▮▮▮▮▮▮▮
    CTOR BROOKLYN COS.WPH2 LAT.040.595040 LON.-073.786261 OPER H
    ERNANDEZ,JACQUELINE-C-MTCCP061---OPR 1983
05  T72F  2010 @T*
05  E100  2011 @*20 ETA 2017
05  E100  2012 @*25 EMS ONSCENE 47D3 BLSN
05  T63F  2013 @B*AC MC STS SEE 2 MLS LYING ON GRD GAVE LOC AS B
    E 56 ST-BEACH CHNL DR OPR 1775

05  T63F  2013 @DBF*ANI-ALI-▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮ ARVERNE COS.RESD LAT.LON.OPER KING,
    ROCHELLE-C-MTCCP063
0A  B36   2016 @DEF*
13  B12C  2017 101G 10-99   2017 @*SEE DUPE
0B  D27C  2020 @*
05  D43C  2021 @*XMT SPEICAL A.....CW1261
0B  D43C  2021 @*
0B  B05C  2024 @*
0B  D41C  2026 @B*
0B  B12C  2039 @*
```

**D000050**

```
*************************FRI. 05/03/13*************************
INCIDENT RECORD I QNS 18  101G    T74F  2008 D27 2009 F14158 AS
10-34S2 GIRL SHOT                  P2     CCD HOSP|RMVD
ROUTING.D B   A N   V W S    I CCD 215028 UF61        CC
54-30 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST
FC                      ███████
DUPLICATE JOB NUMBER  F14159
02  T74F  2008 @DBANLTNVEHS  CEXTEMS MU*HAPD
A8733RO 8733 NTFD
05  E100  2008 @*18 EMS LOGGED
05  E100  2008 @*14 EMS VIEWED
0C  D42C  2008 @*
0B  D42C  2008 @*
05  D42C  2009 @w*
0C  D42C  2009 @*
0B  D42C  2009 @*
05  T74F  2009 @DBNVEHSTRN   MU*FC STS 2 CHILDREN POSS SHOT AT L
    OC.....OPER 2016 CP 74
05  D41C  2009 @*XMITTED OVER SOD--CW1118
0A  D41C  2009 @DEF*
05  D116C 2009 @*---XMXMXMXCW3
0B  D116C 2009 @*
0B  D45C  2009 @*
25  E100  2009 @*A8733131233382 8733
0B  D42C  2009 @*
05  D42C  2009 @w*
91  D27C  2009 101G 10-99   2017 @*
05  E100  2009 @*16 POS DUP F14149 131233379 , SAME

05  T74F  2010 @B*FC STS NO DESCRP OF PERPS.......
05  T30F  2010 @B*ANOTHER CALL--AIDED IS FEM--UNK WHO DID THE SH
    OOTING--MC REQ TO BE ANON--STS PD IS ON SCENE--ANT-ALI-█████
    ███████████████████████████████████████████████████████ARV
    ERNE COS.RESD LAT.LON.OPERDAVIS, SHAMEKA R-C-MTCCPU3U OPR 11
    43
05  T74F  2011 @DB*FC CB████████      ANI-ALI-█████  █████ VERIZON
    ███████████████████████ FAR ROCKAWAY COS.WPH2 LAT.040.5941
    82 LON.-073.784759 OPER DASH, KISHA-C-MTCCP074OPER 2016
0D  T74F  2011 @*
0B  D59C  2012 @*
0B  D44C  2012 @*
13  B12C  2017 101G 10-99   2017 @*SEEDUPE
0A  B36   2017 @DEF*
0B  B05C  2018 @*
05  D43C  2021 @*XMT SPECIAL A....C W1261
0B  D43C  2021 @*
0B  D45C  2026 @B*
0B  B12C  2039 @*
```

**D000051**

```
**************************FRI. 05/03/13*************************
INCIDENT RECORD I QNS 18  101G    T22F  2008 D27 2017 F14159 AS
10-34S2 2 PEOPLE SHOT              P2    CCD HOSP|RMVD
ROUTING.D B   A N   V   S F    CCD  215028 UF61      CC
54-17 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST
ANON FC
DUPLICATE JOB NUMBER  F14164
02  T22F  2008 @DBANLTNVEHS  CEXTEMS MU*HAPD
---HAPPENING NOW
05  E100  2008 @*18 EMS LOGGED
05  T22F  2008 @B*--FC STS TWO PEOPLE SHOT AT LOC---
05  T22F  2008 @B*---ANI-ALI-███████ ███ CELL SITE-TMOBILE ██████
    ████████ ████████    QUEENS COS.WPH2 LAT.040.594836 LON.-07
    3.785102 OPER VAN-KUST, MURIEL-C-MTCCPO22-OPR2455
05  D116C 2009 @*-----XMXMXMXMCW3---D1306
0B  D116C 2009 @*
05  T22F  2009 @B*--STS IFO A BLDG---UNK WHAT BLDG NUMBER---ACCR
    OSS FROM 54-17 BE CHNL DR LOC---
0B  D45C  2009 @*
05  D41C  2009 @*XMITTED OVER SOD--AA MESSAAGE---CW1118

0A  D41C  2009 @DEF*
05  E100  2009 @*14 EMS VIEWED
25  E100  2009 @*A8698131233385 8698
05  T22F  2009 @BF*---STS PEOPLE LYING ON THE GROUND---STS DID N
    OT SEE WHO DID IT---FC WISHES TO REMAIN ANON---OPR2455 CP22
0D  T22F  2010 @*
08  T22F  2011 @DZ*HAPD
PREVIOUS ADDRESS ███████ ████████
05  E100  2012 @*16 POS DUP F14202 131233383 , SAME
0B  D45C  2014 @B*
0B  D44C  2014 @*
0A  B36   2016 @DEF*
91  D42C  2017 101ST1 10-99    2018 @*
13  D42C  2018 101ST1 10-99    2018 @*SEE DUPE FF
0B  B05C  2019 @*
05  D43C  2021 @*XMT SPEICAL A.....CW1261
0B  D43C  2021 @*
0B  B12C  2039 @*
```

D000051

D000052

```
*************************FRI. 05/03/13************************
INCIDENT RECORD I QNS 18  101G     T49F  2008 D27 2018 F14164 AS
10-34S2 5 SHOTS                    P1    CCD HOSP|RMVD 40  2024
ROUTING.D B   A N   V   S F   I CCD  215028 UF61         CC
54-30 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST
FC ANON
DUPLICATE JOB NUMBER  F14166
02  T49F  2008 @DBLTNVEHSBSQTRN  [X] MU*HAPD
---
05  D116C 2009 Q*----XMXMXMCW3
0B  D116C 2009 Q*
05  T49F  2009 @DBNVEHSTRN   MU*FC STS LOOKS LIKE 2 PEOPLE LAYIN
    G ON GROPUND--UNK IF THEY GO SHOT---IFO LOC--OPR1733
05  D41C  2009 Q*XMITTED OVER SOD--CW1118
0A  D41C  2009 @DEF*
0C  D42C  2009 Q*
05  D45C  2009 Q*XMTD--SPEC COMM B-CW 1273
05  T49F  2009 @DBNVEHSTRN   MU*ANI-ALI-██████████  SPRINTPCS█████
    ██████████-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.594525
    LON.-073.784802 OPER LAYLOR,MICHELLE A-C-MTCCP049OPR1733
0B  D45C  2009 Q*
0B  D116C 2010 Q*
0D  T49F  2010 @DBNVEHSTRN   MU*FC THEN STS THEY WERE HIT---UNK-
    --FC ANON---NFI---
0B  D41C  2010 @B*
0B  D116C 2010 Q*
0B  D45C  2010 Q*
05  D44C  2011 Q*XMMTD CW2.. CWD2199
0B  D44C  2011 Q*
0B  D59C  2011 @B*
0B  D59C  2012 Q*

05  T94F  2013 @DBFEMS*ANOTHER CALL---FC STS HER BROTHER IS SHOT
    ---OPR 1450 CP94---
05  E100  2013 Q*18 EMS LOGGED
05  E100  2013 Q*14 EMS VIEWED
25  E100  2013 Q*A8698131233379 8698
0B  D45C  2014 @B*
05  T94F  2014 @DBF*FC STS EMS ARE ON THE SCENE---FC HU---ANI-AL
    I-██████████  SPRINTPCS███████████NW-SECTOR FAR ROCKAW
    AY COS.WPH2 LAT.040.595351 LON.-073.785660 OPER FAUCETT, KAR
    IMA K-C-MTCCP094---OPR 1450 CP94
05  E100  2014 Q*25 EMS ONSCENE C473 UNKN
0B  D27C  2014 Q*
40  T94F  2015 @DBANVEHSF P CEXT MU*PREVIOUS INCIDENT CODE 10-10
    S2
05  E100  2015 Q*20 ETA 2018
0B  D45C  2015 Q*
0A  B36   2015 @DEF*
05  E100  2016 Q*25 EMS ONSCENE 47W3 ALSN
0B  D42C  2016 Q*
0B  D116C 2016 Q*
0B  D41C  2017 @B*
0B  B05C  2017 Q*
91  D42C  2018 101ST1 10-99   2018 Q*
13  D42C  2018 101ST1 10-99   2018 Q*SEE DUPE FF
05  D43C  2019 Q*XMT SPECIAL A....CW1261
0B  D43C  2019 Q*
0B  D27C  2020 Q*
0B  D44C  2023 Q*

81  E100  2024 40   47D3 Q*BLS N SAINT JOHNS EPISCOPAL HOSP
81  E100  2028 34   47W3 Q*ALS N JAMAICA MEDICAL CENTER
05  E100  2031 QD*21 , AUTOMATIC 98 GD WHILE 88
0B  B12C  2039 Q*
```

**D000053**

```
0B  B12C  2039  @*
0B  D27C  2108  @*
05  E100  2113  @D*21
05  D27C  2122  @*--SGT ADV-----D1673
0B  D27C  2122  @*
05  E100  2148  @*21
05  E100  2148  @*24  82A
```

D000053

JA-234

D000054

```
*************************FRI. 05/03/13*************************
INCIDENT RECORD I QNS 18  101G     T19F  2008 D27 2018 F14166 AS
10-34S2 MLE                        P2      CCD HOSP|RMVD
ROUTING.D B   A N   V   S F    CCD 215028 UF61           CC
54-22 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST

DUPLICATE JOB NUMBER  F14181
02  T19F  2008 @DBANLTNVEHS  CEXTEMS MU*HAPD
IFO LOC
05  E100  2008 @*18 EMS LOGGED
0C  D42C  2009 @*
0B  D116C 2009 @*
05  T20F  2009 @DBAF*--ANOTHER FC STS FEM GOT SHOT IN THE MIDDLE
    OF THE CTYARD
05  T20F  2009 @B*ANI-ALI-███████  ████  ██ ████  ████████
    ████████████ARVERNE COS.RESD LAT.LON.OPER ABRAHAM
    , SOLOMON-C-MTCCP0ZU
05  T19F  2009 @BA*A0716RO 0716 NTFD
05  T20F  2009 @B*MC HU NFI----UNK DECP OF PERP
05  E100  2010 @*14 EMS VIEWED
0B  D45C  2010 @*
05  D41C  2010 @*XMITTED OVER SOD--CW1118
0A  D41C  2010 @DEF*

25  E100  2010 @*A8698131233383 8698
05  T19F  2010 @A*A0716
05  T20F  2010 @B*OPR 1899
0B  D44C  2012 @*
05  T19F  2013 @DBF*ANOTHER CALL FC STS MLE WAS SHOT IFO LOC CB
    352 870 3943ANI-ALI-████████ ████ CELL SITE-TMOBILE ███████
    ████████ QUEENS COS.WPH2 LAT.040.595415 LON.-073.785
    810 OPER JESSAMY,SHAWNYA K-C-MTCCP0190PR 1141 CP19
0B  D45C  2014 @B*
0A  B36   2017 @DEF*
91  D42C  2018 101ST1 10-99   2019 @*
13  B12C  2019 101ST1 10-99   2019 @*SEE DUPE
0B  B05C  2019 @*
05  D43C  2021 @*XMT SPEIC AL A......CW1261
0B  D43C  2021 @*
0B  B12C  2039 @*
```

JA-235

**D000055**

```
************************FRI. 05/03/13************************
INCIDENT RECORD I QNS 18  101G    T29F  2009 D27 2018 F14181 AS
10-34S2 SHOT                        P2    CCD HOSP|RMVD
ROUTING.D B   A N T V   S        CCD  215028 UF61       CC
54-22 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST
MC HU
DUPLICATE JOB NUMBER  F14202
02  T29F  2009 @DBANLTNVEHS  CEXTEMS MU*HAPD
UNK IF ML OR FEM-------MC HU---
05  E100  2009 @*18 EMS LOGGED
05  T29F  2009 @B*ANI-ALI-            SPRINTPCS
        SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.595394 LON.-073.7858
        96 OPER CHAN, DIANA-C-MTCCP029-----OPR 1457
0C  D42C  2009 @*
0C  D42C  2009 @*
0B  D45C  2010 @*
0B  D41C  2010 @B*
05  E100  2010 @*14 EMS VIEWED
05  D116C 2010 @*-----XMXMXMCW3---D1306
0B  D116C 2010 @*
0C  D42C  2010 @*
25  E100  2010 @*A8698131233383 8698

05  T29F  2010 @B*MC HU----NFI---ANI-ALI-            SPRINTPCS
                     W-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.59539
        4 LON.-073.785896 OPER CHAN, DIANA-C-MTCCP029--OPR 1457
05  T33F  2010 @B*--ANOTHER CALL ANON FC STS LOC----LOOKING OUT
        THE WINDOW-----HU-----NFI----ANI-ALI-       ARVERNE COS.RESD LAT.
        LON.OPER QUILES, GLADYS-C-MTCCP0332194
0D  T29F  2010 @*
05  E100  2010 @*20 ETA 2018
05  T33F  2010 @T*
0C  D42C  2011 @*
0B  D44C  2012 @*
0C  D42C  2013 @*
0B  D42C  2016 @*
0A  B36   2017 @DEF*
91  D42C  2018 101ST1 10-99    2019 @*
0B  B05C  2018 @*
13  B12C  2019 101ST1 10-99    2019 @*SEE DUPE
05  D43C  2022 @*XMT SPEICAL A....C W1261
0B  D43C  2022 @*
0B  B12C  2039 @*
```

D000055

**D000056**

```
*************************FRI. 05/03/13*************************
INCIDENT RECORD I QNS 18  101G     D27C  2011 D27 2011 F14202 AS
10-34S2                             P2     CCD HOSP|RMVD 34  2052
ROUTING.D B   A N   V W S F    CCD  215028 UF61        CC
54-22 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST

DUPLICATE JOB NUMBER  F14227
71  D27C  2011 101ST1 10-99   2017 @DBANLTNVEHSF  CEMS MU*HAPD
---NEED 2 BUSSES FOR 2 SHOT--D 1044
05  E100  2011 @*18 EMS LOGGED
0B  D45c  2011 @*
05  E100  2011 @*14 EMS VIEWED
25  E100  2011 @*A8698131233383 8698
05  D42c  2011 @D*
05  D42c  2012 @D*
05  D42c  2012 @D*
0B  D41c  2012 @B*
0B  D44c  2012 @*
05  T37F  2014 @B*ANOTHER CALL MC NCB STS 2 MLES SHOT AT LOC NO
    PERP DESCRIP STS NEED EMS TO LOC ANI-ALI███ ██ ███████WIRELESS
    -METRO PCS TCS████████  ███ ██████ SECTOR FAR ROCKAWAY COS.
    WPH2 LAT.040.595362 LON.-073.785724 OPER WILLIAMS, JOAN-C-MT
    CCP037
05  T37F  2015 @DBANSF*OPR2251
05  E100  2017 @*25 EMS ONSCENE 47B3 BLSN
0B  D116c 2017 @*
05  D42c  2017 @W*

13  B12c  2017 101ST1 10-99   2017 @*SEE DUPE
0B  D41c  2017 @B*
0A  B36   2018 @DEF*
0B  B05c  2018 @*
05  D43c  2022 @*XMT SPECIAL A....CW1261
0B  D43c  2022 @*
81  E100  2052 34   47B3 @*BLS N JAMAICA MEDICAL CENTER
05  E100  2121 @*21
05  E100  2121 @*24 82B
0B  B12c  2122 @*
```

**D000056**

**D000057**

```
************************FRI. 05/03/13************************
INCIDENT RECORD I QNS 18  101G      T79F  2012 D27 2018 F14227 AS
10-34S2 ML N FML                    P2     CCD HOSP|RMVD
ROUTING.D B   A N  V   S F    CCD  215028 UF61       CC
54-30 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST
FC HU
DUPLICATE JOB NUMBER  F14249
02  T79F  2012 @DBANLTNVEHS  CEXTEMS MU*HAPD
SHOT
05  E100   2012 @*18 EMS LOGGED
0B  D44C   2012 @*
0B  D45C   2012 @*
05  D116C  2013 @*----XMXMXMCW3---D1306
0B  D116C  2013 @*
05  E100   2013 @*14 EMS VIEWED
25  E100   2013 @*A8698131233379 8698
0B  D41C   2013 @B*
05  T79F   2013 @DBF*--------FC STS 2 KIDS--1 FML AND 2 ML----WA
    S SHOT------FC STS NEED EMS ASAP---OPR 1870 CP 79
05  T79F   2014 @DBF*---ANI-ALI-█████████WIRELESS-METRO PCS TCS
    █████████████████████SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.5
    95340 LON.-073.785681 OPER GREENE, INDIA-C-MTCCP0790PR 1870
05  T79F   2014 @DBF*-------FC LEFT LINE OPEN N HU---OPR 1870 CP
    79

0D  T79F   2014 @*
0A  B36    2017 @DEF*
91  D42C   2018 101ST1 10-99    2019 @*
13  B12C   2019 101ST1 10-99    2019 @*SEE DUPE
0C  D27C   2020 @*
05  D43C   2022 @*XMT SPEICIAL A.....CW1261
0B  D43C   2022 @*
0B  B05C   2024 @*
0B  B12C   2039 @*
```

**D000057**

**D000058**

```
*************************FRI. 05/03/13*************************
INCIDENT RECORD I QNS 18  101G    T39F  2013 D27     F14249
10-10H1 UNK COND              P3        HOSP|RMVD
ROUTING.D B          CCD  215028 UF61        CC
BEACH 56 ST - BEACH CHNL DR
MC HU
DUPLICATE JOB NUMBER  F14272
02  T39F  2013 @DBLTNEXT*HAPD
HEAR FEMS SCREAMING IN BACK GROUND N A ML CRYING----LOC TAKEN FR
    OM ANI ALI----ANI ALI SHOWS ████████████----NOT VALID IN SPR
    INT---CB ██████████---NFI
05  T39F  2014 @DB*ANI-ALI-████████ SPRINTPCS ████████████
    NW-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.595373 LON.-073.785
    789 OPER WILLIAMS, STEPHANIE L-C-MTCCP039OPER 1452 CP 39
0D  T39F  2014 @*
```

JA-239

**D000059**

```
*************************FRI. 05/03/13************************
INCIDENT RECORD I QNS 18  101G    T39F  2013 D27     F14249
10-10H1 UNK COND                  P3         HOSP|RMVD
ROUTING.D B                  CCD  215028 UF61        CC
BEACH 56 ST - BEACH CHNL DR
MC HU
DUPLICATE JOB NUMBER  F14272
02  T39F  2013 @DBLTNEXT*HAPD
HEAR FEMS SCREAMING IN BACK GROUND N A ML CRYING----LOC TAKEN FR
    OM ANI ALI----ANI ALI SHOWS ███████████---NOT VALID IN SPR
    INT---CB ████████ ████---NFI
05  T39F  2014 @DB*ANI-ALI-███████SPRINTPCS ████ ████████
    NW-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.595373 LON.-073.785
    789 OPER WILLIAMS, STEPHANIE L-C-MTCCP039OPER 1452 CP 39
0D  T39F  2014 @*
```

**D000060**

```
**********************FRI. 05/03/13**************************
INCIDENT RECORD I QNS 18  101G     T32F  2014 D27      F14272
10-10H1 UNK COND                   P3         HOSP|RMVD
ROUTING.D B                   CCD  215028 UF61        CC
BEACH 54 ST - BEACH CHNL DR
FC HU
DUPLICATE JOB NUMBER  F14151
02  T32F  2014 @DBLTNEXT*HAPD
HEARD CRYING AND SCREAMIN IN THE BACKGROUND LOC TAKEN FROM THE A
    NI ALI MAP FC HU NFI OPR 1137--ANI-ALI-          SPRINTPCS
                        SW-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.5910
    17 LON.-073.784351 OPER WEST, WHITNEYK-C-MTCCP032
0D  T32F  2015 @*
```

D000061

```
************************FRI. 05/03/13**************************
INCIDENT RECORD I QNS 18  101G    T76F  2008 D27 2008 F14151 AS
10-34S2                            P1    CCD HOSP|RMVD
ROUTING.D B   A N T V W S F   I CCD  215028 UF61        CC
54-22 BEACH CHNL DR
BEACH 54 ST - BEACH 56 ST

DUPLICATE JOB NUMBER  F14155
02  T76F   2008 @DBANLTNVEHS  CEXTEMS MU*HAPD
05  E100   2008 @*18 EMS LOGGED
0B  D42C   2008 @*
05  T76F   2008 @DAF*
05  T84F   2008 @DB*----ANOTHER CALL--5-6 SHOT HEARD
05  D41C   2008 @*XMITTED OVER SOD--AA MESSAGE---CW1118
0A  D41C   2008 @DEF*
91  D27C   2008 101G 10-98   2133 @*
11  D27C   2008 101ST1 10-93C  0124 @*
05  E100   2009 @*14 EMS VIEWED
0B  D45C   2009 @*
0B  D116C  2009 @*
05  T76F   2009 @B*MC STS MLE SHOT IFO LOC--MC STS A CHILD POSS S
    HOT ALSO--MC STS NO DESCRIP---MC HU---OPR1183

05  T84F   2009 @BA*A0718----NO DESCP OF PERP---MC SOTO--CB UNK--
    RO 0718 NTFD---STS 2 PEOPLE DOWN--
25  E100   2009 @*A8698131233383 8698
05  T76F   2009 @B*ANI-ALI-████████████ SPRINTPCS ████ ██████
    NW-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.595587 LON.-073.7859
    61 OPER STUKES,TAMIKA-C-MTCCP076
05  T76F   2009 @DB*
05  T84F   2010 @B*----EMS N POLICE ON SCENE---ANI-ALI-█████████
    AT T MOBILITY █████████ QUEENS COS.WPH1 LAT.040
    .593334 LON.-073.777506 OPER DAVIS, SHONDEL-C-MTCCP084 OPER1
    287
0B  D44C   2010 @*
05  T87F   2010 @B*----ANOTHER CALL----MC STS LOC----STS NEEDS AN
    AMBULANCE TO LOC----MC HU NFI----ANI-ALI ██████████ SPRINTP
    CS █████████ NW-SECTOR FARROCKAWAY COS.WPH2 LAT.040.5
    95330 LON.-073.785789 OPER SURGEON, LATANYA-C-MTCCP087 OPR 1
    80 3
05  T87F   2010 @T*
05  T72F   2010 @T*

05  T13F   2011 @B*ANOTHER CALL MC STS HEARD 3 GUNSHOTS SEES 2 ML
    S ON GROUND UNK MLE WRNG WHT HAT GRY SHRT BLU JNS MC REQ ANO
    N STS PD ON SCENE ANI-ALI-██████████ WIRELESS-METRO PCS TCS
    ████████████████SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.59
    4857 LON.-073.785531 OPER ANDERSON, LYNDSEY I-C-MTCCP013 OPR
    1213
05  T73F   2011 @DBSF*---ANOTHER CALL---MC STS SOMEONE SHOT AT LO
    C---GAVE LOC AS--54-30 54 ST--NOT GOING IN AS VALID---MC HU
    NFI---OPR 1947
05  T13F   2011 @D*
05  T73F   2011 @DBSF*------ANI-ALI-██████████ SPRINTPCS 50 BE CH
    ANNEL DR NW-SECTOR FAR ROCKAWAY COS.WPH2 LAT.040.595019 LON.
    -073.785403 OPER KEARNEY, SHAHEED-C-MTCCP073 OPR 1947
91  D41C   2011 0ESA9 10-91  2128 @*
0B  D41C   2012 @B*
05  T34F   2012 @B*ANOTHER CALL FC █████████CB █████████ ST
    S SHE HEARD ABT 5 SHOTS 10 MINS AGO STS THINKS SOMEONE GOT S
    HOT
05  T34F   2012 @D*

05  T34F   2012 @B*ANI-ALI-████████████COS.VOIP LAT.040.595008 LON.-073.
    785446 OPER
```

D000061

JA-242

**D000062**

```
05   T34F   2012  @DBF*OPR 1734
05   T13F   2013  @DB*CORRECTION--PERP IS MLE WRNG WHT HAT GRY SHRT
     BLU JNS OPR 1213 CP13
05   T73F   2013  @DBF*---RO 0171 NTFD-----OPR 1947
05   D27C   2014  @S*---AUTH 100 ST1---(((LVL 1 MOB    ------AUT 100
     NEED AVIATION TO----D 1044
11   D41C   2014  27HEL18 10-98    2058 @*
0A   B36    2015  @DEF*
05   B36    2015  @VEH*
05   D27C   2015  @DBANVEHSFBSQTRN P  MU*---AUTH 101 ST ST-----(((L
     VL 1 FOR CROWD CONTROL  -----------------(((MOB PT BE 54 N
     BE CHANNEL DR   --D 1044
0A   B36    2015  @DEF*
05   B36    2015  @VEH*
15   D27C   2015  101ST1 @*
15   D27C   2015  101ST1 @*
05   D42C   2015  @DBNVEHSTRN    MU*
05   D41C   2016  @*XMITTED OVER SOD-1X--Cw1118
12   D27C   2016  101ST1 10-84    2016 @*

05   D27C   2016  @*---SPCT MANGRU NTFD---D 1044
05   D29C   2016  @*(((( XMXMXM LVL 1 ... ZONE 29 ... 1X        D 1
     514
05   D27C   2016  @S*----(((AVIATION PLEASE0  --D1044
05   D42C   2016  @*---XMMMITED OVER CW HWY---LVL 1----1 TIME-----
     {X}--CW-D1502
05   D116C  2016  @*------XMXMXM LVL 1 OVR CW 3----1X----D1306
05   D45C   2017  @*XMTD-----SPEC COMM B-X 1-LEVEL 1-MOB-CW 1273
05   D44C   2017  @*XMMMTD CW2...1X... LVL 1 MOB..... CWD2199
05   D41C   2017  @*XMITTED OVER SOD--2X--CW1118
0C   D42C   2017  @*
05   D59C   2017  @*XMTTD LVL 1 MOBL OVER QNS TA 1X ... TD2409
0B   D41C   2017  @B*
05   D43C   2017  @*XMT LEVEL 1 MOBIL......(1X ........(SPECIAL A .
     ....Cw1261

05   D41C   2018  @S*

05   D27C   2018  @*----AUTH 100 CO----1 AIDED LIKELY--SHOT IN CHES
     T--2 ND AIDED SHOT IN BACK NOT LIKELY----..........LOOKING F
     OR A DK GREY FORD ESCAPE DRIVEN BY 1 MB.........FLED WB TWD
     100........D 1044
05   D59C   2018  @*XMTTD LVL 1 MOBL OVER QNS TA 2X .... TD2409
05   D116C  2018  @*----XMXMXM LVL 1 OVR CW3---2X--D1306
0A   B36    2018  @DEF*
05   D43C   2018  @*XMT LEVEL 1 MOBIL......(2Z ...(SPECIAL A ....Cw
     1261
05   D27C   2018  @*----......MOB PT BE 54 ST BE CHANNEL DR........
     D 1044
05   B36    2018  @VEH*
05   D44C   2018  @*XMMTD CW2....2XX... LVL 1 MOB... CWD2199
05   B12C   2018  @NVEHWS  MU *
12   D27C   2019  101G 10-84    2019 @*
05   D43C   2019  @*XMT LEVEL 1 MOBIL.....(3X .....(SPECIAL A ....C
     w1261
05   D42C   2019  @*---XMMITED OV ER CW HWY---LVL 1----2 TIMES----{
     {XX}}--C-WD1502

05   D29C   2019  @*(((( XMXM LVL 1 ... ZONE 29 ... 2X        D 1514
05   D59C   2019  @BSQ*XMTTD LVL 1 MOBL OVER QNS TA 3X .... TD2409
05   D30C   2019  @*XMIT LEVL 1 ZONE 30 1X D1507
0B   D43C   2019  @*
11   D27C   2019  100LT2 10-98    2141 @*
0B   D27C   2020  @*
0B   D59C   2020  @*
05   B12C   2020  @NVEHWS  MU *---PPCT AWAD NTFD SPCT MANGRU
05   D41C   2020  @*XMITTED OVER SOD--3X--Cw1118
```

**D000062**

D000063

```
0A   D41C   2020 @DEF*
05   D27C   2020 @D*
05   D44C   2020 @*XMMTD CW2....3XXX... LVL 1 MOB... CWD2199
0C   D27C   2020 @*
0C   D27C   2020 @*
0B   D43C   2020 @*
0B   D42C   2020 @*
05   D45C   2020 @*XMTD--SPEC COMM B--X 2-LEVEL-1 MO B-CW 1273
0C   D27C   2020 @*
0C   D27C   2021 @*
0C   D27C   2021 @*
0C   D27C   2021 @*
0C   D27C   2021 @*
0C   D27C   2021 @*
05   D30C   2021 @*XMIT LEVEL 1 ZONE 30 2X---D1507

05   D30C   2021 @*XMIT LEVEL 1 ZONE 30 3X D1507
05   B05C   2022 @*--MOBILIZATION TRANSMITTED OVER CW FREQ--SPCT L
     OPEZ
05   B12C   2022 @TRN*
05   N79E   2022 @DBN*PBQS PO GAGLIARDI NTFYING CAPT MOLLOY-------
     INRU PO RUFRANO--------RTCC DET BRODERICK--------OU----PS
05   D28C   2022 @*---XMITTED---LVL 1----1 TIME OVER ZONE 28------
     D1673
05   D45C   2022 @*XMTD--SPEC COMM B-X 3-LEVEL 1-MOB-CW 1273
0B   D45C   2022 @*
05   D116C  2023 @*----XMXMXM LVL 1 OVR 3X---OVR CW 3----D1306
0B   D116C  2023 @*
0B   B05C   2023 @*
05   D27C   2023 @*---LVL 1 MOB READ 2X---OVER ZONE27--D 1044
05   B36    2023 @*PLATOON PPCT YOUNG NTFD---OOPERATIONS PO SKUZA
     NTFD---PBQS PO GAGLIARDI NTFD---TB OPS PO GULLOTTA NTFD--PPC
     T AWAD
05   Q21G   2023 @*OU SGT HOUVENOUR NTFD----QES SGT HOLDORF NTFD--
     -PPCT YOUNG

0B   D44C   2023 @*
05   D42C   2023 @*---XMMMITED OV ER CW HWY---LVL 1----3 TIMES----
     {{{XXX}}}--C-WD1502
0B   D42C   2023 @*
05   D27C   2023 @S*----((((NEED ESU TO LOC FOR EVIDENCE SEARCH
     --D 1044--
12   D27C   2024 100LT2 10-84   2024 @*
05   D27C   2024 @*----(((LT2 IS 100 CO     ---ON SCENE--D1044
05   D29C   2024 @*MD
12   D41C   2024 27HEL18 10-84   2024 @*
0B   D41C   2024 @B*
11   D27C   2024 101SP88 10-98   2141 @*
05   D29C   2024 @*((((  XMXMXM LVL 1 ... ZONE 29 ... 3X       D 15
     14
12   D27C   2025 101SP88 10-84   2025 @*
05   D28C   2025 @*----XMITTED---LVL 1---2 TIMES-----OVER ZONE 28-
     ------D1673
05   D27C   2025 @*--AVIATION 84----D 1044
0B   D45C   2026 @B*
0A   D59C   2027 @DEF*

05   D27C   2027 @*-----AUTH AVIATION (((ROOF TOPS CLEAR   ----(((
     NO INJURED MOS   --(((ALL MOS ACCOUNTED FOR     ---SPCT MANGR
     U NTFD---D 1044
05   D27C   2028 @S*----CO READ REG ROOF TOPS CLEARED---AGAIN NEED
     ESU IN REG TO EVIDENCE SEARCH---D 1044
05   D28C   2028 @*XMITED LEVEL 1 MOB OVER ZONE 28 ,...3X ...D2288
0B   D41C   2028 @B*
0B   B12C   2028 @*
05   D27C   2029 @*---AUTH 101 CO---((NO SHOTS FIRED AT OR BY MOS
```

D000063

JA-244

**D000064**

```
        ----SCPT MANGRU NTFD--D1044
05   D27C   2030 @*
05   D27C   2030 @*---AUTH HOUSING 5 ML STP AT 84-18 RBB--CRIME RE
     SPONDING--------D 1044
05   D27C   2031 @*-----NEG RESULTS ON THE CANVASS---AVIAITON 98--
     D 1044
91   D27C   2034 100ST1 10-98    2051 @*
05   D27C   2034 @*----100ST CANVASSING--D 1044
B12C   2037 @NVEH *PPCT--AWAD NTFD WITH UPDATE SPCT MANGRU

12   D41C   2037 0ESA9 10-84    2037 @*
05   B12C   2037 @*---MOB XMITTED OVER ALL QNS SOUTH FREQ AND TA R
     ADIO SPCT MANGRU
91   D27C   2038 101A 10-98    2227 @*
0B   B12C   2039 @*
0B   B12C   2039 @*
0B   B12C   2039 @*
0B   D27C   2039 @*
0B   B36    2040 @*
11   D27C   2046 101LT3 10-98    2210 @*
12   D27C   2046 101LT3 10-84    2046 @*
05   D27C   2047 @*----(((LT3 IS TASK FORCE LT   ---84--D 1044
14   D27C   2050 101G @*---STILL OUT
14   D27C   2050 101ST1 @*--STILL OUT
13   D27C   2051 100ST1 10-98    2051 @*
14   D41C   2054 27HEL18 @*
13   D41C   2058 27HEL18 10-98    2058 @*
14   D27C   2101 100LT2 @*--SHOTS FIRED--D 1044
14   D27C   2101 101SP88 @*--STILL OUT
05   N79E   2121 @DBNS*-------PLZ HAVE SUPV 10-1 OPERATIONS----OPS
     ---WP

0B   D41C   2122 @B*
0B   D27C   2122 @*
13   D41C   2128 0ESA9 10-91    2128 @*
13   D27C   2133 101G 10-98    2133 @*
05   B12C   2134 @BSQ*
0B   B12C   2135 @*
14   D27C   2140 101A @*
14   D27C   2140 101LT3 @*
13   D27C   2141 100LT2 10-98    2141 @*
13   D27C   2141 101SP88 10-98    2141 @*
0B   B12C   2144 @*
13   D27C   2210 101LT3 10-98    2210 @*
14   D27C   2211 101A @*
14   D27C   2211 101ST1 @*
05   N79E   2218 @DBNS*PLZ HAVE PTL SUPV 10-1 OPS IN REGARDS----OP
     S---WP
0B   D41C   2218 @B*
05   D27C   2219 @*------SGT ADV---TO 10 OPS-----D1673
0B   D27C   2219 @*
05   B12C   2226 @BSQ*
33   D27C   2227 101A 10-98    2227 @*
05   D27C   2248 @DBNVEHSBSQTRN  Z MU*AUTH OF 101ST1 TERMINATING L
     EVL 1 MOB ...D2288
05   D41C   2248 @DBNVEHSTRN   MU*
05   D45C   2249 @*TERM XMITED COMM B-CW1118
05   D43C   2249 @*----XMXMXM TERMINATION OVR CW1---D1306

0A   D45C   2249 @DEF*
0B   D43C   2249 @*
05   D41C   2249 @*-----XMMMITED TERMINATION OVER CW SOD--C-W-D150
     2
0B   D41C   2249 @B*
05   D59C   2249 @*----------XMITTED LEVEL 1 TERM OVER QNS TA----T
     D 1503
```

**D000065**

```
OB  D59C   2249 @*
05  D44C   2249 @*XMT LEVEL 1 MOBIL...TERM......(CW 2 ...CW1261
OB  D44C   2249 @*
05  D116C  2249 @*XMMTD CW3.. LVL 1 MOB TERMINATED... CWD2199
OB  D116C  2249 @*
05  D42C   2250 @*XMTD--TERMINATED--HWY--CW 1273
OB  D42C   2250 @*
05  D27C   2257 @*SPCT SHABAZZ NTFD ...D2288
05  B12C   2258 @*...RC PPCT DILLARD..NTFD..SPCT SHABAZZ
05  D27C   2258 @*XMITED ..LEVL 1 TERMINATION OVER ZONE 27 .....D
    2288
OB  D27C   2259 @*
OB  B36    2259 @*
05  D28C   2259 @*---LVL 1 MOB TERMINATION XMITED---1X OVER ZONE
    28--D 1044

05  D29C   2301 @*------TERM XMITTED OVER ZONE 29 D1566
05  D30C   2303 @*------TERM OVER ZONE 30 1X--D2253
05  D27C   2304 @*XMTTED TERM OF LEVEL 1 MOB OVER ZONE 27---D2101
    --
05  B12C   2306 @*...TERMIANION..XMT OVR ALL...QNS SOUTH...N..QNS
    TA..FREZ..SPCT SHABAZZ
OB  B05C   2324 @*
05  B05C   2324 @WS  MU*
05  D45C   2325 @*--XMITTED TERMINATION OVR CW SPE COMM B---CW240
    7---
OB  D45C   2325 @*
05  D41C   2325 @*..XMT TERMINATION OVER SOD CW 1272
OB  D41C   2325 @B*
05  D44C   2326 @*XMTTTED LEV 1 TERM OVER CW 2 CW1183
OB  D44C   2326 @*
05  D43C   2326 @*XMT TERM LEVEL 1 MOB SPEC COMM A CW 1 CW 1575
OB  D43C   2326 @*
05  D42C   2326 @*------------XMITTED--TERMINATION---HWY----CW13
    21
OB  D42C   2326 @*
OB  B12C   2329 @*
05  B12C   2329 @BSQ*

05  D116C  2329 @*XMTD ..TERMINATION LVL 1 OVER CW 3 CW 1621
OB  D116C  2329 @*
05  B05C   2332 @*---LVL 1 MOB TERM XMTTD OVER ALL CITYWIDE FREQ-
    --SPCT SALEEM
OB  B05C   2332 @*
05  D27C   0037 @*-((((( AUTH OF 101 MIDNIGHT SGT STS 4x12 JOB TH
    EY STILL OUT STS VIA LL THAT SHE WILL HAVE 4x12
05  D27C   0037 @BSQ*-SGT 10-3 CENTRAL IN REGARDS TO FF IF ANY BU
    T THEY STILL OUT D 1602
OB  B12C   0050 @*
05  B12C   0050 @BSQ*
OB  D45C   0052 @*
05  D27C   0121 @D*-
13  D27C   0124 101ST1 10-93C  0124 @*93Q..AUTH OF MIDNIGHT DESK
    SGT STS VIA LL GAVE FF D 1602
0A  D27C   0127 @DEF*
OB  B12C   0205 @*
OB  B12C   0211 @*
```

D000066

```
**************************FRI. 05/03/13**************************
INCIDENT RECORD I QNS 18  101G      T71F  2008 D27 2008 F14155 AS
10-34S2 ML SHOT                  P2     CCD HOSP|RMVD 40  2024
ROUTING.D B   A N   V   S       CCD  215028 UF61       CC
51-32 BEACH CHNL DR
BEACH 51 ST - BEACH 53 ST
FC
DUPLICATE JOB NUMBER  F14158
02  T71F  2008 @DBLTNCEXT*HAPD
---OPR 2280 CP071
05  T71F  2008 @AEMS*
05  E100  2008 @*18 EMS LOGGED
91  D27C  2008 101G 10-99   2017 @*
05  T71F  2009 @B*-----FC STS HEARD SHOTS OUT WINDOW---SEES ML L
    AYING ON GRD----
05  T71F  2009 @B*------FC STS SEES 2 MLS LAYING ON GRD-----
40  T71F  2009 @DBANVEHS  CEXT MU*PREVIOUS INCIDENT CODE 10-34Q2
05  E100  2009 @*14 EMS VIEWED
25  E100  2009 @*A8698131233384 8698
0C  D42C  2009 @*
05  T71F  2009 @B*---RO 8719 NTFD ANI-ALI-
                                           ARVERNE COS.RESD LAT.LON.OPER S
    AMUDA-LIGHTBURN, SANDRA-C-MTCCP071

0B  D45C  2010 @*
0B  D41C  2010 @B*
0B  D116C 2010 @*
05  T71F  2010 @B*-----FC STS SEES POLICE IFO LOC-----OPR 2280 C
    P071
05  E100  2012 @*20 ETA 2019
05  T71F  2012 @B*----FC LOOKING FROM 7 FLR-----FC STS SHE DID N
    OT SEE ANYONE NO DESC OF PERP-----OPR 2280 CP071
0B  D44C  2012 @*
0D  T71F  2013 @*
13  B12C  2017 101G 10-99   2017 @*SEE DUPE
0A  B36   2017 @DEF*
0B  B05C  2018 @*
0B  D27C  2020 @*
05  D43C  2022 @*XMT SPECIAL A....CW1261
0B  D43C  2022 @*
81  E100  2024 40   51Z3 @*UNK N SAINT JOHNS EPISCOPAL HOSP
0B  B12C  2039 @*
05  E100  2118 @*21
05  E100  2118 @*24 82A
```

JA-247

UNITED STATES DISTRICT COURT EASTERN
DISTRICT OF NEW YORK

------------------------------------X
RASHAUN FERGUSON,

                        Plaintiff,

    -against-

                       Index No.
                       CV-06871-ENV-SJB

THE CITY OF NEW YORK, DETECTIVE JAEGER,
DETECTIVE MICHAEL GILDEA SHIELD #465 and
UNIDENTIFIED MEMBERS OF THE NYPD ALL
SUED HEREIN IN THEIR INDIVIDUAL
CAPACITIES,

                       Defendants.

------------------------------------X
             September 15, 2020
             11:08 a.m.


             Zoom Video Conferencing
             New York, New York
      EXAMINATION BEFORE TRIAL of OFFICER
ALFONSO VARGAS, the Non Party Witness
herein, taken by the Plaintiff, pursuant
to Article 31 of the Civil Practice Law
and Rules of Testimony, and NOTICE, held
via Zoom Video Conferencing at the
above-mentioned time, before Maryellyn
Feiler, a Notary Public of the State of
New York.

```
 1                  A. VARGAS
 2   Do you see where it says 54-30 Beach
 3   Channel Drive?
 4   A.   Yes.
 5   Q.   By the way is it larger on your screen
 6   now?
 7   A.   Yes.
 8   Q.   Do you also see where it says 3-65
 9   Beach 56th Street?
10   A.   Yes.
11   Q.   Are you familiar with the Goldie Maple
12   School at 3-65 Beach 56th Street?
13   A.   Yes.
14   Q.   And, okay.  What this map depicts I
15   believe and you can confirm or deny is the
16   distance and layout between 54-30 Beach
17   Channel Drive and 3-65 Beach 56th Street;
18   does this look like an accurate
19   representation of those locations to you,
20   Officer?
21   A.   Yes.
22   Q.   Now, on this map can you see,
23   withdrawn.
24        I believe the date of the incident you
25   were working out of the satellite from the
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page255 of 305

```
 1                    A. VARGAS
 2   Housing Authority for the 101st; is that
 3   correct?
 4   A.   Yes.
 5   Q.   And on this map can see where that
 6   satellite office is located?
 7   A.   Yes.
 8   Q.   Can you indicate to me what it was
 9   closest to that's on this map?
10   A.   It was on Beach 54 Street in the
11   center of the block.  I would say directly
12   to the east of the school.
13   Q.   Okay.  When we say to the east of the
14   school can we say to the right of the
15   school as we look at the screen, the left
16   of the school or something else?
17   A.   Yes.  The right of the map.  Matter of
18   fact where the "T" on street would be --
19   Q.   Where the what?
20   A.   On the map the final "T" in street
21   just to the right of that.
22   Q.   Very good.  Now, the date of the
23   shooting do you remember what the date of
24   the shooting was?
25   A.   Um, I'm sorry, I don't remember the
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page256 of 305

```
 1                    A. VARGAS
 2   date off the top of my head.
 3            MR. LICHTMACHER:  We can probably
 4        stipulate that it was May 3, 2013; am
 5        I correct Mr. Rosenkilde?
 6            MR. ROSENKILDE:  Yes.
 7   Q.   So May 3, 2013 did there come a time
 8   that you responded to a radio run or 911
 9   call or anything over the air about a
10   shooting near 54-30 Beach Channel Drive?
11   A.   Yes.
12   Q.   And when you heard that call how did
13   that call come in?
14   A.   I believe initially it came over as a
15   shot fired job, but then it was moved up
16   to possible children shot.
17   Q.   Okay.
18   A.   And --
19            MR. ROSENKILDE:  Is there
20        anything else to your answer?
21   Q.   I didn't mean to interrupt you.
22   A.   No.
23   Q.   So you were at the time in the
24   satellite to the right of the "T" on the
25   word "street" when you received or heard
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page257 of 305

```
 1                    A. VARGAS
 2   Q.   And what exactly did he tell you that
 3   he saw?
 4   A.   He said he saw a dark gray Ford
 5   Escape, people rushed to it and it was
 6   heading westbound towards the 100th
 7   Precinct.
 8   Q.   Did you put over the radio there was a
 9   dark gray Ford Escape heading westbound?
10   A.   I don't remember exactly if I put it
11   over the radio or my sergeant did.  But I
12   know I passed the information along.
13   Q.   Were you with your sergeant when you
14   received that information?
15   A.   No.  I was not.
16   Q.   And what, if anything, did he tell you
17   these people looked like?
18   A.   Um, I don't remember if he gave me a
19   description on the people.
20   Q.   Did you ask him?
21   A.   I'm sure I did, but if it's not in my
22   memo book then he didn't give it to me.
23   Q.   Well, do you remember now what he told
24   you they looked like?
25   A.   No.  I don't.
```

```
 1                    A. VARGAS
 2        that under advisement and ask that the
 3        request be followed up in writing.
 4             MR. LICHTMACHER:  That one I
 5        didn't request so I will put it in
 6        writing.
 7   Q.   Now, would you say that it's important
 8   to put over the radio as soon as you know
 9   it, anything that might help catch a
10   fleeing felon?
11             MR. ROSENKILDE:  Objection.
12   A.   Yes.
13   Q.   In fact, would you say that it's a
14   very high priority to put over the radio
15   all information you had about a fleeing
16   felon as soon as you receive it?
17   A.   Yes.
18   Q.   Were you carrying a radio that
19   evening?
20   A.   I was.
21   Q.   Now, after you made the entries in
22   your memo book which I believe you said
23   you did at the scene, what did you proceed
24   to do?
25   A.   I rushed directly to the scene with
```

```
 1                    A. VARGAS
 2   with someone named Reggie Evan?
 3   A.   No.  I did not.
 4   Q.   Did you ever interview any witnesses
 5   to this event other than the interview you
 6   describe with Mr. Wheeling?
 7   A.   No.  I did not.
 8   Q.   Did you ever follow up with Wheeling
 9   and contact him?
10   A.   No.  I did not.
11   Q.   And the entry underneath the one with
12   the ME what does that say?
13   A.   13:35 I returned back to the
14   satellite.
15   Q.   Long day that day, hum?
16   A.   It was.
17   Q.   You generated vouchers and I think a
18   complaint report, correct?
19   A.   Correct.
20   Q.   Was there ever a time that you
21   generated any other documents relevant to
22   this crime?
23   A.   No.  That's all I'm involved in.
24   Q.   The next line down of the memo book is
25   end of tour?
```

CITY OF NEW YORK
**POLICE DEPARTMENT**

A  973920

Name___P.O Vargas_____  Tax Reg. No.___945073___

Date Opened _12/5/12____  Supervisory Officer _____

Date Closed __6/14/13___  Supervisory Officer _____

PD 112-145 (07-09)

JA-255



PEOPLE V. FERGUSON IND. 2723/2014 DOC#000413

PEOPLE V. FERGUSON IND. 2723/2014 DOC#000413

Case 23-1315, Document 47, 11/26/2024, 3637624, Page262 of 305

PEOPLE V. FERGUSON IND. 2723/2014 DOC#000414

PEOPLE V. FERGUSON IND. 2723/2014 DOC#000414



PEOPLE V. FERGUSON IND. 2723/2014 DOC#000415



PEOPLE V. FERGUSON IND. 2723/2014 DOC#000415







BENGAD 800-631-8989
PLAINTIFF'S
EXHIBIT
8
3/27/19

000375

JA-259



Evans, Reggie 36 [redacted]

walked up [illegible] light skinned

Keith Gurley [redacted]

000376

000377

JA-261



000378



L100379



Tour - 4x1

Notif - 5/3 - 2008 Radio

Scene - 2020

ID McCummings 5/3 2210 Int 2115

ID Ravi-An - 5/4 0230

Arrest - 5/6 - 1200

Line Up - 5/7 - 0001

ID w/ GJ - 5/9 1740

Arrest - Time 2150 App - 1000 hr @ 51-49 Alameda

Line Up - 1/27 - 2118

000441

Bernice Galley

▮▮▮▮▮

people scream outside someone
banging on door came outside saw
Keith on ground. didn't see anyone

1430 hr
(3) Answer said who's this when I did
self hung up

000269

1100 hrs 1/27

Attn: 516 987-3616
Scott Brettschneider

5/6 Amanda Truteogo

~~[redacted]~~

Rashaun Ferguson
2/10/94
028150354
Legal 1140 hrs

~~[redacted]~~

001707

JA-267

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

                    CASE# 1:17-cv-06871

---------------------------------------------x

RASHAUN FERGUSON,

                    Plaintiff,

              -against-

THE CITY OF NEW YORK, DETECTIVE JAEGER, DETECTIVE

MICHAEL GILDEA SHIELD #465 and UNIDENTIFIED

MEMBERS OF THE NYPD all sued herein in their

individual capacities,

                    Defendants.

---------------------------------------------x

                    116 West 23rd Street

                    New York, New York

                    March 29, 2019

                    2:22 p.m.



              Deposition of the Defendant

QUINN JAEGER, pursuant to Order, before

Robert S. Barletta, a Notary Public of the State

of New York.

```
 1
 2    A P P E A R A N C E S:
 3    THE LAW OFFICE OF FRED LICHTMACHER, P.C.
 4    Attorneys for Plaintiff
 5         116 West 23rd Street
 6         New York, New York 10011
 7    BY:   FRED LICHTMACHER, ESQ.
 8
 9    ZACHARY CARTER, CORPORATION COUNSEL
10    Attorneys for Defendants
11         100 Church Street
12         New York, New York 10017
13    BY:   KIRAN ROSENKILDE, ESQ.
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page275 of 305

```
1                        Jaeger
2        Q.   Is he a personal friend?
3        A.   We were.
4        Q.   Partners?
5        A.   Yes.  Business friends.  Working
6    friends.
7        Q.   Friendly people who are friendly just
8    working together?  Not personal friends away from
9    work?
10       A.   Correct.
11       Q.   Did you review any documents in
12   preparation for today's deposition?
13       A.   Yes.
14       Q.   Do you remember what documents you
15   reviewed?
16       A.   DD-5s and notes.
17       Q.   Memo book notes?
18       A.   Yes.
19       Q.   Anything else you remember looking at?
20       A.   No.
21       Q.   Do you have a clear memory of an
22   investigation involving the murder of Keith
23   Gulley?
24            MR. ROSENKILDE:  Objection.  You can
25       answer.
```

```
 1                        Jaeger
 2         A.   Yes.
 3         Q.   In May of 2013, you were in the 101st
 4    Detective Squad?
 5         A.   Yes.
 6         Q.   Your partner was Michael Gildea?
 7         A.   Yes.
 8         Q.   Were you involved in the investigation
 9    along with Michael Gildea?
10         A.   Yes.
11         Q.   Was there a lead detective in the case?
12         A.   Yes.
13         Q.   Who was that?
14         A.   That was Detective Gildea.
15              MR. LICHTMACHER:  Mark this.
16              (Plaintiff's Exhibit 1, DD-5, marked for
17         identification.)
18              MR. LICHTMACHER:  I am handing you a
19         document marked for identification
20         Plaintiff's Exhibit 1.  It is purports to be
21         a DD-5, number 38, regarding the murder of
22         Keith Gulley.  It doesn't say Keith Gulley.
23         I think we can assume it is the Keith Gulley
24         murder.
25         Q.   Correct?
```

```
 1                        Jaeger
 2        A.    Yes.
 3              MR. LICHTMACHER:  It says here, and I am
 4        going to read the narrative section.  The
 5        summary of investigation.
 6        Q.    By the way, do you have trouble seeing?
 7        A.    No.
 8              MR. LICHTMACHER:  "On October 2, 2013,
 9        at approximately 1430 hours, I the
10        undersigned did speak to Detective Jaeger
11        regarding the status of this investigation,
12        Detective Jaeger informed me he is the new
13        case detective at this time."
14        Q.    Did you become the new case detective on
15   October 2, 2013?
16        A.    I don't remember the actual day that I
17   was assigned the case.
18        Q.    When they said you are the case
19   detective, what does that mean?
20        A.    The case is yours now.
21        Q.    Does that mean you are the lead person
22   in the case?
23        A.    Yes.
24        Q.    Prior to you being the lead person, was
25   Michael Gildea the lead person?
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page278 of 305

```
 1                      Jaeger
 2       in the canvass.  The first one that is listed
 3       says "365 B-56th Street PS-333 has video
 4       surveillance system does face B-56th Street.
 5       The undersigned did speak to Dennis Robinson
 6       who works for PS-333.  Mr. Robinson stated we
 7       can't view the video until Monday when the
 8       principal, Angela Logan is working."
 9       Q.    Do you have any memory of this.  Do you
10   have any memory of finding out there was a video
11   from the school located on 365 Beach 56th Street?
12            MR. ROSENKILDE:  Objection.  You can
13       answer.
14       A.    No.
15       Q.    Was there ever a time that you went to
16   the school located at 365 Beach 56th Street and
17   watched the video with the principal from that
18   school?
19       A.    No, I did not.
20       Q.    Do you know who if anyone did?
21       A.    No.
22       Q.    Did you ever discuss this with Detective
23   Gildea?
24       A.    No.
25       Q.    Would you agree it would be important to
```

```
 1                        Jaeger
 2   view a video for this particular incident that
 3   faced Beach 56th Street?
 4            MR. ROSENKILDE:  Objection.  You can
 5        answer.
 6        A.   Sorry.
 7        Q.   Would you agree with me that it would be
 8   important for the investigation into this case to
 9   view any possible videos that face Beach 56th
10   Street?
11            MR. ROSENKILDE:  Objection.  You can
12        answer.
13        A.   Yes.
14        Q.   Do you know if anybody ever viewed such
15   a video other than your conversation with your
16   attorney?
17        A.   No.
18        Q.   You don't know either way.  You don't
19   know whether or not any detectives or officers
20   from any precinct viewed the video discussed in
21   the document before you?
22        A.   No, I don't know.
23        Q.   When you put together the investigatory
24   file, the series of DD-5s, is it important that
25   any officer who reviews the file can see what is
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page280 of 305

```
 1                    Jaeger
 2  being done before he got involved in the case?
 3      A.   Yes, you can.
 4      Q.   Correct me if I am wrong, and I am not a
 5  detective, the purpose of keeping these DD-5s is
 6  so you can keep a running history of the
 7  investigative steps that have been taken in the
 8  case; is that correct?
 9      A.   Yes.
10      Q.   Is it fair to say that the existence of
11  the video facing Beach 56th Street might be an
12  important document in this investigation?
13           MR. ROSENKILDE:  Objection.  You can
14      answer.
15      A.   Yes.
16      Q.   Have you reviewed this document before
17  now?
18      A.   Yes.
19      Q.   Did you ever investigate what happened
20  to the video?
21      A.   No.
22      Q.   Can you tell me why?
23      A.   That it was blocked.
24      Q.   What was blocked?
25      A.   The surveillance.
```

```
 1                    Jaeger
 2       Q.   Correct me if I am wrong, you are
 3  telling me that the surveillance camera would have
 4  been blocked from seeing the events on Beach 56th
 5  Street; is that correct?
 6       A.   I don't know.
 7       Q.   What did you mean by blocked?
 8       A.   There was construction on that side of
 9  the school.
10       Q.   When did you learn there was
11  construction on that side of the school?
12       A.   When it occurred.
13       Q.   When you say "when it occurred," when
14  the shooting occurred?
15       A.   Yes.
16       Q.   You saw the construction?
17       A.   Yes.
18       Q.   Are you aware that the principal of the
19  school has testified that no construction blocked
20  the view to Beach 56th Street from that
21  surveillance camera?  Are you aware of that?
22            MR. ROSENKILDE:  Objection.  You can
23       answer.
24       A.   No.
25       Q.   Did you ever read Angela Logan Smith's
```

```
 1                        Jaeger
 2        Q.   Did the witness also place the vehicle
 3   across Beach 56th Street where it is located?
 4        A.   Yes.
 5        Q.   Did you ever speak with that witness?
 6        A.   Yes.
 7        Q.   Do you remember if his name was Orris
 8   Wheeling?
 9        A.   Yes.
10        Q.   When was the first time, if you
11   remember, you spoke with Orris Wheeling?
12        A.   At the scene.
13        Q.   The night of the incident?
14        A.   Yes.
15        Q.   Was Orris Wheeling in your opinion ever
16   a suspect in this crime?
17        A.   No.
18        Q.   How did you draw that conclusion?
19        A.   When he was explaining that he was
20   working on his car.
21        Q.   How long after the shooting did you
22   encounter Orris Wheeling?
23        A.   I don't know exactly.  Not long.
24        Q.   Was it less than an hour?  If you know.
25             MR. ROSENKILDE:  Objection.  You can
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page283 of 305

```
 1                        Jaeger
 2   In other words, are you given like weeks, or
 3   should you do it within a day or so, or anything
 4   else?
 5        A.   Yes.
 6        Q.   Which is it?  How long after you get the
 7   information should you write the DD-5?
 8        A.   I don't know the exact time, but when
 9   you can.
10        Q.   Fairly soon after the incident?
11        A.   Yes.
12        Q.   The reason for that, and correct me if I
13   am wrong, is so that other people working on the
14   case can see the information you already learned;
15   is that correct?  The reason is so that other
16   officers can share the information that you
17   learned may be helpful?
18             MR. ROSENKILDE:  Objection.  You can
19        answer.
20        A.   Yes, the case is in the system.
21             MR. LICHTMACHER:  The third line down in
22        the summary of investigation says "Gray
23        colored Ford SUV later identified as Escape."
24        Q.   Does that tell you that the evening this
25   gentleman was interviewed he did not identify it
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page284 of 305

1                          Jaeger

2               MR. LICHTMACHER:  He has been identified

3       as the alleged driver of the getaway car.

4          Q.    First, at any point was he arrested and

5       charged with a crime?

6          A.    Not that I am aware of.

7          Q.    There was a point in time that a car was

8       seized that belonged to Rashaun Ferguson's mother;

9       are you aware of that?

10         A.    Yes.

11         Q.    That car was dusted for prints; correct?

12         A.    Yes.

13         Q.    Is it a fair statement Henry McCummings

14      fingerprints never showed up in that car?

15         A.    I don't know.

16         Q.    Did you ever see proof that Henry

17      McCummings fingerprints did appear in that car?

18         A.    No.

19         Q.    What, if anything, was done to either

20      prove or disprove that Henry McCummings was the

21      driver of the getaway car?

22         A.    Sorry.

23         Q.    What steps were taken to prove that

24      McCummings was involved in the crime?

25         A.    I don't know.

Case 23-1315, Document 47, 11/26/2024, 3637624, Page285 of 305

1                       Jaeger

2        Q.   Did you ever become aware there were

3    surveillance cameras around Henry McCummings'

4    apartment building?

5        A.   I know that Ocean Village has cameras.

6        Q.   You know that from working in the area?

7        A.   Yes.

8        Q.   Did you ever view those cameras to see

9    if Henry McCummings could be seen coming or going

10   at the relevant times?

11            MR. ROSENKILDE:  Objection.  You can

12       answer.

13       A.   No, I didn't.

14       Q.   To your knowledge, did any of the

15   detectives or other police personnel review the

16   cameras or surveillance footage regarding Henry

17   McCummings' building?

18       A.   Not that I know of.

19       Q.   To your knowledge, Henry McCummings was

20   never prosecuted for being involved in the

21   shooting; correct?

22       A.   Correct, yes.

23       Q.   To your knowledge, is this an open case?

24       A.   No.

25       Q.   Why not?

Case 23-1315, Document 47, 11/26/2024, 3637624, Page286 of 305

```
 1                      Jaeger
 2      Q.   Do you recognize this type of document?
 3           MR. ROSENKILDE:  Have you had a moment
 4      to look through it.
 5      A.   Yes.
 6      Q.   Is this a document regularly used by the
 7   NYPD?  This type of document.
 8      A.   Yes.
 9      Q.   In fact, it is a business document they
10   use; correct?  A document they use on the job?
11      A.   Yes.
12      Q.   Do you recognize anybody's handwriting
13   on the page?
14      A.   Yes.
15      Q.   Whose handwriting do you recognize on
16   this page?
17      A.   The signature of Detective Gildea.
18      Q.   How about the printing on the page?  Do
19   you recognize whose printing that is where it
20   says, "Yes, that is the guy with the gun."  Do you
21   recognize that handwriting?
22      A.   That looks like Detective Gildea.
23      Q.   Does Detective Gildea usually right in
24   script or print?
25           MR. ROSENKILDE:  Objection.
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page287 of 305

```
 1                        Jaeger
 2        A.    Yes.
 3        Q.    Then it looks a little hard to read.
 4        A.    I don't know.
 5              MR. LICHTMACHER:  If we can get a better
 6        copy.
 7              MR. ROSENKILDE:  I am looking at the
 8        e-mail.
 9        Q.    Do you know what this means, 2130 hours
10    or to 1925?
11        A.    No, I don't.
12              MR. LICHTMACHER:  The next page, "Evans,
13        Reggie 36."  Page 376.
14        Q.    That is your handwriting?
15        A.    Yes.
16        Q.    I take it that means Reginald Evans is
17    one of the shooting victims?  The one that lived?
18        A.    Yes.
19        Q.    36 is the age?
20        A.    Yes.
21        Q.    Then it says "Walked up, 20s, light
22    skinned;" correct?
23        A.    Yes.
24        Q.    Was that description of the shooter?
25        A.    I spoke to him very quickly at the scene
```

```
 1                       Jaeger
 2   when he was taken to the ambulance and that is
 3   what he said quickly.
 4        Q.   That was the description of the shooter?
 5        A.   Yes, I believe so.
 6        Q.   Did he give you a height?
 7        A.   No.
 8             MR. LICHTMACHER:  Then it says, Keith
 9        Gulley.  There is a redacted section.
10        Q.   What is redacted there?
11        A.   I don't know.  Maybe the date of birth.
12        Q.   It could be the same thing for Reginald
13   Evans, date of birth?
14        A.   Possibly.
15             MR. LICHTMACHER:  I call for the
16        production of the un-redacted copy of this
17        document.
18             MR. ROSENKILDE:  As you know, these are
19        identical.  They were produced by the DA's
20        office.  You can check when you subpoena
21        them.
22             MR. LICHTMACHER:  I will.
23             MR. ROSENKILDE:  I ask that you follow
24        up in writing.
25             MR. LICHTMACHER:  Turning ahead to
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

        CASE# 1:17-cv-06871-ENV-SJB

--------------------------------------------x

RASHAUN FERGUSON,

             Plaintiff,

       -against-

THE CITY OF NEW YORK, DETECTIVE JAEGER, DETECTIVE

MICHAEL GILDEA SHIELD #465 and UNIDENTIFIED

MEMBERS OF THE NYPD all sued herein in their

individual capacities,

            Defendants.

--------------------------------------------x

        116 West 23rd Street

        New York, New York

        February 26, 2019

        11:17 a.m.

      Deposition of the Defendant

DETECTIVE MICHAEL GILDEA, pursuant to Order,

before Robert S. Barletta, a Notary Public of the

State of New York.

```
 1                      Gildea
 2       stamped D-02404.  And this new document
 3       Plaintiff's Exhibit 3, is D-2459.
 4          Q.   Do you recognize the document before you
 5     marked for identification as Plaintiff's
 6     Exhibit 3?
 7          A.   I do.
 8          Q.   What do you recognize it to be?
 9          A.   This is a map that I drew with the
10     information provided to me by a witness who
11     observed the shooting and identified the shooter.
12          Q.   According to you, he identified the
13     shooter; correct?
14          A.   Yes.
15          Q.   According to you, he identified him as
16     Rashaun Ferguson; is that correct?
17          A.   According to me and the documents he
18     signed yes.
19              MR. LICHTMACHER:  We will talk about
20          those in a while.  This document, you
21          generated the document and he provided the
22          information.
23          Q.   Is that correct?
24          A.   Yes.
25              MR. LICHTMACHER:  Let's talk about it.
```

```
1                        Gildea
2          MR. LICHTMACHER:  I don't want to
3      misrepresent what you said.
4          Q.   Do you believe it took eight months to
5      locate Mr. Ferguson and rearrest him?
6          A.   I suspect, yes.
7          Q.   Do you have documents to that effect?
8          A.   No, I was not assigned to the precinct
9      at this time.
10         Q.   Have you reviewed documents to that
11     effect?
12         A.   I don't recall reviewing specific
13     documents pertaining to the question you asked.
14         MR. LICHTMACHER:  Nothing further on
15      this document.
16         Q.   Do you know someone named Marcus Ortiz?
17         A.   No.
18         Q.   Do you know he who he is or was?
19         A.   I know the name.
20         Q.   What do you know about him?
21         A.   He is a person residing in the Rockaways
22     affiliated with being in a gang or gang activity
23     who was shot at one point I believe in the leg and
24     was out at the time of the shooting.
25         Q.   Who allegedly shot him?
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page292 of 305

```
 1                        Gildea
 2        A.    Keith Gulley.
 3        Q.    Did you know that at the time of the
 4   investigation into Keith Gulley's murder?
 5        A.    Did I know what?
 6        Q.    Marcus Ortiz allegedly shot Keith
 7   Gulley?
 8        A.    I knew at the point of the
 9   investigation.  Not throughout the whole
10   investigation.
11        Q.    Did you interview Marcus Ortiz?
12        A.    No.
13        Q.    Did you ever investigate whether or not
14   he was potentially the murderer of Keith Gulley?
15        A.    No.
16        Q.    Would you agree with me he had a motive
17   to kill Keith Gulley?
18        A.    No.
19        Q.    In your opinion, the fact that he shot
20   Keith Gulley previously in the leg would not be a
21   motive -- excuse me.  Or Keith Gulley shot him
22   previously in the leg would not be a motive to
23   take revenge of Keith Gulley?
24        A.    In the matter which you are asking it,
25   that would put everything in the motive against
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page293 of 305

1                    Gildea
2   anyone in the Rockaways for any type of act.
3        Q.   You are not telling me everyone in the
4   Rockaways has been shot?
5        A.   Not everyone in the Rockaways has been
6   shot or has a motive against a person that shot
7   them.
8        Q.   I want to be clear that getting shot by
9   someone is potentially a motive for murder?
10       A.   I don't think I can speak to other
11  people's motives.
12       Q.   You do murder investigations?
13       A.   I do.
14       Q.   People have been murdered for having
15  shot somebody before, haven't they?
16       A.   For a lot less and a lot more.
17            MR. LICHTMACHER:  I want to be clear
18       about this.
19       Q.   You don't think Marcus Ortiz has a
20  motive to shoot Keith Gulley after Keith Gulley
21  shot him in the leg?
22            MR. ROSENKILDE:  Objection.  Asked and
23       answered.
24       A.   I don't believe that Keith Gulley or
25  Marcus Ortiz -- I can't speak to someone's

1                          Gildea
2    motives.
3        Q.    Did you ever investigate whether or not
4    Marcus Ortiz was involved in the shooting?
5        A.    Yes.
6        Q.    Did you generate the DD-5 regarding this
7    investigation?
8        A.    Yes.
9        Q.    What DD-5 did you generate?
10       A.    The interview with the witness.  Orris
11   Wheeling.
12       Q.    Orris Wheeling alleged statement to you
13   that it couldn't be Marcus Ortiz in sum and
14   substance?
15       A.    Well, in sum and substance.  Yes.
16       Q.    Did you ever show him the picture of
17   Marcus Ortiz and say did this guy shoot him?  Is
18   this the shooter?
19       A.    No, he identified him.
20       Q.    At that point, was that identified by
21   him the shooter allegedly?  How many photographs
22   did you show to him about potential shooters?
23       A.    To the witness?
24       Q.    Yes.
25       A.    Six.

1                    Gildea

2      Q.    Was there a time you showed him only one

3  photo?

4      A.    Of the shooter?

5      Q.    Of the person who you are alleging was

6  the shooter, was there a time you showed Orris

7  Wheeling one photo and said in sum and substance,

8  this is the guy we think did the shooting?

9      A.    No.

10     Q.    That would be inappropriate police

11  tactics?

12     A.    In this particular situation?

13     Q.    Yes.

14     A.    Yes.

15         MR. LICHTMACHER:  Let's take a break.

16         (Whereupon, a break was taken off the

17     record.)

18                   (Back on the record.)

19     Q.    Are you aware whether or not there is

20  still an investigation of the murder of Keith

21  Gulley shooting of Reginald Evans?

22     A.    No.

23     Q.    It is not something they would have

24  informed you about?

25     A.    No.

Case 23-1315, Document 47, 11/26/2024, 3637624, Page296 of 305

1                          Gildea

2      Q.   You are aware Rashaun Ferguson was

3   acquitted at trial?

4      A.   I am.

5           MR. ROSENKILDE:  Let me ask the

6      detective to step out.

7           (Whereupon, Detective Gildea leaves the

8      conference room.)

9           MR. ROSENKILDE:  My understanding from

10     the documents is that is the same I-card that

11     is reactivated.

12          MR. LICHTMACHER:  The word "reactivated"

13     appears a few places.

14          MR. ROSENKILDE:  I mean, it is something

15     you can inquire about.

16     Q.   Were you ever under the impression that

17   McCummings was the shooter?

18     A.   No.

19     Q.   Was there ever an I-card generated for

20   McCummings?

21     A.   I believe there was.

22     Q.   Again, he was shown a single photo of

23   Ferguson?

24     A.   He who?

25     Q.   McCummings.

Case 23-1315, Document 47, 11/26/2024, 3637624, Page297 of 305

1                    Gildea

2        A.    Showing a single photo array of the

3    shooter?

4        Q.    Of the alleged shooter?

5        A.    No, that wouldn't be out of bounds.

6    Depending on the details.

7        Q.    Wouldn't it be suggestive?

8        A.    No.

9        Q.    Showing a guy one photo?

10       A.    Depending on the situation.  Many times,

11   a single photo was shown.

12       Q.    Do you sometimes have a witness say I

13   think this guy is the shooter?

14       A.    No, traditionally when the witness knows

15   the person and can articulate a relationship or

16   ongoing sightings of the perp, that would

17   eliminate the reason to show other photographs.

18   In such relationship, single photos can be shown.

19       Q.    Did you get the impression Orris

20   Wheeling had such a relationship with Rashaun

21   Ferguson?

22       A.    No.

23       Q.    Did Orris Wheeling ever tell you the SUV

24   he saw seemed to be similar to a jeep and silver

25   grey in color?

Case 23-1315, Document 47, 11/26/2024, 3637624, Page298 of 305

1                    Gildea

2       A.   I believe when he was describing it, he

3   used a lot of phrases to describe what he

4   articulated as a small SUV.

5       Q.   Did you make notes?

6       A.   No.

7       Q.   When you spoke to Wheeling, you took no

8   notes?

9       A.   Not to my recollection.

10      Q.   Did you generate other documents other

11  than the DD-5s, the photo array and the lineup?

12      A.   Yes, the map.

13      Q.   Anything besides those?

14      A.   No.

15      Q.   Do you walk around with a book to take

16  notes in or a memo book when you are a detective?

17           MR. ROSENKILDE:  Objection.

18      A.   I don't take notes.  I do routinely have

19  a note pad.  When I document is on a case by case

20  basis.

21      Q.   Orris Wheeling told my investigator he

22  never told you the SUV was a Ford Escape; is that

23  true?

24           MR. ROSENKILDE:  Objection.

25      Q.   Is it true that Orris Wheeling never

Case 23-1315, Document 47, 11/26/2024, 3637624, Page299 of 305

```
 1                      Gildea
 2    told you the SUV was a Ford Escape?
 3         A.   I believe, if I remember correctly,
 4    Orris Wheeling confirmed it was a Ford Escape
 5    being he didn't know the exact model, the style,
 6    the way it looked and the color.
 7         Q.   Did he ever tell you the license plate
 8    number of the car?
 9         A.   Not that I recall.
10         Q.   Did you ever add any writing to a
11    document that Orris Wheeling signed after he
12    signed it?
13         A.   No.
14         Q.   Did Orris Wheeling tell you the
15    passenger exiting the car was 5'9", tall, slim,
16    about 160 pounds?
17         A.   I don't recall that, no.
18         Q.   Did he ever tell you he was light
19    skinned?
20         A.   I don't recall.
21         Q.   Do you agree with me that is a much
22    closer description of Marcus Ortiz than of Rashaun
23    Ferguson?
24              MR. ROSENKILDE:  Objection.
25         A.   Repeat that.
```

Case 23-1315, Document 47, 11/26/2024, 3637624, Page300 of 305

1              Gildea
2      Q.   Do you agree with me a light-skinned
3   male, 5'9" tall, slim, about 160 pound, is a much
4   more accurate description of Marcus Ortiz than of
5   Rashaun Ferguson?
6      A.   No.
7      Q.   You don't?
8      A.   No.
9      Q.   To you, Rashaun Ferguson looks about
10  5'9", tall and slim?
11     A.   I didn't say that.
12          MR. ROSENKILDE:  Objection.
13     Q.   Marcus Ortiz was about 5'9"; correct?
14     A.   I have no idea.
15     Q.   You don't know?  Did you ever check
16  after you spoke with Wheeling how tall Marcus
17  Ortiz was?
18     A.   No.
19     Q.   You know that Ortiz has shot Gulley and
20  did you ever check to see his size whether or not
21  he fit in a possible description you received from
22  Orris Wheeling?
23     A.   It is my understanding from information
24  that I have Marcus Ortiz at this time was being
25  shot in the leg either was on crutches or walked

1                        Gildea

2    with a very distinguishable limp.  No one in this

3    investigation described a light-skinned

4    distinguishable limp or crutches fleeing the

5    scene.  The one that was described was Rashaun

6    Ferguson who was identified.

7         Q.   Who told you Marcus Ortiz walked with a

8    limp at that time?

9         A.   I couldn't put names.  Different members

10   of the squad and the precinct.

11        Q.   Do you know when Ortiz supposedly was

12   shot by Gulley?  What year?

13        A.   No, I don't.

14        Q.   Do you know Gulley was in jail just

15   before he was murdered; correct?

16        A.   Yes.

17        Q.   So was it after he got out of jail?

18   After he shot Marcus Ortiz?

19        A.   No, I don't believe so.

20        Q.   He was in jail for several years; are

21   you aware of that?

22        A.   I don't know the duration.

23        Q.   Your understanding was Ortiz was still

24   limping in May of 2013; is that correct?

25        A.   Yes.

1                          Gildea
2        Q.   Who told you that?
3        A.   I answered that.
4        Q.   Do you know the person's name?
5        A.   No, I do not.
6        Q.   Did you generate any paperwork about
7   research you did into Marcus Ortiz after this
8   crime?  Any investigation?
9        A.   No.
10        Q.   Was Orris Wheeling's wife with him when
11   he spoke with you any of the times he did?
12        A.   No.
13        Q.   How many times did Orris Wheeling speak
14   with you?
15        A.   More than twice.  I don't want to put a
16   number on it.
17        Q.   Did Orris Wheeling tell you that he was
18   parked in the middle of the block on Beach
19   56th Street under a lamp post?
20        A.   No.
21        Q.   Did he tell you that the SUV allegedly
22   involved in the crime was parked across the street
23   close to the entrance to the school called MS-333?
24        A.   No.
25        Q.   Did you want him to identify the man he

2017-06111
SF - M Rosankile

```
1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------------------------X
     RASHAUN FERGUSON,
3
                              PLAINTIFF,
4
               -against-           Case No:
5                                  17-CV-06871(ENV)(SJB)

6    THE CITY OF NEW YORK, DETECTIVE JAEGER, DETECTIVE
     MICHAEL GILDEA SHIELD #465 and UNIDENTIFIED
7    MEMBERS OF THE NYPD all sued herein in their
     individual capacities,
8
                              DEFENDANTS.
9    ------------------------------------------------X

10

11                      DATE:   February 25, 2019

12                      TIME:   11:01 A.M.

13

14

15              DEPOSITION of the Plaintiff, RASHAUN FERGUSON,

16   taken by the Defendants, pursuant to a Notice and to the

17   Federal Rules of Civil Procedure, held at the offices of

18   the New York City Law Department, 100 Church Street, New

19   York, New York 10007, before Joanne Capparelli, a Notary

20   Public of the State of New York.

21

22

23

24

25
```

R. FERGUSON

1    Q.    Have you ever been told by a police officer while

2    were you getting pulled over that your license was actually

3    suspended?

4    A.    No.

5    Q.    How many times that you recall have you been

6    pulled over by the police while were you driving?

7    A.    I don't recall.

8    Q.    Do you think it was more than a handful?

9    A.    I don't recall.

10   Q.    Do you know what your current license status is

11   as we sit here today?

12   A.    It's not suspended.

13   Q.    You said before you've paid your tickets; right?

14   A.    Yes.

15   Q.    Do you know what the most your tickets ever

16   amounted to in terms of fines?

17   A.    No.

18   Q.    Do you know how many suspensions your license has

19   ever had?

20   A.    Never had no suspensions on my license.

21          MR. ROSENKILDE:  This will be Defendant's

22          Exhibit A.

23          MR. LICHTMACHER:  Abstract of driving

24          record.  Let me see.

25          (Whereupon, the aforementioned document was

R. FERGUSON

1    your household either own or lease a car?

2        A.    In May?

3        Q.    Yes.

4        A.    Say it again.

5        Q.    In May of 2013 did anyone in your household

6    including you, your mother --

7        A.    My mother.

8        Q.    Your mother owned a car.  What kind of car was

9    that in May of 2013?

10       A.    Ford Escape.

11       Q.    What color was it?

12       A.    Gray.

13       Q.    What kind of vehicle is a Ford Escape?

14       A.    It's a Jeep.

15       Q.    Like, in other words, when you say Jeep does that

16   mean like a sport utility vehicle?

17       A.    Say it again.

18       Q.    Have you heard of, like, an SUV?

19       A.    Yes.

20       Q.    Is a Ford Escape an SUV?

21       A.    Yes.

22       Q.    It has four doors; right?

23       A.    Yes.

24       Q.    Do you know what the license plate of that Ford

25   Escape was?