# 23-1315

## United States Court of Appeals
## for the Second Circuit

RASHAUN FERGUSON,

*Plaintiff-Appellant,*

*against*

CITY OF NEW YORK, MICHAEL GILDEA,
and DETECTIVE JAEGER,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of New York

### BRIEF FOR APPELLEES

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-2490
jdavies@law.nyc.gov

DEVIN SLACK
JAMISON DAVIES
*of Counsel*

February 24, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................ iii

PRELIMINARY STATEMENT ......................................................... 1

ISSUES PRESENTED ................................................................... 2

STATEMENT OF THE CASE ........................................................... 2

    A. The shooting and the detectives' investigation and arrest
       of Rashaun Ferguson ......................................................... 2

    B. This suit and the district court's decision granting
       summary judgment to defendants ..................................... 7

STANDARD OF REVIEW AND SUMMARY OF ARGUMENT ....... 9

ARGUMENT ............................................................................. 10

POINT I ................................................................................... 10

    THE DISTRICT COURT CORRECTLY DISMISSED
    FERGUSON'S MALICIOUS PROSECUTION CLAIM ......... 10

    A. The grand jury's indictment creates a presumption of
       probable cause that Ferguson has made no serious
       attempt to rebut ............................................................. 11

    B. Beyond failing to rebut the presumption created by the
       indictment, none of Ferguson's arguments negate
       probable cause. ............................................................... 16

        1. Minor discrepancies between the victim's initial
           description of the suspect and Ferguson do not
           negate probable cause. ............................................... 17

        2. Ferguson's arguments relating to the surveillance
           video do not negate probable cause. .......................... 19

i

# TABLE OF CONTENTS (cont'd)

**Page**

    3.  Ferguson's scattershot additional arguments do not negate probable cause, either. ....................................21

  C.  Ferguson cannot show actual malice...............................24

POINT II ..........................................................................................25

THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON FERGUSON'S FAIR-TRIAL CLAIM ................................................................................25

CONCLUSION ...............................................................................30

CERTIFICATE OF COMPLIANCE .................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrose v. City of New York,*
623 F. Supp. 2d 454 (S.D.N.Y. 2009) ...................................................... 25

*Crawford v. City of New York,*
477 F. App'x 777 (2d Cir. 2012) ............................................................. 18

*Davenport v. City of New York,*
No. 15-CV-5890, 2017 U.S. Dist. LEXIS 160412 (E.D.N.Y.
Sept. 28, 2017)....................................................................................... 18

*Fabrikant v. French,*
691 F.3d 193 (2d Cir. 2012) ................................................................... 16

*Flores v. Satz,*
137 F.3d 1275 (11th Cir. 1998)............................................................... 25

*Frost v. N.Y.C. Police Dep't,*
980 F.3d 231 (2d Cir. 2020) ................................................................... 16

*Hargroves v. City of New York,*
411 F. App'x 378 (2d Cir. 2011) ...................................................... 17, 18

*Kaley v. United States,*
571 U.S. 320 (2014) ............................................................................... 12

*Kee v. City of New York,*
12 F.4th 150 (2d Cir. 2021)..................................................................... 24

*Lewis v. Siwicki,*
944 F.3d 427 (2d Cir. 2019) ..................................................................... 9

*Lyons v. Lancer Ins. Co.,*
681 F.3d 50 (2d Cir. 2012) ..................................................................... 22

*Manganiello v. City of New York,*
612 F.3d 149 (2d Cir. 2010) ................................................................... 10

*Mara v. Rilling,*
921 F.3d 48 (2d Cir. 2019) ..................................................................... 16

*Mitchell v. City of New York,*
749 F. App'x 75 (2d Cir. 2019) .............................................................. 23

*Mitchell v. City of New York,*
841 F.3d 72 (2d Cir. 2016) ............................................................... 22, 23

iii

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Morgan v. Gertz,*
166 F.3d 1307 (10th Cir. 1999) ............................................................. 25

*Morse v. Fusto,*
804 F.3d 538 (2d Cir. 2015) ............................................................. 27, 28

*Pettaway v. Nat'l Recovery Solutions., LLC,*
955 F.3d 299 (2d Cir. 2020) ................................................................. 22

*Poventud v. City of New York,*
750 F.3d 121 (2d Cir. 2014) (en banc) ................................................. 26

*Savino v. City of New York,*
331 F.3d 63 (2d Cir. 2003) ............................................................. 11, 15

*Stansbury v. Wertman,*
721 F.3d 84 (2d Cir. 2013) ................................................................... 16

*Stukes v. City of New York,*
No. 13-CV-6166, 2015 U.S. Dist. LEXIS 33223 (E.D.N.Y.
Mar. 17, 2015) ..................................................................................... 20

*United States v. Williams,*
504 U.S. 36 (1992) ............................................................................... 14

**Other Authorities**

Federal Rule of Civil Procedure 56 ............................................. 7, 13, 21, 22

## PRELIMINARY STATEMENT

Plaintiff Rashaun Ferguson was indicted by a grand jury in connection with a shooting after a victim of the crime identified him as the perpetrator in front of the grand jury. Ferguson was ultimately acquitted and brought this § 1983 suit against the City of New York and two detectives alleging malicious prosecution and denial of his right to a fair trial. The U.S. District Court for the Eastern District of New York (Vitaliano, J.) granted summary judgment to defendants.

This Court should affirm. The district court properly granted summary judgment on Ferguson's malicious-prosecution claim because the initiation of his prosecution was supported by probable cause, which is a complete defense. The grand jury's indictment created a presumption of probable cause, which Ferguson utterly fails to rebut. And even setting the presumption to one side, the victim of the crime consistently identified Ferguson as the shooter, which was more than enough to support his prosecution. Ferguson's scattershot attempts to poke holes in the investigation do nothing to undermine that fundamental conclusion.

The court also properly granted summary judgment on Ferguson's fair-trial claim, rooted in his assertions that defendants fabricated evidence. But there is simply nothing in the record to support those assertions. Ferguson rehashes the same arguments that fail to make out a

malicious-prosecution claim, and they fare no better in support of his fair-trial claim.

## ISSUES PRESENTED

1. Did the district court correctly grant summary judgment on Ferguson's malicious prosecution claim where the initiation of the prosecution was supported by a victim identification?

2. Did the district court correctly grant summary judgment on Ferguson's fair-trial claim where there was no admissible evidence to support his claims of fabrication?

## STATEMENT OF THE CASE

### A. The shooting and the detectives' investigation and arrest of Rashaun Ferguson

In May 2013, Reginald Evans and Keith Gulley were outside 54-30 Beach Channel Drive in Far Rockaway when a gunman approached and shot both Evans and Gulley multiple times (Joint Appendix ("A") 36, 191). Gulley ultimately succumbed to his wounds, but Evans survived (A47, 84). Detectives Jaeger and Gildea—the two individual defendants here—were called to the scene (A66). Before they arrived, non-party Officer Alfonso Vargas interviewed Orris Wheeling, who said he witnessed the events surrounding the shooting and told Vargas that the shooter led in a dark gray Ford Escape with New York plates (A71).

Vargas or his supervisor radioed in a report of a gray Ford Escape heading westbound away from the scene of the shooting (A71, 76).

After Detectives Gildea and Jaeger arrived at the scene, they interviewed Wheeling as well and memorialized his statement (A50, 85–88). Wheeling told the detectives that he was working on his car before the shooting and saw a gray Ford SUV pull onto the block from Beach Channel Drive (A85). A black male exited the SUV's passenger side and proceeded toward Evans and Gulley (A50, 86). Wheeling then heard gunshots and saw the same man run back to the SUV with a gun in his hand and get in the car, which sped off (*id.*).

Detective Gildea also testified that, while at the scene, he saw a surveillance camera at the Golden Maple Academy, a nearby school, but that it was not pointed toward the intersection where the shooting took place, and he concluded that any footage would not assist the investigation (A110). Despite that, two nonparty detectives visited the school the day after the shooting to see the video but were told that the video would not be accessible for a couple of days, when the school's principal—later identified as Angela Logan-Smith—returned to work (A55).

It is undisputed that the two officers who visited the school on this occasion were not the individual defendants (A55). Detectives Gildea and Jaeger testified without contradiction that they were not aware of

whether these other officers ever returned to the school to view the video and that they never saw the video themselves (A64–65, 110, 195).

As the investigation progressed, Detective Gildea discovered that members of the NYPD had on prior occasions stopped Ferguson while he was driving a gray Ford Escape with New York plates in the vicinity of the shooting (A89). Running a DMV check, Detective Gildea found a 2003 gray Ford Escape registered to Ferguson's mother (*id.*). On that basis, Detective Gildea included Ferguson in a computer-generated photo array, which he and Detective Jaeger showed to Wheeling (A92). Wheeling identified Ferguson as the gunman he saw near the scene of the shooting (A92–93, 127). Wheeling wrote his initials on the photo array instruction form, signed his name on the photo array viewing report, and signed his name under Ferguson's photograph (A122–29).

The day after the shooting, the detectives visited Evans in the hospital and attempted to show him the same photo array (A94). Evans, who at the time was unaware that his brother, Gulley, had died, refused to cooperate with the investigation (A95). He would "not provide any details of the incident" or make any "further statements" (*id.*).

A couple days later, Ferguson was taken into custody and placed in a lineup for Wheeling (A97). Wheeling did not make an outright positive identification, but made several references to Ferguson, stating

that he "looks like the guy but his skin color is off" (A56, 100–01, 149). But Wheeling told Detective Gildea, "I can't be the only person doing this" (A100). And when Wheeling did not make an outright positive identification, Detective Gildea voided Ferguson's arrest and released him from custody (A101).

The next day, Detective Gildea spoke with Evans's wife, who told Gildea that Evans would be willing to meet (A101–02). The detectives showed Evans the photo array, and Evans identified Ferguson as the perpetrator (A105, 154–62). Evans signed his name under Ferguson's photograph and wrote "that's the guy that walk [sic] up and shot me" (A160). Evans testified that he previously refused to cooperate with the investigation because Gulley was still alive but had a change of heart after learning that his brother had died (A38–40).

It then took several months for the police to locate Ferguson, and he was taken into custody in January 2014. He was placed in a lineup for Evans, who again identified Ferguson as the gunman who shot him and Gulley (A41–43). He was arrested, and Detective Jaeger signed a criminal court complaint that charged Ferguson with second degree murder, second degree attempted murder, and second degree criminal possession of a weapon (A176–77). A grand jury indicted Ferguson after Evans testified that he was the shooter (A182–88).

5

At Ferguson's criminal trial, Evans once again testified that Ferguson was the shooter (A43). The defense, for its part, called Angela Logan-Smith, principal of Goldie Maple Academy (A134). She testified that, three days after the shooting, two police officers came to Goldie Maple Academy and viewed surveillance footage from a camera pointed at a portion of Beach 56th Street (A137–38).

The video itself was not introduced into evidence, but Logan-Smith testified that it did not capture the intersection where the shooting occurred (A140). She reported that "you could see a person run by and a few seconds later a car went by," and testified that the car was a "dark sedan" (A138–39). Logan-Smith testified that someone watching the video would not be able to determine "facial features and specifics of the individual" (A139). She further testified that "[y]ou could make out that there was a person. You can make out just general, like, superficial details of the person" (*id.*). She further testified that the video was not of sufficient quality to see if the person was holding anything (A143).

Logan-Smith also testified that she did not know the identities of the officers who viewed the surveillance footage (A138). The individual defendants—Detectives Jaeger and Gildea—never met Logan-Smith or viewed the footage (A64–65, 110, 195).

The jury ultimately acquitted Ferguson on all charges (A190).

6

## B. This suit and the district court's decision granting summary judgment to defendants

Ferguson then brought this suit, alleging malicious prosecution and violation of his right to a fair trial (A215–29). After the parties completed discovery, defendants moved for summary judgment (A20). In a thorough opinion, the district court granted defendants' motion.

To start, the court noted that the facts set forth in Ferguson's Rule 56.1 statement "resting on information and belief" did not "satisfy the personal knowledge requirement of Rule 56(e)" and therefore could not be used to "advance[e] facts asserted by plaintiff or deny[] facts alleged by defendant[s]" (Special Appendix ("SPA") 1–2 n.1).

After recounting the undisputed facts (SPA1–4), the court first addressed Ferguson's malicious prosecution claim. The court found that his claim failed because of the "bottom-line maxim of the applicable law: The existence of probable cause is an absolute defense to malicious prosecution" (SPA7). The grand jury's indictment created a presumption of probable cause, and none of Ferguson's arguments rebutted that presumption.[1] Ferguson's "brash claim" that the detectives "repeatedly

---

[1] The court noted that Ferguson's opposition to summary judgment contained only "four pages of cursory analysis" and, while the court "construes plaintiff's submissions as charitably as possible" it could not "spin straw into gold" (SPA8).

lied" to establish probable cause was accompanied by "no admissible evidence" (SPA8). Plus, as the court explained, Ferguson's "entire line of attack" was "nothing but a sideshow" because "the grand jury indictment was not obtained on the basis of any of the evidence [he] assail[ed] in his attack" (SPA10). Instead, the foundation of the indictment was Evans's identification of Ferguson as the shooter (*id.*).

Next, the court rejected Ferguson's argument attempt to undermine Evans's identification based solely on the fact that Evans "initially described the shooter as light skinned, while Ferguson is darkly complected" (SPA11 (quotation marks omitted)). The court found that the discrepancy did not "erase Evans's subsequent identifications of Ferguson as the shooter" (*id.*).

The court also rejected Ferguson's theory that defendants failed to preserve exonerating video evidence in bad faith, as Ferguson "fail[ed] to substantiate his allegations of bad faith" (SPA12). The defendants denied viewing the video, and Ferguson offered nothing to controvert their testimony (*id.*). Moreover, the court found, any dispute was "truly immaterial" because none of the facts Ferguson claims were controverted by the principal's "testimony or the video underlying it were communicated to the grand jury" (SPA13). In fact, "no evidence of any kind was presented to the grand jury regarding any vehicle possibly connected

8

with the charged crime" and the indictment rested instead on Evans's "eyewitness testimony" (*id.*).

Finally, the court dismissed Ferguson's claim for denial of his right to a fair trial. Ferguson alleged that defendants fabricated or suppressed evidence, but the court found his contentions to be "easily dismissed" (SPA15). None of the purported fabrications or exclusions were substantiated by admissible evidence, nor did any alleged exclusion render any of the detectives' statements "false or misleading" (SPA14). The court granted defendants' motion for summary judgment in full and dismissed the case (SPA17).

## STANDARD OF REVIEW AND SUMMARY OF ARGUMENT

On de novo review, *Lewis v. Siwicki*, 944 F.3d 427, 431 (2d Cir. 2019), this Court should affirm. Ferguson provided no admissible evidence sufficient to make out his claims for malicious prosecution or denial of his right to a fair trial. As to the malicious prosecution claim, the grand jury indictment creates a presumption of probable cause, which is a complete defense. The burden is on Ferguson to rebut the presumption of probable cause, and he cannot do so. Ferguson's scattershot challenges to certain aspects of the investigation are, as the district court rightly put it, a "sideshow" (SPA10)—as they in no way establish that the

9

grand jury proceedings were tainted. In any case, the consistent eyewit-ness identification by the victim of the shooting—in a photo array, at a lineup, and in front of the grand jury—was more than sufficient to initi-ate the prosecution.

And Ferguson's fair-trial claim fails because he has not produced any admissible evidence from which a jury could reasonably conclude that defendants created or forwarded false information to the prosecu-tion. Nothing, except inadmissible hearsay, even suggests that any evi-dence was incorrect, let alone fabricated.

## ARGUMENT

### POINT I

### THE DISTRICT COURT CORRECTLY DISMISSED FERGUSON'S MALICIOUS PROSECUTION CLAIM

To succeed on a § 1983 malicious prosecution claim, Ferguson must show: (1) the initiation or continuation of a criminal proceeding against him; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the prosecution; and (4) actual malice as a motivation for defendant's actions. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). The district court correctly con-cluded that Ferguson's claim fails because there was probable cause to

support the initiation of the prosecution and because he cannot show actual malice (SPA7, 13–14).

### A. The grand jury's indictment creates a presumption of probable cause that Ferguson has made no serious attempt to rebut.

Probable cause is a "complete defense" to a malicious prosecution claim. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Here, the grand jury's indictment creates a presumption of probable cause, and Ferguson "bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Id.* at 73. Thus, he must submit evidence sufficient for a reasonable jury to find that the "indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* at 72 (quotation marks omitted). And he cannot rely on "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Id.* at 73 (quotation marks omitted).

Ferguson appears to believe that he can rebut the presumption of probable cause arising from the grand jury indictment by raising any issue whatsoever about his prosecution, but the inquiry is more targeted than that. On the one hand, the presumption arises because there is "a fundamental and historical commitment of our criminal justice system

to entrust [these] probable cause findings to grand juries." *Kaley v. United States*, 571 U.S. 320, 328 (2014). On the other hand, independent prosecutors—not police officers—control the presentation of evidence to a grand jury. So, as a practical matter, Ferguson must make one of two showings: (a) the evidence that was presented to the grand jury was tainted by dint of wrongful conduct by defendants; or (b) defendants tainted the prosecutor's pre-indictment decision-making by withholding material evidence from the prosecution.

Ferguson has never really tried to make either showing. Though he obtained the grand jury minutes during discovery and he deposed an assistant district attorney involved in his prosecution (*see, e.g.*, EDNY ECF No. 19 (state court order unsealing grand jury minutes); EDNY Minute Order dated January 9, 2019 (providing that each side "will be provided with one hard copy of the Grand Jury Minutes"); A181–82, 440–42 (excerpts of assistant district attorney's deposition)), Ferguson has submitted no evidence to suggest that defendants did or did not do anything to fundamentally mislead the grand jury or the prosecutor in the lead up to the indictment. Put simply, the record before this Court is devoid of any evidence that the grand jury heard false testimony or that the grand jury process was tainted, let alone that defendants are to blame.

12

The closest Ferguson comes is his speculation, without citation to the record, that Evans was "coached" into his identification of Ferguson (Brief for Appellant ("App. Br.") 27). But there is simply nothing in the record to support any allegation that defendants coached Evans to identify Ferguson as the perpetrator, much less subject himself to perjury by continuing to testify to that fact in front of the grand jury. Ferguson cites only his own Rule 56.1 statement, arguing that Evans's identification came after "Wheeling and McCummings refused to go along with" Detective Gildea's purported pressure to identify Ferguson as the shooter (App. Br. 26).[2] But the mere fact that Wheeling and McCummings had not identified Ferguson as the shooter, without more, does not support an inference that defendants somehow coerced Evans to falsify his identification of Ferguson as the perpetrator, including under oath in front of the grand jury. And Evans testified to as much, indicating that the police told him at the lineup that no one could "persuade him to say anything" (A42).

In an effort to cast doubt on Evans's identification, Ferguson repeatedly argues that Evans "changed his mind" and that Evans's

---

[2] It is immaterial, but the record does not support that Evans's identification came after McCummings was interviewed by police, either. McCummings testified that he did not know "the exact day" he was initially questioned by police (JA349).

"testimony changed" (App. Br. 26–27). But even assuming the grand jury heard testimony in this regard, Ferguson presented no evidence to suggest that it was the result of Detectives Jaeger and Gildea withholding material information from the prosecutor—as opposed to the prosecutor's decision about the scope of his grand jury presentation. *See United States v. Williams*, 504 U.S. 36, 51 (1992) ("[I]t has always been thought sufficient [for the grand jury] to hear only the prosecutor's side.").

That aside, Ferguson mischaracterizes the record. Evans initially refused to cooperate with the investigation because where he grew up you "don't talk to the police" (A37–38). But after his brother died, he agreed to identify the perpetrator and then consistently identified Ferguson (A39–40). Evans never changed his mind or his testimony regarding the identity of the shooter. He testified explicitly that he decided to talk to the police because of "[t]he fact that my daughters had to watch the[ir] uncle die right in front of the[ir] face" (A40), not because of any purported coaching or coercion.

Ultimately, it was up to the grand jury to assess Evans's credibility based on his testimony. Evans's identification of Ferguson as the shooter was the foundation of the indictment, and Ferguson has tendered no evidence to show that the identification was false, and certainly nothing to

indicate that it was false due to any bad faith attributable to defendants. His arguments are quintessential "conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Savino*, 331 F.3d at 73 (quotation marks omitted).

Otherwise, Ferguson seemingly contends that relevant evidence was not provided to the prosecution or presented to the grand jury (App. Br. 18). But again, Ferguson presented no evidence that defendants withheld relevant information from the prosecutor; the only testimony in the record is that all relevant information was provided to the prosecution (A476–77). And Ferguson cannot pursue a claim against defendants merely because the prosecutor's presentation to the grand jury may not have covered everything he would have liked, absent some showing that defendants withheld information from the prosecutor. After all, the prosecutor—not police officers—has the "discretion and authority to decide what evidence to present to the grand jury." *Savino*, 331 F.3d at 75. All of Ferguson's arguments, with respect to rebutting the presumption of probable cause, are truly a "sideshow" (SPA10).

**B. Beyond failing to rebut the presumption created by the indictment, none of Ferguson's arguments negate probable cause.**

Even setting the presumption of probable cause to one side, Evans's consistent identification of Ferguson as the shooter was sufficient to provide probable cause, standing alone. Here, Evans identified Ferguson as the shooter from a photo array (A160), at a lineup (A43), and in testimony to the grand jury (A182). A victim's statement identifying the perpetrator has routinely been held sufficient to provide probable cause. *See*, *e.g.*, *Mara v. Rilling,* 921 F.3d 48, 73–73 (2d Cir. 2019) (collecting cases); *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013); *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012). Indeed, this Court has found probable cause even where the victim did not "see whether the plaintiff was holding a gun," but just saw the plaintiff walking just before he was shot. *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020).

In the face of the identification, Ferguson has a tough row to hoe in negating probable cause. After all, the role of police officers in our criminal justice system is important but limited: to investigate potential crimes and help others initiate the criminal process, with all its attendant procedural protections. It is the role of independent prosecutors to decide whether to bring and pursue a prosecution, and it is the role of

criminal juries to adjudicate a defendant's guilt. So when police officers have a consistent identification of a perpetrator from a crime victim, it should take a great deal of conflicting evidence to describe a police officer's role in the mere initiation of the criminal process as objectively unreasonable. None of Ferguson's scattershot arguments come close.

### 1. Minor discrepancies between the victim's initial description of the suspect and Ferguson do not negate probable cause.

First, Ferguson points to a note indicating that Evans initially described the shooter as "light skinned" and argues that he "has a dark complexion" (App. Br. 21). Ferguson also points to a minor discrepancy between the preliminary investigatory report listing the perpetrator's height at 5'9", when Ferguson is three inches taller (*id.*). But, as Detective Jaeger testified, that description was from when he spoke to Evans "very quickly at the scene" when he was being taken "to the ambulance" (A282–83). Even Ferguson acknowledges that Evans was "subjected" to "distractions" during the shooting (App. Br. 27). It is therefore unsurprising that an initial description on a subjective matter, made in the course of being taken to the hospital, might slightly differ from later, entirely consistent identifications of a perpetrator.

17

Numerous cases have held that later identifications can provide probable cause where a victim's earlier description differs much more markedly from the suspect's actual appearance. In *Hargroves*, this Court affirmed a district court's finding of probable cause based on a show-up identification, even though the victim had initially described one of his assailants as wearing an orange coat, when plaintiff was actually wearing a red and blue coat. *Hargroves v. City of New York*, 411 F. App'x 378, 386 (2d Cir. 2011). In *Gil v. County of Suffolk*, the court found a show-up identification provided probable cause even though the arrestee was seven inches taller than the suspect in the initial description provided to police by the complainant. 590 F. Supp. 2d 360, 363–64, 368–69 (E.D.N.Y. 2008); *see also Crawford v. City of New York*, 477 F. App'x 777, 779 (2d Cir. 2012) ("The supposed inconsistencies in some of the [victims'] statements as to the details ... of the assaults are minor discrepancies that do not negate probable cause, much less establish bad faith on the part of authorities."); *Davenport v. City of New York*, No. 15-CV-5890, 2017 U.S. Dist. LEXIS 160412, at *28 (E.D.N.Y. Sept. 28, 2017) (noting that "minor inconsistent statements do not automatically vitiate probable cause based solely on a victim's statements if the totality of the circumstances support probable cause").

Consider the logical end-point of Ferguson's argument: if a victim's initial physical description of a suspect does not match the plaintiff to a tee, then police officers are powerless to act based on the victim's subsequent, consistent identifications of the plaintiff through a photo array and a lineup. That is not how probable cause works.

### 2. Ferguson's arguments relating to the surveillance video do not negate probable cause.

Ferguson next focuses on allegations regarding the surveillance video (App. Br. 21–23). But he merely lobs an unfounded accusation that the "video was destroyed shortly after it was shown to the officers" (App. Br. 23), based on nothing in the record. There is no admissible evidence to support the inference that either of the individual defendants ever saw the video (A110, 273, 317), much less intentionally suppressed or destroyed it. He contends that the principal of the school testified that she showed the video to some police officers (App. Br. 22). But she did not identify them (A158), let alone testify that it was either defendant here. Ferguson also argues that Detective Gildea testified that Detective Jaeger saw the video (App. Br. 22), but the testimony merely states that he "believe[d]" Jaeger saw the video and provides nothing to suggest he had personal knowledge of that fact (A309).

In any event, the video does not negate the probable cause that so obviously existed by virtue of Evans's consistent identification of Ferguson as the shooter. The school principal testified that the video showed a person running by and a car going by after the shooting (A138). She could only "assume" the person was "black" and was wearing dark clothing (*id.*). The video did not show the person's "facial features" (A139). And it was not clear enough to see if the person on the video was "holding something" (A143). Essentially, she testified that all a viewer could "make out [was] that there was a person" (A139). And the video then showed a "dark sedan" drive by (*id.*).

The video undisputedly did not show the shooting. At most, it showed someone unidentifiable running near where the shooting occurred and then a car driving by. That evidence, even if the detectives had seen it, is not enough to negate the probable cause provided by Evans's eyewitness identification. Ferguson's assumption that there was some unidentified "enhancement technology" that could have been used to identify the person, who may or may not have been the shooter (App. Br. 23), is based on nothing.

As Ferguson himself does not dispute (App. Br. 22), courts have held that "that police officers act in bad faith only when they fail to disclose evidence that would *conclusively* establish the plaintiff's

20

innocence or "negate the possibility that plaintiff had committed the crime." *Stukes v. City of New York*, No. 13-CV-6166, 2015 U.S. Dist. LEXIS 33223, at *17 (E.D.N.Y. Mar. 17, 2015) (emphasis added, quotation marks omitted) (collecting cases). The video certainly did not prove conclusively that Ferguson did not commit the crime or that it was impossible that he did so; it did not even show the crime, and the person on the video was unidentifiable. As the district court properly found, the dispute about the video is "truly immaterial" (SPA13).

### 3. Ferguson's scattershot additional arguments do not negate probable cause, either.

Ferguson makes several additional arguments, none of which negate the existence of probable cause. First, he disputes whether Wheeling, who initially identified him in a lineup, wrote "this is the guy I saw with the gun" under the photo array (App. Br. 22; *see also* A127). The dispute is irrelevant for multiple reasons. For one, Ferguson conceded in his response to defendants Rule 56.1 statement that "Wheeling picked Ferguson out of a photo array," and that "Wheeling [] signed the document" (A461). Whether he also wrote the statement is irrelevant,

21

because he undisputedly identified Ferguson. Wheeling's identification supports, rather than undermines, probable cause.[3]

Ferguson also continues to rely extensively on an investigative report prepared on his behalf years after the shooting (A377–78), particularly to support his claim that there could have been another suspect, Marcus Ortiz, who was purportedly identified to the investigator (*see* App. Br. 5–7, 10, 24, 26). But Ferguson ignores the district court's conclusion that the report is "pure hearsay" and inadmissible to oppose defendants' summary judgment motion (SPA15); *see also* Fed. R. Civ. P. 56(c)(1)(A) & 56(c)(2); *Lyons v. Lancer Ins. Co.,* 681 F.3d 50, 57 (2d Cir. 2012). As Ferguson himself appears to agree, he must provide "'admissible materials'" to oppose summary judgment (App. Br. 16 (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545–46 (2d Cir. 2010)). He completely fails to mention, much less dispute, the district court's sound conclusion that all the materials from the investigator's report are inadmissible hearsay and cannot be used to oppose summary judgment, and

---

[3] To the extent Ferguson claims this is relevant to the presumption of probable cause, nothing indicates that defendants relied on Wheeling's identification when signing the criminal complaint against Ferguson (A176–77)—in fact, they released Ferguson after Wheeling refused to identify him in a lineup (A101). The indictment was based on Evans's statement and, as the district court found, it is "clear beyond contest that the grand jury indictment was not obtained on the basis of any of the evidence" Ferguson attacks as Wheeling's identification was not presented to the grand jury to support the indictment (SPA10).

he cannot raise any challenge to that conclusion for the first time on re-ply. *See Pettaway v. Nat'l Recovery Solutions., LLC*, 955 F.3d 299, 305 n.2 (2d Cir. 2020).

Finally, Ferguson's argument that a jury may find the police lacked probable cause if they are "deliberately indifferent to evidence that might exonerate" a plaintiff lacks merit (App. Br. 25). The relevant por-tion of the lone case that he cites for that proposition involves the situa-tion where the officers conducted essentially no investigation whatso-ever before arresting the plaintiffs for trespassing. *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016). Unlike here, the police there had only "baseless and unreasonable conjecture" that a crime was com-mitted, *id.* at 79, as opposed to a consistent eyewitness identification. And, it bears noting that this Court in *Mitchell* dismissed the malicious prosecution claim because, despite the dispute about the existence of probable cause, there was no evidence of malice, and the case was ulti-mately dismissed on qualified immunity grounds. *Id.* at 80; *Mitchell v. City of New York*, 749 F. App'x 75, 76 (2d Cir. 2019).

At the end of the day, there was ample evidence to support proba-ble cause—from Wheeling's photo-array identification to the corre-spondence between the vehicle reported at the scene and the one regis-tered in the name of Ferguson's mother that had been reported in the

23

vicinity of the crime. But the simplest—and unassailable—fact is that a victim to the crime repeatedly and consistently identified Ferguson as the shooter. No further insight is required to conclude that there was probable cause to initiate the prosecution, with or without presumption of probable cause arising from the grand jury indictment.

## C. Ferguson cannot show actual malice.

The district court also correctly concluded that Ferguson cannot make out the actual malice element of his malicious prosecution claim. He barely raised an argument as to actual malice in the district court and "rehashe[d] the same unsupported allegations" of suppression, destruction, and alteration of evidence (SPA13–14). But, as described above, he offers no "meaningful evidence" to support any of those claims, let alone enough evidence to "create a genuine dispute" (SPA14).

On appeal, he argues that actual malice may be inferred where a plaintiff is prosecuted without probable cause (App. Br. 17). That is true so far as it goes but, as described above, there was ample probable cause to support Ferguson's prosecution. Nor does he point to any other evidence suggestive of malice beyond the same points he raises in his failed opposition to the district court's probable-cause finding.

## POINT II

## THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON FERGUSON'S FAIR-TRIAL CLAIM

The district court also correctly granted summary judgment on Ferguson's fair-trial claim. To make out a fair-trial claim, a plaintiff must show that: (1) an officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a criminal jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions. *Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021). As the district court correctly concluded (SPA14–16), Ferguson's fair-trial claim fails because he has not provided any admissible evidence from which a jury could reasonably conclude than an officer created or forwarded false information to the prosecutors in his case.

On appeal, he first argues that he can proceed on his fair-trial claim on the basis of a *Brady* violation (App. Br. 29–30). It is unclear what evidence he alleges was withheld from the prosecution (*see* App. Br. 30). And as noted (*supra* at 12–15), Ferguson tendered zero evidence that the defendants withheld any relevant evidence from the

25

prosecutor, despite having the opportunity to depose an assistant district attorney and to obtain the prosecution file in discovery.

Even setting that to one side, Ferguson fails to address the district court's core point that a *Brady* claim is unavailable where a plaintiff was acquitted at trial (SPA16). Any number of courts in this circuit and others have held as much. *See*, *e.g.*, *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (holding that "[r]egardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial"); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff . . . was never convicted and, therefore … the facts of this case do not implicate the protections of *Brady*."*)*; *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 471 (S.D.N.Y. 2009) (collecting cases holding that a "jury verdict acquitting Plaintiff of the criminal charges resulting from his arrest negates any violation of his *Brady* rights and extinguishes any Section 1983 due process claim").

And this makes sense because the scope of a *Brady*-based constitutional right is defined "by reference to the likely effect that the suppression had on the outcome of the trial." *Poventud v. City of New York*, 750 F.3d 121, 134 (2d Cir. 2014) (en banc) (quotation marks omitted). Here, any purportedly suppressed evidence could not have altered the

outcome of Ferguson's trial in his favor because it already terminated in an acquittal.

Beyond the meritless *Brady* claim, Ferguson also contends in a single paragraph that he can pursue his fair-trial claim based on purportedly fabricated evidence (App. Br. 29–30). Specifically, he contends that that the detectives added statements to Wheeling's statement, failed to generate a DD5 report regarding the "initial identification of the shooter as light-skinned," made a fraudulent report of a Ford Escape, and a failed "to document the viewing of the video" (*id.*).

As the district court found, each of these contentions is "easily dismissed" (SPA15). First, Ferguson offers no admissible evidence to support the fact that the detectives incorrectly recorded Wheeling's statements in the course of the photo identification. The only basis for that contention is the inadmissible hearsay statements of his investigator's report, which the district court properly discounted (SPA15). And, in any event, the only dispute is whether Wheeling himself wrote "this is the guy I saw with the gun" on the photo array (A127). But, even if he is correct, that alone would not have a material influence on a criminal jury because the core point is undisputed: Wheeling signed the photo array identifying Ferguson as the shooter (*see* A461).

27

Likewise, any purported failure to include the description of the suspect in a report does not implicate Ferguson's right to a fair trial. To prove fabrication by omission, a plaintiff must show that the omission "renders an otherwise true statement false." *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015). But there is no statement contained in any report that would be rendered false by the inclusion of the description. Moreover, Detective Jaeger testified that he provided the underlying notes, including the initial description, to the prosecution—and Ferguson has presented no contrary evidence (A475–76).

As to the Ford Escape, again the only evidence on which Ferguson relies to contest that Wheeling reported seeing a gray Ford Escape at the shooting is inadmissible hearsay—the private investigator's report and deposition testimony about what Wheeling said years after the crime (SPA8 (citing A377, 440–41)). Both sources are inadmissible, which Ferguson does not contest on appeal. Even if they were not, they do not show that any officer created false information and provided it to the prosecutor. At most, they show that a witness gave a statement years later that was inconsistent with the original reports.

Finally, Ferguson reiterates his arguments about the surveillance video in support of his fair-trial claim. But, as described above (*supra* 19–21), there is no competent evidence to suggest that either defendant

28

even viewed the video or met the school principal, who testified she showed it to unknown officers (A64–65, 110, 195). Even assuming defendants had seen the video, Ferguson cannot identify any statement made by defendants that would be rendered false from the omission of information about either the video or Logan-Smith. Thus, any such failure would not be fabrication of evidence. *Morse*, 804 F.3d at 548. At most, Ferguson has alleged that the defendants' "investigative steps may have been incomplete" but nothing to show that any defendant "fabricated or provided evidence that was false" (SPA16).

## CONCLUSION

District court's order should be affirmed.

Dated:  New York, New York
        February 24, 2025

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees


By:   /s/ Jamison Davies
      JAMISON DAVIES
      Assistant Corporation Counsel

      100 Church Street
      New York, New York 10007
      212-356-2490
      jdavies@law.nyc.gov

DEVIN SLACK
JAMISON DAVIES
    *of Counsel*

30

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 6,172 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____*/s/ Jamison Davies*_____
JAMISON DAVIES