# 23-1315

## United States Court of Appeals
### *for the*
## Second Circuit

———

Rashaun Ferguson,

*Plaintiff-Appellant,*

v.

City of New York, Michael Gildea, Detective Jaeger,

*Defendants-Appellees,*

Unidentified Members of the NYPD, all sued herein in their individual capacities,

*Defendants.*

———

On Appeal from a Judgment of the United States District Court, Eastern District of New York

## Reply Brief of Plaintiff-Appellant

| | |
|---|---|
| Stephen Bergstein<br><br>Bergstein & Ullrich<br>5 Paradies Lane<br>New Paltz, New York 12561<br>(845) 469-1277 | Fred B. Lichtmacher<br>159 West 25th Street, Room 510<br>New York, New York 10001<br>(212) 922-9066<br><br>*Counsel for Plaintiff-Appellant* |

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Point I:  The jury may find that Plaintiff has overcome the presumption
that the Grand Jury indictments establishes probable cause . . . . . . . . . . . 1

    1. Defendants' failure to produce the surveillance video overcomes
the probable cause presumption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    2. Defendants did not consider another obvious suspect, Ortiz . . . . . . . . . 5

    3. The Evans identification of Plaintiff does not overcome Plaintiff's
evidence rebutting the probable cause presumption . . . . . . . . . . . . . . . 6

    4. Defendants overlook the rush to judgment against Plaintiff . . . . . . . . . 7

    5. The jury may find that Plaintiff has proven malice . . . . . . . . . . . . . . . . 8

Point II:  Plaintiff may prevail on his fair trial claim . . . . . . . . . . . . . . . . . . . . . . . 8

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# Table of Authorities

Bermudez v. City of New York,
 790 F.3d 368 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Frost v New York City Police Dept.,
 980 F.3d 231 (2d Cir 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Manganiello v. City of New York,
 612 F.3d 149 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Morse v. Fusto,
 804 F.3d 538 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Poventud v. City of New York,
 750 F.3d 121 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rentas v Ruffin,
 816 F3d 214 (2d Cir 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Savino v. City of New York,
 331 F.3d 63 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Smalls v. Collins,
 10 F.4th 117 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Walker v. City of New York,
 974 F2d 293 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Zahrey v. Coffey,
 221 F.3d 342 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii

**Point I**

**The jury may find that Plaintiff has overcome the presumption
that the Grand Jury indictments establishes probable cause**

Plaintiff Rashaun Ferguson recognizes that Grand Jury indictments create a presumption of probable cause, which would negate a claim for false or malicious prosecution. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). However, that presumption is rebuttable. *Id*. at 73. The jury may find that Plaintiff has overcome the rebuttable presumption, as Defendants' brief cannot get around the factual disputes in Plaintiff's favor.

Bearing in mind that Plaintiff was acquitted at trial (JA 190) and there is no conclusive evidence linking Plaintiff with the fatal shooting, the jury would recognize that, at best, this was a close case on probable cause. What would tip the scales for Plaintiff at trial are the following facts that could negate probable cause (despite the indictment) and prove his malicious prosecution case.

**1. Defendants' failure to produce the surveillance video overcomes the probable cause presumption.**

Defendants did not alert Plaintiff's criminal attorneys about the existence of a surveillance video that a school principal, Angela Logan-Smith, showed to the police officers. Situated in the neighborhood of the shooting, the school operated the camera. (JA 314). Nor was the principal's identity disclosed to Plaintiff's defense team. In his opening brief, Plaintiff argued that "[t]he most important

1

evidence in the case involves the surveillance video, which Defendants knew about but did not contemporaneously share with Plaintiff or his criminal lawyer." (Pl. Br. at 7); *see also* JA 203. In their opposition brief, Defendants do not dispute that they did not share this video with Plaintiff or his criminal attorneys. Nor have Defendants disputed that they did not alert the defense team about Logan-Smith. Instead, Defendants argue that (1) Defendant Michael Gildea "concluded that the video would not assist the investigation" because the camera was not pointed toward the intersection where the shooting took place (*id*. at 3); (2) Gildea and Defendant Quinn Jaeger testified without contradiction that they were not aware of and never saw the video (*id*. at 3-4, 19); and (3) the video neither captured the intersection where the shooting took place nor recorded any useful footage. *Id*. at 6, 20. But these factual assertions are disputed, undermining Defendants' argument that the district court properly granted summary judgment on whether they had probable cause to arrest Plaintiff.

First, as Plaintiff has argued, "The video provided various ways for the police to identify the shooter, most likely through enhancement technology that could have identified the runner, the presumed gunman. But the officers did not follow-up accordingly." (Opening Br. at 23). This is because the video depicts  a man running from the scene of the crime, and there were no obstructions. (JA 314, 372, 374-75). Defendants argue that "Ferguson's assumption that there was some

2

unidentified 'enhancement technology' that could have been used to identify the person, who may or may not have been the shooter, is based on nothing." (Def. Br. 20). But the video depicts a man running from the scene of the crime. The video also shows a car driving by moments later. (JA 315). Both the man and the car should have been matters of great interest to the police. While Defendants argue that the video does not conclusively prove Plaintiff's innocence, and that the person in the video is unidentifiable (Def. Br. at 21), that is only because no one made the effort to uncover that individual's identity. As Plaintiff has argued, the police could have utilized stop frames and enhanced those images to gain a better view of the runner. (Opening Br. at 9). Notably, if the fleeing man had tattoos, as did Marcus Ortiz, a possible suspect (JA 330-35), that would have assisted in finding the shooter. The police also could have employed technology to decipher the license plate of the passing vehicle. Moreover, Logan-Smith recalled that the vehicle in the video was a sedan, not the SUV that the police tried to link to Plaintiff. (JA 373-74).

Viewing the evidence in the light most favorable to Plaintiff, the video is the kind of evidence that would have been useful to Ferguson's defense. Defendants' failure to produce the video permits the inference that they withheld it in bad faith, overcoming the presumption that the Grand Jury indictment establishes probable cause to arrest Plaintiff in the shooting.

3

Second, the record highlights a clear factual conflict as to whether Defendants knew about and saw the video. While Defendants, citing their own testimony, argue that neither Gildea nor Jaeger even saw the video (Def. Br. at 3-4, 19) (citing JA 110, 273, 317), Logan-Smith testified that she shared the video with police officers (JA 314, 372, 374), and Gildea testified that he told the District Attorney's office that Jaeger saw the video. (JA 309-10). If Jaeger saw the video, and it depicted a man running from the scene of the crime, then it was certainly relevant to the Plaintiff's criminal defense. It would also have been useful at the Grand Jury proceedings.

Defendants' only argument in response to Plaintiff's evidence that Jaeger saw the video is that Gildea "merely states that he 'believe[d]' Jaeger saw the video and provides nothing that he had personal knowledge of that fact." (Def. Br. at 19) (citing JA 309). However, the colloquy at the preliminary proceeding in the criminal trial is as follows:

> Q: Did you speak to [Assistant District Attorney] Mr. Regan recently, within the last few weeks, about viewing the footage a few days after the shooting, whether it was you or Detective Jaeger –
>
> A: Yes.
>
> Q: – that did the viewing? All right. And you didn't tell him you did the viewing, it was Detective Jaeger, that's what you told Mr. Regan?
>
> A: I believe so, yes.

(JA 309).

4

Q: Now, let's just be clear, Detective. You did not actually view the footage; correct?

A: No, I did not view the footage.

Q: This was your understanding of what was viewed by your partner, your former partner, Detective Jaeger; correct?

A: It's that and coupled with the fact that I've downloaded hundreds of video cameras . . ."

(JA 310).

This testimony is enough to establish that Gildea knew that Jaeger saw the video. Any contrary interpretation of this testimony is for the jury.

**2. Defendants did not consider another obvious suspect, Ortiz.**

The decedent, Keith Gully, had previously shot Ortiz, which would have provided Ortiz a motive for a retaliatory shooting. (JA 286-87). But the police did not deem Ortiz a suspect. Gildea neither interviewed Ortiz nor investigated his involvement in the murder. (JA 287, 297). Gildea also admitted that he never showed a photo of Ortiz to Orris Wheeling, one of the eyewitnesses. (JA 289). Yet, at 5'10" tall (JA 330), Ortiz was comparable in size to the perpetrator described in the Preliminary Investigation Worksheet, generated hours after the incident, which reported the perpetrator was 5'9". (JA 324). Wheeler told Investigator DeLeon that the fleeing man was 5'9". (JA 377-78). Additionally, Ortiz had a lighter complexion than Plaintiff, which is consistent with Evans' initial description of a "light skinned" shooter. (JA 260, 330). As noted above, Plaintiff is dark-skinned

5

and over six feet tall. (JA 335). Plaintiff is 6'3". (Ferguson Dep. 8:42-9). Defendants' failure to consider Ortiz as a suspect, along with their failure to produce the surveillance video, and their disputed testimony that Jaeger even saw the video, further allows Plaintiff to overcome the presumption that the Grand Jury indictment establishes probable cause.

### 3. The Evans identification of Plaintiff does not overcome Plaintiff's evidence rebutting the probable cause presumption.

In arguing that the record establishes they had probable cause as a matter of law, Defendants rely heavily on Reginald Evans' identification of Plaintiff, arguing that "Evans identified Ferguson as the shooter from a photo array, at a lineup, and in testimony to the Grand Jury." (Def. Br. at 16) (citing JA 43, 160, 182). But the record casts doubt on the reliability of Evans' account.

Right after the shooting, Evans told Jaeger that a "light skinned" shooter had pulled the trigger; this evidence appears in a faded note made by Jaeger. (JA 259-267). Ferguson has a dark complexion. (JA 259-267, 282-83, 335). Only one day after the shooting, Evans was presented with Plaintiff's photograph and did not identify him as the shooter. (JA 464 ¶ 31). Evans then changed his mind on May 9, 2013, identifying Plaintiff as the culprit. *Id.* at ¶ 34. As Plaintiff has argued, the Evans identification was made only after two other witnesses, Wheeling and Henry McCummings, did not go along with Gildea's efforts to pin the shooting on Plaintiff, and after Defendants failed to document the existence of the surveillance

6

video and the existence of Logan-Smith, a potentially exonerating witness. (JA 464 ¶ 34) (citing *inter alia* McCummings Dep. at 20-23 [JA 354-56]). In this context, Evans' initial account to the police raises questions about his subsequent positive identification.

### 4. Defendants overlook the rush to judgment against Plaintiff.

Defendants note that Wheeling identified Plaintiff in speaking with another officer, Alfonso Vargas. (Def. Br. at 2-3). The context of this conversation favors Plaintiff's position. According to Vargas, Wheeling "said he saw a dark gray Ford Escape, people rushed to it and it was heading westbound towards the 100th Precinct." (JA 252). Not only did Wheeling tell Plaintiff's investigator, Elpidio DeLeon, that he never said this to Vargas (JA 377-78), but Wheeling also told the assistant district attorney that the shooter was not driving a gray Ford Escape. (JA 440-41). Although he had encountered an eyewitness to a double shooting, Vargas only remembered Wheeling reciting the make and model of the vehicle but nothing about the shooter's physical description. (JA 252, 255-58). Vargas's omission is remarkable. Yet, Defendants do not address this argument. Any competent police officer would record information about the shooter's physical appearance. This omission permits the inference that the police determined early on that Plaintiff was the shooter without exploring other suspects.

**5. The jury may find that Plaintiff has proven malice.**

Defendants argue that Plaintiff cannot prevail on his malicious prosecution claim because he cannot prove malice. (Def. Br. at 24). Defendants recognize that the jury may infer malice if the police pursued the case without probable cause. (*Id*.); *see also Rentas v. Ruffin*, 816 F.3d 214, 221-22 (2d Cir. 2016). Defendants get around this by arguing that the record conclusively proves they had probable cause. However, as demonstrated above, the jury may find that Plaintiff has overcome the presumption of probable cause from the Grand Jury indictment.

**Point II**

**Plaintiff may prevail on his fair trial claim**

"[T]o establish a section 1983 fair-trial claim based on fabrication of evidence, a plaintiff must demonstrate that 'an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.' '[T]o succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must [therefore] prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision.'" *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021).

8

"A section 1983 fair-trial claim . . . will not be defeated by evidence of probable cause because it 'cover[s] kinds of police misconduct not addressed by . . . malicious prosecution claims' and vindicates a different constitutional right – the right to due process protected by the Fifth and Fourteenth Amendments." *Id.* at 133; *see also Poventud v. City of New York*, 750 F.3d 121, 137 (2d Cir. 2014) ("[E]ven [a] guilty man is entitled to a fair trial").

A fair trial violation may also be based on an officer's intentional withholding of exculpatory evidence. *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015) (citing *Walker v. City of New York*, 974 F2d 293, 299 (2d Cir. 1992)). As this Court has stated:

> "false information likely to influence a jury's decision . . . violates the accused's constitutional right to a fair trial," because to hold otherwise, "works an unacceptable 'corruption of the truth-seeking function of the trial process.'" Information may be "false" if material omissions render an otherwise true statement false. For example, in *Manganiello v. City of New York,* 612 F.3d 149 (2d Cir. 2010), we affirmed a verdict against a police officer who was found to have "misrepresented the evidence to the prosecutors, or failed to provide the prosecutor with material evidence or information, or gave testimony to the Grand Jury that *was false or contained material omissions,*" while knowing that he "was making a material misrepresentation or omission or giving false testimony." *Id.* at 159 The *Manganiello* Court acknowledged that the integrity of the judicial process can be unlawfully compromised by a government official's submission of information to a jury that implicates the accused based in part on material omissions.

*Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015).

In this case, as demonstrated above, Defendants withheld important evidence (the surveillance video) in Plaintiff's criminal case, and a key witness (Logan-Smith) was hidden from Ferguson. *See Frost v. New York City Police Dept.*, 980 F.3d 231, 250 (2d Cir 2020) ("the fair trial right protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, were that evidence presented to the jury") (citing *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer")).

Defendants argue that Plaintiff cannot prevail on his false trial claim because "there is no competent evidence to suggest that either defendant even viewed the video or met the school principal, who testified she showed it to unknown officers." (Def. Br. at 28-29). But, as demonstrated above, the police did not turn over the surveillance video to Plaintiff's criminal defense team, and that video would have assisted in Plaintiff's defense of the criminal charges. While Defendants further argue that "Ferguson cannot identify any statement made by defendants that would be rendered false from the omission of information about either the video or Logan-Smith" (*id*. at 29), as demonstrated above, the failure to turn over potentially exculpatory evidence can also support a fair trial claim.

10

**Conclusion**

The district court improperly granted Defendants' motion for summary judgment on Plaintiff's malicious prosecution claim. This Court should vacate the order granting summary judgment and remand this claim for trial.

Dated: February 28, 2025

| Stephen Bergstein | */s/ Fred B. Lichtmacher* |
|---|---|
| Bergstein & Ullrich<br>5 Paradies Lane<br>New Paltz, New York 12561<br>(845) 469-1277 | Fred B. Lichtmacher<br>159 West 25th Street, Room 510<br>New York, New York 10001<br>(212) 922-9066<br>Counsel for Plaintiff-Appellant |

11

**Certification**

Stephen Bergstein, co-counsel for Plaintiff-Appellant, affirms that this brief complies with FRAP 32(a)(7) in that it utilizes non-proportional typeface with no more than 10.5 characters per inch. The font is Times New Roman 14-point. The brief contains 2,520 words.

*/s/ Stephen Bergstein*