**MANDATE**

23-1315-cv
*Ferguson v. City of N.Y. et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of June, two thousand twenty-five.

PRESENT:    DENNY CHIN,
            SARAH A. L. MERRIAM,
            MARIA ARAÚJO KAHN,
                *Circuit Judges*.

_____

RASHAUN FERGUSON,

    *Plaintiff-Appellant*,

       v.                                                                                    23-1315-cv

CITY OF NEW YORK; MICHAEL GILDEA;
DETECTIVE JAEGER,

    *Defendants-Appellees*,

UNIDENTIFIED MEMBERS OF THE NYPD,
all sued herein in their individual capacities,

    *Defendants*.
_____

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | FRED B. LICHTMACHER, New York, NY, (Stephen Bergstein, Bergstein & Ullrich, New Paltz, NY, *on the brief*). |
| FOR DEFENDANTS-APPELLEES: | JAMISON DAVIES (Devin Slack, *on the brief*), *for* Muriel Goode-Trufant, Corporation Counsel of the City of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Vitaliano, *J.*).

**UPON DUE CONSIDERATION,** the August 31, 2023, judgment of the District Court is **AFFIRMED.**

Plaintiff-appellant Rashaun Ferguson brought this action against defendants-appellees the City of New York, Detective Michael Gildea, and Detective Quinn Jaeger pursuant to 42 U.S.C. §1983 and state law, asserting three claims: (1) malicious prosecution in violation of the Fourth Amendment, (2) violation of his right to a fair trial as guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments, and (3) malicious prosecution in violation of New York common law. These claims arose out of Ferguson's acquittal of charges related to a fatal 2013 shooting after a jury trial in New York state court. The District Court granted summary judgment to defendants-appellees, and Ferguson appealed. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

On appeal, Ferguson argues that the District Court improperly granted summary judgment to the defendants-appellees on his claims for malicious prosecution and the

2

violation of his right to a fair trial. This Court

> review[s] de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor. Summary judgment is required if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

*Unkechaug Indian Nation v. Seggos*, 126 F.4th 822, 828 (2d Cir. 2025) (citation and quotation marks omitted). Assertions of fact made in connection with a motion for summary judgment must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment,…absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (citations omitted). On *de novo* review, we conclude that the defendants-appellees were entitled to summary judgment because Ferguson has failed to proffer sufficient evidence that would be admissible at trial to substantiate his malicious prosecution and fair trial claims. We address each in turn.

I.  **Malicious Prosecution**

Defendants-appellees were entitled to summary judgment on Ferguson's malicious prosecution claims. "Claims for malicious prosecution brought under Section 1983 are substantially the same as claims for malicious prosecution brought under state law." *Ortiz v. Stambach*, 137 F.4th 48, 61 (2d Cir. 2025). "To establish a malicious prosecution claim

3

under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citation and quotation marks omitted). "A presumption of probable cause is created, however, by a grand jury's indictment." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Ferguson was indicted by a grand jury. To overcome the presumption, he was therefore required to present evidence from which a reasonable jury could conclude "that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (citation and quotation marks omitted); *see also Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003) ("[T]he plaintiff . . . bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment.").

Ferguson has failed to identify evidence in the record that could rebut the presumption of probable cause created by the grand jury indictment. While Ferguson makes several allegations related to the grand jury process, as discussed below, he has failed to accompany those allegations with citations to supporting evidence that would be admissible at trial. *See Burlington Coat Factory*, 769 F.2d at 924.

Ferguson's primary argument is that "Defendants suppressed evidence about [a school surveillance] video which provided them ample opportunity to identify the real shooter, no DD5 was generated about the viewing, and [Angela] Logan Smith, an

4

eyewitness to the apparent shooter running away, was never disclosed to Ferguson's defense team." Appellant's Br. at 18. However, Ferguson points to no admissible evidence to support an inference that either of the individual defendants ever saw the school surveillance footage or knew about Logan-Smith, much less that they intentionally suppressed the footage or her identity. Ferguson states that Logan-Smith testified that she showed the footage to two police officers. But she could not remember the identities of the officers, and both Gildea and Jaeger testified that they did not view the footage or meet Logan-Smith. It is undisputed that Gildea and Jaeger were not the only two officers who investigated the shooting. Indeed, Ferguson admits that it was two *different* detectives who initially went to the school to attempt to view the footage. Ferguson also contends that Gildea testified that Jaeger saw the video but in fact, Gildea testified only that he "believe[d]" that he (Gildea) had told the prosecutor that Jaeger had seen the video. App'x at 309. This testimony does not establish that Gildea had personal knowledge that Jaeger actually saw the video.

Ferguson also argues that the record "supports the inference that Gildea actively intimidated witnesses and added falsehoods to police documents that were different than those provided by witnesses." Appellant's Br. at 18. Specifically, he contends that although Wheeling, an eyewitness, "allegedly identified Plaintiff as the shooter, Wheel[ing] did not write the handwritten statement" on the photo array "that purportedly memorialized this identification; this notation was in Gildea's handwriting." *Id.* at 24 (citations omitted). Ferguson relies on Jaeger's testimony at his deposition that the writing

5

on the Wheeling statement that says, "[y]es, that is the guy with the gun," was in handwriting that "looks like Detective Gildea." App'x at 281. But even if Wheeling did not write those words himself, and even if Gildea wrote them, that does not suggest that Wheeling was "intimidated" by Gildea or that Gildea "added falsehoods to police documents." Appellant's Br. at 18. As the District Court observed, "[e]ven if the testimony of Detective Jaeger were found to be admissible lay opinion evidence [regarding the handwriting] and could be used to support the assertion that Gildea in fact wrote the statement, which is far from clear, it does nothing to suggest that he did so *after* Wheeling signed it." Special App'x at 10.

Next, Ferguson asserts that "Wheeling told [Ferguson's private] investigator, DeLeon, that he did not identify Plaintiff as the shooter during the photo array" and "that he never told these officers that he saw a dark gray Ford Escape leave the scene of the shooting." Appellant's Br. at 24. In opposing summary judgment, Ferguson cited an unsworn report prepared by DeLeon and the deposition testimony of an Assistant District Attorney, both of which stated that Wheeling told them, years after Ferguson was indicted, that Wheeling had seen a different vehicle and had not identified Ferguson. This evidence was appropriately deemed hearsay by the District Court. Ferguson does not challenge that determination on appeal, and does not represent that he could present it at trial in an admissible form; it is therefore insufficient to defeat summary judgment.[1] *See Patterson*

---

[1] Ferguson does not contend that Wheeling would be willing to testify directly at a civil trial so as to eliminate the hearsay problem. To the contrary, at his deposition, Wheeling invoked his Fifth Amendment privilege, the State's Attorney's Office declined to immunize

6

*v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A]n affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").

Ferguson also asserts that "Defendants' zeal to prosecute [him] is further proven by their efforts to intimidate another witness, McCummings, to identify him as the shooter." Appellant's Br. at 24. According to Ferguson, "McCummings testified that the police were pressuring him to make an identification, and they focused on Plaintiff 'almost immediately when they put [McCummings] in the room with them.'" *Id.* at 24-25 (citations omitted). But this mischaracterizes McCummings's deposition testimony. McCummings testified that the police "were pressuring [him] trying to get [him] to identify *somebody*" – not that they were targeting Ferguson in particular – by "saying that they did have witnesses saying that they could put [McCummings] on the scene, that [he] was the driver of the getaway car," which made McCummings fear that he might be charged in the shooting. App'x at 357 (emphasis added). That fear led McCummings to present an alibi; when the alibi was confirmed, he was released. McCummings's testimony, even construed in the light most favorable to Ferguson, does not suggest that the police were trying to intimidate McCummings into identifying Ferguson.

Ferguson also asserts that "Evans, who survived the shooting and was in the best position to know what the shooter looked like, told Jaeger that the shooter was light-

---

him, and the District Court denied Ferguson's motion to compel his testimony. *See Ferguson v. City of New York, et al.*, 1:17CV06871(ENV)(SJB), ECF No. 65 (E.D.N.Y. Feb. 24, 2020).

7

skinned; yet, Plaintiff has a dark complexion. Further suggesting that Plaintiff was not the shooter, the Preliminary Investigation Report stated that the gunman was 5'9". Plaintiff is over six-feet tall." Appellant's Br. at 21 (citations omitted). But Evans unequivocally identified Ferguson as the shooter in both a photo array and in a live lineup before the indictment was issued, and identified Ferguson again at the criminal trial. Thus, any issues relating to Evans's initial description do not create a genuine dispute of material fact as to Evans's identification of Ferguson.

Finally, Ferguson argues that "the record permits the inference that Defendants did not target a more likely suspect, Marcus Ortiz." Appellant's Br. at 24. The only evidence in the record suggesting that Ortiz might have been the shooter was Gildea's testimony that he learned Keith Gulley, the murder victim, had previously shot Ortiz. Even assuming this evidence of a potential motive is sufficient to identify Ortiz as a suspect, it does not suggest that he was a more likely suspect than Ferguson – especially given that Ferguson was identified as the shooter by the surviving victim.

Taken together, these allegations, even construed in the light most favorable to Ferguson, do not give rise to a genuine dispute of material fact "that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment" or that "the indictment was secured through bad faith or perjury." *Manganiello*, 612 F.3d at 162 (citation and quotation marks omitted). Thus, Ferguson has failed to present sufficient evidence to rebut the presumption of probable cause created by his grand jury indictment, and the District Court properly granted summary judgment to

8

the defendants-appellees on Ferguson's malicious prosecution claims.

## II. Fair Trial

Defendants-appellees are also entitled to summary judgment on Ferguson's fair trial claim. To succeed on a fair trial claim based on fabricated evidence, "a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) (citation and quotation marks omitted).

Ferguson failed to establish a genuine dispute of material fact on his fair trial claim; he has not presented any evidence from which a jury could reasonably conclude that Gildea or Jaeger created or forwarded fabricated information to the prosecutors in Ferguson's case. Ferguson asserts that "Defendants generated DD5's with intentionally inaccurate information, in particular the fraudulent statements they added on Wheeling's behalf. Equally malicious was their failure to generate DD5's regarding the initial identification of the shooter as light-skinned, the fraudulent reports of a Ford Escape, and the intentional failure to document the viewing of the video and to have that video and a key witness's name preserved." Appellant's Br. at 29-30 (citations omitted). Ferguson also asserts that "important evidence was withheld, exonerating information was not memorialized, the key witness was hidden, and witnesses were coerced to provide false information." *Id.* at 30. Finally, Ferguson asserts that he can proceed on his fair trial claim on the basis of a *Brady* violation.

9

Again, however, Ferguson points to no admissible evidence in support of these claims that could be presented at trial. *See Burlington Coat Factory*, 769 F.2d at 924. The only evidence supporting Ferguson's assertion that the detectives incorrectly recorded Wheeling's statements during the photo identification in 2013 was the private investigator's 2017 report, which the District Court properly disregarded as hearsay. And, regardless of whether Wheeling himself wrote "this is the guy I saw with the gun" on the photo array, App'x at 127, it is undisputed that Wheeling signed the photo array identifying Ferguson as the shooter. With respect to the purported failure to include the description of the suspect as "light-skinned" in a report, Jaeger testified that he provided the underlying notes, which included this initial description, to the prosecution, and Ferguson presents no evidence to the contrary. As to the alleged "fraudulent reports of a Ford Escape," the only evidence presented by Ferguson – the private investigator's report and deposition testimony from a third party about statements Wheeling made years after the shooting – was appropriately deemed inadmissible hearsay. Ferguson's allegations about the surveillance video and Logan-Smith are equally unsupported because, as detailed above, Ferguson provides no evidence to support his allegation that either Gildea or Jaeger viewed this footage or knew about Logan-Smith. Finally, because Ferguson has presented no evidence from which a jury could infer that the defendants withheld any relevant evidence from the prosecution, his attempt to root his fair-trial claim in a *Brady* violation, even assuming that such a claim is available where a plaintiff is acquitted at trial, likewise fails.

It is undoubtedly tragic that Ferguson was detained for almost four years on charges

10

that were eventually insufficient to sustain a conviction. But Ferguson's acquittal does not mean that the evidence against him was fabricated or that the prosecution was undertaken in bad faith. On the record before us, we conclude that Ferguson has failed to present admissible evidence sufficient to sustain his claims.

Accordingly, for the foregoing reasons, the judgment of the District Court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11